# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

                                    Plaintiffs,

                    v.

CITY OF LYNN, *et al.*,

                                    Defendants.

CIVIL ACTION
NO. 05-10213-PBS

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
## OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The State defendants[1] submit this memorandum of law in support of their motion for judgment on the pleadings or in the alternative for summary judgment. In further support of the motion, the State defendants also submit the accompanying Affidavit #1 of Sally McNeely (McNeely Aff.) and the exhibits attached thereto.[2]

Plaintiffs are four African-American men who wish to be hired as firefighters by the defendant City of Lynn. Plaintiffs allege, inter alia, that the firefighter entrance examination, as prepared and utilized by the defendant Human Resources Division in connection with its role in the Massachusetts civil service system, discriminates against plaintiffs on the basis of their race

---

[1]    The Commonwealth of Massachusetts, Human Resources Division (HRD) and Ruth Bramson, in her capacity as Personnel Administrator of the Human Resources Division (Administrator).

[2]    The McNeely Affidavit that accompanies the electronic filing of this memorandum contains an electronic signature. The original affidavit with original signature will be mailed to the Court.

in violation of state and federal law.  In particular, plaintiffs allege that the manner in which

HRD places firefighter candidates on eligibility lists in the order of candidates' examination

scores results in an unlawful disparate impact on minority candidates in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  The complaint does not allege that the State

defendants have intentionally discriminated against the plaintiffs.

 The State defendants have moved for judgment on the pleadings or in the alternative for

summary judgment in their favor for the following reasons:

1.   On Count I, alleging violations of Title VII, because plaintiffs and the State defendants
     are not in an employment relationship.  <u>See</u> Argument, Part I (pages 9 - 20);

2.   On Count II, alleging violations of plaintiffs' constitutional right to equal protection of
     the laws, and Count III, alleging violations of 42 U.S.C. § 1981, because plaintiffs fail to
     allege that the State defendants have acted with discriminatory intent.  <u>See</u> Argument,
     Part III (pages 22 - 23);

3.   On Counts IV and V, alleging violations of Massachusetts law, because the Eleventh
     Amendment bars federal courts from instructing the States on how to conform their
     conduct to state law.  <u>See</u> Argument, Part III (pages 22 - 23);

4.   On Count VI, alleging violations of the consent decree issued in the case of <u>Boston
     Chapter, NAACP, Inc. v. Beecher</u>, 371 F. Supp 507 (D. Mass. 1974), because the
     complaint fails to give the State defendants fair notice of the nature of the claim.  <u>See</u>
     Argument, Part II (pages 21 - 22).

<u>**FACTS AND STATE-LAW FRAMEWORK**</u>

**I.    THE HIRING OF FIREFIGHTERS UNDER THE
        MASSACHUSETTS CIVIL SERVICE SYSTEM**

 **A.    HRD Is One of Two State Agencies That
         <u>Implement the Massachusetts Civil Service System</u>**

 The Massachusetts Human Resources Division is charged by statute with certain

responsibilities in implementing the Massachusetts civil service system, including the

preparation and administration of civil service examinations.  <u>See</u> M.G.L. c. 31, § 5.  In addition,

HRD is empowered to "make and amend rules which shall <u>regulate</u> recruitment, selection, training and employment of persons for civil service positions." <u>See</u> M.G.L. c. 31, § 3 (emphasis added). The Administrator is responsible for the overall conduct of the affairs of HRD. M.G.L. c. 31, § 5.

The Civil Service Commission, not named as a defendant in this action, is a distinct state agency from HRD that has different responsibilities within the civil service system, primarily adjudicating disputes between civil service employees and their employers. <u>See</u> M.G.L. c. 31, § 2. Employers in the civil service system -- which may be local or state entities -- are typically called "appointing authorities." <u>See</u> M.G.L. c. 31, § 1. The Civil Service Commission also has the right to disapprove rules proposed by HRD. <u>See</u> M.G.L. c. 31, § 3.

The "fundamental purposes" of the civil service system are "to guard against political considerations, favoritism, and bias in governmental employment decisions." <u>Town of Falmouth v. Civil Service Comm'n</u>, 61 Mass. App. Ct. 796, 800, 814 N.E.2d 735, 739 (2004). By focusing on "basic merit principles" as defined in M.G.L. c. 31, § 1,[3] the system aims to encourage appointing authorities to make personnel decisions free of "overtones of political control or objectives unrelated to merit standards or neutrally applied public policy." <u>Id.</u> It is not within the authority of HRD and the Civil Service Commission to "substitute [their] judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority."

---

[3]     Massachusetts General Laws c. 31, § 1, provides, in pertinent part: "'Basic merit principles,' shall mean ... (e) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, age, national origin, sex, marital status, handicap, or religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens...."

See id. Thus, the role of HRD and the Civil Service Commission is one of oversight and regulation, not one of personnel decision-making in the first instance. See id.

### B.    HRD Conducts an Entry-Level Firefighter Examination and Provides a List of Eligible Candidates to Municipalities for Hiring

Municipal firefighters are hired and employed by municipalities, and hold "civil service position[s]" in that the firefighter position is subject to the requirements of the civil service law and rules in a city or town which has accepted the civil service law. See M.G.L. c. 31, §§ 1, 53-55. HRD does not hire, consider job applications, interview, train, assign, supervise, promote, discipline, fire, pay, or provide fringe benefits, worker compensation insurance or ERISA benefits for, municipal firefighters. McNeely Aff. (attached hereto as Exhibit A), ¶¶ 7-13.

Original appointments to the firefighter position must be made "after certification from an eligible list established as the result of a competitive examination." M.G.L. c. 31, § 6. HRD prepares, administers, and scores the entrance-level firefighter examination every two years. M.G.L. c. 31, §§ 5, 25; McNeely Aff., ¶ 2. Based on the examination results, HRD must establish eligible lists of persons who have passed the exam, with names arranged "in the order of their marks on the examination," M.G.L. c. 31, § 25, except that persons with certain statutory preferences are placed at the top of the list so long as they have passed the exam, see M.G.L. c. 31, §§ 25, 26, 40, 58.[4] The examination marks are presented on eligible lists in whole numbers. Personnel Administrator Rule ("PAR") No. 07(4) (a copy of the PAR Rules is

---

[4]    None of the statutory preferences involve race or ethnicity, and none of them are challenged in this proceeding. See Complaint; M.G.L. c. 31, §§ 25, 26, 40, 58; A Certification Handbook: Entry Level Fire Fighter Appointments Subject to Civil Service [hereinafter, HRD Certification Handbook] at 2-3 ("Certification Order") (a copy of this HRD publication is attached hereto as Exhibit C); see also Quinn v. City of Boston, 325 F.3d 18, 25 (1st Cir. 2003); Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256 (1979).

4

attached hereto as Exhibit B).  The eligible list is valid for two years.  <u>See</u> M.G.L. c. 31, §§ 6, 25.

When an appointing authority wishes to hire firefighters, it submits a requisition to HRD.

M.G.L. c. 31, § 6.  HRD then certifies from the eligible list "sufficient names of persons for

consideration of their qualifications for appointment by the appointing authority."  <u>Id.</u>; <u>see also</u>

M.G.L. c. 31, § 27; PAR.08(1).  Specifically, where the number of firefighters the appointing

authority wishes to hire is <u>n</u>, it may appoint only from among the first 2n +1 persons named in

the certification and willing to accept appointment.  <u>See</u> PAR.09(1).[5]

Appointing authorities decide which candidates on the certified list they wish to hire.

<u>See</u> M.G.L. c. 31, § 27; PAR.09(1).  In deciding whom to hire, appointing authorities typically

interview candidates, consider their education and experience, administer drug tests, and conduct

criminal- and driving-history investigations.  <u>See</u> PAR.08(3); <u>HRD Certification Handbook</u> at 3-

4 ("Background Investigations, Reference Checking and Interviews"), at 5 ("Selection Reasons

and Removal"), and at Appendix B ("Selection, By-pass and Removal Guidelines").  The

appointing authority also may request that HRD strike from the certified list any person whose

appointment "would be detrimental to the public interest."  <u>See</u> PAR.09(2).

If the appointing authority bypasses a candidate -- that is, selects a person whose name

appears lower on a certified list than a person whose name appears higher and is not appointed,

<u>see</u> PAR.02 -- the appointing authority must submit to HRD either a reason for selecting the

lower-ranked candidate or a reason for bypassing the higher-ranked candidate.  <u>See</u> M.G.L.

c. 31, § 27; PAR.08(3).  HRD, as one of the agencies overseeing the civil service system, then

---

[5]     Applicants must show their willingness to accept appointment by appearing
        before the appointing authority to sign the certified list.  <u>See</u> M.G.L. c. 31, § 25.
        Applicants who fail to sign the certified list cannot be considered for
        appointment.  <u>See</u> <u>id.</u>

"review[s]" the reasons submitted and indicates its approval or disapproval to the appointing authority.  See PAR.08(3); see also M.G.L. c. 31, § 27.  Such review is limited, as it is not within HRD's authority to "substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority."  See Town of Falmouth, 61 Mass. App. Ct. at 800, 814 N.E.2d at 739.  Any bypassed individual aggrieved by an approved bypass may appeal to the Civil Service Commission.  See M.G.L c. 31, § 2; PAR.08(3).  Any appointing authority aggrieved by HRD's disapproval of a bypass may request a hearing before HRD and, if necessary, may appeal the disapproval to the Civil Service Commission.  See id.

After firefighters have been hired, HRD's primary role is to conduct promotional examinations and to review some long-term leave requests and post-leave terminations; it also performs a few other minor functions.  See McNeely Aff., ¶ 12; M.G.L. c. 31, §§ 37-39, 41, 59.  Disputes between firefighters and their municipal employers are adjudicated by the Civil Service Commission, not by HRD.  See, e.g., M.G.L. c. 31, §§ 2, 6C, 24, 35, 41-43.

### C.    Municipalities May Hire Firefighters Without Following Strict Rank Ordering According to Test Scores

The civil service law provides two alternative optional methods, called "special certifications," by which appointing authorities may hire firefighters without following strict rank ordering according to test scores.  See PAR.08(4), PAR.10; McNeely Aff., ¶¶ 14, 15.  Each method can only be initiated by the appointing authority, not by HRD.  See id.

First, an appointing authority may request the special certification of a separate list of eligible candidates who have special qualifications, for example, eligible candidates who speak a foreign language commonly used in the community served by the fire department, or who are certified as paramedics or EMTs.  See PAR.08(4); McNeely Aff., ¶ 15.  HRD approves the

6

special-certification requests based on objective criteria (e.g., the percentage of the community's population that speaks the foreign language, or the number of ambulances operated by the fire department).  See McNeely Aff., ¶ 15; Selective Certifications: Descriptions and Questionnaires (a copy of this HRD publication is attached hereto as Exhibit D).  The City of Lynn has from time to time requested special certifications of EMTs/paramedics, but had not requested a special certification of candidates with foreign language abilities until May 11, 2005. McNeely Aff., ¶ 15.  On that date, HRD received from the City of Lynn a request for a special certification for six Spanish-speaking firefighters.  McNeely Aff., ¶ 15.  HRD issued such a certification on May 19, 2005.  McNeely Aff., ¶ 15.

Second, an appointing authority may opt to request a special certification based on race, color, national origin or sex in order to remedy the effects of past discrimination pursuant to an affirmative action program.  See PAR.10; McNeely Aff., ¶ 14.  The City of Lynn has not requested a special certification of this kind.  McNeely Aff., ¶ 14.

## II.    THE PLAINTIFFS

The plaintiffs are four African-American men who live in the City of Lynn.  Complaint, ¶ 3.  They wish to be hired by the City as firefighters.  Complaint, ¶ 14.

Plaintiff Jacob Bradley took and passed the firefighter entrance examination administered by HRD in 2002 and 2004.  Plaintiff Noah Bradley passed the 2002 exam and failed the 2004 exam.  Plaintiff Keith Ridley took and passed the exam in 1998, 2000, and 2004.  Plaintiff Jared Thomas took and passed the exam in 2004.  (Complaint, ¶¶ 14-18; Answer of the State Defendants ("Answer"), ¶¶ 14-18.)

In November, 2002, HRD established an eligibility list based on the results of the 2002 firefighter examination.  The list remained in effect through and including October 31, 2004.

The City hired seven entry-level firefighters from a standard certified list and six entry-level firefighter/paramedics from a special-certification list. None of the 13 firefighters so hired was African-American or Hispanic. Jacob Bradley and Noah Bradley were on the eligible list but were not reached for consideration for hiring by the City. (Complaint, ¶ 16; Answer, ¶ 16.)

In November, 2004, HRD established an eligibility list based on the results of the 2004 firefighter examination. Complaint, ¶ 17; Answer, ¶ 17. The list will remain in effect through and including October 31, 2006. McNeely Aff., ¶ 16. Plaintiffs Jacob Bradley, Keith Ridley, and Jared Thomas are on the eligibility list. McNeely Aff., ¶ 16; Complaint, ¶ 17; Answer, ¶ 17. The City of Lynn has requisitioned a certified eligibility list but has not yet not informed HRD of its hiring choices. McNeely Aff., ¶ 16. The City has asked HRD for an extension of time for completing the selection process. McNeely Aff., ¶ 16; see HRD Certification Handbook at 1.

HRD has never been plaintiffs' "employer."[6] Plaintiffs have not worked for HRD, or applied for employment by HRD, or been paid wages or salary by HRD. McNeely Aff., ¶ 6. HRD does not hire, or even consider the applications for employment of, candidates for appointment as municipal firefighters. It does not train, promote, discipline, transfer, or discharge them. It does not pay firefighters, provide worker compensation insurance or ERISA benefits to them, or engage in collective bargaining with their unions. HRD does not set firefighters' work schedules or assignments, and does not supervise their job performance. (McNeely Aff., ¶¶ 7-13.)

---

[6]     Black's Law Dictionary defines "employer" as "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." Id. at 544 (7th ed. 1999).

## ARGUMENT

I.  **PLAINTIFFS CANNOT MAINTAIN A TITLE VII CLAIM AGAINST THE STATE DEFENDANTS BECAUSE PLAINTIFFS HAVE NO EMPLOYMENT RELATIONSHIP WITH HRD**

    A.  **Title VII Coverage Is Limited to Discrimination Occurring Within an Employment Relationship**

Count I of the complaint alleges that the manner in which HRD places firefighter candidates on eligibility lists in the order of candidates' examination scores results in an unlawful disparate impact on minority candidates in violation of Title VII.  Title VII makes it "an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual,[7] or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees[8] or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a).[9]

---

[7]     Title VII uses the term "individual" so that the statute's protections can be invoked by persons who are not present employees of the allegedly discriminatory employer -- that is, by past or potential employees of the employer.  See Larson, Employment Discrimination § 4.01[1] (2d ed. 2001) (citing Hackett v. McGuire Bros., Inc., 445 F.2d 442 (3rd Cir. 1971)).

[8]     Title VII defines "employee" as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  This definition "'is completely circular and explains nothing.'"  Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992)).

[9]     Moreover, "[a]n unlawful employment practice based on disparate impact is established under [Title VII] only if . . . a complaining party demonstrates that respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . and the respondent fails to demonstrate that the

9

Prohibited discrimination under Title VII must occur within an employment relationship -- whether current, potential, or past -- between the entity that allegedly discriminates and the individual who claims to be the victim of that discrimination.  See Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004) (television-show host was independent contractor, not employee, and thus was not covered by Title VII); Serapion v. Martinez, 119 F.3d 982, 987-89 (1st Cir. 1997) (law firm partner was proprietor, not employee, and thus was not protected by Title VII); United States v. City of New York, 359 F.3d 83, 91-92 (2nd Cir. 2004) (participants in mandatory welfare work program sufficiently alleged they were employees within the meaning of Title VII); see generally Larson, Employment Discrimination Chapter 4 (2d ed. 2001).  "Absent a covered employment relationship, . . . liability does not attach."  Camacho v. Puerto Rico Ports Authority, 369 F.3d 570, 573 (1st Cir. 2004).[10]  In the Camacho case, the ports authority revoked a harbor pilot's license when he reached age 70, the maximum age allowed by the licensing statute.  Id. at 572.  The court dismissed the plaintiff's claim under the Age Discrimination in Employment Act (ADEA) because he had no employment relationship with the ports authority.  Id. at 573-79.

---

challenged practice is job related for the position in question and consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i); see also 42 U.S.C. § 2000e-2(h); Griggs v. Duke Power, 401 U.S. 424, 430-36 (1971).

[10]    Camacho involved a claim under the Age Discrimination in Employment Act, not Title VII.  369 F.3d at 571-72.  However, as Camacho reaffirmed, Title VII, the ADEA, and certain other federal employment statutes have such a similar employment-relationship requirement "that precedents interpreting one such statute [are] instructive in decisions involving [the other]."  See id. at 578 n.5; see also Alberty-Velez (citing ERISA, Americans with Disabilities Act, and ADEA cases in course of holding that there was no employment relationship under Title VII); Carparts Distribution Center, Inc. v. Automotive Wholesaler's Assoc. of New England, 37 F.3d 12, 16 (1st Cir. 1994) (noting that definition of "employer" in the ADA is materially identical to that in Title VII).

The First Circuit has aligned itself with the "long line of cases" holding that under Title

VII and other federal anti-discrimination statutes requiring an employment relationship, "state

licensing and regulatory agencies generally are not regarded as employers vis-a-vis those whom

they license and regulate." See Camacho, 369 F.3d at 578 (collecting cases); see, e.g., Fields v.

Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1019 (5th Cir. 1990) (per curiam) (dismissing Title

VII claim against state agency that administered compulsory teacher certification examination

because plaintiff teachers were not in an employment relationship with the state agency); United

States v. Bd. of Educ. for Sch. Dist. of Phila., 911 F.2d 882, 891 (3rd Cir. 1990) (holding that

Commonwealth of Pennsylvania was not subject to the strictures of Title VII since its control

over teachers' employment was exercised "in its regulatory capacity rather than in the course of

a customary employer-employee relationship"); United States v. New York State Dep't of Motor

Vehicles, 82 F. Supp. 2d 42, 50 (E.D.N.Y. 2000) (dismissing Americans with Disabilities Act

claim against state agencies that promulgated rules relating to the hiring of school-bus drivers

because "a governmental agency exercising its police power cannot be an employer under the

ADA").[11]

### B.    No Employment Relationship Exists Between Plaintiffs and the Human Resources Division

Here, plaintiffs' potential employer is the City of Lynn, which actually hires, fires, pays,

and supervises firefighters, not HRD, which merely exercises its regulatory authority over the

---

[11]    See also EEOC v. Illinois, 69 F.3d 167, 171-72 (7th Cir. 1995); George v. New Jersey Board of Veterinary Medical Examiners, 635 F. Supp. 953, 956 (D. N.J. 1985), aff'd 794 F.2d 113, 114 (3rd Cir. 1986); Haddock v. Board of Dental Examiners, 777 F.2d 462, 463-64 (9th Cir. 1985); Darks v. City of Cincinnati, 745 F.2d 1040 (6th Cir. 1984); Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir. 1979) (per curiam); National Org. for Women v. Waterfront Comm'n of New York, 468 F. Supp. 317, 320 (S.D.N.Y. 1979).

civil service system pursuant to the Commonwealth's police power.  See Camacho, 369 F.3d at

578.  Accordingly, plaintiffs' Title VII claim against the State defendants should be dismissed.

### 1.    The Direct Employment Relationship in this Case Is Between Plaintiffs and the City of Lynn

As an initial matter, it should be obvious that there is no direct employment relationship

between plaintiffs and HRD.  See Camacho, 369 F.3d at 574.  Plaintiffs' potential employer is

the City of Lynn.  Of course, HRD is a Title VII employer of its own employees.[12]  See 42

U.S.C. § 2000-e(a)-(b) (defining "employer"); Dothard v. Rawlinson, 433 U.S. 321, 331 n.14

(1977).  But that fact does not make HRD the "employer" of firefighters who are hired,

compensated, supervised, and fired by the cities and towns of the Commonwealth.  See

Camacho, 369 F.3d at 574; see also EEOC v. Illinois, 69 F.3d 167, 169 (7th Cir. 1995) (finding

it "implausible" that "laws which forbid employers to discriminate create a blanket liability to

employees of other employers") (emphasis in original).

### 2.    The Human Resources Division Is Not a De Facto Employer of Firefighters

This case presents what the First Circuit has called "an unusual twist":  an attempt by

plaintiffs to maintain a Title VII cause of action based on the alleged existence of an indirect

employment relationship.  See Camacho, 369 F.3d at 574.  Plaintiffs' attempt fails.  See id. at

574-78.

---

[12]    HRD currently employs 112 full-time employees in a variety of professional, clerical, and other office-based job positions, none of which involve firefighting or the training and supervision of firefighters. See McNeely Aff., ¶ 5.

a.    **Principles of Common Law Agency, Federalism
and State Sovereignty Determine Whether a State
Regulatory Agency Is a De Facto Employer**

Even where a defendant clearly is not the direct employer of an aggrieved individual,

there may be liability under Title VII if the defendant "so extensively controls an aggrieved

party's employment relationship as to become that party's de facto employer."  Camacho, 369

F.3d at 574.  To determine if an employment relationship exists for purposes of Title VII, the

First Circuit has followed the lead of the Supreme Court by applying "common law agency

principles simpliciter."  See Camacho, 369 F.3d at 574 & n.3 (citing Nationwide Mutual Ins. Co.

v. Darden, 503 U.S. 318 (1992)); see also Alberty-Velez, 361 F.3d at 6-7.[13]  In Darden, the

Supreme Court explicitly rejected the idea that "employee" should be liberally construed to

advance the remedial purposes of ERISA.  See 503 U.S. at 324-25.  Rather, the Court hewed to

the confines of common-law agency principles because, where a statute does not define

"employee," Congress will be deemed to have intended the traditional relationship of master and

servant.  See id. at 322-23.[14]

The "baseline" of the common-law agency test is "'the hiring party's right to control the

manner and means by which the product is accomplished.'"  Camacho, 369 F.3d at 574 (quoting

Darden, 503 U.S. at 323).  Among the factors to consider are:

---

[13]    The First Circuit has rejected the notion that a court must consider the "economic
realities" of a particular relationship because economic reality is not part of the
common-law test.  See Camacho, 369 F.3d at 574; Alberty-Velez, 361 F.3d at 10.

[14]    The First Circuit's reliance on Darden, supra, an ERISA case, to hold that the
common-law agency test applies to determine whether an employment
relationship exists under Title VII (Alberty-Velez, supra) and under the ADEA
(Camacho, supra) again illustrates why it is appropriate for this memorandum to
cite non-Title VII cases.  See footnote 10, supra.

13

> the skill required; the source of the instrumentalities and tools; the location of the
> work; the duration of the relationship between the parties; whether the hiring
> party has the right to assign additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to work; the method of payment;
> the hired party's role in hiring and paying assistants; whether the work is part of
> the regular business of the hiring party; whether the hiring party is in business;
> the provision of employee benefits; and the tax treatment of the hired party.

Camacho, 369 F.3d at 574 (quoting Darden, 503 U.S. at 323-24). No one factor is decisive, and

not all of the factors will be relevant to a particular situation. See id. at 574, 577; Alberty-Velez,

361 F.3d at 7 & n.7. Plainly, HRD's role in administering the Massachusetts civil service system

does not bring any of these factors into play. There is no employment relationship in this case.

Where the alleged de facto employer is a state agency, as opposed to a private entity,

considerations of state sovereignty and federalism also come into play. A state agency like the

Human Resources Division regulates the hiring of firefighters, not in a proprietary capacity but

in the exercise of the police power of the Commonwealth. "Congress should make its intention

clear and manifest if it intends to pre-empt the historic powers of the States." Will v. Michigan

Dep't of State Police, 491 U.S. 58, 65 (1989) (internal quotation marks omitted). As many

courts have noted, there is no "clear and manifest" intention in Title VII to hold state regulatory

and licensing agencies liable to persons affected by their regulations. See Camacho, 369 F.3d at

578 (collecting cases); New York State Dep't of Motor Vehicles, 82 F. Supp. 2d at 50 (collecting

cases); see also George v. New Jersey Board of Veterinary Medical Examiners, 635 F. Supp.

953, 956 (D. N.J. 1985), aff'd 794 F.2d 113, 114 (3rd Cir. 1986) (holding that a state agency that

had denied plaintiff's application to practice veterinary medicine could not be sued as an

employer under Title VII and distinguishing Title VII cases where the alleged employer was a

private entity that did not exercise the police power of the state).

14

In enacting Title VII and similar employment statutes, Congress of course knew that there are myriad state agencies -- from civil service commissions to boards of registration -- whose regulations affect individuals' employment prospects to varying degrees.  See Lavender-Cabellero v. Dep't of Consumer Affairs, 458 F. Supp. 213, 215 (S.D.N.Y. 1978).  Yet Congress chose to predicate liability on a common-law employment relationship.  See Alberty-Velez, 361 F.3d at 6; United States v. City of New York, 359 F.3d at 91-92; Larson, Employment Discrimination, Chapter 4.  Moreover, Congress has  explicitly extended the reach of Title VII in several areas while remaining conspicuously silent on extending it to cover state licensing and regulatory agencies.  See New York State Dep't of Motor Vehicles, 82 F. Supp. 2d at 50.  As one example, Title VII liability expressly extends to employment agencies and labor organizations. See 42 U.S.C. § 2000e-2(b), (c).  As another example, in 1972, Congress amended the statute to include state and local governmental employers as covered employers of their own employees. See 42 U.S.C. § 2000e-(a), (b).

The First Circuit has summarized:

> To hold [that a state port authority was a de facto employer of harbor pilots] would require us to rewrite the ADEA despite the utter absence of any hint that Congress intended to extend liability to state agencies that merely exercise licensing and regulatory authority pursuant to a state's police power.  We refuse to start down so slippery a slope.

Camacho, 369 F.3d at 578.  Under these standards, HRD's statutory role in preparing civil service examinations and eligibility lists does not make it the de facto employer of municipal firefighter candidates, whom HRD neither hires, fires, pays, nor supervises.  See Camacho, 369 F.3d at 576-78.[15]

---

[15]    A Title VII case such as Lewis v. City of Chicago, 2005 WL 693618 (N.D. Ill. Mar. 22, 2005) (No. 98-C-5596), is inapplicable here because in that case no state

        **b.**      **HRD Does Not 'So Extensively Control' the
Employment Relationship Between Firefighter
Candidates and Municipalities as to Make HRD
the De Facto Employer**

Applying the First Circuit's <u>Camacho</u> test, HRD does not "so extensively control[]" the employment relationship between firefighter candidates and the Commonwealth's municipalities as to become the candidates' de facto employer.  <u>See</u> <u>Camacho</u>, 369 F.3d at 574.  HRD implements the Commonwealth's civil service laws under the strict limits of its statute.  <u>See</u> M.G.L. c. 31, §§ 3, 5-6, 16, 18, 25-27, 58-61A.  The Massachusetts Legislature created the civil service system to promote the Commonwealth's public policy against political considerations, favoritism, and bias in governmental employment decisions.  <u>See</u> <u>Town of Falmouth</u>, 61 Mass. App. Ct. at 800, 814 N.E.2d at 739.  The role of HRD and the Civil Service Commission is one of oversight and regulation, not one of personnel decision-making in the first instance.  <u>See</u> <u>id.</u>; M.G.L. c. 31, §§ 1, <u>et</u> <u>seq.</u>

The lack of employment relationship between municipal firefighter candidates and HRD follows readily from <u>Camacho</u>, where the First Circuit, reversing the district court, held that the Puerto Rico ports authority was not the de facto employer of harbor pilots.  <u>See</u> 369 F.3d at 576-79.  The ports authority's regulatory role vis-a-vis harbor pilots, the First Circuit said, falls "far short of evincing the degree of control and supervision traditionally considered sufficient to create an employer-employee relationship."  <u>Id.</u> at 576.  The ports authority "simply does not act like an employer vis-a-vis the harbor pilots," inasmuch as the authority does not pay them or

---

            agency or state examination requirement was involved and the sole defendant was the city, the actual employer of firefighters, comparable to the City of Lynn in this case.  Also not relevant are cases against state agencies under the Equal Protection Clause because such a claim does not require an employment relationship.  <u>See</u>, <u>e.g.</u>, <u>Cotter v. City of Boston</u>, 323 F.3d 160 (1st Cir. 2003).

withhold taxes from their earnings, affords them no fringe benefits, furnishes them no gear, carries no workers' compensation insurance referable to them, and is not engaged in the selling of pilotage services. See id. at 577. Likewise, HRD does not do for firefighters any of those things that, according to Camacho, make an entity "act like an employer." See id.; McNeely Aff., ¶¶ 7-13.

This case is a fortiori of Camacho, where the ports authority exercised exclusive control over entry into the profession of harbor pilot through its licensing power. See 369 F.3d at 576-79. Here, by statute, HRD regulates some aspects of the initial hiring process, including the administration of the examination that plaintiffs challenge, but does not exercise exclusive control over such hiring. The cities and towns of the Commonwealth conduct their own interviews, background investigations, and drug tests of firefighter candidates, and may choose anyone on the certified list, provided they give a bona fide reason for bypassing a higher-ranked individual or selecting a lower-ranked individual. M.G.L. c. 31, § 27; PAR.08(3); PAR.09(1)-(2).[16] Furthermore, cities and towns may opt to increase their minority hiring, independent of the rank-ordered eligibility lists, by asking HRD for a "selective certification" list of foreign-language speakers under PAR.08(4) or by invoking the affirmative action procedures of PAR.10. See McNeely Aff., ¶¶ 14-15; Facts and State-law Framework, Part I.C, supra.

In Camacho, furthermore, the ports authority had a relatively high level of involvement

---

[16]    The fact that satisfactory performance on a state-administered examination is a condition precedent to employment in a particular field does not make the state agency an employer under Title VII. See Fields v. Hallsville Indep. Sch. Dist., 906 F.2d 1017, 1019 (5th Cir. 1990) (per curiam) (state's compulsory teacher certification examination); Haddock v. Board of Dental Examiners, 777 F.2d 462, 463-64 (9th Cir. 1985) (state's licensing examination for dentists); Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir. 1979) (per curiam) (state bar examination).

in the ongoing work life of harbor pilots, through, for example, its regulations governing their conduct and its establishment of an ERISA plan for their benefit. See 369 F.3d at 576. The plaintiff, Camacho, had been licensed and employed as a harbor pilot until the ports authority ended his career by revoking his license when he reached age 70. See id. at 572. Nevertheless, the First Circuit held that the ports authority was not a de facto employer of Camacho. See id. at 577-78.

By contrast, HRD has no comparable post-employment involvement in the training, supervision, discipline, or compensation of firefighters and no power to cause their termination. After firefighters have been hired, HRD's primary role is to conduct promotional examinations and to review some long-term leave requests and post-leave terminations; it also performs a few other minor functions. See McNeely Aff. ¶ 12; M.G.L. c. 31, §§ 37-39, 41, 59.

In sum, the First Circuit has recognized that, in light of common-law agency principles and federalism concerns, the statutory power to regulate does not make a state agency an employer for purposes of the ADEA or Title VII. See Camacho, 369 F.3d at 572, 576-78; Alberty-Velez, 361 F.3d at 6-7. To hold otherwise would start the federal courts down a "slippery slope" that would make the States "employers" of any person employed by any entity (private or governmental) that must comply with state laws affecting employment prospects or working conditions. See Camacho, 369 F.3d at 578. Accordingly, Count I should be dismissed as against the State defendants.

C.    **The Existence of an Employment Relationship
      Is a Threshold Question Suitable For Disposition
      on a Motion for Judgment on the Pleadings**

Whether an employment relationship exists between the plaintiff and the charged party is a "threshold question," see Alberty-Velez, 361 F.3d at 6, suitable for disposition on a motion for

judgment on the pleadings.  See Fed. R. Civ. P. 12(c); see also Camacho, 369 F.3d at 573

(allowing a "hen's teeth rare" interlocutory appeal under 28 U.S.C. § 1292(b) to determine

whether a regulatory agency was an employer for ADEA purposes); Arbaugh v. Y & H Corp.,

380 F.3d 219, 223-25 (5th Cir. 2004) (holding that a failure to qualify as an "employer" under

Title VII deprives a district court of subject matter jurisdiction), cert. granted by Arbaugh v.

Y & H Corp., -- S. Ct. --, 2005 WL 80674 (No. 04-944).  A court may decide the employment-

relationship issue as a matter of law where, as here, the undisputed facts point so favorably in

one direction that a factfinder could not reasonably reach the opposite conclusion.  Camacho,

369 F.3d at 537 (citing Alberty-Velez, 361 F.3d at 7).

A decision that there is no employment relationship between HRD and plaintiffs will

significantly affect the scope of this lawsuit.  See Camacho v. Puerto Rico Ports Authority, 267

F. Supp. 2d 174, 178 (D. P.R. 2003) (certifying interlocutory appeal on the employment-

relationship question for that reason).  If these plaintiffs are permitted to maintain a Title VII

claim against the State defendants, they will proceed on the theory that the entrance-level

firefighter examination, as utilized, has a disparate impact on minority candidates.  See 42

U.S.C. §§ 2000e-2(h), 2000e-2(k)(1)(A)(i); Griggs, 401 U.S. at 430-36.  Defending such a claim

typically requires the defendant to hire experts to conduct costly studies to show that the test

does not produce a disparate impact, or, if it does, that it is employment related and consistent

with business necessity.  See id.; Larson, Employment Discrimination § 27.01. The plaintiffs in

this action also purport to represent a class of minority applicants, both African American and

Hispanic (Complaint, ¶¶ 1, 4, 13), thereby exponentially increasing the potential complexity and

cost of pretrial discovery and expert preparation, and of trial.

On the other hand, if the Title VII claim is dismissed as against the State defendants, the

19

issues in this case will narrow significantly. The court may, on the basis of this memorandum,

dismiss all of plaintiffs' other claims against the State defendants, leaving the City of Lynn as

the sole defendant. See Argument, Parts II-III. Even if the State defendants remain in the case,

without the Title VII claim the scope of discovery will be narrowed because plaintiffs' claims

under the Equal Protection Clause and 42 U.S.C. § 1981 require a showing that HRD has

intentionally discriminated against plaintiffs on the basis of their race. See Argument, Part III.

Accordingly, an early decision on the employment-relationship question is appropriate.[17]

## II.    PLAINTIFFS' CLAIM UNDER THE BEECHER DECREE SHOULD BE DISMISSED FOR FAILURE TO PROVIDE FAIR NOTICE

Count VI alleges violations of the consent decree entered in the case of Boston Chapter,

NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974). This claim should be dismissed for

failure to give the State defendants "'fair notice'" of the grounds on which the claim rests. See

Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41,

47 (1957)). At the very least, plaintiffs should be required to provide a more definite statement

of this claim. See Fed. R. Civ. P. 7(a); Educadores Puertorriquenos en Accion v. Hernandez,

367 F.3d 61, 67 (1st Cir. 2004) (trial court may grant Rule 7(a) request in civil rights case as

exercise of its "broad discretion" to manage civil rights claims in equitable manner).

"[N]otice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger," and a

---

[17]    The only material outside the pleadings attached to this memorandum that relates to plaintiffs' Title VII claim is the McNeely Affidavit, HRD's PAR rules, and two publications of HRD. The Court may rule on the motion without consideration of the affidavit, or may consider the affidavit and thus convert the motion into one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(c); McCord v. Horace Mann Ins. Co., 390 F.3d 138, 141-42 (1st Cir. 2004); Gulf Coast Bank & Trust Co. v. Reder, 355 U.S. 35, 37-39 (1st Cir. 2004).

20

civil rights complaint "should at least set forth minimal facts as to who did what to whom, when, where and why." Educadores, 367 F.3d at 67-68 (internal quotation marks omitted). That basic standard has not been met here in Count VI. The Beecher decree, entered in 1974, established race-conscious protocols for firefighter hiring for those cities and towns where the percentage of entry-level minority firefighters is not at least roughly equal to the percentage of minorities in the community. See Quinn v. City of Boston, 325 F.3d 18, 23-25 (1st Cir. 2003). As a judicial decree affording race-based relief, "any interpretation of the decree or any application of it in practice must survive strict scrutiny," id. at 28, and "the decree was not meant to operate in perpetuity," id. at 24.

The complaint itself alleges (¶¶ 19-20) that the City of Lynn was subject to the Beecher consent decree until about 1986, when it was relieved from compliance, and then leaps without explanation to the bald assertion (Count VI, "Enforcement and/or Clarification of Consent Decree") that "The actions of the defendants as set forth above violate the consent decree ...." See Aulson v. Blanchard, 83 F.3d 1, 13 (1st Cir. 1996) (complaint does not meet standards of Rule 12(b)(6) if it rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like"). Without a further allegation of how the Beecher decree -- as plaintiffs interpret it -- is now being violated, the State defendants cannot intelligently evaluate or defend the claim. Thus, Count VI should be dismissed, or, in the alternative, plaintiffs should be ordered to provide a more definite statement of the grounds on which it rests. A more-definite statement should include, for example, an explanation of how plaintiffs have standing to enforce the Beecher decree; why the decree is still in force as to the State defendants and how the State defendants have violated it; and why it is appropriate to seek the decree's enforcement in a separate action rather than by seeking to reopen the Beecher case itself.

21

### III.    PLAINTIFFS' OTHER CLAIMS SHOULD ALSO BE DISMISSED

Count II of the complaint alleges violations of the Equal Protection Clause, and Count III alleges violations of 42 U.S.C. § 1981.  These claims should be dismissed because the complaint is devoid of any allegation, or even a suggestion, that HRD has acted with discriminatory intent. See General Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982); Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979) (citing Washington v. Davis, 426 U.S. 229, 139-41 (1976)); see also Anderson ex rel. Dowd v. City of Boston, 375 F.3d 71, 82 (1st Cir. 2004); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Nunnally v. Dep't of Public Welfare, 1989 WL 47369 (D. Mass. 1989) (Saris, D.J.).[18]

In Count IV of the complaint, plaintiffs allege that the defendants have violated Mass. G.L. c. 151B, § 4; and in Count V, plaintiffs allege that the defendants have violated Mass. G.L. c. 93, § 103, and the equal protection clause of the Massachusetts Declaration of Rights.  These claims should be dismissed because the Eleventh Amendment to the United States Constitution bars federal courts from instructing state officials on how to conform their conduct to state law. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984); see also O'Brien v. Massachusetts Bay Transportation Authority, 162 F.3d 40, 44 (1st Cir. 1998); Mills v. Maine, 118 F.3d 37, 41 (1st Cir. 1997); Tolman v. Finneran, 171 F. Supp.2d 31, 38 (D. Mass. 2001) (Saris, D.J.).

Plaintiffs' counsel have advised the State defendants' counsel that the complaint will be

---

[18]    Another reason for dismissing plaintiffs' count under 42 U.S.C. § 1981, which forbids racial discrimination in the making and enforcing of contracts, is that plaintiffs and HRD are not in a contractual relationship.  See Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 13-15 (1st Cir. 1999); Kyles v. J.K. Guardian Sec. Svcs., Inc., 222 F.3d 289, 301-03 (7th Cir. 2000).

amended to delete Counts II - V as against the State defendants. If such an amendment is not

forthcoming, the State defendants reserve the right to expand their arguments as to these claims

in a supplemental memorandum of law.

## CONCLUSION

For the reasons stated, the State defendants respectfully request that the Court enter

judgment for the State defendants on all counts of the complaint.

Respectfully submitted,

COMMONWEALTH OF
MASSACHUSETTS, HUMAN
RESOURCES DIVISION and RUTH
BRAMSON, in her capacity as Personnel
Administrator of the Human Resources
Division,

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Victoria S. Cole
Ronald L. Kehoe, BBO # 264260
Victoria S. Cole, BBO # 654996
Assistant Attorneys General
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 727-2200, ext. 2619 (Kehoe)
                    ext. 2083 (Cole)

Dated: June 6, 2005

### Certificate of Service
I hereby certify that on June 6, 2005, I served this memorandum of law, with
accompanying Exhibits A-D, on counsel for all other parties by filing it electronically and,
where necessary, by mailing it by first-class U.S. mail, postage prepaid.

/s/ Victoria S. Cole
Victoria S. Cole

23