UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                        )
JACOB BRADLEY, NOAH BRADLEY, KEITH    )
RIDLEY, and JARED THOMAS,                              )
individually and on behalf of a class of                     )
similarly situated individuals,                                   )
                 Plaintiffs,                                               )
                                                                        )
v.                                                                       )
                                                                        )
CITY OF LYNN; EDWARD J. CLANCY, JR.,            )
in his capacity as Mayor of the City of Lynn;          )   Civil Action No. 05-10213-PBS
the COMMONWEALTH OF MASSACHUSETTS, )
DIVISION OF HUMAN RESOURCES; and              )
RUTH BRAMSON, in her capacity as Personnel   )
Administrator of the Division of Human Resources )
of the Commonwealth of Massachusetts,              )
                 Defendants,                                             )
                                                                        )
BOSTON SOCIETY OF THE VULCANS and         )
NEW ENGLAND AREA CONFERENCE OF         )
THE NAACP,                                                      )
                 Interveners                                            )
                                                                        )
_____)


**PLAINTIFFS' OPPOSITION TO COMMONWEALTH
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**


I.      INTRODUCTION

       The Plaintiffs, Jacob Bradley, Noah Bradley, Keith Ridley, and Jared

Thomas, hereby file this opposition to the Commonwealth Defendants' Motion for

Judgment on the Pleadings or in the Alternative for Summary Judgment.  In

support of this opposition, for the reasons stated below, the Plaintiffs contend

that the Commonwealth is an employer for the purposes of the Title VII violations

alleged in Count I of the complaint. In addition, on this date, the Plaintiffs have filed their First Amended Complaint in this matter, which resolves the issues relating to Counts II through V by amending out those counts as they relate to the Commonwealth Defendants. Finally, the First Amended Complaint makes further specific allegations regarding the defendants' obligations under the <u>Beecher</u> decree and thus resolves the issues relating to Count VI of the original Complaint, now numbered as Count IV of the First Amended Complaint.

II.    <u>STATEMENT OF RELEVANT FACTS</u>

On February 2, 2005, the Plaintiffs filed a class-action complaint in the above-captioned matter against the City of Lynn and its Mayor (the City Defendants) and the Commonwealth of Massachusetts Human Resources Division (HRD) and its Administrator (the Commonwealth Defendants). On this date, the Plaintiffs filed their First Amended Complaint in this matter. The amended complaint alleges, in pertinent part, that the Commonwealth Defendants violated the Plaintiffs' constitutional and statutory rights by administering civil service entrance examinations that have a significant adverse impact on minority candidates for public safety positions and that such conduct also violates the terms of certain consent decrees regarding the hiring of municipal public safety employees that were issued and approved by this Court.

In Massachusetts, municipalities have the option of accepting the Civil Service Law, Mass. Gen. L. c. 31. If a municipality accepts Chapter 31, HRD holds much of the responsibility for hiring municipal police and firefighters. Under

Chapter 31, applicants for entry-level police and firefighter positions must take the state HRD-created civil service exam, and not one created or administered by the local municipality.  See Chapter 31 §§ 5, 16, 21, 48 and 59.  Further, after those exam scores are issued, applicants may appeal their scores to HRD, not the municipality.  See Chapter 31 §§ 22 and 23.  It is HRD, and not the municipality, that ranks the candidates in order of their exam scores, while giving certain absolute preferences to certain individuals such as veterans or the sons and daughters of deceased firefighters and police officers who died in the line of duty.  See Chapter 31 §§ 6 and 26.  See also Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003) (description of preferences).  Thus, it is as a result of an HRD exam and an HRD rank ordering that a person is even reached for hire as a municipal police officer or firefighter.  In addition, HRD sets the basic requirements for becoming a municipal police officer or firefighter, such as citizenship status and the ability to speak English.  See Chapter 31 §§ 5(f), 21; see generally HRD website at http://www.mass.gov/hrd (describing HRD's involvement in the hiring function for municipal public safety officers).  Further, the municipality cannot bypass the next ranked candidate for hire without good and sufficient reason.  See Chapter 31 § 27.

In addition, before an applicant can become a firefighter, he or she must enter the Massachusetts Firefighting Academy and meet the passing requirements set by the state.  See Chapter 6 § 165.  For both police and firefighters, it is HRD that imposes and designs the physical agility test that the applicant must take and sets the parameters and passing requirements for that

3

test.  See Chapter 31 § 61A.  HRD also sets the medical standards for entry-level positions in civil service communities.  Id.

In summary, HRD has near-complete control over the hiring process for municipal police and firefighters.  It devises and grades the initial exam, determines the statutory preferences, determines the rank order on the civil service list, determines the medical standards and physical-agility test they must pass, and determines their fitness to perform their duties.  It also runs the state firefighting academy and determines who may graduate and become a firefighter.  This is, indeed, extraordinary control over civil service communities' hiring practices.

Further, the Commonwealth and HRD control many other aspects of the employment relationship of municipal police officers and firefighters.  HRD law and rules govern promotions and promotional exams, layoffs and recalls, leaves of absences, and even discipline.  See Chapter 31 §§ 7-15, 41.  HRD law also requires that civil service communities establish "wellness programs" for police and firefighters, sets forth the requirements for such programs, and requires the Commonwealth to reimburse some of the associated costs to municipalities.  See Chapter 31 § 61B.  Thus, HRD exercises extraordinary control over the employment relationship of municipal police and firefighters in civil service communities.

With regard to the allegations in this matter, both in the City of Lynn and elsewhere in the Commonwealth of Massachusetts, the HRD entry-level firefighter and police officer examinations have a shockingly disparate impact on

4

minority candidates, in that, statistically, minority candidates fare far worse on the examinations than do Caucasian candidates.  [First Amended Complaint ¶¶ 13-14.]  The impact is so significant that in many communities, few, if any, minorities get hired based upon a rank ordering of their scores on the civil service examination.  Id.

III.   ARGUMENT

   A.   The HRD Is Liable as an "Employer" Under Title VII

HRD contends that it cannot be held liable under Title VII because it is not the plaintiffs' "employer."  However, as set forth below, because HRD exercises pervasive control over the hiring process for municipal police and firefighters in civil service communities in Massachusetts, it is subject to claims for employment discrimination under Title VII when it takes action that is violative of the statute.

Defendants' contention that HRD cannot be considered an "employer" for purposes of liability under Title VII is hard to fathom in light of clear First Circuit precedent on this issue.  In Carparts Distribution Center, Inc. v. Automotive Wholesaler's Assoc. of New England, Inc., 37 F.3d 12 (1st Cir. 1994) (Carparts), the court held that defendants should be considered "employers" under federal antidiscrimination statutes[1] if (1) "they exercised control over an important aspect of [plaintiff's] employment," (2) they "are 'agents' of a 'covered entity,' who act on behalf of the entity in the matter of … employee health benefits" or other benefits and conditions of employment, or (3) "the defendant is one who significantly

---

[1] Though Carparts is an ADA case, the court noted that "[t]here is no significant difference between the definition of the term 'employer' in the [ADA and Title VII]," and the Carparts court analyzed the case using Title VII principles.  37 F.3d at 16.

5

affects access of any individual to employment opportunities." Id. at 16-18; see also Baranek v. Kelly, 630 F.Supp. 1107, 1113 (D. Mass. 1986) (holding that agency with "the 'means and authority' to control discriminatory employment practices" of regional employers was an "employer" under Title VII because it "exercise[d] significant control over an employment situation"); Barone v. Hackett, 602 F.Supp. 481, 483 (D.R.I. 1984) (director of State agency that administered disability benefits for State employees was liable under Title VII even though agency did not employ plaintiffs, stating, "Title VII liability is not limited to the entity which issues pay checks to the employee"); Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980) (district court properly considered whether the defendant parent corporation exercised sufficient control over its subsidiary to be liable under Title VII for the subsidiary's alleged discriminatory hiring practices); Curran v. Portland Superintending School Committee, 435 F.Supp. 1063, 1072-73 (D. Me. 1977) (although city was not permitted by its charter to engage in actual administration or management of school system, it was liable as an "employer" under Title VII because it limited the school committee's hiring authority by its role in appropriating funds and setting salaries for the public school system, and "[i]n such circumstances, it cannot seriously be doubted that the City is sufficiently involved in, and, in fact, necessary to, the total employment process that it must be considered plaintiff's employer for purposes of jurisdiction under Title VII").

Given that HRD performs so many functions related to the hiring and employment conditions of police officers and firefighters in civil service

6

municipalities, it should be viewed as an "employer" in this case for Title VII purposes under all three of the standards set forth in Carparts, any one of which is sufficient to find Title VII liability. 37 F.3d at 16-18. First, as set forth above, HRD "exercise[s] control over … important aspect[s] of [municipal police officers' and firefighters'] employment" by, for example, administering the exams for hiring and promotions; mandating, setting forth requirements for, and partially funding "wellness programs"; and setting forth rules for leaves of absence and discipline. Id. at 17. Second, HRD clearly acts as civil service municipalities' "agent" in administering so many aspects of their hiring of and employment relationship with police officers and firefighters, and "delegation of responsibility … cannot insulate a discriminatory [condition of employment] from attack under Title VII." Id. at 17-18, quoting Spirt v. Teachers Ins. & Annuity Ass'n, 691 F.2d 1054, 1063 (2d Cir. 1982), vacated on other grounds, 436 U.S. 1223 (interpreting the term "employer" under Title VII and noting that the "term 'employer,' … is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law"). Third, since HRD administers and grades the hiring exam, sets forth statutory preferences and basic requirements for employment, sets the medical, physical agility, and training requirements, determines the rank ordering on the civil service list, and determines applicants' fitness for duty, the conclusion that HRD "significantly affects access of

[individuals] to employment opportunities" as municipal police officers and firefighters is both inescapable and an understatement.  Carparts, 37 F.3d at 18.

In summary, since HRD's extensive involvement in civil service communities' hiring and employment practices so plainly fits under each and all of the theories of liability set forth in Carparts, and since HRD could be considered an "employer" subject to Title VII liability in this case "under any one of [these] three theories," Plaintiffs submit that HRD must be subject to liability under Title VII.[2]

### B.     *Camacho* and Similar Cases Are Not on Point

In attempting to establish that HRD is not an "employer" for the purposes of Title VII, the Commonwealth defendants place much emphasis on a recent case, Camacho v. Puerto Rico Ports Authority, 369 F. 3d 570 (1st Cir. 2004), in which the First Circuit examined whether the Authority, which licenses and regulates independent contractor harbor pilots, could be deemed the pilots' employer for purposes of liability under the ADEA.  Defendants' reliance on this case is misplaced, as Camacho is not on point for at least two important reasons.  First, the court in Camacho held that a state agency's performance of a mere *licensing* function does not subject it to Title VII liability, 369 F.3d at 577-78; however, Plaintiffs here allege that HRD exercises significant control over hiring and conditions of employment, not mere licensing.  Second, in Camacho, the

---

[2] It is difficult to imagine how, on these facts, this Court could conclude otherwise, but in the event that it does, Plaintiffs submit that HRD's extensive involvement in municipalities' hiring and employment of police officers and firefighters must at least present an issue of fact regarding HRD's status as an "employer" and that this issue would have to be resolved at trial rather than on this motion.

8

court concluded only that the Authority did not "so extensively control[] [the plaintiff's] employment relationship as to become [his] de facto employer." Id. at 574. However, Plaintiffs here do not allege that HRD is the plaintiffs' "de facto employer"; rather, Plaintiffs allege that HRD's control over and involvement in municipalities' hiring and employment practices subjects it to Title VII under any and all of the theories of liability set forth in Carparts, which Camacho does not discuss.

Indeed, the Camacho court specifically noted that it did not reach the issue of whether the Authority could be subject to what it calls "interference liability." 369 F.3d at 574 n. 3. The court described this scenario as "providing for liability if an entity interferes with an individual's employment with another employer in ways that violate [Title VII],"[3] as established in the Title VII context by the Sibley Mem'l Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973) line of cases. Camacho, 369 F.3d at 574 n. 3. In Camacho, because the plaintiff was not an employee of the shipowners but rather was self-employed, there was "no 'prime' employer with whom the Authority's actions might be said to have interfered," so Title VII liability did not attach. Id. Camacho and the similar cases cited by it and by the Commonwealth defendants are not on point and are not relevant to this Court's decision because they discuss state entities' licensing functions – not hiring and employment – under a "de facto employer" theory. Those cases explicitly failed to reach the theories of Title VII liability developed in

---

[3] The court questions whether this theory applies in the ADEA context but clearly assumes that it was developed in and is applicable to Title VII cases. Id.

9

the Sibley line of cases and set forth in Carparts, under which HRD is clearly liable as an employer for Title VII purposes.

Moreover, even if Camacho were relevant to this case, the Camacho court's holding that the Authority does not exert sufficient control over the plaintiff's employment relationship to be deemed his "de facto employer" is readily distinguishable from this matter, and indeed, its analysis is illustrative of the significant extent of HRD's control of and involvement in civil service communities' hiring and employment practices. See id. at 576-78. Most significant to the court's analysis was that the pilots possessed such autonomy that they did not have any employer and thus the Authority could not even be deemed an agent of some other direct employer. See id. at 576-77. The court also emphasized that the Authority does not hire or fire the harbor pilots, but merely licenses and regulates them pursuant to the state's general police power. See id. at 578. In contrast, in this case, through the extensive control described above, and by its very name, the Human Resources Division serves as the de facto "HR department" for Massachusetts municipalities with respect to the hiring process for firefighters and police officers.

C.  State Entities Have Often Been Held Liable as Title VII "Employers" of Individuals Who Do Not Work For Them

A long series of Title VII cases have held that so long as a governmental entity is itself an "employer," it can be held liable if it discriminates in the employment relationship, even if it is not the employer of the particular individual bringing suit. See Barone, 602 F.Supp. at 483; U.S. v. City of Yonkers, 592

10

F.Supp. 570, 590 (S.D.N.Y. 1994); U.S. Equal Employment Opportunity Commission v. City of Evanston, Illinois, 854 F. Supp. 534, 538 (N.D. Ill. 1994); Doe v. St. Joseph's Hospital, 788 F.2d 41, 42 (7th Cir. 1986); Gulino v. Board of Education of the City of New York, 236 F.Supp.2d 314, 329-333 (S.D.N.Y. 2002), rev'd in part on other grounds, 2002 WL 31887733 (S.D.N.Y. 2002); Association of Mexican American Educators v. California, 231 F.3d 572, 580 (9th Cir. 2000) (en banc.); Sibley Memorial Hospital v. Wilson, 488 F.2d 1338, 1340-41 (D.C. Cir. 1973).

In Gulino, the court distinguished between so-called licensing cases and those where the government is actually involved in the employment relationship:

> There is no over arching licensing exception to Title VII. The cases that the defendant cites stand for a related but narrower proposition – that Title VII does not apply when the only connection among the licensing agency, the plaintiff, and the universe of prospective employees is the agency's implementation of a general licensing examination.

236 F.Supp.2d at 330. That court and many others have found that, where the governmental entity is directly involved in the employment relationship, controlling certain aspects of it, the governmental entity can be held liable under Title VII. See U.S. v. City of Yonkers, 592 F.Supp. at 589-90; Spirt v. Teacher's Insurance and Annuity Association, 691 F.2d at 1063; Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir. 1977); Rivas v. State Board for Community Colleges and Occupational Education, 517 F.Supp. 467, 470 (D. Colo. 1981); Curran v. Portland Superintending School Committee, 435 F.Supp. 1063, 1072-73 (D. Me. 1977); see also Guardians Association v. Civil Service

Commission, 630 F.2d 79, 104-105 (2d Cir. 1980)[4]; Owens v. Rush, 636 F.2d 283, 287 (10th Cir. 1980); Williams v. Montgomery, 550 F.Supp. 662, 668-69 (M.D. Ala. 1982) (holding personnel board liable as "employer" under Title VII as an agent of the City employing the plaintiff). Indeed, in this Circuit, a federal court has held that the New Hampshire Racing Commission is subject to Title VII because it exercised so much control over the right to be a jockey. Puntolillo v. New Hampshire Racing Commission, 375 F.Supp. 1089, 1091-1092 (D.N.H. 1974).

The case of U.S. v. City of Yonkers, supra, is directly on point. In City of Yonkers, the court held that the State of New York would remain a defendant in that case under Title VII, even though it was not actually the employer, given that the state's Civil Service Commission played a pervasive role in the hiring relationship — a role nearly identical to HRD in the present case. Id. at 589. After pointing out that the state Civil Service Commission designs exams, lists candidates, decides discipline appeals, etc., and recognizing that it was not the direct employer of Yonkers's municipal workers, the court denied the Commission's motion for summary judgment, stating that the record – which is nearly analogous, with respect to this issue, to the record in the case at bar – "strongly supports the view that the State acted as an employer in connection with police hiring in Yonkers during the years covered by the complaint." Id. at 590. Similarly, in this case, HRD is subject to this lawsuit under Title VII.

---

[4] Guardians Association has multiple reported decisions cited for this proposition at 630 F.2d 104-05. In that case, the state was properly held an employer for a Title VII challenge to a municipal police department.

12

The state defendants fail to adequately address the long line of federal cases stating that an entity qualifies as an "employer" under Title VII if it employs individuals, whether or not it is the employer of the particular employee in question.  See Carparts, 37 F.3d at 16 ("The issue before us is not whether defendants were employers … within the common sense of the word, but whether they can be considered 'employers' for purposes of [Title VII]"); City of Evanston, 854 F.Supp. at 538 (citing Doe on Behalf of Doe v. St. Joseph's Hosp., 788 F.2d 411, 422 (7th Cir. 1986); Pelech v. Klaff-Joss, LP, 815 F.Supp. 260, 262 (N.D. Ill. 1993); Vakharia v. Swedish Covenant Hosp., 765 F.Supp. 461, 463 (N.D. Ill. 1991)).  HRD cites Camacho in support of its assertion that the fact that HRD is "a Title VII employer of its own employees …. does not make HRD the 'employer' of firefighters" employed by municipalities.  See State Defendants' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, p. 12.  However, this rather half-hearted argument goes nowhere, as Plaintiffs do not assert that HRD is the actual employer of municipal police officers and firefighters, and as discussed above, Camacho and similar cases are not applicable to the real issue, namely whether HRD is an "employer" subject to Title VII liability in this case.  As the Commonwealth defendants admit, HRD is an "employer" as defined by Title VII, and as Plaintiffs allege and as is established by clear precedent in a long line of Title VII cases, HRD's pervasive control over municipal police officers' and firefighters' hiring and conditions of employment must render it liable under Title VII for the discriminatory impact of its hiring and employment practices.

### D. Municipalities Must Not Be Permitted to Avoid Title VII Liability By Delegating Human Resources Functions to a "Non-Employer"

At the very least, HRD must be deemed to be the agent, for purposes of the employment relationship, of its codefendant, the City of Lynn. The process of delegating functions usually performed by an entity's human resources department to the Commonwealth's Human Resources Division cannot render either the City of Lynn or the HRD immune to Title VII liability for the alleged discriminatory impact of the human resources functions HRD performs. See Carparts, 37 F.3d at 17-18. Lynn police officers and firefighters are not independent contractors, but instead must have an employer that is subject to antidiscrimination laws in hiring. Because HRD has stepped in to take over much of the hiring process for the City, it must be subject to the laws covering discriminatory hiring practices. Otherwise, every employer in Massachusetts might outsource the process of eligibility testing, or other aspects of the hiring process, to a "non-employer" in order to avoid the requirements of Title VII.

In the present case, HRD is not merely performing a licensing function, rather, it has taken over from municipalities the responsibility for deciding who can and cannot be a firefighter or police officer. HRD has extraordinary control over the employment relationship. It has more authority for deciding who will and will not be a police officer and firefighter than the municipality itself. It not only sets the medical standards, but also gives the exam, scores it, handles any appeals on the score, establishes the eligibility list, and sets the training and experience grade that the applicant will get, among many other tasks. It then

14

conducts the academy training which the firefighters must pass.  Under all of these conditions and under these facts, it is clear that HRD is an employer for the purposes of Title VII.

> E. The Remaining Counts Either Have Been Amended out of the Complaint with Regard to the Commonwealth or Have Been Further Described in the First Amended Complaint.
>
>> 1. Counts II through V Have Been Amended Such That They No Longer Apply to the Commonwealth.

Counts II and III of the original complaint alleged that all of the defendants engaged in certain violations of the plaintiffs' constitutional rights.  In the First Amended Complaint, filed this date, the plaintiffs have amended the allegations in these counts such that they now apply solely to the City Defendants.

Counts IV and V of the original complaint alleged violations of Massachusetts Law against all of the defendants.  Those allegations have been withdrawn from this First Amended Complaint without prejudice of the plaintiffs' right to file these allegations in state court.

>> 2. The First Amended Complaint Contains Further Details Regarding the Allegations of Count VI in the Original Complaint, Now Count IV of the First Amended Complaint, and Constitute Fair Notice to the Defendants of the Nature of the Claim.

The First Amended Complaint contains further details regarding the nature of the consent decrees regarding municipal public safety hiring and the Commonwealth's obligations thereunder.  The Complaint therefore sets forth a short and plain statement of the claim showing the plaintiffs are entitled to relief.

As such, the Complaint satisfies the requirements of Rule 8(a) of the Federal Rules of Civil Procedure and Count IV (formerly Count VI) may not be dismissed without a full and fair hearing of the issues.

IV.   CONCLUSION

Based on the foregoing, this Court should DENY the Commonwealth Defendants' Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment.

Respectfully submitted,

JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS,

By their attorneys,

___s/Alfred Gordon_____
Harold L. Lichten, BBO # 549689
Shannon Liss-Riordan, BBO # 640716
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg
& Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108

Date:  June 28, 2005                              (617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorneys of record for each party by first class mail on June 28, 2005.

___s/Alfred Gordon_____
Alfred Gordon

16