UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,
        Plaintiffs,

v.

CITY OF LYNN, *et al.*,
        Defendants.

CIVIL ACTION
NO. 05-10213-PBS

**STATE DEFENDANTS= REPLY TO PLAINTIFFS= OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

The State defendants reply as follows to the plaintiffs= opposition to the motion for judgment on the pleadings or alternatively for summary judgment.

    **A.**    **This Case is A Fortiori of Camacho Because the Scope of HRD=s Control Over Firefighters is Narrower than the Agency=s Control in Camacho**

Count I of the amended complaint alleges that HRD has violated Title VII. The motion for judgment is based on the lack of the requisite Title VII element of an employment relationship between HRD and the plaintiffs, relying on the First Circuit=s decision in Camacho v. Puerto Rico Ports Authority, 369 F.3d 570 (2004) and other cases cited therein.

The plaintiffs= opposition argues that Camacho applies only to the Amere *licensing* function@ of a state agency. Opposition at 8-11, 14 (emphasis in original), and that HRD=s control is broader than mere licensing. This is a fundamental misreading of the scope of the Camacho decision.

Although the plaintiff=s ADEA claim in Camacho was based solely on the revocation of his pilot

license at age 70, the First Circuit's analysis of the defendant agency's regulatory role, and the court's rejection of the claimed employment relationship, went far beyond the "mere licensing function" and took into account what it called the "panoply of powers" granted to the authority by statute to regulate harbor pilot activities <u>after</u> they have been licensed. <u>Camacho</u> at 575. The ports authority exercised regulatory powers over licensed, working pilots, such as fining or otherwise disciplining them for improper conduct; establishing highly detailed standard procedures for their day-to-day work in boarding and taking command of ships; and establishing an ERISA qualified retirement plan for them. The court acknowledged that "pilotage is a heavily regulated profession." <u>Camacho</u> at 576.

By contrast, HRD does not have similar post-employment control of municipal firefighters' day-to-day activities. <u>See</u> McNeely Affidavit, Exhibit A to State defendants' memorandum in support of motion for judgment, *passim*.

Despite the "heavy regulation" by the ports authority, the Court of Appeals, reversing the lower court, determined that this allegedly "unusually high level of control over the pilots' day-to-day activities [fell] far short of evincing the degree of control and supervision traditionally considered sufficient to create an employer-employee relationship." <u>Id</u>. The court cited the agency's lack of control or superintendence of how a pilot acts on the bridge of a ship; lack of control over the hiring and firing of pilots, once licensed; and the facts that the agency did not pay pilots, withhold taxes, pay F.I.C.A. contributions, maintain worker compensation insurance, provide vacation and other benefits to pilots, furnish their work gear, or set their schedules. <u>Id</u>. Likewise, HRD lacks every one of these aspects of control over firefighters. <u>See</u> McNeely Aff., *passim*.

The "mere licensing function" is only the threshold to employment, roughly comparable to the

entry level eligibility examination conducted by HRD. The Camacho decision looked beyond the threshold to the post-employment regulatory functions of the agency to decide that the requisite employment relationship was lacking. HRD does not have the same degree of regulatory control over the day-to-day activities of firefighters, once hired, that is enjoyed by the Puerto Rico Ports Authority over harbor pilots. For that reason, it is *a fortiori* that the First Circuit would apply the same common law agency principles for determining the existence of an employment relationship, and would find it lacking in this case, as it did in Camacho.

    **B.**    **The Case Law Cited by Plaintiffs is Inapposite**

The cases cited in plaintiffs= opposition all predate the Camacho decision, which broke new ground in this circuit by addressing a state agency=s licensing and regulatory powers in light of the employment relationship requirement of ADEA and Title VII.[1] Plaintiffs rely principally on Carparts Distribution Center, Inc. v. Automobile Wholesalers Association of New England, Inc., 37 F.3d 12 (1st Cir. 1994), but that case is inapposite because the defendant was a private entity, not a state agency exercising the state=s police power of regulation.[2]

---

[1] The employment relationship test under Title VII and ADEA is the same. Camacho at 578 n.5.

[2] Carparts is not cited in the Camacho decision, indicating its irrelevance to a case involving a state regulatory agency..

Other cases cited by the plaintiffs involve public agencies but are also inapposite in light of Camacho. These are district court cases long predating the Camacho decision and the line of more recent state-agency decisions cited in Camacho. See Opposition at 10-12; Camacho, 369 F.3d at 578.[3] To the extent that these cases are inconsistent with Camacho, they are not good law in this circuit. One example, strongly relied upon by plaintiffs, is United States v. City of Yonkers, 592 F.Supp. 570 (D.S.D.N.Y. 1984). That case has dubious precedent value in light of its age[4] and the fact that no court has cited it since 1999. A more reliable indication of Second Circuit Title VII law is United States v. City of New York, 359 F.3d 83 (2d Cir. 2004), *cert. den.* 125 S.Ct. 1295 (2005). The court there held that a public entity can be deemed an Aemployer@ for Title VII purposes only if the plaintiff shows that she has been paid by the defendant (received benefits), and if the court thereupon finds the requisite employment relationship, applying the same common law agency principles adopted in Camacho. See City of New York, *supra*, 359 F.3d at 92-93. Under that test, HRD would not be deemed an employer of municipal firefighters.

---

[3] The plaintiffs cite (Opposition at 11) the Ninth Circuit case of Ass=n of Mexican-Am. Educators v. California, 231 F.3d 572 (9th Cir. 2000), a decision with which the First Circuit indicated its disagreement in Camacho, 369 F.3d at 578.

[4] Plaintiff miscite City of Yonkers as a 1994 case, rather than 1984. Opposition at 10-11.

<u>Camacho</u> is controlling and dispositive of Count I.

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Ronald F. Kehoe
Ronald F. Kehoe, BBO # 264260
Assistant Attorney General
One Ashburton Place, Room 1813
Boston, MA 02108-1698
(617) 727-2200 ext. 3221
ronald.kehoe@ago.state.ma.us


### Certificate of Service

I hereby certify that on July 19, 2005, I served this reply on counsel for all other parties by filing it electronically and by mailing it by first-class U.S. mail, postage prepaid.

/s/ Ronald F. Kehoe