# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

                    Plaintiffs,

           v.

CITY OF LYNN, *et al.*,

                  Defendants.

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF THE
NAACP,

                  Intervenors.

CIVIL ACTION
NO. 05-10213-PBS

## STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION OR UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The State defendants, the Commonwealth of Massachusetts, Human Resources Division

("HRD"), and Ruth Bramson, in her capacity as Personnel Administrator of HRD (together,

"defendants"), submit this memorandum of law in support of their motion to dismiss under Fed.

R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.  In further support of the motion,

defendants attach as Exhibit A the Declaration of Sally McNeely ("McNeely Decl.").[1]

---

[1]      The McNeely Declaration that accompanies the electronic filing of this memorandum contains an electronic signature.  Pursuant to section J(3) of this Court's ECF Administrative Procedures, the paper Declaration with original signature will be retained for two years after expiration of the time for filing a timely appeal.

Defendants move to dismiss plaintiffs' claims on several grounds. First, plaintiffs' complaint should be dismissed in its entirety as moot because HRD has abandoned any use of the administrative practices that plaintiffs are challenging. Second, Count IV of the complaint—asserting violations of the consent decrees in NAACP v. Beecher, 371 F. Supp. 607 (D. Mass. 1974) (firefighter), and Castro v. Beecher, 365 F. Supp. 655 (D. Mass. 1973) (police officer)—should be dismissed for lack of standing. Finally, even assuming plaintiffs have standing, Count IV as it relates to the Beecher decree should be dismissed for failure to state a claim upon which relief can be granted.

## FACTS

The individual plaintiffs, four African-American men, allege that the State's firefighter and police-officer entrance examinations—as prepared and utilized by HRD in the past in connection with its role in the Massachusetts civil-service system—have a racially discriminatory impact in violation of Title VII and the Beecher and Castro consent decrees. See generally Plaintiffs' First Amended Complaint ("Pls.' Am. Compl."). Plaintiffs request that this Court grant them the following remedies:

> [P]reliminary and permanent injunctive relief (1) holding that the examination system used by the defendants is unlawful; (2) ordering that the plaintiffs and appropriate class members[2] be hired as firefighters or police officers for the City of Lynn, Massachusetts, with retroactive back pay, seniority, and other damages to which they are entitled; (3) ordering that the defendants be required to devise a hiring system that does not have disparate impact on minorities, and (4) granting other further and appropriate relief to the plaintiffs and the class they represent.

Id. at 11.

---

[2]     Although the Amended Complaint refers to members of the "class," this Court has not yet determined that class certification is appropriate.

2

Beginning in June 2006, however, HRD will no longer administer the examinations that plaintiffs challenge as unlawful. See McNeely Decl. ¶¶ 2-9.[3]  With regard to firefighters, HRD has already taken significant steps, at substantial cost, to create and implement a new state-of-the-art examination. See id. ¶ 2-5.  This new examination will be validated to avoid disparate racial impact pursuant to the Equal Employment Opportunity Commission ("EEOC") Guidelines and will be administered on the next testing date in June 2006. See id. ¶¶ 2, 7.

HRD also plans to administer a new examination for entry-level police officers, beginning on the next testing date in Spring 2007. See id. ¶¶ 8-9.  HRD plans to begin the implementation process for the new 2007 police-officer examination in July 2006. See id. ¶ 8.  Like the new firefighter examination, this new examination will be state-of-the-art and will be validated according to EEOC Guidelines. See id. ¶ 9.

## ARGUMENT

## I.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS MOOT.

### A.   The Claims For Injunctive And Declaratory Relief Were Mooted By HRD's Abandonment Of The Challenged Testing Procedures.

Article III's "case or controversy" requirement bars a court from "wander[ing] into the realm of the advisory and the hypothetical." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004).  A "case or controversy" ceases to exist and a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in

---

[3]    In resolving a motion to dismiss for lack of jurisdiction, the Court may properly consider extrinsic materials without converting the motion to one for summary judgment. Dynamic Image Tech. Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000); Brown v. United States, No. 04-11924RGS, 2006 WL 140997, at *1 (D. Mass. Jan. 18, 2006); Lopez v. United States, 349 F. Supp. 2d 179, 183 (D. Mass. 2004).

3

the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  Stated differently, a case is moot when the court cannot give any "effective relief" to the potentially prevailing party.  Pine Tree Medical Assocs. v. Secretary of Health & Human Servs., 127 F.3d 118, 121 (1st Cir. 1997); see also Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir. 1993) ("It is well established that, in circumstances where a court cannot provide effectual relief, no justiciable case remains and the court must dismiss the [case] as moot."); Oceana, Inc. v. Evans, No. 03-10570-GAO, 2004 WL 1730340, at *3 (D. Mass. July 30, 2004) ("The Court must consider whether adjudication of the issues can grant meaningful relief.").  Thus, a party moving for an injunction has the burden of satisfying the court that relief is needed in that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953); accord Lovell v. Brennan, 728 F.2d 560, 563 (1st Cir. 1984).

Here, there is no "effective relief" that the Court can grant plaintiffs if they were to prevail on the merits, and so their claims should be dismissed as moot.  It is settled that a challenge to an administrative policy is moot when the agency voluntarily withdraws that policy and implements a new one.  See, e.g., New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002) ("it would be pointless either to enjoin the enforcement of a regulation that is no longer in effect or to declare its constitutional status"); D.H.L. Assocs., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999) (court was "without power to grant injunctive and declaratory relief because the [challenged] ordinances no longer exist[ed]"); Oceana, 2004 WL 1730340, at *3 ("no interest would be served" by invalidating a superseded administrative

policy); Bahnmiller v. Derwinski, 923 F.2d 1085, 1089 (4th Cir. 1991) ("Withdrawal or alteration of administrative policies can moot an attack on those policies.").

In this case plaintiffs' Amended Complaint seeks a declaration "holding that the examination system used by the defendants is unlawful" and an injunction "ordering that the defendants be required to devise a hiring system that does not have disparate impact on minorities." Pls.' Am. Compl. at 11. As noted above, however, HRD has already abandoned the disputed testing procedures and has devoted significant time and expense to implement a new state-of-the-art firefighter examination, which will be validated to avoid disparate impact under the EEOC Guidelines and which will be administered on the next testing date in June 2006. See McNeely Decl. ¶¶ 2-7.[4] HRD also plans to take the same steps with regard to the police-officer examination, with a new test to be administered on the next testing date in Spring 2007.[5] See id.

_____

[4] It is "settled practice" to accept the representations of government officials in determining whether a case or controversy exists. DeFunis v. Odegaard, 416 U.S. 312, 317 (1974); see, e.g., Lovell, 728 F.2d at 564; Kiedos v. Apfel, 43 F. Supp. 2d 80, 85-86 (D. Mass. 1999); Federation of Advertising Ind. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 929 (7th Cir. 2003); Committee in Solidarity With the People of El Salvador v. Sessions, 929 F.2d 742, 745 (D.C. Cir. 1991); Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir. 1990); see also, e.g., Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998) (there was "no reason to think" that the government would revert to its old policy where the new policy "appear[ed] to have been the result of substantial deliberation on the part of [government] officials"); Hudson v. Robinson, 678 F.2d 462, 465 (3d Cir. 1982) ("There is no reason to believe that the [government] institution would incur the substantial expense required to . . . revert to its former policy."); Walker v. San Francisco Unified Sch. Dist., 46 F.3d 1449, 1463 (9th Cir. 1995) (similar).

[5] Of the named plaintiffs, only Keith Ridley and Noah Bradley have taken the entrance examination for the position of police officer. See Pls.' Am. Compl. ¶ 21. Ridley, however, later removed himself from hiring consideration by failing to submit an employment application form and other requested materials to the City of Lynn Police Department. See McNeely Decl. ¶ 14. He therefore has no "'legally cognizable interest'" with regard to the police-officer examination, and so his claim is moot for this additional reason. Pine Tree Medical Assocs., 127 F.3d at 121.

¶ 8-9.  Plaintiffs' request for an injunction ordering defendants to devise a new nondiscriminatory examination system is therefore moot because HRD has voluntarily accorded them that precise remedy.  See DeFunis, 416 U.S. at 317 ("controversy between the parties ha[d] . . . clearly ceased to be 'definite and concrete'" where government defendant voluntarily accorded plaintiff the injunctive relief he requested); accord Samaritan Inns, Inc. v. District of Columbia, 114 F.3d 1227, 1239-40 (D.C. Cir. 1997); Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997); Committee in Solidarity With the People of El Salvador, 929 F.2d at 744.

The decision in St. Louis Firefighters Association v. City of St. Louis, 96 F.3d 323 (8th Cir. 1996), is instructive in this regard.  There, white firefighters alleged that the city had illegally reweighted test results in favor of African-Americans in deciding who would receive promotions to battalion chief.  Id. at 327.  After the complaint was filed, the city announced that it would abandon the disputed testing procedures entirely and would develop a new procedure for determining promotions.  Id.  This announcement, the court held, mooted the case.  Id. at 329.  The only relief requested by plaintiffs was an injunction barring promotions based on the challenged testing procedures.  Id. at 330.  Because the city had voluntarily abandoned those procedures, the requested relief was "obviously unnecessary," and the case was properly dismissed as moot.  Id.

Likewise, the court in Mannington Mills, Inc. v. Shinn, 877 F. Supp. 921 (D.N.J. 1995), dismissed as moot a complaint challenging a scoring system used by the state to determine what sites would be designated as priorities for environmental remediation.  After the case was commenced, the state withdrew its scoring method and announced its intent to implement a new one.  Id. at 927.  The court held that this withdrawal mooted the plaintiff's claims for an

injunction preventing the state from using an unlawful scoring system and prohibiting further violations, and for a declaration that the state's "'past and present' actions violated its rights." Id. at 928-29.  The court explained that, until the state actually implemented its new system, "it is simply impossible to anticipate whether there will be any state action which runs afoul of constitutional mandates." Id. at 929.  Thus, because there was no "real and imminent" threat to plaintiff's rights, injunctive and declaratory relief was inappropriate.  Id. at 928-29.

The same conclusion obtains here.  As in St. Louis Firefighters Association and Mannington Mills, plaintiffs' requests for injunctive and declaratory relief were mooted by defendants' voluntary abandonment of the testing procedures that are being challenged.  The new firefighter and police-officer examinations will be state-of-the-art and will be validated under the EEOC Guidelines.  See McNeely Decl. ¶¶ 2, 9.  If plaintiffs nonetheless believe that the new examination system will or may be unlawful, the appropriate time to raise such claims is after the examination is completed.  See Mannington Mills, 877 F. Supp. at 929.  Until then, "it is simply impossible to anticipate whether there will be any state action which runs afoul of constitutional mandates." Id.  Thus, because there is no "real and imminent" threat to plaintiffs' rights, their challenges to the old testing procedures and request for injunctive relief should be dismissed as moot.  Id.

Plaintiffs' request for declaratory relief is likewise moot.  It would be a "pointless" exercise for this Court to declare the constitutional status of an administrative policy that is no longer in effect.  New England Regional Council of Carpenters, 284 F.3d at 18; see Mannington Mills, 877 F. Supp. at 928-29.  Because HRD has abandoned the challenged testing procedures, a declaration as to the lawfulness of those procedures would be "merely advisory" and is thus

prohibited under Article III.  Oceana, 2004 WL 1730340, at *4; see also Jews for Jesus, 162 F.3d

at 629 (case was moot where defendant's "change of policy [had] already given [plaintiffs] the

relief they [sought] and "only remaining issue [was] whether the [defendant's] policy was

constitutional—which . . . [was] a purely academic point"); Southern Utah Wilderness Alliance,

110 F.3d at 730 (declaratory judgment "would serve no purpose" and "would be in the nature of

an advisory opinion" where defendants had voluntarily redressed the alleged injury).

**B.      The Claim for Retroactive Relief Does Not Save Plaintiffs' Case From A Determination Of Mootness.**

The conclusion of mootness is not changed by plaintiffs' additional request for an order

"that the plaintiffs and appropriate class members be hired as firefighters or police officers for

the City of Lynn, Massachusetts, with retroactive back pay, seniority, and other damages to

which they are entitled."  Pls.' Am. Compl. at 11.  Plaintiffs' claim for compelled hiring, with

retroactive back pay, seniority, and other damages, is relevant only to defendant City of Lynn,

who is the actual hiring authority.  See June 6, 2005, Affidavit of Sally McNeely, ¶¶ 7-13

(attached as Exh. B; originally filed with defendants' June 6, 2005 Motion for Judgment on the

Pleadings or in the Alternative for Summary Judgment).  Thus, plaintiffs' claim for retroactive

relief does not affect the determination of mootness with regard to the case against the State

defendants.  Cf. D.H.L. Assocs., 199 F.3d at 54 & n.1 (request for damages could not save case

from determination of mootness where plaintiff had previously withdrawn that request in light of

defendants' legislative immunity); Ciampa v. Massachusetts Rehabilitation Comm'n, 718 F.2d 1,

3-4 (1st Cir. 1983) (where plaintiff's claims for declaratory and injunctive relief were moot and

only claim for damages remained, state defendant was properly dismissed from the case on sovereign-immunity grounds).[6]

Moreover, even were the plaintiffs to prevail on the merits of their claims, this Court could not grant the retroactive relief they are seeking. In Beecher this Court explained that, in crafting equitable remedies, it must look to "what is necessary, what is fair, and what is workable," keeping in mind that innocent third parties—namely, the "men currently on existing Civil Service eligibility lists"—should "not be dealt with unfairly." NAACP v. Beecher, 371 F. Supp. at 520. Accordingly, the consent decree in Beecher contained purely prospective relief. See id. at 520-23. Similarly, in Evans v. City of Evanston, 881 F.2d 382 (7th Cir. 1989), the district judge, after finding the city's firefighter testing procedures to be unlawful, ordered the city to implement a new examination but declined to order it "to hire any of the members of the plaintiff class or even to allow them to advance to the next test." 881 F.2d at 385. The Seventh Circuit concluded that the district judge had properly acted within his remedial discretion. Id. In so holding, the court noted the "importance of competent firefighting to the safety of the people . . . as well as of the firefighters themselves" and emphasized that "[a]n equity court must always consider the possible impact of a decree on innocent third parties." Id.

Here, plaintiffs' request "that [they] and appropriate class members be hired as firefighters and police officers . . . with retroactive back pay, seniority, and other damages," if granted, would unfairly impinge on the interests of the individuals currently on the eligibility lists, in violation of the equitable considerations detailed in Beecher. 371 F. Supp. at 520; see

---

[6] On December 15, 2005, plaintiffs filed a related action against the State defendants in Suffolk Superior Court (Docket No. CV2005-05275-H), requesting money damages, punitive damages, attorneys' fees, and costs. That case is still pending in state court.

also Evans, 881 F.2d at 386 ("make whole" relief under Title VII is available only "where making the plaintiff whole would not unduly injure innocent third parties").  Further, Title VII authorizes such compensatory relief only "where it is reasonably clear that, had it not been for the discriminatory behavior, the plaintiff would have got . . . the job . . . in issue."  Evans, 881 F.2d at 386; accord Day v. Mathews, 530 F.2d 1083, 1084-85 (D.C. Cir. 1976); see 42 U.S.C. § 2000e-5(g) ("No order of the court shall require . . . the hiring . . . of an individual as an employee, or the payment to him of any back pay, if such individual . . . was refused employment . . . for any reason other than discrimination . . . .").  That is not the case here.  Even if a candidate scores high enough on the written examination to be reached for consideration, he must clear additional hurdles—e.g., a drug test, a background check, an interview with the hiring authority, a psychological and medical exam, and the physical abilities test—before he will finally be eligible for hiring.  See McNeely Decl. ¶ 10.  Thus, because it is not "reasonably clear" that, but for the alleged discrimination, plaintiffs would have gotten the jobs in question, retroactive relief is not available.  See Evans, 881 F.2d at 386; Day, 530 F.2d at 1084-85.

In sum, given HRD's voluntary abandonment of the challenged testing procedures, there is no meaningful relief that this Court could award plaintiffs if they were to prevail on the merits of their claims.  Accordingly, this Court should dismiss their claims as moot.

II.     **PLAINTIFFS' CLAIMS UNDER THE <u>BEECHER</u> AND <u>CASTRO</u> DECREES SHOULD BE DISMISSED FOR LACK OF STANDING OR ALTERNATIVELY FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A.     <u>**Plaintiffs Do Not Have Standing To Enforce The Beecher And Castro Consent Decrees.**</u>

In Count IV of their amended complaint, plaintiffs maintain that HRD's alleged discriminatory acts violate the consent decrees issued in <u>NAACP v. Beecher</u>, 371 F. Supp. 507, and <u>Castro v. Beecher</u>, 365 F. Supp. 655, which provide for preferential treatment for minority firefighter applicants and police applicants, respectively.  This claim should be dismissed because the plaintiffs lack standing to maintain it.  As elaborated below, both the <u>Beecher</u> and <u>Castro</u> decrees were limited to remedying the effects of past discrimination, and those effects have long been cured in the City of Lynn.  The plaintiffs therefore have no rights under the decrees and hence no standing to sue for their enforcement.

1.     <u>The Consent Decrees Were Limited In Extent And Duration To Go No Further Than To Remedy The Effects Of Past Discrimination.</u>

It is well established that a consent decree must be interpreted under ordinary contract principles, especially where "the question involves determining the parties' original intent and, concomitantly, the scope of the arrangement to which they initially consented."  <u>Quinn v. City of Boston</u>, 325 F.3d 18, 30 (1st Cir. 2003); <u>see also</u> <u>United States v. ITT Continental Baking Co.</u>, 420 U.S. 223, 238 (1975) (consent decree "is to be construed for enforcement purposes basically as a contract").  Thus, as is the case with contracts, the interpretation of consent decrees "depends in part upon language, in part upon the circumstances surrounding their formation, and in part upon the basic purposes of the decree."  <u>Massachusetts Ass'n for Retarded Citizens v. King</u>, 668

11

F.2d 602, 607 (1st Cir. 1981); see also ITT Continental Baking, 420 U.S. at 238 (in interpreting

consent decrees, it is proper to rely on customary aids to construction, including "the

circumstances surrounding the formation of the consent order"); Lamphere v. Brown Univ., 875

F.2d 916, 921 (1st Cir. 1989) (consent decree's "general language must be read as limited by its

purpose and context").

Here, it is plain from the language, purpose, and context of the Beecher and Castro

consent decrees that they were intended to benefit only those minorities in communities in which

parity—a percentage of minority firefighters (or police officers) "approximately equal to the

percentage of minorities in the locality"— has not been attained.  NAACP v. Beecher, 504 F.2d

1017, 1027 (1st Cir. 1974).  As the First Circuit has recognized, the decrees were "not meant to

operate in perpetuity." Quinn, 325 F.3d at 24.[7]  Rather, pursuant to their express language, both

decrees cease to operate when "a city or town achieves a complement of minorities

commensurate with the percentage of minorities within the community."  NAACP v. Beecher,

371 F. Supp. at 523; Castro v. Beecher, 522 F. Supp. at 875.  This language furthers the purpose

of the decrees—namely, to remedy the effects of past discrimination.  See Castro v. Beecher, 365

F.Supp. 655, 659 (D. Mass. 1973) ("To counteract the unconscious lopsidedness of the

recruitment of the past, the parties and intervenors have proposed in their Draft Decree to give a

tertiary priority to blacks and Spanish-speaking persons."); Quinn, 325 F.3d at 24 (Beecher

decree was "intended to rectify a situation in which many fire departments within Massachusetts

---

[7]  The parties in Castro adopted the same parity target that had been established earlier in the Beecher decree, see Castro v. Beecher, 522 F.Supp. 873, 875 (D. Mass. 1981), and the cases were eventually consolidated, id. at 874.  Thus, although Quinn dealt only with the Beecher decree, the First Circuit's reasoning should apply with equal force to the Castro decree.

had remained lily-white, or nearly so, despite dramatic increases in the African-American and Hispanic populations"). To that end the decrees were "carefully limited in extent and duration" to go no further than necessary "to eliminate the lingering effects of previous practices that bore more heavily than was warranted on minorities." NAACP v. Beecher, 504 F.2d at 1027.

       2.    Because The Consent Decrees No Longer Apply To The City Of Lynn, Plaintiffs Have No Enforceable Interests Under Them.

As plaintiffs acknowledge in their amended complaint, the City of Lynn achieved parity with regard to both its fire and police departments and was released from the Beecher and Castro decrees in the mid-1980s. (Pls.' Am. Comp. ¶¶ 25, 29.) Thus, the "lingering effects" of discrimination having long been cured in the City of Lynn, plaintiffs, as candidates for public employment in Lynn, do not fall within the class sought to be protected by the consent decrees. As such, they no longer have any enforceable interests, and HRD owes them no duty, under the decrees. See Quinn, 325 F.3d at 37 ("Once parity has been achieved, the [Beecher] decree has served its legitimate purpose, and the justification for it has abated."). This conclusion is compelled by the decrees' express language and overall purpose. As the First Circuit has made clear, "[s]tate officials entering into a consent decree are entitled to rely on courts to apply the decree only to its agreed objects." Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, 1343 (1st Cir. 1991). Here, because the City of Lynn has already reached the parity target, there is no longer any justification for according plaintiffs the preferential treatment provided by the decrees.

Indeed, to hold otherwise would not only contravene the original parties' intent, it would also extend the life of the decrees past the point that is constitutionally permissible. The Supreme Court has endorsed the use of parity targets specifically because they provide a

13

"benchmark against which the court [can] gauge . . . efforts to remedy past discrimination."

Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 478 (1986).  This

ensures that affirmative action programs "operate as a temporary tool for remedying past

discrimination without attempting to maintain a previously achieved balance."  Id. at 479

(emphasis added; quotation marks omitted).  Temporal "[l]imitations of this sort are crucial

factors in deflecting overbreadth challenges."  Mackin v. City of Boston, 969 F.2d 1273, 1278

(1st Cir. 1992) (upholding Beecher decree); see also id. at 1276 ("An intrusion by a federal court

into the affairs of local government should be kept to a bare minimum and not be allowed to

continue after the violation has abated and its pernicious effects have been cured.").

 In this case, if the Court were to allow plaintiffs to enforce the Beecher and Castro

decrees as to the City of Lynn, it would be extending the life of the decrees beyond the point

where "the violation has abated and its pernicious effects have been cured."  Id. at 1276.

Mackin, Local 28, and similar cases prohibit such action.

> 3. Because Plaintiffs Have No Protected Interests Under the Beecher and Castro Decrees, They Lack Standing to Enforce the Decrees.

 Any plaintiff seeking to invoke the power of a federal court has the burden of

demonstrating the three essential elements of constitutional standing: (1) an "injury in fact—an

invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the

conduct complained of"; and (3) redressability—"it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks, citations & footnote omitted).

These plaintiffs cannot satisfy even the first element of this test.  Because they seek firefighter and police-officer positions in a locality where racial parity has already been attained, they no longer have any enforceable rights under the <u>Beecher</u> and <u>Castro</u> decrees.  Consequently, they have suffered no injury-in-fact as a result of HRD's alleged violation of those decrees.  <u>See Barfus v. City of Miami</u>, 936 F.2d 1182, 1187 (11th Cir. 1991) (appellants could not seek to enforce consent decree that conferred no rights on them); <u>Picard v. City of Providence</u>, No. R.I. CV 98-40L, 1999 WL 814274, at *3 (D.N.H. Sept. 30, 1999) (because plaintiffs "are not beneficiaries of the consent decree's provisions  . . ., it would certainly appear that plaintiffs lack standing to challenge defendants' conduct, which arguably impaired rights acquired by the parties to that consent decree"), <u>aff'd</u>, 275 F.3d 139 (1st Cir. 2001).

Numerous courts have held in similar circumstances that a plaintiff has no standing to enforce a consent decree when he has no interests that fall within the zone of interests sought to be protected by the decree.  For example, in <u>Moore v. Tangipahoa Parish School Board</u>, 625 F.2d 33 (5th Cir. 1980), the consent decree at issue had directed the defendants to use objective criteria in the selection of school principals, in order to remedy past racial discrimination.  Plaintiff, a white female, sued to enforce the decree, complaining that the defendants' decision not to hire her had been politically motivated.  The Fifth Circuit held that the plaintiff lacked standing because she did not come within "the zone of interests" protected by the decree, <u>id.</u> at 34: "However worthwhile [plaintiff's] interest in freedom from arbitrary or politically-inspired employment decisions, that interest in no way implicates the same constitutional guarantees which require the establishment and maintenance of a racially-neutral, unitary school system."  <u>Id.</u> at 35.

15

Likewise, in <u>Franz v. Village of Melrose Park</u>, No. 92 C 1588, 1992 WL 198931 (N.D. Ill. Aug. 12, 1992), the court found lack of standing where plaintiffs' interests did not "come within the zone of interests to be protected by the decree." <u>Id.</u> at *6.  Plaintiffs had moved to enforce a consent decree that enjoined the Village of Melrose Park from requiring pre-employment residence as a condition of applying for employment in the Village. <u>Id.</u> at *1.  The court held that the interest the plaintiffs were seeking to protect (their desire to live outside the Village while retaining their employment with the Village) did "not implicate the interests which the consent decree was designed to protect" (to ensure that the Village's employment practices did not discriminate against African Americans). <u>Id.</u> at *4; <u>see also</u> <u>Wang v. Gordon</u>, 715 F.2d 1187, 1190 (7th Cir. 1983) (plaintiff had no standing to enforce consent decree "not made in favor of [him]"); <u>Patterson v. Newspaper & Mail Deliverers' Union of New York</u>, 772 F. Supp. 833, 839 (S.D.N.Y. 1991) (white plaintiffs lacked standing, under a settlement agreement implemented to remedy racial discrimination, to bring a claim that defendants' alleged discrimination "deprived them of desired interracial associations"; the agreement "was not designed to resolve such claims"); <u>Williams v. City of New Orleans</u>, 1990 WL 170195, at *2 (E.D. La. Oct. 30, 1990) (plaintiffs lacked standing to enforce consent decree designed to remedy effects of racial discrimination, where plaintiffs were not victims of racial discrimination and the City's alleged non-compliance with the decree had not harmed their interests in working on a non-discriminatory police force); <u>cf.</u> <u>Watts v. McFaul</u>, 158 F.R.D. 598, 602, 603 (N.D. Ohio 1994) (consent decree should be vacated where it "no longer embod[ied] the current interests of the parties" and thus "there [was] no interested plaintiff to challenge the defendant's conduct under the consent decree").

Similarly, here, the zone of interests that the <u>Beecher</u> and <u>Castro</u> decrees were originally designed to protect does not encompass the interests that plaintiffs are now asserting in this lawsuit. Plaintiffs claim a general interest in having HRD administer a civil-service entrance examination that has no disparate impact whatsoever on minorities. Pls.' Am. Compl. at 11 (seeking an injunction "ordering that the defendants be required to devise a hiring system that does not have disparate impact on minorities"). It would be bootstrapping for plaintiffs to rely on the now 30-year-old <u>Beecher</u> and <u>Castro</u> decrees in support of such a claim. Plaintiffs can seek to bring a fresh claim if they believe they were victims of discrimination. The <u>Beecher</u> and <u>Castro</u> decrees, however, were only intended to remedy the continuing effects of past discrimination as they existed at the time the decrees were entered, and thus only confer benefits on minorities in communities where parity has not been attained. In the City of Lynn, parity was attained 20 years ago. As a result, plaintiffs have no rights under the decrees and have suffered no injury due to HRD's alleged non-compliance.

4.   <u>To The Extent Intervenor-Plaintiffs Have Protected Interests Under The Decrees, They Still Lack Standing Due To Lack Of A Redressable Injury.</u>

The intervenor-plaintiffs, the Boston Society of the Vulcans and New England Area Conference of the NAACP, also lack standing to enforce the <u>Beecher</u> and <u>Castro</u> consent decrees because they have suffered no injury that "will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 560. Applying the above analysis compels the conclusion that, at best, the intervenors only have protected interests under the decrees in those municipalities where racial parity has not been reached. With regard to those municipalities, however, the intervenors still lack standing to enforce the decrees because they have suffered no redressable injury. The decrees require the

State to utilize entrance examinations that are demonstrably job-related and validated, <u>NAACP v. Beecher</u>, 371 F. Supp. at 521; <u>Castro v. Beecher</u>, 365 F. Supp. at 662, but HRD has already voluntarily agreed to accord such relief.  And to the extent any further prospective relief is warranted in those municipalities where parity has not yet been attained, that need is fulfilled by the decrees themselves.  <u>See</u> <u>NAACP v. Beecher</u>, 371 F. Supp. at 521-23 (ordering among other things that the State defendants implement an affirmative-action plan in certifying firefighter candidates for hire); <u>Castro v. Beecher</u>, 386 F. Supp. 1281, 1286-87 (D. Mass. 1975) (same). There is thus no relief that this Court could order that would redress any injury suffered by the intervenors as a result of defendants' alleged violation of the decrees.

For these reasons Count IV of plaintiffs' amended complaint, seeking enforcement of the consent decrees, should be dismissed for lack of standing of both the plaintiffs and the intervenor-plaintiffs.

**B.     The Plaintiffs And Intervenor-Plaintiffs Fail To State A Claim For Relief Under The Beecher Decree.**

The <u>Beecher</u> decree provides that, "[i]f the parties disagree as to whether a written examination has been shown to be valid within the meaning of the [EEOC] Guidelines, the question of their validity and job relatedness shall be resolved by the Court, and such resolution . . . shall be accomplished <u>before any such test is put into use for the purpose of qualifying or selecting</u>."  <u>NAACP v. Beecher</u>, 371 F. Supp. at 521 (emphasis added).  In furtherance of this provision, HRD and intervenor-plaintiff NAACP have established a mechanism for monitoring HRD's compliance with the decree.  The monitor for many years was then-NAACP attorney

18

Toni Wolfman, who was recently replaced by NAACP attorney Nadine Cohen.  <u>See</u> McNeely

Decl. ¶ 11.

Pursuant to the consent-decree procedure, HRD has published sample questions in

advance of each firefighter examination and has submitted a proposed passing score to the

monitor for approval.  <u>See id.</u> ¶ 12.  The sample test and a description of the test's contents are

freely available on HRD's website prior to the examination date.  <u>See id.</u>  Over the years until

this litigation was commenced, the monitor has never objected to a proposed examination prior

to its administration and has regularly approved the proposed passing score, which in recent years

has typically been 70.  <u>See id.</u> ¶ 12.  Likewise, none of the individual plaintiffs raised any

objection to the examinations until commencement of this case.  <u>See id.</u> ¶ 13.

Because plaintiffs and intervenors failed to object to the disputed examinations earlier,

they have waived any claim that those examinations violated <u>Beecher</u>.  The decree by its terms

requires that any dispute as to the validity and job-relatedness of a proposed examination is to be

resolved "<u>before</u> any such test is put into use for the purpose of qualifying or selecting."  <u>NAACP

v. Beecher</u>, 371 F. Supp. at 521 (emphasis added).  Thus, if the plaintiffs or the intervenors

believed that the 2000, 2002, and 2004 firefighter exams were invalid, they should have brought

their challenges prior to the respective examination dates.  By failing to do so, they have waived

any right to bring their claims now.

Accordingly, Count IV of the amended complaint, as it relates to the <u>Beecher</u> decree,

should be dismissed for failure to state a claim upon which relief can be granted.

19

## CONCLUSION

For the reasons stated, the State defendants respectfully request that the Court dismiss all counts of the Amended Complaint as moot.  In the alternative defendants request that the Court dismiss Count IV of the Amended Complaint for lack of standing or, with regard to the <u>Beecher</u> decree, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS,
HUMAN RESOURCES DIVISION, and RUTH
BRAMSON, in her capacity as Personnel
Administrator of the Human Resources Division,

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

 /s/ Sookyoung Shin
Ronald F. Kehoe, BBO # 264260
Sookyoung Shin, BBO # 643713
Assistant Attorneys General
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 727-2200, ext. 3221 (Kehoe), ext. 2052 (Shin)

Dated: February 6, 2006

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent to those indicated as nonregistered participants on February 6, 2006.

/s/ Sookyoung Shin
Sookyoung Shin
Assistant Attorney General