UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

                Plaintiffs,

            v.

CITY OF LYNN, *et al.*,

                Defendants.

CIVIL ACTION
NO. 05-10213-PBS

**STATE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(b)(2)**

    The State defendants, the Human Resources Division ("HRD") and Ruth Bramson, in her capacity as Personnel Administrator of HRD, oppose plaintiffs' motion under Fed. R. Civ. P. 23(b)(2) to certify this lawsuit to proceed as a class action.[1] Plaintiffs have failed to meet their burden of showing that joinder of all class members would be impracticable and that the interests of the class members will be adequately represented by the named plaintiffs. Accordingly, class certification is inappropriate, and plaintiffs' motion should be denied.

**ARGUMENT**

    "The class action device [is] an exception to the usual rule that litigation is conducted by and on behalf of the named parties only." General Tel. Co. of the Southwest v. Falcon, 457 U.S.

---

[1] In support of this opposition, defendants attach the Declaration of Sally McNeely ("McNeely Decl.") and the Declaration of Rick R. Jacobs, Ph.D, as Exhibits A and B respectively. The Declarations contain electronic signatures. Pursuant to section J(3) of this Court's ECF Administrative Procedures, the paper Declarations with original signatures will be retained for two years after expiration of the time for filing a timely appeal.

147, 155 (1982). Class certification has serious implications, as a class member is bound by the judgment for res judicata purposes. Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004).

Given the consequences of a class proceeding, several prerequisites must exist for certification to be appropriate. Fed. R. Civ. P. 23 itself contains four requirements:

> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The named plaintiff, as the purported class representative, bears the burden of showing that all of these requirements are met. Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 257 (D. Mass. 2005). Because of the serious consequences of certification, the plaintiff's burden is a heavy one, and the prerequisites to a class action under Rule 23(a) cannot be presumed. See General Tel., 457 U.S. at 161. Rather, courts must engage in a "rigorous analysis of the prerequisites established by Rule 23 before certifying a class." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). Courts must also exercise their "power to test disputed premises early on if and when the class action would be proper on one premise but not another." Tardiff v. Knox County, 365 F.3d 1, 4-5 (1st Cir.2004). Under this rigorous standard, plaintiffs have not met their burden of showing that class certification is appropriate.

I.  **PLAINTIFFS HAVE FAILED TO SATISFY THE NUMEROSITY REQUIREMENT.**

The numerosity requirement is met only if joinder of all the class members would be "impracticable." Fed. R. Civ. P. 23(a). "[N]umbers alone are not usually determinative" of this inquiry. Andrews v. Bechtel Power Corp., 780 F.2d 124, 131 (1st Cir. 1985). Rather, the "facts and circumstances of each case are to be taken into account," and class certification is properly denied if joinder of the members would be feasible. Id. Here, plaintiffs have failed to satisfy the numerosity requirement for a number of reasons.

A.  **"Future Candidates" Should Not Be Considered In The Numerosity Analysis.**

As an initial matter, in attempting to meet their burden, plaintiffs improperly rely on "future candidates who have an interest in having a non-discriminatory exam." Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(2) ("Pls.' Mot.") at 3-4. Plaintiffs have requested the Court to certify two classes: (1) "all minorities (black and Hispanic) who took the civil service examination for the position of fire fighter within the Commonwealth of Massachusetts in the years 2002 and 2004"; and (2) "all minority applicants for the position of police officer within the Commonwealth of Massachusetts who took the entry-level civil service examination for such position in the years 2003 and 2005." Id. at 2. "Future candidates" are not part of either of these classes and thus should not be considered in the numerosity analysis.

Moreover, to the extent plaintiffs are claiming that such candidates should be included in the class, their argument should be rejected. This Court has held that, in order for class certification to be appropriate, plaintiffs must define "a cognizable class defined by stable and objective factors." Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000).

Otherwise, class certification will be denied because the "class membership is not ascertainable." Id. Here, plaintiffs' proposed class of "future candidates who have an interest in having a non-discriminatory exam," Pls.' Mot. at 3-4, is indeterminate and not defined by "stable and objective factors." Kent, 190 F.R.D. at 278. Thus, if plaintiffs are in fact seeking to have "future candidates" included in the class, their request should be denied. See id. at 278-79 & cases cited therein.[2] Class certification is particularly inappropriate here given that injunctive relief relating to the content and administration of future HRD examinations will benefit all future minority applicants. See Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Serv. Comm'n, 354 F. Supp. 778, 783 (D. Conn.), aff'd in part & rev'd in part on other grounds, 482 F.2d 1333 (2d Cir. 1973) (finding, in suit challenging police exam as discriminatory, that there was no compelling reason to certify class where there was "some question whether the class ha[d] been adequately defined" and "any equitable relief to which plaintiffs may be entitled would benefit all persons similarly situated").

### B. Plaintiffs' Proposed Class Improperly Includes Individuals Who Would Have No Standing To Maintain This Suit In Their Own Right.

Plaintiffs maintain that the numerosity requirement is met because "hundreds of minorities have taken the police and fire fighter examination from 2002 to the present." Pls.' Mot. at 3. This analysis suffers from several flaws.

---

[2] See also Key v. Borough of Darby, No. Civ. A. 00-888, 2002 WL 32348333, at *1 (E.D. Pa. May 8, 2002) (class composed of, inter alia, individuals who "may reside in the Borough in the future" was too "amorphous" to be certified); Moore v. Western Pennsylvania Water Co., 73 F.R.D. 450, 453 (W.D. Pa. 1977) (class composed of all "black persons who might be employed by the defendant company at some time in the future" was an "amorphous, phantom group, incapable of identification") (quotation marks omitted); Miller v. Krawczyk, 414 F. Supp. 998 (E.D. Wisc. 1976) (similar); Edwards v. Schlesinger, 377 F. Supp. 1091, 1093 (D.D.C.), rev'd on merits sub nom, Waldie v. Schlesinger, 509 F.2d 508 (D.C. Cir. 1974) (similar).

First, it fails to discount those minority applicants who have actually been reached for police or firefighter hiring. See McNeely Decl. ¶ 6. Such individuals would have no standing to contest the examinations and thus are not properly included in the class. See Cutler v. Lewiston Daily Sun, 611 F. Supp. 746, 756 (D. Me. 1985) ("If members of the putative class cannot allege injury in fact, . . . it is obvious that the prerequisites set forth in Rule 23(a) are not satisfied."); McElhaney v. Eli Lilly & Co., 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."); Thomas v. Clarke, 54 F.R.D. 245, 249 (D. Minn. 1971) ("In order to be a member of a class it is necessary that each individual have standing to bring the suit in his own right.").

Second, plaintiffs fail to discount those minorities who took the examination but later removed themselves from the hiring process. See McNeely Decl. ¶ 6. These individuals would likewise have no standing to maintain this suit and should not be considered in the numerosity analysis. See Cutler, 611 F. Supp. at 756; McElhaney, 93 F.R.D. at 878; Thomas, 54 F.R.D. at 249.

Third, plaintiffs do not account for the fact that, in most of the municipalities operating under the civil-service system, the examinations have had no disparate impact at all. There are several factors accounting for this result: (1) some communities have on their own appointed a percentage of minority firefighters or police officers commensurate with the percentage of minorities within the community; (2) a few communities, such as Holyoke, are still operating under the affirmative-action plans required by the Beecher and Castro decrees; (3) in some communities no appointments have been made; and (4) in many municipalities, such as Boston

with regard to firefighters, all the appointments have been veterans, due to the statutory preference set forth in M.G.L. ch. 31, § 26.[3]  See McNeely Decl. ¶¶ 4-5.  Due to lack of injury, minorities applying for positions in these communities would not have standing to challenge the examinations.

Taking Boston for example, 53 firefighters have been appointed from the 2004 list to date.  See id. ¶ 5.  All of these appointments have been veterans.  See id.  Thus, if any disparate impact exists in Boston at all, it is a result of the statutory preference for veterans—not the entrance examinations.  Accordingly, none of the minorities in Boston[4] would have standing to challenge the firefighter examinations and would not be proper members of the class.  See Cutler, 611 F. Supp. at 756; McElhaney, 93 F.R.D. at 878; Thomas, 54 F.R.D. at 249.

In sum, the two proposed classes of "all minorities . . . who took the civil service examination for the position of fire fighter" and "all minority applicants for the position of police officer . . . who took the entry-level civil service examination" are fatally overbroad.  Plaintiffs have therefore failed to meet their burden of establishing numerosity.

### C.   Joinder Would Not Be Impracticable.

In light of the above discussion, plaintiffs have not demonstrated that joinder would be impracticable.  Due to the lack of adverse impact in many communities, the potential class could have fewer than ten members for firefighters and fewer than 45 members for police officers.  See McNeely Decl. ¶ 7.  Even discounting just the consent-decree communities and the veteran-only

---

[3] Under this statutory provision, all veterans who pass a civil-service examination will be automatically placed ahead of non-veterans, regardless of their scores.  See McNeely Decl. ¶ 4.

[4] In 2004, 333 minority Boston residents took the firefighter examination.  See McNeely Decl. ¶ 5.

communities such as Boston, the number of minority applicants on the 2004 firefighter's list is reduced to 79. See id. ¶ 6. Moreover, the number of potential hires could be even smaller than 79 after discounting individuals who have already been reached for hiring and those who may have removed themselves from the process altogether. See id.

Although plaintiffs suggest that numerosity is satisfied if the class exceeds 40 members, see Pls.' Mot. at 4, courts have made clear that there is no magic number at which class certification is appropriate. See, e.g., Andrews, 780 F.2d at 131; see also Hum v. Dericks, 162 F.R.D. 628, 634 (D. Haw. 1995) ("Joinder of a small group may prove impracticable, while joinder of a large group may be more possible."); see generally 7A Charles Alan Wright, et al., Federal Practice and Procedure § 1762 (3d ed. 2005). Rather, the "facts and circumstances of each case are to be taken into account" to determine whether joinder would be impracticable. Andrews, 780 F.2d at 131. The First Circuit has identified two factors to be considered in this analysis: (1) whether all the members of the class are from the same geographic area, and (2) whether class members can be easily identified. Id. at 131-32. Both of these factors strongly support denial of class certification in this case.

First, the geographic considerations demonstrate that joinder would not be impracticable. In Andrews, the First Circuit held that, even though the class potentially consisted of 49 members, the district judge properly denied class certification because all the members resided in the same geographic area. Numerous other courts have found likewise. E.g., Fewlass v. Allyn & Bacon, Inc., 83 F.R.D. 161, 165 (D. Mass. 1979) (denying certification in absence of allegation that class members did not all reside within a reasonable distance of the court); Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980) (denying certification where identity and addresses of potential

class members were readily ascertainable, and all lived in a compact geographical area); Hum, 162 F.R.D. at 634 (denying certification where most of the potential class members resided in the state); Independent Sch. Dist. #89 v. Bolain Equip. Inc., 90 F.R.D. 245, 248 (W.D. Okla. 1980) (similar); United Steelworkers of Am. v. Jarl Extrusions, Inc., 405 F. Supp. 302 (E.D. Tenn. 1975) (similar). Here, all the potential class members reside in Massachusetts and could easily be joined in this suit. Accordingly, class certification is not appropriate.

Second, all the minority individuals who took the civil-service examinations are named on, and therefore "easily identified" from, the certification lists created by HRD. Andrews, 780 F.2d at 132. The decision in Pina v. City of East Providence, 492 F. Supp. 1240 (D.R.I. 1980), is factually analogous. There, the court denied class certification in an employment discrimination suit brought by black firefighter applicants challenging the city's use of a ranking and certification system. The plaintiffs had sought to certify a class consisting of all black individuals who had been discriminated against under the ranking system. See id. at 1248-49. In denying their request, the court found that, "[b]ecause all minority applicants who took the examination or who took and passed the examination and were accordingly ranked are identifiable, the class is neither numerous nor is joinder of all members impracticable." Id. at 1249. The same conclusion should obtain here. Because the potential class members are easily identifiable from the certification lists, plaintiffs have failed to demonstrate that joinder would be impracticable. See id.; see also Hum, 162 F.3d at 634 ("Where class members may be easily identified, joinder is . . . more practicable."); accord Garcia, 618 F.2d at 267; Henry v. Texas Tech Univ., 466 F. Supp. 141, 155 (N.D. Tex. 1979); White v. City of Suffolk, 460 F. Supp. 516, 522-23 (E.D. Va. 1978).

For all these reasons, this Court should hold that plaintiffs failed to meet their burden of demonstrating numerosity.

## II. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE INTERESTS OF THE CLASS MEMBERS WILL BE ADEQUATELY REPRESENTED.

Plaintiffs claim that the class members will be adequately represented because "the named plaintiffs' claims are the same that they assert on behalf of similarly situated candidates for the position of police officer and fire fighter." Pls. Mot. at 6. This bald allegation does not suffice to meet the adequacy-of-representation requirement.[5]

As an initial matter, plaintiffs cannot represent the class because they do not have standing to bring at least one of their two claims. Specifically, plaintiffs have no standing with regard to Count IV of their amended complaint, which asserts violations of the Beecher and Castro consent decrees.[6] It is axiomatic that the named representatives of a class must have standing to bring the suit in their own right. E.g., Tucker v. Berkshire Life Ins. Co., No. 98-12575, 1999 WL 329727, at *5 (D. Mass. May 19, 1999) (plaintiff "cannot maintain class action claims . . . which he does not have standing to assert as an individual"); accord Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996); Foster v. Center Township of LaPorte County, 798 F.2d 237, 244 (7th Cir. 1986). Thus, because these plaintiffs lack standing with regard to their

---

[5] As the Supreme Court observed in General Telephone, the commonality, typicality, and adequacy-of-representation requirements of Rule 23(a) tend to bleed into one another. 457 U.S. at 157 n.13. To avoid repetition, this memorandum will frame its discussion under "adequacy of representation," with the understanding that the Rule 23(a) requirements merge.

[6] The standing argument is detailed in Part II of the State defendants' February 6, 2006, Memorandum of Law in Support of Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1), which is incorporated by reference.

9

Beecher and Castro claims, they cannot qualify as representatives of a class purporting to raise the same claims.

Further, plaintiffs, who are all African-American, have not demonstrated that they will adequately represent the Hispanic members of the proposed class. Plaintiffs have submitted no evidence showing that the two groups are similarly situated. In fact, in December 2005, plaintiffs filed a supplemental complaint in this case challenging the City of Lynn's decision to request a special certification list of Spanish-speaking candidates pursuant to HRD Personnel Administration Rule 8. According to the supplemental complaint, the State defendants "granted such request and, as a result, the plaintiffs were not considered for civil service appointment to the position of Lynn firefighter." Pls.' Supplemental Compl. ¶ 2. The potential for intra-class conflict is clear. As this Court has held, "[t]he standard of fair and adequate representation requires that plaintiffs have no interests antagonistic to those of the class." Pagan v. Dubois, 884 F. Supp. 25, 28 (D. Mass. 1995). Because a potential conflict exists between the plaintiffs and the Hispanic class members they seek to represent, this Court should deny class certification. See id. (declining to certify class where "potential conflict" existed between class members of different Latino cultures).

## CONCLUSION

For the above reasons, the State defendants respectfully request that the Court deny plaintiffs' motion for class certification under Fed. R. Civ. P. 23(b)(2).

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS, HUMAN RESOURCES DIVISION, and RUTH BRAMSON, in her capacity as Personnel Administrator of the Human Resources Division,

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

 /s/ Sookyoung Shin
Ronald F. Kehoe, BBO # 264260
Sookyoung Shin, BBO # 643713
Assistant Attorneys General
Government Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 727-2200, ext. 3221 (Kehoe), ext. 2052 (Shin)

Dated: March 7, 2006

## Certificate of Service

      I hereby certify that on March 7, 2006, I served this Opposition and accompanying Exhibits on counsel for all other parties by filing it electronically and, where necessary, by mailing it by first-class U.S. mail, postage prepaid, or by delivering by courier.

                                                  /s/ Sookyoung Shin
                                                  Sookyoung Shin
                                                  Assistant Attorney General

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

        Plaintiffs,

v.

CITY OF LYNN, *et al.*,

        Defendants.

CIVIL ACTION
NO. 05-10213-PBS

### DECLARATION OF SALLY McNEELY.

I, Sally McNeely, do hereby state under the pains and penalties of perjury:

    1.    I have been employed by the Human Resources Division ("HRD"), an agency of the Commonwealth of Massachusetts, since May 1, 1983. My current title is "Director, Organizational Development Group." The Organizational Development Group is responsible, among other things, for the administration and marking of Civil Service examinations for entry-level municipal firefighters and police officers, and for the certification to municipalities of lists of eligible applicants for such positions.

    2.    I recently received an equity-evaluation formula from Rick R. Jacobs, Ph.D, HRD's expert in industrial psychology. According to Dr. Jacobs's analysis, this formula will show any shortfalls in minority hiring for each municipality in the Commonwealth.

    3.    I ran Dr. Jacobs's formula against the data for the 2004 firefighter exam and 2003 police officer exam. The results are attached to this Declaration as Attachments 1 and 2.

    4.    As can be seen from the results, many municipalities have no shortfall in minority hiring. There appear to be several factors accounting for this result.

    a.    Some municipalities have on their own appointed a percentage of minority firefighters or police officers commensurate with the percentage of minorities within their community. An example is Revere for firefighter hiring.

    b.    A few communities are still operating under the affirmative-action plans required by the Beecher and Castro decrees. Holyoke, for example, is still operating under both decrees.

    c.    Some communities, such as Cambridge, have made no appointments from the lists.

    d.    In many municipalities all the appointments have been veterans, due to the statutory preference set forth in M.G.L. ch. 31, § 26. Under this provision all veterans who pass a civil-service examination will be automatically placed ahead of non-veterans, regardless of their scores.

5.    There are a substantial number of municipalities with all-veteran appointments—including Boston, where 333 minorities took the 2004 firefighter exam. All 53 firefighters appointed in Boston from the 2004 list have been veterans.

6.    If the all-veteran communities and the consent-decree communities are discounted, the total number of minority applicants from the 2004 list is reduced to 79. The number of minorities who are left for potential hiring could be even smaller than 79 if you discount individuals who have already been reached for hiring and those who may have removed themselves from the process altogether.

7.      Based on Dr. Jacobs's formula, the total shortfall in minority hiring statewide, taking into account the statutory veteran's preference, is 6.63 for 30 communities in which firefighters were hired from the 2004 list (average 0.221 per community) and 43.881 for the 73 communities in which police officers were hired from the 2003 list (average 0.6 per community).

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON THIS 7TH DAY OF MARCH 2006.

/s/ Sally McNeely
Sally McNeely

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACOB BRADLEY, *et al.*,<br><br>       Plaintiffs,<br><br>     v.<br><br>CITY OF LYNN, *et al.*,<br><br>       Defendants. | CIVIL ACTION<br>NO. 05-10213-PBS |

### DECLARATION OF RICK R. JACOBS, Ph.D

I, Rick R. Jacobs, do hereby state under the pains and penalties of perjury:

  1.  Since January 2004, I have served as president and CEO of EB Jacobs, a consulting firm located in State College, Pennsylvania, that provides selection, promotion, and other assessment services to a variety of organizations including private sector employees, police and fire departments, and transportation organizations. I am also a professor in the Department of Psychology at Pennsylvania State University, a position I have held since August 1979.

  2.  Prior to my work at EB Jacobs, I worked as Vice President of Consulting at SHL North America (formerly the Consulting Firm of Landy, Jacobs and Associates, Inc.), a consulting firm that provides selection and assessment services. I held this position from January 1980 to December 2003. Additionally, from September 1976 to August 1979, I was an Assistant Professor of Psychology at the University of California at Riverside.

3. I received my B.A. in psychology from the University of California at Los Angeles in 1972, my M.A. in psychology from San Diego State University in 1974, and my Ph.D in psychology from the University of California at Berkeley in 1978.

4. To date, I have published approximately 40 articles in the area of industrial and organizational psychology on the topics of selection, performance assessment, and other measurement issues.

5. I have been asked by the Commonwealth of Massachusetts' Human Resources Division ("HRD") to suggest an equity-evaluation methodology that can be used to quantify how many Black and Hispanic candidates would have been expected to be hired as firefighters or police officers in the Commonwealth absent adverse impact. My positions are as follows.

6. The starting point for the analysis should be the total number of candidates who completed the written test. For all adverse-impact calculations, the denominator for minority and non-minority group membership should correspond to the number of individuals who registered, appeared for, and completed the written examination.

7. My review of the firefighter candidate data for several years of hiring indicates that it is virtually impossible to be appointed to the position of firefighter in any jurisdiction unless you are a resident of that jurisdiction. Thus, all data analysis for a given jurisdiction should be based only on those individuals who applied for the job as a resident.

8. Although veteran's status significantly increases the chances of being appointed, it is still possible to be hired as a firefighter even if you are not a veteran. Calculations should therefore include individuals regardless of veteran's status.

9. The calculations should go directly to the issue of which individuals were appointed and which were not. I see no value in performing equity evaluations for intermediate steps in the appointment process—such as certifications.

10. In calculating the minority shortfall in each community, the minority passing rate should be set at 80% of the non-minority passing rate, consistent with the definition of no adverse impact.

11. I believe calculations done in the manner outlined above will correctly indicate any shortfalls in minority hiring for the municipalities in the Commonwealth.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON THIS 6TH DAY OF MARCH 2006.

/s/ Rick R. Jacobs
Rick R. Jacobs