UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
JACOB BRADLEY, NOAH BRADLEY, KEITH          )
RIDLEY, and JARED THOMAS,                   )
individually and on behalf of a class of    )
similarly situated individuals,             )
                    Plaintiffs,             )
                                            )
v.                                          )   Civil Action No. 05-10213-PBS
                                            )
CITY OF LYNN; EDWARD J. CLANCY, JR.,        )
in his capacity as Mayor of the City of Lynn; )
the COMMONWEALTH OF MASSACHUSETTS,          )
DIVISION OF HUMAN RESOURCES; and            )
RUTH BRAMSON, in her capacity as Personnel  )
Administrator of the Division of Human Resources )
of the Commonwealth of Massachusetts,       )
                    Defendants.             )
_____ )

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P 23(b)(2)**

**I.      INTRODUCTION**

The plaintiffs in this action submit this reply to the State Defendants' Opposition to Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23(b)(2). As set forth below, the arguments presented in Defendants' Opposition do not provide any reason not to grant Plaintiffs' motion, and since Plaintiffs meet all the requirements for class certification pursuant to Fed. R. Civ. P. 23(b)(2), Plaintiffs' motion should be granted.

Plaintiffs assert that the entry-level examination for police officers and firefighters given by Defendants has an overwhelmingly disparate impact upon minority applicants, and cannot be shown to be valid under the criteria enumerated by Congress, the federal courts, and the EEOC.

Courts in this district have typically held that "a 40 person class is 'generally found to establish numerosity.'" McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004), citing In re Relafen Antitrust Litigation, 218 F.R.D. 337, 342 (D.Mass. 2003); see also McAdams v. Massachusetts Mut. Life Ins. Co., 2002 WL 1067449 (D.Mass. 2002).[1]  Moreover, federal courts in many other districts have certified exactly this type of class in nearly identical litigation in other cities and states across the country.  See, e.g., Lewis v. City of Chicago, 2005 WL 693618 (N.D. Ill. March 22, 2005) (granting judgment on the issue of liability to class of plaintiffs challenging racial discrimination in hiring by the Chicago Fire Department).[2]

The Defendants base their opposition to class certification primarily on their argument that the plaintiff class would not satisfy the numerosity requirement for certification.  For the reasons discussed below, their attacks on numerosity fail on a number of grounds.  The plaintiff classes in this case number in the thousands,[3] and there

---

[1] Although there is no precise minimum number of affected individuals needed to meet the numerosity requirement, courts have generally found that this number does meet the requirement.

[2] See also Los Angeles County v. Davis, 440 U.S. 625 (1979) (class action challenging racial discrimination in hiring by the Lost Angeles County Fire Department); Berkman v. City of New York, 705 F.2d 584 (2d Cir. 1983) (class action challenging gender discrimination in hiring by the New York City Fire Department); Assoc. Against Discrimination in Employment v. City of Bridgeport, 594 F.2d 306 (2d Cir. 1979) (class action challenging racial discrimination in hiring by the Bridgeport Fire Department); Vulcan Society of the New York City Fire Dept. v. Civil Service Comm'n, 490 F.2d 387 (2d Cir. 1973) (class action challenging racial discrimination in hiring by the New York City Fire Department); Hood v. New Jersey Dept. of Civil Service, 680 F.2d 955 (3d Cir. 1982) (describing class action challenging racial discrimination in hiring in twelve large cities in New Jersey); Brunet v. City of Columbus, 1 F.3d 390 (6th Cir. 1993) (class action challenging gender discrimination in hiring by the Columbus (Ohio) Fire Department)Arnold v. Ballard, 390 F. Supp. 723 (N.D. Ohio 1975) (class action challenging racial discrimination in hiring by the Akron (Ohio) Police Department); Dozier v. Chupka, 395 F. Supp. 836 (S.D. Ohio 1975) (class action challenging racial discrimination in hiring by the Columbus (Ohio) Fire Department).

[3]   Data which plaintiffs have acquired through this litigation and through DeLeo v. City of Boston, Civil Action No. 03-12538-PBS (D. Mass. 2004), demonstrate that hundreds of minorities have taken the police and firefighter examination from 2002 to the present and that hundreds, if not thousands, more minorities will take the examination in future administrations.  Indeed, the record in this case shows that 1,713 minorities took the 2002 fire exam, and 1,165 minorities took the 2003 police officer exam. As just one example of the

is simply no way that Defendants' attacks on numerosity could bring that number low enough to defeat certification (even if the Court were to credit some of Defendants' arguments). Moreover, as stated above and in note 2, courts have routinely certified cases that are identical to this type of a challenge.

While Defendants make vague assertions that the number of potential class members falls below 10 for the firefighter class and below 45 for the police officer class, Opposition at 6, Defendants fail to adequately explain how those numbers are derived. Moreover, the unsupported and vague assertions that the number of potential class members would fall below 40 for the firefighter class is based on the unwarranted exclusion of various groups of minority applicants from the class.

Most significantly, Defendants' argument is based on the suggestion that the proposed class would only include those minority applicants who would have been reached for firefighter hiring absent a discriminatory hiring process.[4] However, this suggestion is not correct. The law is clear that a class seeking prospective relief on a discrimination claim properly includes **all** minority applicants who took Defendants' discriminatory examination, as this did not permit them to "compete on an equal footing." See Texas v. Lesage, 528 U.S. 18, 21 (1999). Further, the First Circuit made clear in Donahue v. City of Boston, 371 F.3d 7, 11-12 (1st Cir. 2004), that individuals subjected to a discriminatory hiring process have standing to challenge the process, even if the

---

vast numbers of potential class members, Defendants admit that in 2004, in Boston alone, "333 minority Boston residents took the firefighter examination." Id. Since these 333 minority applicants were all denied the opportunity to "compete on an equal footing," they have standing to be considered as part of the proposed class. See Lesage, 528 U.S. at 21; Donahue, 304 F.3d at 119.

4    In making this argument, Defendants have applied a statistical formula to estimate the number of minorities who might have been hired had there been racial parity in hiring. As described below, this formula has no relevance to the determination of the number of individuals who have standing to challenge a discriminatory hiring process and who would be members of the plaintiff classes.

presence of so many other applicants higher on the hiring list would have made it impossible for those individuals to have been hired anyway. Accordingly, the proposed classes in this case consist of all minorities (black and Hispanic) who took or will take Defendants' civil service examination for the position of firefighter or police officer within the Commonwealth of Massachusetts, not just those who would have actually been hired (if it were even possible to determine who those are).

In addition, Defendants make other attacks on numerosity, for example by claiming that the classes would have to exclude candidates in consent-decree communities and communities that have recently hired all-veteran classes. However, neither of these arguments has any merit either (and even if they did, these would not bring the class sizes down so far in number as to defeat certification). Candidates in those communities are equally entitled to take a non-discriminatory examination that might lead them to be considered for selection either in their home communities or in other communities seeking qualified non-resident candidates. The Beecher and Castro consent decrees required the Commonwealth to implement non-discriminatory examinations for firefighter and police hiring, which the Commonwealth never did, and that requirement of the decrees affects all applicants, whether or not they are in communities that still fall under the hiring requirements of the decrees. Moreover, with regard to the applicants for hire in communities that have recently hired only veterans, non-veteran candidates in these communities were also able to list other communities in which they sought to be hired and thus should not be excluded from the calculation of potential class size; in addition, in these communities, veteran minority candidates are more likely to have scored lower than

4

veteran non-minority candidates, and so the discriminatory examination thus would still have an impact in these communities on minority candidates.

Defendants' calculations regarding class size have other flaws as well. First, Defendants only include in their calculations for the firefighter class data from the 2004 firefighter examination, McNeely Decl. ¶ 7, even though hiring was still being conducted under the results of the 2002 examination during the relevant limitations period. In addition, Defendants' calculations ignore future applicants, Opposition at 3-4, who are part of the class challenging prospective relief.[5]

It is clear that the classes that Plaintiffs seek to certify run into the thousands; therefore, as set forth herein and in the Plaintiffs' original memorandum in this matter, the Court must grant the Plaintiffs' class certification motion.

## II.    PLAINTIFFS SATISFY THE NUMEROSITY REQUIREMENT OF RULE 23(a)(1)

### A.    All Minority Applicants Are Properly Included in the Proposed Classes

Although Defendants attempt to defeat numerosity by arguing that only those minority applicants who would have been reached for hiring should be included in the proposed classes, this argument is foreclosed by First Circuit precedent holding that "a plaintiff may establish standing for prospective relief if he or she has or is likely to be 'expos[ed] to unequal treatment.'"[6] Donahue v. City of Boston, 304 F.3d 110, 119 (1st Cir.

---

[5]    To the extent there was any doubt earlier as to whether such a class would include future applicants, such doubt is dispelled under the Second Supplemental Complaint recently filed by the plaintiffs.

[6]    Moreover, in cases such as this one that reflect an extreme disparate impact such that little to no minorities are employed in the position at issue, the courts have made clear that minorities affected by discrimination are not limited to those who apply and fail to be hired, but also include those who are deterred from applying by the discriminatory practices. As the court explained in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365 (1977),

5

2002) (citing Wooden v. Board of Regents of the University System of Georgia, 247 F.3d 1262, 1279 (11th Cir. 2001)).  Similarly, the U.S. Supreme Court recently summarized the difference between discrimination claims for damages and those for prospective relief as follows:

> [A] plaintiff who challenges an ongoing race-conscious program and seeks forward-looking relief need not affirmatively establish that he would receive the benefit in question if race were not considered.  *The relevant injury is "the inability to compete on an equal footing."*

Texas v. Lesage, 528 U.S. 18, 21 (1999) (emphasis added) (quoting Northeastern Fla. Chapter of Assoc. Gen. Contractors v. Jacksonville, 508 U.S. 656, 666 (1993)).

Indeed, Plaintiffs need not have been anywhere near the top of an eligibility list or in a position to be reached for hiring in order to have standing to pursue a discrimination claim for prospective relief.  As the First Circuit explained in Donahue, even though hundreds of applicants had scored higher than the plaintiff in that case on the relevant eligible lists, and therefore the plaintiff "would not have been hired by the [Boston Police Department] even under a race-neutral policy," since the plaintiff "was not able to compete on an equal footing with other candidates because of his race," he had established "a key element of standing to seek forward-looking relief."  Donahue v. City of Boston, 371 F.3d 7, 11-12 (1st Cir. 2004) (citing Donahue, 304 F.3d at 119-20).[7]

---

> If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs.  The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, his responses to casual or tentative inquiries, and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups.

[7]     Moreover, there is no way to know where any of the minority applicants would have stood on the eligibility list had there been a non-discriminatory examination.  It is possible that minorities would have comprised the tops of all lists and thus been hired in much greater numbers than a statistical formula would predict.

6

Since *all* minority applicants in Massachusetts had the right to take a non-discriminatory examination under Title VII, Beecher, and Castro, and since Defendants denied them that opportunity, *all* such applicants have standing to pursue a discrimination claim and all should be counted in the numerosity analysis.

The fact that "the inability to compete on an equal footing" constitutes an injury relevant to a discrimination claim for prospective relief, see id., dispenses with Defendants' various arguments against numerosity. First, Defendants mistakenly assert that the number of class members should "discount those minority applicants who have actually been reached for police or firefighter hiring." Opposition at 5. These applicants, however, were subjected to a discriminatory exam and have standing the challenge the exam. Moreover, because minority applicants fared worse than white applicants on the exam statistically, it is likely that minority applicants who were reached for hiring may well have been hired sooner if they had not been further down the eligibility list because of the discriminatory examination; thus, the may be entitled to a remedy due to their delay in hiring.

Second, Defendants contend that the class would have to exclude "minority applicants who took the examination but later removed themselves from the hiring process." However, it is understandable that those who scored so low that they knew they had no chance of being reached for hire would be likely to drop out of the process. Opposition at 5. It is evident that many minority applicants who took the examination and later removed themselves from the hiring process probably only did so because they did not achieve scores in the 90s or above, which are the minimum scores required in order to have any effective chance to be reached for hiring. Their score on the exam effectively

7

was their rejection notice. Again, if they had been allowed to compete on an "equal footing," i.e., if Defendants had provided a job-related, non-discriminatory examination, such minority applicants might well have achieved higher scores and felt that it was worthwhile to remain in contention for hiring.

This last point also dispenses with Defendants' assertion that minority applicants in "municipalities operating under the civil-service system, [where] the examinations have had no disparate impact" should be excluded from the proposed classes. Opposition at 5. As the plaintiffs' expert reports have made clear, the exam has had a stunning disparate impact throughout the Commonwealth. Defendants argue that some municipalities have not done sufficient hiring so as to make it statistically likely that minorities would have been hired even under a non-discriminatory system. However, as explained above, every minority applicant has standing to challenge the exam, even if there was only a slim chance of their being hired, and thus they would still all properly be included in a class seeking a non-discriminatory exam.

Defendants also argue that there has been no disparate impact in communities still under the Beecher and Castro hiring decrees, and thus minority applicants from those communities should be excluded from the class. However, this assertion is incorrect for several reasons. First, the Beecher and Castro decrees required civil-service municipalities to adopt remedial-hiring programs (i.e., one-for-one or one-for-three hiring requirements) as merely an *interim* measure to redress past discrimination while HRD prepared a non-discriminatory examination. However, HRD never moved past this interim measure to create a non-discriminatory examination, and Defendants' failure to meet this requirement of the decrees is exactly what this case is challenging. Whether or not parity

8

has resulted or a measurable disparate impact can be described in a given municipality, each and every minority applicant has a right under Title VII, as well as under the Beecher and Castro decrees, to take a job-related, non-discriminatory examination, and Defendants' continued failure to provide such an examination constitutes an injury sufficient to establish standing for each minority applicant who has thusly been deprived of the ability to "compete on an equal footing."  See Lesage, 528 U.S. at 21; Donahue, 304 F.3d at 119.[8]

Indeed, Defendants' failure to implement a non-discriminatory examination is the primary focus of this case, and such failure affects all minority applicants, whether or not they are residents of consent decree communities.  As set forth in further detail in Plaintiffs' recently filed Opposition to State Defendants' Motion to Dismiss, the Beecher and Castro decrees were based on findings from the First Circuit and this Court that the public-safety entrance examinations administered by the Commonwealth were themselves discriminatory.  See Castro v. Beecher, 522 F. Supp. 873, 874 (D. Mass. 1981) ("The Court of Appeals held that the civil service examinations were racially discriminatory."). Accordingly, the Court also ordered Defendants to stop using the discriminatory examinations and not to use any examinations in the future unless they were "demonstrably job-related and validated in accordance with the [EEOC Guidelines]." Beecher, 371 F. Supp. at 521 ¶ 4; see also Castro, 365 F. Supp. at 662 ¶ 3.  Such relief benefited not only minority applicants in communities with hiring obligations under the decree but rather benefited ***all minority applicants*** from ***any*** civil service community in the Commonwealth.  For the same reason, the Court's order to create a non-

---

[8]   Also, as noted above, applicants can list three municipalities for which they want to be considered for hiring.  Thus, excluding applicants from certain communities would ignore the fact that they could have been considered for hiring in other communities.

9

discriminatory examination also benefits minority applicants living in communities that have been released from their obligations under the consent decrees. In this regard, minority applicants from every civil-service community, whether or not the community ever fell under the remedial-hiring portion of the decree, were the intended and actual beneficiaries of the non-discriminatory examinations the Commonwealth was required to create and administer. Since Defendants have failed to create and administer a non-discriminatory selection system, and since minority applicants in every civil-service community have been forced to take Defendants' discriminatory examination, all such applicants have suffered the injury of competing on an unequal footing whether or not the community in which they reside is now or ever has been subject to the remedial-hiring provisions of the consent decrees.

Similarly, although Defendants argue for exclusion of minority applicants from Boston and other communities in which all firefighters appointed from the 2002 and 2004 eligible list have been veterans, this argument also fails because all minority applicants in all civil-service communities have had to take Defendants' discriminatory examination and compete on an unequal footing. See Donahue, 304 F.3d at 119. Importantly, because of the adverse impact of the examination, minority veterans are likely to be at or near the bottom of the veterans list, just as minority non-veteran applicants are to be at the bottom of the non-veterans list. Thus, this argument ignores the fact that minority veteran applicants would have had a greater chance of being reached for hire absent Defendants' discriminatory examination. Furthermore, since the eligibility list based on the 2004 examination is still open (until later this year), it has not

been finally determined as of yet which communities may get past their veteran applicants on their hiring lists.

Indeed, as discussed above, Plaintiffs need not have been anywhere near a position to be reached for hiring in order to be included in the proposed class. As the First Circuit explained in Donahue, even though hundreds of applicants had scored higher than the plaintiff in that case on the relevant eligible lists, and therefore the plaintiff "would not have been hired by the [Boston Police Department] even under a race-neutral policy," since the plaintiff "was not able to compete on an equal footing with other candidates because of his race," he had established "a key element of standing to seek forward-looking relief." Donahue v. City of Boston, 371 F.3d 7, 11-12 (1st Cir. 2004) (citing Donahue, 304 F.3d at 119-20). Accordingly, even where an extensive list of eligible veterans in a given community meant that non-veterans were too far down the list to be reached for hire, since minority applicants in Boston had a right to take a non-discriminatory examination under Beecher and Castro, and the defendants denied them that opportunity, such applicants have standing to pursue an equal protection claim.[9]

Finally, even under Defendants' calculations, these exclusions would not bring the class sizes below 40. Based on Defendants' own evidence and arguments, excluding minority applicants from consent decree communities and communities that hired only veterans from the 2004 exam would bring the proposed firefighter class size

---

[9] To the extent that the Commonwealth argues that non-veteran minority applicants in communities such as Boston, which made all appointments from the veteran list, could never have been hired and should therefore be excluded, this argument ignores the fact that such non-veteran applicants could move to other communities with fewer veterans on the eligible list but still not have scored high enough to be hired among the eligible non-veteran candidates due to Defendants' discriminatory examination.

to 79. McNeely Decl. ¶ 6. Even this number, although drastically understating the actual class size, would be sufficient to satisfy the numerosity requirement of Rule 23.

### B.   Future Candidates Are Properly Included in the Proposed Classes

Defendants also argue that future candidates should not be included in the proposed classes on the grounds that a proposed class must be "defined by stable and objective factors." Opposition at 3. Although Plaintiffs agree that a proposed class should be defined by such factors, the use of such "stable and objective factors" in no way excludes consideration of future applicants from a determination of numerosity. Clear First Circuit precedent holds that the party moving for certification need not show the exact identities of class members and that "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." McCuin v. Secretary of Health and Human Services, 817 F.2d 161, 167 (1st Cir. 1987); see also Swack v. First Credit Suisse First Boston, 230 F.R.D. 250, 258 (D. Mass. 2005) (inferring numerosity where plaintiff alleged that an uncertain number of purchasers of a company's stock were potential class members). Accordingly, the mere fact that one may not know in advance the exact identities of the minority applicants who will take the next administration of the examination does not mean that the *class itself* is not "defined by stable and objective factors," and therefore cannot be a reason not to count such applicants for purposes of determining numerosity. Indeed, to the contrary, the record makes clear that a great many minority applicants throughout the Commonwealth will take the public-safety entrance examinations at the next administration, and the Court may infer numerosity from this showing alone.[10]

---

[10]   The fact that one cannot know with certainty the identities of all future applicants dispenses with the Commonwealth's argument discussed next, that joinder of all potential plaintiffs is not impracticable.

12

### C. Joinder Would Be Impracticable

As discussed above, Defendants fail to establish that so many members of the proposed classes should be excluded so as to bring the potential class sizes to a number below 40. On the contrary, the number will be very large, making joinder eminently impracticable.

Courts in this district have typically held that "a 40 person class is 'generally found to establish numerosity.'" McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004), citing In re Relafen Antitrust Litigation, 218 F.R.D. 337, 342 (D.Mass. 2003); see also McAdams v. Massachusetts Mut. Life Ins. Co., 2002 WL 1067449 (D.Mass. 2002). However, in employment cases which challenge a common policy, in which the named plaintiffs serve effectively as "private attorneys general," and in which other considerations make joinder of all potential class members impracticable, much smaller classes have been certified. See, e.g., Rosario v. Cook County, 101 F.R.D. 659, 661 (N.D. Ill. 1983) (certifying class of 20 in discrimination case). Defendants have utterly failed to show that the classes in this case would fall below this requirement.

Indeed, even Defendants' most severely limited – as well as severely flawed – estimates of the numbers of class members puts the number at no less than 45 for the class challenging the police exam (which is itself sufficient to meet the numerosity requirement) and 10 for the portion of the class that took the 2004 firefighter exam. Even under this flawed calculation, adding in minority applicants who took the 2002 firefighter examination and applicants who may take the 2006 exam could bring this number beyond 40.

13

Defendants also assert that the fact that members of the proposed classes would all, presumably, live in the Commonwealth should weigh against a finding of numerosity. Opposition at 7. This argument puts the geographical consideration backward, as courts typically find that the fact that class members *are* geographically dispersed weighs *in favor* of a finding of numerosity. See, e.g., Swack, 230 F.3d at 259 ("[t]he difficulty that the size of the potential class poses for joinder is exacerbated by the geographical diversity of the class members") (citing Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) (noting that "the plaintiffs also do not come from the same geographic area, which also supports a finding that the numerosity requirement is satisfied"). Accordingly, while geographic diversity might weigh in favor of finding numerosity, a lack thereof does not weigh against it. Id. Where, as here, numerosity may be found based on reasonable inferences from the vast numbers of past and future minority applicants alone, it is simply not relevant whether or not the class members are geographically diverse.

Moreover, despite the Defendants' contentions to the contrary, there *is* geographic diversity in a class that spans from the west side of the Berkshires to the very tip of Cape Cod. Also, of these geographically dispersed class members, it is likely that there are relatively few who would affirmatively make themselves plaintiffs to this lawsuit and take on the challenge of this litigation when at the end of the process, even if the litigation is successful, most individual class members would not be entitled to instatement and may or may not be entitled to any monetary remedy.

For these reasons, the Court must hold that joinder is impracticable and that the class may therefore be certified pursuant to Rule 23(a)(1).

### III. PLAINTIFFS WILL ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS MEMBERS

#### A. Plaintiffs and Class Members Have Standing Under Title VII and Beecher and Castro for the Benefit of Class Members

The Commonwealth's arguments that the plaintiffs have no standing to enforce the Beecher and Castro decrees are completely misguided, both in terms of the Commonwealth's obligation under the consent decrees to create a non-discriminatory examination and in terms of the actual injuries stemming from the Commonwealth's failure to satisfy those obligations.

As an initial matter, the Plaintiffs and class members clearly have standing under Title VII even if the Beecher and Castro decrees did not exist. (See Lewis v. City of Chicago, 2005 WL 693618 (N.D. Ill. March 22, 2005) (granting judgment on liability under Title VII to class of minority applicants for firefighter positions in Chicago).

Moreover, as set forth in further detail in Plaintiffs' Opposition to State Defendants' Motion to Dismiss, the Commonwealth has failed to satisfy its ongoing, independent obligation to the plaintiffs and all other minority applicants to create and administer valid, non-discriminatory examinations for public safety positions. Accordingly, the Commonwealth's conduct caused the plaintiffs a redressable injury, which the plaintiffs are seeking to redress through this action. Moreover, there can be no question that the Interveners have standing to raise this challenge under the consent decrees as parties to the Beecher and Castro litigation.

While Plaintiffs agree that the remedial-hiring provisions of the decrees no longer apply to the City of Lynn and other civil-service communities which at some point achieved parity under the specific terms of the decrees, the decrees themselves

(including the examination provisions) are both still active by their own terms in other communities.  Notwithstanding the fact that many communities have been released from the remedial-hiring provisions of the decrees, **all** civil-service applicants are still entitled to be evaluated using valid and non-discriminatory examinations pursuant to paragraph 4 of the Beecher decree and paragraph 3 of the Castro decree.  By failing to satisfy its obligations under the decree, the Commonwealth has failed to satisfy its obligations toward the plaintiffs and the class they seek to represent, and the plaintiffs therefore have standing to raise this challenge.

### B. Plaintiffs Are Adequate Representatives for Other Minority Applicants

Defendants' final argument is premised on the absurd suggestion that since the plaintiffs are Black, they are not similarly situated to Hispanic members of the proposed classes and therefore will not adequately represent them.  Opposition at 10.  This assertion has no merit whatsoever.  The potential for intra-class conflict is non-existent, as Plaintiffs' attempt to force Defendants to adopt a non-discriminatory examination will benefit both Blacks and Hispanics equally.  The extensive evidence in the record, as well as this Court's findings in the Beecher and Castro decrees, indicate that the Commonwealth's discriminatory examination has a disparate impact on both Black and Hispanic applicants, and it is in this sense that the named plaintiffs are clearly similarly situated to all other minority applicants on whom the examination has a disparate impact.

Accordingly, by challenging Defendants' discriminatory examination, Plaintiffs seek prospective relief that would benefit all minority applicants.  This important point is not diminished by Defendants' irrelevant reference to the fact that the proposed classes,

16

defined in terms of minority applicants who suffer from a discriminatory impact from Defendants' examination, comprise class members of different races from the named plaintiffs.

Nor, for that matter, does any intra-class conflict stem the fact that the named plaintiffs have brought a claim against the City of Lynn for a specific instance of retaliation. This claim in no way establishes either potential or actual "intra-class conflict," as Plaintiffs do not object to the hiring of Spanish-speaking hiring candidates, or in general to the use of special certification lists for hiring Spanish-speaking applicants. In their retaliation claim filed as a Supplemental Complaint, the named plaintiffs challenge the City of Lynn's use of such a certification – for the first time in the history of the Lynn Fire Department – which was clearly done specifically in order to prevent reaching the named plaintiffs for hiring in retaliation against them for initiating this action.

Since Plaintiffs' claims would force Defendants to adopt a truly job-related, non-discriminatory examination that would benefit all members of the proposed classes, they would clearly be adequate representatives of the classes. See, e.g., Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D.Mass. 2003) (finding adequacy of representation where all class members' claims would benefit from establishing the same alleged conduct).

IV. **CONCLUSION**.

For the reasons set forth herein, the Court should grant the requested motion for class certification.

                              Respectfully submitted,

                              JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS,

                              By their attorneys,

                              _s/Shannon Liss-Riordan_____
                              Harold L. Lichten, BBO # 549689
                              Shannon Liss-Riordan, BBO # 640716
                              Alfred Gordon, BBO # 630456
                              Pyle, Rome, Lichten, Ehrenberg &
                                    Liss-Riordan, P.C.
                              18 Tremont Street, Suite 500
                              Boston, MA 02108
Date: March 13, 2006            (617) 367-7200

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorneys of record for each party by electronic notice on March 13, 2006.

                              _s/Shannon Liss-Riordan_____
                              Shannon Liss-Riordan, Esq.