UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

JACOB BRADLEY, *et al.*,
        Plaintiffs,

v.

CITY OF LYNN, *et al.*,
        Defendants.

CIVIL ACTION
NO. 05-10213-PBS

---

## STATE DEFENDANTS' PROPOSED FINDINGS OF FACT

The State defendants submit their proposed findings of fact, without prejudice to, and reserving, their right to supplement this list, as appropriate.

1.  In the so called <u>Beecher</u> case, the Commonwealth of Massachusetts, through the predecessor agency to HRD, entered into a consent decree governing the examination and hiring of entry level firefighters in those Massachusetts municipalities that participate in the Commonwealth's Civil Service system. <u>Boston Chapter NAACP v. Beecher</u>, 371 F. Supp. 507, 520-523 (1974).

2.  The consent decree obligates HRD to administer Civil Service entry level examinations that have been validated to test fairly for the skills necessary to successful performance of the essential job duties of a fire fighter or, if not so validated, to comply with the adverse impact standards set forth in the Uniform Guidelines on Employee Selection Procedures (1978) of the United States Equal Employment Opportunities Commission (EEOC Guidelines).

3. The consent decree subjected each Civil Service municipality that had failed to achieve parity of minority-majority employment to a system of parallel lists by which minorities would compete by examination score with other minorities, not with majority candidates, until such time as the municipality achieved parity.

4. The consent decree provided that a municipality could be released from the consent decree at such time as it achieved parity.

5. The City of Lynn was initially subject to the consent decree, and was released from it in the mid-1980s.

6. HRD administers entry level fire fighter examinations in April of each even numbered year, and a makeup examination in October.

7. Through 2004, each fire fighter examination consisted of a written multiple-choice test of cognitive abilities related to the essential job duties of a fire fighter. Raw scores are established according to the number of correct answers given by a candidate.

8. HRD then examines the raw scores for every question to determine whether any question is flawed because it has more than one right answer or has had a disparate impact on minority candidates. Raw scores are adjusted to give credit for all right answers, and questions with disparate impact are eliminated.

9. The consent decree established a system for the monitoring of compliance with the decree through a representative of NAACP. From 1980 through 2004, the monitor was Attorney Toni G. Wolfman.

10. After conducting its adverse impact analysis and adjustment of raw scores, HRD sets a passing or "cut" score and submits the cut score, with an explanation of its derivation and impact on minorities, to the monitor, who can approve or disapprove it. The impact of

the cut score is determined by applying the so called 80% rule of the EEOC Guidelines for defining adverse impact. The 80% rule requires that the percentage of minority candidates achieving the cut score must be at least 80% of the percentage of majority candidates achieving the cut score.

11. For the 2002 and 2004 fire fighter examinations, the cut score was set at 70 and met the 80% rule. Attorney Wolfman approved the cut scores for both years.

12. The consent decree provides that, if NAACP's monitor objects to an examination before it is administered, the court will rule on the objection. Attorney Wolfman did not object to the 2002 or 2004 fire fighter examinations.

13. Having set the cut score, HRD then prepares an eligible list of candidates who have passed the examination and are thereby eligible for hiring by municipalities. Candidates are listed in the rank order of their scores, subject to statutory preferences for disabled veterans, nondisabled veterans, the children of fire fighters who have been killed in the line of duty, and residents of the municipality.

14. A municipal fire department that wishes to hire new fire fighters asks HRD for a certified list of candidates eligible for new positions. HRD responds with a certified list of the appropriate number of candidates, usually more than double the number of new positions. The municipality is required by statute to hire from this list by rank order of scores, unless the municipality states a reason, acceptable to HRD, for bypassing one candidate for a candidate with a lower score.

15. The municipality then interviews the candidates, investigates their backgrounds, and selects those whom it wishes to hire. Conditional job offers are made, subject to the candidate's passing a physical abilities test (PAT) administered by HRD to those

candidates who have received conditional job offers.. Except in 1993-1994, the PAT has been a non-scored, pass-fail test.

16. Each of the plaintiffs is a resident of the City of Lynn and thereby entitled to the statutory preference for residents. None of the plaintiffs is a veteran or entitled to other statutory preferences.

17. Each plaintiff took the 2002 fire fighter examination, and all passed it. None of them were reached for consideration for hiring before the list expired.

18. Each plaintiff took the 2004 fire fighter examination. Plaintiff Noah Bradley failed with a score of 30. The other plaintiffs passed with the following scores:

    Jacob Bradley -- 94

    Jared Thomas -- 92

    Keith Ridley -- 90

19. None of the three plaintiffs who passed has been reached to date for consideration for hiring by the City of Lynn. Each remains eligible until the current list expires. If the City of Lynn requests a list for additional hiring during the remaining life of the current list, all three will be included on the resulting eligible list.

20. HRD's entry level fire fighter examination was last fully validated in 1992 with the expert assistance of the firm of Landy, Jacobs and Associates. Landy, Jacobs wrote the examinations for HRD through 1998, and updated the 1992 validation with a job analysis study in 1995.

21. After 1998, HRD's staff wrote the questions for each examination through 2004. The PAT and medical standards were validated in 2002 by the firm of SHL USA, which

        advised HRD that the 1992 validation was still valid because, SHL USA found, the abilities needed to succeed as a fire fighter had not changed substantially over time.

22. One Landy, Jacobs recommendation in 1992 was that the PAT be used as a weighted, graded component of the competitive examination in order to reduce adverse impact, on the premise that minority candidates would score at least as well on the PAT as majority candidates, or better, thereby diluting the adverse impact that might result from the cognitive written examination scores.

23. HRD adopted this recommendation for the 1992 examination, and conducted the PAT as a weighted, graded component for all candidates. Because far more candidates were to be tested than only those who had received conditional job offers, the process required securing additional sites and constructing test courses, which delayed the implementation of the examination and the determination of lists until November 1994. By contrast, a pass-fail PAT given only to those candidates who have conditional job offers typically makes it possible to issue a certification list by the early fall of the same year in which the written examination has been given.

24. Based on its 1993-1994 experience, HRD concluded that the PAT had only minimal effect, if any, on reducing adverse impact, was difficult and overly time-consuming to administer, and had caused serious medical problems for some candidates. For these reasons, HRD did not again administer the PAT as a weighted, graded component of the examination, and has reverted to its prior practice of giving the PAT as a pass-fail test to only those candidates who have received conditional job offers.

25. The statutory preferences for residents and veterans make it more difficult for a nonresident or a nonveteran to be reached for hiring, even with a high score.

        Respectfully submitted,

        <u>/s/ Ronald F. Kehoe</u>
        Ronald F. Kehoe, BBO # 264260
        Assistant Attorney General
        One Ashburton Place, Room 1813
        Boston, MA 02108-1698
        (617) 727-2200 ext. 3221
        ronald.kehoe@ago.state.ma.us