## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

               Plaintiffs,

      v.

CITY OF LYNN, *et al.*,

               Defendants.

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF THE
NAACP,

               Intervenors.

CIVIL ACTION
NO. 05-10213-PBS

## STATE DEFENDANTS' TRIAL BRIEF

The framework for resolving a disparate impact case, such as this one, involves a three-step process, with shifting burdens of proof:

(1)  Initially, the plaintiff bears the burden of showing that the facially neutral employment practice had a "significantly discriminatory impact."  42 U.S.C. § 2000e-2(k)(1)(A)(i).

(2)  If that prima facie showing is made, the employer must then demonstrate that the challenged practice is valid because it is "job related" and "consistent with business necessity." Id.

(3)  Finally, if the employer succeeds in validating the practice, the burden shifts back to the plaintiff to prove that there was another available method of evaluation that would be less

discriminatory and that would serve the employer's legitimate interests.  See id. § 2000e-2(k)(1)(A)(ii).

Ultimately, the plaintiff bears the burden "to conduct a systemic analysis of [the challenged] employment practices" in order to establish each element of his or her case.  United States of America v. City of Garland, No. 3:98-CV-0307-L, 2004 WL 741295, at *8 (N.D. Tex. Mar. 31, 2004).  For the reasons below, plaintiffs here cannot meet this burden.  Plaintiffs' case also fails on a number of additional grounds—i.e., lack of standing under the Beecher decree, waiver of claims under the Beecher decree, lack of employment relationship, and mootness—which the State defendants expressly preserve for purposes of any appeal or, to the extent the Court has not yet ruled on the issues, for reassertion in these proceedings.

## POINT I

### PLAINTIFFS CANNOT PROVE THEIR CLAIMS OF DISPARATE IMPACT

#### A.    Description of the Testing Process

As the evidence at trial will show, the entry-level firefighter examination administered by HRD through 2004 consisted of a written multiple-choice test of cognitive abilities related to the essential job duties of a firefighter. After administration of the test, HRD examines the raw scores for every question to determine whether any question is flawed because it has more than one right answer or has had a disparate impact on minority candidates.  Raw scores are then adjusted to give credit for all right answers; questions with disparate impact are eliminated; and HRD will set a passing or "cut" score by applying the so-called 80% rule of the EEOC Guidelines for defining adverse impact.

Having set the cut score, HRD then prepares an eligible list of candidates who have passed the examination and are thereby eligible for hiring by municipalities.  Candidates are

listed in rank order of their scores, subject to several important statutory preferences for disabled

veterans, nondisabled veterans, children of firefighters who have been killed in the line of duty,

and residents of the municipality.  See Mass. Gen. Laws ch. 31, § 26.  If a municipal fire

department under the civil-service system wishes to hire new firefighters, HRD will send it a

certified list of the appropriate number of candidates.  The municipality is required by statute to

hire from this list by rank order of scores, unless the municipality states a reason, acceptable to

HRD, for bypassing one candidate for another with a lower score.

Even if a candidate is reached by the municipality, he or she must pass numerous

additional hurdles to be eligible for hiring.  Specifically, the candidate must pass an interview

with the municipality, various background checks, and a drug test.  Then, if a conditional job

offer is made, the candidate must undergo a psychological exam and a medical exam, and pass

the physical abilities test ("PAT") administered by HRD.  With the exception of the 1992

examination, the PAT has been a non-scored, pass-fail test.

**B.      Application of the Disparate-Impact Framework**

Under the three-part framework outlined above, plaintiffs here cannot meet their burden

of proving a disparate impact claim for a number of reasons.

1.      There Is No Discriminatory Impact at the Hiring Level.

First, plaintiffs cannot meet their burden of showing that the examination utilized by

HRD resulted in "significantly discriminatory impact" at the hiring level.  42 U.S.C.

§ 2000e-2(k)(1)(A)(i).  The reports submitted by plaintiffs' experts, Frank J. Landy and Joel P.

Wiesen, focus almost exclusively on test scores rather than hiring statistics, which is the relevant

consideration in determining whether adverse impact exists.  The expert reports also fail to take

3

into account the statutory preferences for veterans, residents, and children of firefighters killed in the line of duty.  The evidence at trial will show that these statutory preferences, and not HRD's examination, account for most of the adverse impact alleged by the plaintiffs.  In other words the evidence will show that, when these preferences are taken into account, HRD's examination did not have any "significantly discriminatory impact" at the hiring level.  42 U.S.C. § 2000e-2(k)(1)(A)(i).

For these reasons plaintiffs will not be able to make their prima facie showing.  See id. Their case therefore fails at the threshold, and the State defendants will not be required to defend the test.  See id. § 2000e-2(k)(1)(B)(ii) ("If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.").

        2.     The Challenged Examination is Valid.

            a.     *The Cognitive-Abilities Test is Job Related and Consistent With Business Necessity.*

Second, if necessary, the State defendants will demonstrate that the cognitive-abilities test administered by HRD is valid because it is "job related" and "consistent with business necessity."  Id. § 2000e-2(k)(1)(A)(i).  The evidence will show that the cognitive-abilities test is a valid predictor of an individual's ability to perform the essential duties of a firefighter.  The evidence will also show that in 1992 HRD's examination was fully validated under the EEOC Guidelines, with the expert assistance of plaintiffs' expert Dr. Landy and defendants' expert Rick R. Jacobs; that Dr. Landy's and Dr. Jacobs's firm (Landy, Jacobs and Associates) wrote the examinations for HRD through 1998; and that their firm updated the 1992 validation with a job-analysis study in 1995.  Further, in 2002, the firm of SHL USA advised HRD that the 1992

validation was still valid because the abilities needed to succeed as a firefighter had not changed substantially over time. The State defendants can therefore demonstrate that the cognitive-abilities test does not violate Title VII or the Beecher decree because it was validated by experts in the field and was "'demonstrably a reasonable measure of job performance.'" Bryant v. City of Chicago, 200 F.3d 1092, 1098 (7th Cir. 2000) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 436 (1971)); see also id. at 1098-99 ("It would be unrealistic to require more than a reasonable measure of job performance.").

> b.    A Weighted/Graded PAT Is Not Consistent With Business Necessity.

Although plaintiffs argue that one of Landy, Jacobs and Associates' recommendations in 1992 was that the PAT be used as a weighted/graded component of the examination, the State defendants will demonstrate that this recommendation was not "consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). Specifically, defendants will show that HRD adopted the recommendation for the 1992 examination, with disastrous results. First, due to the sheer number of candidates who needed to be tested, the process required securing additional sites and constructing test courses, which delayed establishment of the certification lists for over a year. Second, the weighted/graded PAT decreased the chances of recruiting qualified candidates because many of the applicants who passed the written examination—including 48% of the minorities—chose to drop out of the process altogether rather than take the PAT. See Clady v. County of Los Angeles, 770 F.2d 1421, 1433 (9th Cir. 1985) ("improv[ing] the chances of selecting qualified recruits" is a legitimate need of the employer). Third, the PAT caused serious medical problems for some candidates, requiring hospitalization in several cases. Finally, in addition to all these problems, the weighted/graded PAT did not even appreciably

5

diminish adverse impact. For these reasons, among others, the State defendants will show that the weighted/graded PAT was not consistent with the legitimate business needs of HRD.

3.      <u>Alternative Methods of Evaluation Would Not Be Less Discriminatory or Serve HRD's Legitimate Interests.</u>

Finally, plaintiffs cannot meet their burden of demonstrating that there were alternative methods of evaluation that would be less discriminatory and that would serve HRD's legitimate interests. 42 U.S.C. § 2000e-2(k)(1)(A)(ii). In his report, Dr. Landy recommends a comprehensive testing model with several components, including a weighted/graded PAT. But as discussed above, a weighted/graded PAT is not consistent with HRD's legitimate business interests. Thus, even assuming that the weighted/graded PAT would reduce adverse impact (which was not HRD's experience in 1992), it is not a suitable alternative. See <u>Clady</u>, 770 F.2d at 1432 ("An employer is not required to choose the selection device with the least adverse impact on minority applicants.").

Moreover, plaintiffs cannot demonstrate that the examination system recommended by their experts will appreciably reduce adverse impact. As mentioned, the evidence at trial will demonstrate that the statutory preferences for veterans, residents, and children of firefighters killed in the line of duty caused the adverse impact alleged by the plaintiffs. Plaintiffs will not be able to prove that the alternatives they propose will have any appreciable effect on disparate impact once these preferences are taken into account. See <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 425 (1975) (if employer proves that its tests are "job related," plaintiff must "show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest"); <u>Hamer v. City of Atlanta</u>, 872 F.2d 1521, 1533 (11th Cir. 1989) (the plaintiff bears the "burden of demonstrating the usefulness of alternatives"). Further, the

6

State defendants did not "refuse[] to adopt [the] alternative employment practice" proposed by the plaintiffs.  42 U.S.C. § 2000e-2(k)(1)(A)(ii).

For all these reasons, plaintiffs will not meet their burden of proving their disparate-impact claims under Title VII or the <u>Beecher</u> decree.

<b>POINT II</b>

**PLAINTIFFS DO NOT HAVE STANDING TO ENFORCE THE <u>BEECHER</u> DECREE**

As discussed at length in pages 11 to 18 of the State defendants' February 6, 2006, Memorandum of Law in Support of Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) for Lack of Subject Matter Jurisdiction ("Feb. 6, 2006, Memorandum") (Paper No. 66), which is incorporated by reference,[1] plaintiffs do not have standing to enforce the <u>Beecher</u> decree.  The City of Lynn achieved racial parity over 20 years ago; thus, plaintiffs, who are applying for firefighter positions in Lynn only, no longer have any enforceable interests under the decree. <u>See, e.g.</u>, <u>Barfus v. City of Miami</u>, 936 F.2d 1182, 1187 (11th Cir. 1991); <u>Moore v. Tangipahoa Parish School Board</u>, 625 F.2d 33, 34-35 (5th Cir. 1980).

Nor do the intervenor-plaintiffs or the members of the class have standing to enforce the decree.  At best, they have protected interests under the decree only in those municipalities where racial parity has not been reached.  With regard to those municipalities, however, the intervenors and class members still lack standing because they have suffered no redressable injury.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  HRD has already agreed to implement a new examination, and to the extent any further prospective relief is warranted,

---

[1]  This brief also incorporates by reference the State defendants' March 13, 2006, Reply Memorandum of Law (Paper No. 76).

that need is fulfilled by the decree itself.  See NAACP v. Beecher, 371 F. Supp. 507, 521-23 (D. Mass. 1974).

    Accordingly, none of the plaintiffs in this case have standing to raise claims under Beecher.

## POINT III

## PLAINTIFFS HAVE WAIVED THEIR CLAIMS UNDER THE BEECHER DECREE

    As explained in pages 18 to 19 of the State defendants' February 6, 2006, Memorandum, plaintiffs and intervenor-plaintiffs have waived any claim that the past firefighter examinations violated the Beecher decree.  The decree, by its terms, requires that any dispute as to the validity and job-relatedness of a proposed examination be resolved "before any such test is put into use for the purpose of qualifying or selecting."  Id. at 521.  Plaintiffs and intervenors concede that they did not object to the challenged examinations before their respective administration dates.  They have therefore waived any claim that those examinations violated Beecher.

## POINT IV

## PLAINTIFFS' CLAIMS ARE MOOT

    As discussed in pages 3 to 10 of the State defendants' February 6, 2006, Memorandum, plaintiffs' claims for injunctive and declaratory relief were mooted by HRD's voluntary abandonment of the challenged examination for future use.  See, e.g., New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002).  There is no effective relief that the Court could grant plaintiffs if they prevail at the trial against the State defendants.  HRD has already voluntarily accorded plaintiffs their request for a new examination, and it would be academic for this Court to declare the constitutional status of an administrative policy that is no

longer in effect.  See id.  Plaintiffs' claim for compensatory relief—i.e., compelled hiring, with retroactive back pay, seniority, and other damages—is relevant only to defendant City of Lynn, who is the actual hiring authority.  Moreover, plaintiffs are not entitled to compensatory relief in any event because it is not reasonably clear that, but for the alleged discrimination, plaintiffs would have gotten the jobs in question.  See 42 U.S.C. § 2000e-5(g); Evans v. City of Evanston, 881 F.2d 382, 386 (7th Cir. 1989).  Such relief would also unfairly impinge on the interests of the individuals currently on the eligibility lists.  See NAACP v. Beecher, 371 F. Supp. at 520; Evans, 881 F.2d at 385.

For these reasons plaintiffs claims should be dismissed as moot.

## POINT V

## PLAINTIFFS' TITLE VII CLAIM FAILS FOR
## LACK OF AN EMPLOYMENT RELATIONSHIP

The State defendants argued in their June 6, 2005, Memorandum of Law in Support of Motion for Judgment on the Pleadings (Paper No. 33), which is incorporated by reference, that plaintiffs' Title VII claim should be dismissed due to lack of an employment relationship between plaintiffs and HRD.  See Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004). The State defendants expressly reserve this issue for purposes of any appeal.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS,
HUMAN RESOURCES DIVISION, and RUTH
BRAMSON, in her capacity as Personnel
Administrator of the Human Resources Division,

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL

 /s/ Sookyoung Shin
Ronald F. Kehoe, BBO # 264260
Sookyoung Shin, BBO # 643713
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 727-2200, ext. 3221 (Kehoe)
                     ext. 2052 (Shin)

Dated: April 4, 2006

10

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on April 4, 2006.


/s/ Sookyoung Shin
Sookyoung Shin
Assistant Attorney General

11