UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals,<br>　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF LYNN; EDWARD J. CLANCY, JR., in his capacity as Mayor of the City of Lynn; the COMMONWEALTH OF MASSACHUSETTS, DIVISION OF HUMAN RESOURCES; and RUTH BRAMSON, in her capacity as Personnel Administrator of the Division of Human Resources of the Commonwealth of Massachusetts,<br>　　　　　　Defendants,<br><br>BOSTON SOCIETY OF THE VULCANS and NEW ENGLAND AREA CONFERENCE OF THE NAACP,<br>　　　　　　Interveners. | Civil Action No. 05-10213-PBS |

_____

## PLAINTIFFS' TRIAL BRIEF

*Introduction*

　　　　The named and class plaintiffs (hereinafter, the plaintiffs) in this case are minority candidates who took the 2002 and 2004 Commonwealth of Massachusetts entry-level civil service examinations for the position of firefighter. Through evidence presented in expert reports and through any necessary testimony, plaintiffs will demonstrate that the examination had a significant discriminatory impact upon minority candidates and at the same time did not meet the validity standards required by the Equal Employment Opportunity Commission regulations, 29 CFR §§1607.1 *et seq*. In this regard, the

Commonwealth's own expert witness has failed to rebut the reports of the plaintiffs' experts proving the adverse impact and lack of validity of the examinations. Further, plaintiffs will demonstrate that even if such examinations did meet validity standards, there were far less discriminatory alternatives available to the defendant which it failed to consider or implement, conclusively establishing that such examinations violate Title VII. Moreover, the plaintiffs will establish that the defendant's actions in failing to administer valid, non-discriminatory examinations violates the consent decree entered by this Court in the case of Boston Chapter, NAACP, Inc. v. Beecher, et al, 371 F. Supp. 507 (D. Mass. 1974) (Civ. Act. Nos. 72-3060-F and 73-269-F) (the Beecher decree).

*Discussion*

**I.      THE COMMONWEALTH VIOLATED TITLE VII BY ADMINISTERING FIREFIGHTER ENTRANCE EXAMINATIONS THAT HAD A SIGNIFICANT DISCRIMINATORY IMPACT ON MINORITY CANDIDATES.**

The plaintiffs have brought this class action as a disparate impact claim. A disparate impact claim arises when an employer's otherwise neutral policy has a "significantly disproportionate impact" on a protected class. See 42 U.S.C. §2000(e)-2(k)(1)(A)(i); see also Albemarle Paper Company v. Moody, 422 U.S. 405 (1975). Disparate impact claims do not require proof of intent to discriminate. Munoz v. Orr, 200 F.3d 291 (5th Cir. 2000).

In challenging an entrance examination such as the plaintiffs are challenging in this case, a plaintiff can establish a prima facie case of disparate impact by showing "that the tests in question select applicants for hire . . . in a racial pattern significantly different from that of the pool of applicants." Albemarle, 422 U.S. at 425. Once the

2

plaintiffs make out a prima facie case of disparate impact with respect to an entry-level hiring examination, the defendant is required "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." See 42 U.S.C. §2000(e)-2(k)(1)(A); see also Lanning v. SEPTA, 181 F.3d 478, 485 (3d Cir. 1999). Finally, even if the employer can show that the examination utilized is "job related and consistent with business necessity," the plaintiffs can still prevail by demonstrating "the availability of alternative practices to achieve the same business ends with less racial impact." See generally Frazier v. Independent School District, 980 F.2d 1514, 1524 (5th Cir. 1993); Albemarle, 422 U.S. at 425; see also 42 U.S.C. §2000(e)-2(k)(1)(A)(ii). The alternatives must be able to achieve the same business purpose, though they need not be the same type of tests as those challenged. Id.

For the reasons established herein, based on record evidence and that which is expected to be presented at trial, the Court must find that the Commonwealth of Massachusetts (the Commonwealth or the defendant) has violated Title VII by administering discriminatory firefighter entrance examinations.

### A.  The Commonwealth Failed Even to Rebut the Overwhelming Evidence Presented by Plaintiffs' Expert Witnesses Proving that the 2002 and 2004 Examinations Had an Adverse Impact.

A disparate impact claim necessarily must be based upon statistical evidence. Munoz, 200 F.3d at 300. In any case of disparate impact challenging an entry-level examination, the statistical and validity issues will turn on expert testimony. See Watson v. Forthworth Bank and Trust Company, 487 U.S. 977, 995 (1988); Connecticut v. Teal, 457 U.S. 440 (1982); Guardians Association v. Civil Service Commission, supra.

In the present case, the plaintiffs established through painstaking statistical analysis of two expert witnesses that (1) the examinations had a disparate impact at the pass/fail score such that minority candidates would be less likely to reach even the very low pass/fail to even be eligible for consideration; (2) the examinations, particularly when used as a single rank-order hiring criterion, had a significant disparate impact on minority candidates at the effective cut score, which is the much higher score that individuals must normally attain to actually be considered for appointment; and (3) this disparate impact results in a selection process statewide that has a significant disparate impact upon minorities that does not satisfy the four-fifths rule of the EEOC Guidelines. In his response to the plaintiffs' expert reports, the defendant's expert fails even to attempt to rebut those statistical analyses; therefore, the Court must find as a matter of law that the examination at issue in this case has a disparate impact on minority candidates.

Further, because the defendant's experts have not even attempted to rebut the voluminous data and report by plaintiffs' experts demonstrating that the written entry-level fire fighter examination, particularly when used as a rank order device, does not meet any validity standards required by Title VII and the EEOC Guidelines, the Court must find that the defendants have not satisfied their burden of demonstrating that the examination has validity.

Finally, because the defendant offered no expert testimony indicating that it was unable to utilize less discriminatory alternatives to the examination at issue here, both in terms of test design and use as a ranking device, and because plaintiffs have presented significant expert evidence that such alternatives were available, this Court must also

find that the plaintiffs have carried their burden of demonstrating that there were less discriminatory alternatives available to the defendants for the written examination and that such alternatives were not utilized.

Moreover, in addition to proving by unrebutted testimony that the defendant's examination system has a significant discriminatory impact that cannot be justified by accepted validity standards, the plaintiffs' experts have further demonstrated (through late-provided information by the Commonwealth) that the proven adverse impact of the examination has resulted in an actual disparate impact in hiring by municipalities using the results of the invalid entrance examination.[1] In this regard, even eliminating the impact of the veterans preference on firefighter hiring, the data demonstrate a significant adverse impact in minority hiring. For example, looking at the hiring off of the 2004 examination, after eliminating the effects of the veterans preference (and looking only at communities not still hiring under the Beecher decree), the disparate impact ratio is approximately 0.54 – meaning that non-minority candidates with no statutory preferences are almost twice as likely to be hired based on the results of the examination than non-minority candidates with no statutory preferences.

**B.     The 2002 and 2004 Entrance Examinations Had a Significant Adverse Impact on Minority Candidates.**

As stated above, the first step in a disparate impact analysis is demonstrating that the test in question selects applicants for hire in a racial pattern significantly different from that of the pool of applicants. For more than 25 years the courts have

---

[1] In his initial response to the report of the Commonwealth's expert, and in his expected testimony in the trial in this matter, Dr. Frank Landy will establish that the data sets provided by the Commonwealth are flawed in many material respects. Notwithstanding these flaws, the plaintiffs' experts have detected and demonstrated a significant adverse impact on minority candidates both at the pass/fail score and the effective cut score and in actual hiring decisions based on the examination.

5

relied on the EEOC's so-called four-fifths rule or 80 percent rule, now codified at 29 CFR §1607.4(D). Under the four-fifths rule, where a test device results in a selection rate for any race, sex, or ethnic group which is less than four-fifths (or 80 percent) of the rate for the group with the highest rate, it will generally be regarded by the courts as evidence of adverse impact. See generally Gonzales v. City of New Braunfels, 176 F.3d 834, 839 (5th Cir. 1999).

The 2002 and 2004 exams had adverse impact at the nominal passing score of 70, and even more severe adverse impact at the effective cutoff scores in the 90s. Id. The plaintiffs' experts demonstrated this adverse impact both by a statistical chi-square test of significance and by the failure to satisfy the EEOC's four-fifths rule. Moreover, as noted above, supra part I(A), statistical analyses show that the examinations caused an adverse impact, not just in test score results, but also in actual hiring. In this regard, looking to non-Beecher communities that actually reached non-veterans in their hiring, non-veteran minority candidates were hired at a rate that is about 54 percent of the rate of non-minority non-veteran candidates, which is far below the 80 percent benchmark set fort in the EEOC regulations. This adverse impact is measurable in each of these communities individually, as well as aggregated throughout all of these communities in the Commonwealth.

Moreover, it can be expected (and will likely be established upon review of subpoenaed data) that there is an adverse impact even in communities that did not exhaust their lists of veteran candidates. The subpoenaed data will establish that minority veterans were subject to the same adverse impact as non-veterans and were

6

thus less likely to be for consideration, and if they were reached for consideration, that they would be reached later and thus hired later than their white counterparts.

Finally, it is unassailable that the cumulative long term effect of the defendant's use of these discriminatory civil service examinations for firefighter hiring has resulted in fire departments throughout the Commonwealth with significantly fewer minorities than would have been hired with a nondiscriminatory testing process.

### C. The 2002 and 2004 Entrance Examinations Cannot Be Shown to Be Valid and Job-Related in Accordance with EEOC Guidelines.

Since plaintiffs have plainly satisfied their prima facie case, the defendant must attempt to establish that the testing program is "job related and consistent with business necessity." See 29 CFR §§1607.5, 1607.14. To do so, the defendant must utilize one of the three methods to validate such examination: criterion-related validation, content validation, or construct validation. See generally Washington v. Davis, 426 U.S. 229, 247 (1976). See also *EEOC Uniform Guidelines on Employee Selection*, 29 CFR §§1607.5, 1607.14.

In essence, since the test has been proven to have a significant discriminatory impact, the defendants must show that the examination procedure actually tests for and measures the attributes necessary for successful performance in a job. Washington v. Davis, supra; see also Connecticut v. Teal, 457 U.S. 440 (1982). However, where an examination score is utilized to rank candidates and candidates are selected by such ranking, that ranking system itself may violate Title VII if minority applicants score disproportionately lower on the examination and the employer cannot demonstrate that the relative disparities in actual scores (as opposed to passing marks) are job-related and consistent with business necessity. See Pipa v. City of East Providence, 492

7

F.Supp. 1240, 1246-47 (D.R.I. 1980); see also <u>Louisville Black Police Officers v. City of Louisville</u>, 511 F.Supp. 825 (W.D. Ky. 1979); <u>Guardians Association v. Civil Service Commission</u>, 630 F.2d 79, 101 (2d Cir. 1980); <u>Vanguard Justice Society v. Hughes</u>, 592 F.Supp. 245, 267 (D. Md. 1984); see also 29 CFR §1607.5(G).

The plaintiffs' expert witnesses have established that successful performance of the job of firefighter requires both cognitive and non-cognitive attributes, including physical ability, communication skills, and personality. However, the defendant's examination measures only cognitive ability. In 1992, when the defendant adopted the testing mechanism on which the 2002 and 2004 examinations were based, the defendant's experts (including Dr. Landy and Dr. Jacobs) measured the validity of the firefighter entrance examination through a portability study using the Columbus, Ohio, firefighter examination. In determining the validity of the examination in their 1992 study, Drs. Landy and Jacobs stated that the cognitive abilities test should be combined with a weighted, graded physical abilities test. All later validity updates for the firefighter examinations were based on the original findings in the 1992 study.

In the 2002 and 2004 administrations of the firefighter examinations, the defendant failed to follow the recommendations of Drs. Landy and Jacobs in that the defendant failed to give the physical abilities test as a weighted, graded component of the selection process. Rather, the defendant used only a cognitive abilities test as a rank-ordering device and gave a physical abilities test only to those who had already received a conditional offer of employment. Therefore, in failing to utilize the examination as suggested by the experts in their validation report the defendant has failed to demonstrate that it administered a truly validated entrance examination.

Moreover, the defendant has not compiled the necessary evidence of validity for the 2002 and 2004 firefighter examinations as required by the EEOC's Uniform Guidelines, and those Guidelines specifically rule out assumptions of validity.

> **D.    Even if the Commonwealth Could Show that the 2002 and 2004 Examinations Were Valid and Job-Related, the Commonwealth Failed to Consider Less-Discriminatory Alternatives.**

Finally, even if the defendant could somehow show that the examination utilized is "job related and consistent with business necessity," the plaintiffs must still prevail because they have demonstrated "the availability of alternative practices to achieve the same business ends with less racial impact." See generally Frazier v. Independent School District, 980 F.2d 1514, 1524 (5th Cir. 1993); Albemarle, 422 U.S. at 425; see also 42 U.S.C. §2000(e)-2(k)(1)(A)(ii). In making such a showing, the plaintiffs merely need to show that the alternatives are able to achieve the same business purpose even if they are not the same type of tests as those challenged. Id.

From at least 1996 up to and including the 2002 and 2004 examinations, the defendant did not consider any alternatives to the written cognitive test as a means of selection for firefighter applicants. However, plaintiffs, through their experts, have established that there are alternative selection procedures with less adverse impact, including the use of personality/work-styles tests, bio-data, and physical abilities tests as part of a combined testing battery. Moreover, the defendant's own expert conceded in his report that "[i]t is . . . well documented that including other tests such as personality assessments, biographical information, and physical abilities in a total test battery will reduce the level of differences as a function of race." Jacobs Report at 6.

Therefore, since the defendant's own witness conceded the existence of less discriminatory selection criteria – including testing criteria that can easily be given in a

9

written form alongside the cognitive abilities examination – the Court must find that the plaintiffs have established the existence of less discriminatory alternatives that achieve the same business purpose.[2]

## II. THE COMMONWEALTH VIOLATED THE BEECHER DECREE BY FAILING TO ADMINISTER VALID AND JOB-RELATED EXAMINATIONS AS REQUIRED BY THE TERMS OF THAT DECREE.

From 1974 to the present, the Commonwealth has been subject to a consent decree entered in the.  The Beecher decree was based on a finding by this District Court that the entry-level firefighter written civil service examination utilized by the Commonwealth of Massachusetts had a disparate impact on minorities and was not validly determined to be job-related.  The decree required that the Commonwealth ensure that any future entrance examinations were job-related and validated.  Id. at 521.  Such requirement was separate and apart from the obligations imposed on certain municipalities within the Commonwealth to hire under an affirmative action program until each community reached parity between percentage of minorities in the community and the percentage of minorities on the respective fire department.

The plaintiffs have established that the Commonwealth has not satisfied its independent obligations under the Beecher decree.  The plaintiffs, who are clearly covered by the decree as minority applicants for firefighter positions,[3] have established that the Commonwealth has not followed the instructions of the testing experts who

---

[2] Even though adding these additional written elements has been shown to lessen adverse impact, the experts still contend that adding a physical abilities test as a weighted, graded component of the selection process would lead to the most valid and non-discriminatory selection process.

[3] The Commonwealth's argument that the plaintiffs should have challenged the examinations prior to their administration pursuant to the terms of the decree belies the fact that the plaintiffs are not parties to the decree and have no such standing to challenge the test prior to its administration.

10

prepared the examination and has thus failed to administer valid, non-discriminatory examinations as ordered by the District Court.

*Conclusion*

WHEREFORE, for the foregoing reasons, the Court must find that the Commonwealth violated both Title VII of the Civil Rights Act of 1964, as well as the specific terms of the Beecher decree, though its administration of discriminatory firefighter entrance examinations in 2002 and 2004.

                                          Respectfully submitted,

JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals,

By their attorneys,

      __s/Shannon Liss-Riordan_____
Harold L. Lichten, BBO # 549689
Shannon Liss-Riordan, BBO # 640716
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg &
    Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108

Date:  April 6, 2006            (617) 367-7200

11

## CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the above document was served on the attorneys of record for each party by electronic notice on April 6, 2006, and was sent via first class mail to all parties unable to receive electronic filings.

                                          _s/Shannon Liss-Riordan_____
                                          Shannon Liss-Riordan, Esq.