**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JACOB BRADLEY, *et al.*,

        Plaintiffs,

        v.

CITY OF LYNN, *et al.*,

        Defendants.

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF THE
NAACP,

        Intervenors.

CIVIL ACTION
NO. 05-10213-PBS

**STATE DEFENDANTS' OPPOSITION TO INTERVENORS'**
**AMENDED MOTION FOR A PRELIMINARY INJUNCTION**

        The State defendants, the Commonwealth of Massachusetts, Human Resources Division

("HRD"), and Ruth Bramson, in her capacity as Personnel Administrator of HRD (together, "the

State defendants"), submit this opposition to the amended motion of the intervenors for the entry

of a preliminary injunction.

**INTRODUCTION**

        The motion exceeds the scope of the trial, which the court limited at the outset to a

declaratory judgment on the adverse impact and validity of the 2002/2004 fire fighter

examinations. This court expressly stated that remedial relief, beyond a declaration, would not be

a part of the present proceeding. Yet, intervenors are seeking a remedy even before the court has

reached the point of entering a declaration. The motion is premature and should not be

entertained at this juncture.

Notably, the plaintiffs do not join in the intervenors' amended motion. Plaintiffs' counsel did join in an earlier, identical motion and supporting memorandum (P #103, 104), then wrote a letter to the court disavowing any intent to delay fire fighter hiring by the City of Boston (P #108), and finally did not join in the intervenors' amended motion ( #109, 110). The court is entitled to infer that the requested injunction will delay the imminent Boston hiring, and to weigh such delay as a factor contrary to the public interest.

**ARGUMENT**

Consideration of the four well established factors governing injunction motions calls for the denial of the amended motion.

### 1.    <u>Likelihood of Success on the Merits</u>

The motion is brought at an inappropriate time, in that it asks the court to short-circuit the established post-trial schedule for final briefing and argument, at which point the court will take the merits of the case under advisement and make a considered written decision based on particularized findings of fact and rulings of law. Intervenors' motion asks the court to bypass the post-trial process and rush to judgment while all of the issues remain disputed and undecided.

Contrary to intervenors' memorandum, it has not been proven that the 2004 fire fighter examination has had an adverse impact on minorities. The plaintiffs' experts' initial reports overlooked two fundamental points: (1) adverse impact is about hiring, not about examination scores; and (2) non-score factors strongly affect hiring results -- principally, the Massachusetts statutory preferences for veterans and residents, and the lopsidedly differential dropout rates of minority applicants vis-a-vis nonminorities, after HRD certifies eligible candidates to the

municipalities.[1] Dr. Wiesen acknowledged on cross examination that differential dropout rates can "skew" an adverse impact analysis.

When Dr. Landy and Dr. Jacobs belatedly addressed the non-score factors that affect hiring, their analyses have remained flawed. First, they do not account for the effects of differential dropout rates (Landy denies the difference, and Wiesen does not address it). Second, they applied an aggregating statistical methodology that ignores the fact that each municipality makes its own hiring decisions, so that adverse impact can only be fairly analyzed one municipality at a time, then aggregated for a statewide result. If the court accepts Dr. Jacobs's testimony on either or both of these subjects, in preference to the testimony of plaintiffs' experts, the trial could end in a ruling that the plaintiffs have failed to meet their burden of proving adverse impact, thereby making it unnecessary to reach the Commonwealth's defenses of test validation and business necessity.

The Commonwealth does not concede, as intervenors assert, that the 2002 and 2004 examinations were "never validated," in view of the continuing assurances of its outside experts through 2002 that the 1992 job analysis report remained valid. Further, in view of Dr. Wiesen's testimony that there is no consensus on the need for noncognitive test components to assure

---

[1]     For 2004 to date, minorities have dropped out at a rate of 58.8% and nonminorities at a rate of 41%. See P #111, "Response of Dr. Rick Jacobs to Testimony and Reports of Dr. Frank Landy and Dr. Joel Wiesen in Bradley v. Lynn," at 6-8.

validation, the court could find that there are no available and equally effective selection procedures.

All issues regarding the merits remain disputed. It is premature to ask the court to prejudge the final decision at this critical stage.

## 2.  **Irreparable Harm**

Intervenors argue that minority candidates will suffer irreparable harm if Boston makes hiring decisions based on the latest HRD certification. In this aspect, the motion comes too late. The current certification was issued six weeks ago and supplemented the following week. See Exhibit A to intervenors' memorandum, 4/11/06 and Exhibit C, 4/21/06. By now, Boston is well along in the process of making its hiring decisions, is not a party to this case, and should not be enjoined from completing its hiring process -- as plaintiff's counsel belatedly recognized in disassociating themselves from the motion.

Intervenors argue, without substantiation, that money damages would be inadequate. They argue also that "the clock is ticking" because the age 32 cutoff will affect minority candidates, without adducing any evidence of the ages of any candidates, minority or nonminority. In fact, the clock is not ticking for any candidate, because the maximum age, by statute, is determined as of the date of the entrance examination, not the date of hire. M.G.L. c. 31, §58A. These alleged harms have no factual or legal basis.

## 3.  **Balance of Hardships**

Most significantly, the intervenors' arguments on irreparable harm and the balance of hardships make no mention, or any attempt to balance, the harm to the public or to the legitimate expectations of innocent nonminority candidates if Boston's imminent hiring is delayed or

interfered with by the court. The intervenors' motion papers flatly assert that "the
Commonwealth would suffer no demonstrable harm should the injunction be granted and it be
required to reorder or revise the certification list." See intervenors' amended memorandum at 6
(emphasis added).  No reference is made to the harm to the public or to nonminority candidates
who are awaiting the City of Boston's hiring decisions.

Intervenors have cited no precedent, and State defendants' counsel have found none, for a
court to order the revision of an outstanding certification of eligible candidates for  competitive
entry-level hiring. The intervenors have cited (Memorandum at 7) three First Circuit
employment cases where injunctions were held to be warranted. All three of the cases involved a
single former employee seeking reinstatement, and are inapposite to the facts of this case.

Even in the Beecher case, where the court was seeking to remedy decades of
discriminatory hiring practices, the court balanced the interests of nonminority candidates in the
remedial calculus, and concluded that the decree should not interfere with hiring from the then
current list, but would instead operate only prospectively.

Even if the plaintiffs and intervenors were to prevail on the merits of their claims, this
court could not grant the retroactive relief they are seeking.  In Beecher this court explained that,
in crafting equitable remedies, it must look to "what is necessary, what is fair, and what is
workable," keeping in mind that innocent third parties—namely, the "men currently on existing
Civil Service eligibility lists"—should "not be dealt with unfairly."  NAACP v. Beecher, 371 F.
Supp. 507,  520 (D. Mass. 1974). Accordingly, the consent decree in Beecher contained purely
prospective relief, to take effect starting with the eligibility lists to be issued after the next

examination.  See id. at 520-23.  This general principle was reaffirmed in Quinn v. City of Boston, 325 F.3d 18, 38 (1st Cir. 2003).

Similarly, in Evans v. City of Evanston, 881 F.2d 382 (7th Cir. 1989), the district judge, after finding the city's firefighter testing procedures to be unlawful, ordered the city to implement a new examination but declined to order it "to hire any of the members of the plaintiff class or even to allow them to advance to the next test."  881 F.2d at 385.  The Seventh Circuit concluded that the district judge had properly acted within his remedial discretion.  Id.  In so holding, the court noted the "importance of competent firefighting to the safety of the people . . . as well as of the firefighters themselves" and emphasized that "[a]n equity court must always consider the possible impact of a decree on innocent third parties."  Id.

### 4.    The Public Interest

The motion addresses only one alleged aspect of the public interest -- "that deserving minority candidates be considered for firefighter positions, and the racial composition of the firefighter force reflect that of the community served by it." Id. at 6-7.  There is no basis in the law for this assertion, other than the remedial consent decree in Beecher, which no longer applies to Boston.

There is also no factual basis in the record for using parity as a factor in weighing the public interest. The intervenors have assumed, with no supporting evidence, that the Boston Fire Department does not currently reflect the racial composition of the city's population. The most recent evidence on the subject is to be found in the Quinn decision, where the court ordered Boston released from the Beecher decree because it had achieved parity three years earlier. 325 F.3d at 37.  Intervenors have offered no evidence of a change since 2000 in the present racial

composition of Boston or its fire department.[2]

By contrast, the requested relief would delay Boston's imminent hiring, to the detriment of an overriding public safety interest by providing Boston's citizens with a full complement of qualified fire fighters. Quinn, 325 F.3d at 38. The requested injunction would be so vague as to leave HRD with no instructions as to how it is to obey the order so as to "ensure no adverse impact." If Boston fills its hiring needs from the existing certification, and does not request a further certification, HRD's reordering of the list would be an exercise in mootness. Even if Boston were hereafter to request a further certification, which might be affected by a "reordered" list, the parties and their experts did not address during trial any ways of "ensuring" no adverse

---

[2]    The intervenors' memorandum attaches a March 2005 newspaper article (Exhibit D) which states that the four most recent classes of Boston firefighters included 130 whites and six minorities, of which two classes (33 white fire fighters) were parties entitled to be hired under the Quinn decision. See testimony of Sally McNeeley re "Quinn list" certified by HRD to comply with Quinn. Such inconclusive, fragmentary evidence provides no support for intervenors' public interest argument based on parity.

impact, other than to replace the old exam with a new validated exam, as HRD will do within a few weeks from now.[3]

If the court issues the requested order, it will surely be necessary to reopen the trial for further litigation as to whether HRD has complied with the injunction so as to "ensure" no adverse impact from the old exam. Such a proliferation of the issues to be litigated would not advance any cognizable public interest -- particularly because Boston's hiring could be delayed in the process.

## CONCLUSION

The motion for an injunction is ill considered, unfounded in the record and unsupported by the case law. It should be denied.

> COMMONWEALTH OF MASSACHUSETTS,
> HUMAN RESOURCES DIVISION, and RUTH
> BRAMSON, in her capacity as Personnel
> Administrator of the Human Resources Division,
>
> By their attorney,
>
> THOMAS F. REILLY
> ATTORNEY GENERAL

---

[3]    The only other known method of "ensuring" no adverse impact would be to return to the 1:1 hiring lists prescribed by the Beecher decree -- an option no longer available in the case of Boston. Even with such a method, adverse impact materializes because of statutory preferences and the operation of non-score selection factors after HRD certifies the eligible lists. See P #111, "Response of Dr. Rick Jacobs etc.," at 5-6.

/s/ Ronald F. Kehoe
Ronald F. Kehoe, BBO # 264260
Sookyoung Shin, BBO # 643713
Assistant Attorneys General
One Ashburton Place, Room 2019
Boston, MA 02108-1698
(617) 727-2200, ext. 2619 (Kehoe), ext. 2052 (Shin)

Dated:  May 24, 2006

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent by first class mail to those indicated as nonregistered participants

/s/ Ronald F. Kehoe

Dated: May 24, 2006