UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____
                                              )
JACOB BRADLEY, NOAH BRADLEY, KEITH            )
RIDLEY, and JARED THOMAS,                     )
individually and on behalf of a class of      )
similarly situated individuals,               )
            Plaintiffs,                       )
                                              )
v.                                            )
                                              )
CITY OF LYNN; EDWARD J. CLANCY, JR.,          )
in his capacity as Mayor of the City of Lynn; )   Civil Action No. 05-10213-PBS
the COMMONWEALTH OF MASSACHUSETTS,            )
DIVISION OF HUMAN RESOURCES; and              )
RUTH BRAMSON, in her capacity as Personnel    )
Administrator of the Division of Human Resources )
of the Commonwealth of Massachusetts,         )
            Defendants,                       )
                                              )
BOSTON SOCIETY OF THE VULCANS and             )
NEW ENGLAND AREA CONFERENCE OF                )
THE NAACP,                                    )
            Interveners                       )
                                              )
_____)

**PROPOSED REMEDIAL ORDER**

On August 8, 2006, this Court issued a Memorandum and Order regarding liability, concluding that the written civil service cognitive ability examination used in 2002 and 2004 to qualify and rank applicants has had a disparate and adverse impact on Black and Hispanic candidates for entry-level firefighter positions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), (k) (2006), and the federal consent decree in Boston Chapter, NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974) (the "Beecher decree"). Based on these findings, it is hereby ordered as follows:

**A.**     *Addressing the Adverse Impacts of the 2002 and 2004 Examinations Through Remedial Hiring and Backpay*

1.      The Commonwealth, along with and in cooperation with Plaintiffs' and Interveners' counsel, shall attempt to identify individuals who would have been hired as firefighters based on the 2002 and 2004 examinations if not for the adverse impact of those examination by taking the following actions:

a.      Utilizing the so-called "shortfall" formula developed by Dr. Jacobs, and to be reviewed by plaintiffs' experts, the Commonwealth shall identify the number of minority candidates who would likely have been hired by the various Commonwealth communities based on the results of the 2002 and 2004 examinations had those examinations not had adverse impact on minorities. A shortfall of .3 in any community shall satisfy the standard for taking the steps set forth below. Further, for those communities whose shortfall analysis is greater than 1, a fraction of .4 or higher shall be rounded up to the next whole number.

b.      The Commonwealth shall then identify by municipality the specific minority candidates who would have been next in line for consideration for hire based on the results of the 2002 and 2004 examinations and shall, if such individuals remain interested in such position, place the names of those individuals at the top of the eligibility lists for entry-level firefighter positions in their respective communities. If necessary, the Commonwealth shall revive the eligibility of those candidates pursuant to state Civil Service law. If insufficient names are

2

generated by this method to cover the shortfall using a 2N plus one formula, PAR 10 will be used to consider current minority candidates.

  c. The Commonwealth shall then utilize minority certification lists under Personnel Administration Rule (PAR) 10 until the number of candidates hired pursuant to those lists in affected communities equals the identified number identified in the shortfall analysis.

  d. The Court shall appoint (with the parties' input and approval) a Special Master, at the Commonwealth's expense, who shall resolve any issues that result from the hiring process described in this section 1.

 2. The Special Master shall make a determination as to the entitlement to back pay for any candidate hired as a result of this order, or hired later than would otherwise have occurred had the test not been discriminatory, based on the difference between what the candidates would have earned as firefighters had they been selected in their municipalities' previous hiring round(s), including lost overtime and detail opportunities, and what they have in fact earned during the same time period.  Back pay shall only be available to identifiable victims of discrimination (as described above) for the 2002 and 2004 examination.  The Special Master shall also determine the amount of civil service and retirement years of service to be credited to each such candidate hired.  In addition the Master will determine the amount of emotional distress damages each candidate is entitled to receive.

**B.     *Monetary Damages for the Class***

3. The Commonwealth shall create a fund in the amount of all fees paid by minority candidates to take the 2002 and 2004 examinations. Such fund shall be distributed equally to all minority class members who can be located.

**C.     *Implementation of the New Selection Process***

4. The Commonwealth shall develop a non-discriminatory selection process for firefighters in the Commonwealth. The Special Master shall have responsibility to monitor the testing and selection process employed by the Commonwealth until the year 2012 or for the duration of the Beecher decree, whichever is later. In this regard, the Special Master shall have the authority to order (subject to this Court's review) the Commonwealth to comply with its obligation under Federal and State law to administer a non-discriminatory testing and selection program. The Special Master's determinations shall be reviewable by the Court at the request of the parties or Interveners.

5. Upon completion of the 2006 entry-level firefighter examination, the Commonwealth will provide to the Special Master and to the Plaintiffs' and Interveners' attorneys and all test scores, weighting criteria, certification lists, appointment data, and all other relevant information necessary for the Special Master and the Plaintiffs and Interveners to conduct an adverse impact and "job relatedness" analysis of the examination and selection processes.

6. Should the Plaintiffs or Interveners determine that the 2006 examination violates Title VII or the Beecher Decree, they shall be entitled to petition the Special Master, or, if necessary, the Court, for appropriate relief.

4

7.  Following the next three entry-level firefighter examinations (2008, 2010 and 2012), the Commonwealth shall continue to provide to the Special Master and to the Plaintiffs and Interveners all test scores, weighting criteria, certification lists, appointment data, and all other relevant information necessary for the Special Master and the Plaintiffs and Interveners to conduct an adverse impact analysis of the examination and selection processes.  The Commonwealth shall work in good faith with the Special Master and with the Plaintiffs and Interveners to incorporate any further necessary changes to the examination and selection process to eliminate or minimize any adverse impact.

8.  For the 2008, 2010 and 2012 examination, any party may petition the Special Master appointed by the Court for specific relief, and the Master's rulings shall be binding on the parties subject to any appeal of such ruling to the Court.

9.  To account for the adverse impact in the selection process separate and apart from the adverse impact in the testing process, the Court shall modify the terms of the <u>Beecher</u> decree to allow the parties the opportunity to contest the adverse impact of an examination under that decree even after appointments have been made utilizing examination scores.

**D.**     ***Future Minority Recruitment***

10.  As part of its continuing interest in maintaining firefighting forces throughout the Commonwealth that achieve the racial and ethnic diversity of Massachusetts' communities, the Commonwealth agrees to implement and

follow the Minority Recruitment Plan, submitted by the Interveners as Attachment A to this document.

### E.    *Plaintiffs' and Interveners' Additional Damages, Fees, and Costs*

11.    In addition to any relief granted pursuant to sections A and B of this Order, the Commonwealth shall pay to each named Plaintiff the amount of $25,000 (as an incentive payment for bringing this litigation on behalf of a class), to be allocated as emotional distress damages.

12.    The Commonwealth shall also pay to each of the Intervener organizations the amount of $25,000 to be used for their own recruitment efforts and to provide preparation courses for minority candidates taking the examination.

13.    The Commonwealth will pay to the Plaintiffs all of their reasonable attorneys' fees and costs associated with this case and ensuring compliance with this order.  The amount of costs in this paragraph shall include all expert witness fees.

14.    The Commonwealth will pay to the Interveners all of their reasonable attorneys' fees and costs associated with this case and ensuring compliance with this order.  The amount of costs in this paragraph shall include all expert witness fees.

Respectfully submitted,

JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS,
individually and on behalf of a class of similarly situated individuals,

By their attorneys,

 /s/  Shannon Liss-Riordan_____
Harold L. Lichten, BBO # 549689
Shannon Liss-Riordan, BBO # 640716
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg &
      Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

NEW ENGLAND AREA CONFERENCE OF THE NAACP AND THE BOSTON SOCIETY OF VULCANS

By their attorneys,

/s/ Nadine Cohen_____
Nadine Cohen (BBO #090040)
Lawyers Committee for Civil Rights Under Law
294 Washington Street
Boston, Massachusetts  02108
(617) 482-1145

/s/ Mark D. Selwyn_____
Mark D. Selwyn (BBO #565595)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Date:     September 15, 2006

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the above document was served on the attorneys of record for each party by electronic notice on September 15, 2006.

                                     /s/ Shannon Liss-Riordan
                                Shannon Liss-Riordan, Esq.

**ATTACHMENT A**

Case 1:05-cv-10213-PBS   Document 130-2   Filed 09/15/2006   Page 1 of 4

**Recruitment Plan For Firefighters of Color In Massachusetts**

To achieve firefighter workforces reflective of the racial and ethnic diversity of Massachusetts' communities, the following Recruitment Plan should be implemented by HRD.  The goal of the Recruitment Plan is to increase the numbers of racial and ethnic minorities who apply for, and are selected for firefighter positions in Massachusetts' cities and towns so that the fire forces more accurately reflect the racial and ethnic composition of the communities in which they are located.   The ability to recruit, select, retain and promote a racially and ethnically diverse work force in fire departments in Massachusetts is recognized as a critical need to enable those departments to carry out their duties in a manner that best meets the needs of their communities and builds stronger ties between their agencies and the communities they serve.  Through a partnership with the Vulcan Society, the minority organizations such as the NAACP, individual minority firefighters, and fire officials, HRD will implement this agreed upon Recruitment Plan.

1. **Recruitment Advisory Committee:**  HRD shall establish a Recruitment Advisory Committee (RAC) made up of 2 representatives of the Vulcans, and New England Area Conference of the NAACP (NEAC), one representative from the Boston Springfield, Worcester, Lawrence (and possibly other) Fire Departments, and HRD staff, who will meet at least quarterly to discuss recruitment efforts.  HRD staff shall coordinate and provide the administrative support for the RAC, schedule meetings, produce materials, produce and send out all mailings, posters, etc. and keep minutes of all meetings.

2. **Assessment of Barriers To Minority Recruitment:**  The RAC shall identify the current barriers that keep potential applicants of color from applying for firefighter positions.  The RAC will look at current recruitment efforts and results and meet with officials of fire departments and community people to determine the shortcomings of the current recruitment efforts.

3. **Development of a Recruitment Plan:**  The RAC will develop a specific recruitment action plan with a timetable, goals and specific recruitment activities that will occur.  Such a plan shall include, for example, the following types of efforts:

    ➢ **Establish Recruitment Goals by Community**

- ➢ **120 Days Prior to Scheduled Exam**

    - **Identify and mail informational notices to community organizations, minority churches, city and town libraries, NAACP Branches and NEAC and Urban League Chapters, community colleges, job training programs, and the Massachusetts Legislative Black Caucus,**

    - **Special efforts will be made to identify and contact minority veterans and organizations that work with minority veterans.**

    - **Place public service announcement in community newspapers, Spanish language and other minority newspapers, radio and TV stations**

    - **Letters to minority applicants on current firefighter lists**

    - **Information packages mailed to municipalities, fire and police departments**

    - **Letters and posters to others**

    - **Provide contact information for prospective applicants to get more information.**

- ➢ **90 Days Prior to Scheduled Exam**

    - **Arrange recruitment meetings in Boston, Springfield, Worcester, Lawrence, Lowell, Chelsea, Randolph, Holyoke, consent decree communities and other communities with significant populations of color, or where minority organizations request meetings.**

    - **Arrange recruitment meetings at community colleges, colleges and universities, and high schools.**

    - **Arrange meetings at churches, veterans groups, and other community organizations to recruit prospective applicants.**

    - **Permit Vulcan (and NAACP) members to participate in recruitment meetings during working hours, if necessary, as a job function, and in uniform.**

- **Reports shall me made of all recruitment meetings and records will be kept of those who attend with contact information. Follow up contact will be made with those who indicate interest in applying.**

➢ **60 Days Prior To Exam**

- **Hold community training sessions to review exam process**

- **Distribute training materials**

- **Conduct test preparation classes for prospective applicants and encourage them to attend**

- **Assign each potential applicant a mentor who they can speak with and who will call them to encourage them to attend prep classes and show up for the exam.**

➢ **30 Days Prior To Exam**

- **Maintain contact with potential recruits**

- **Reminder mailings**

- **PSA's /Ads in papers**

**5. Monitoring and Evaluation of Success of Recruitment Activities:** After exam is given an analysis will be made of how successful the recruitment efforts were by determining whether the recruitment goals were met and how many people who attended recruitment meetings, prep sessions etc. actually took the exam. Follow up will be made with people who did not show up to determine why. Statistics shall be compiled showing the number of minority applicants in each community and how many minority applicants actually get appointed in each community. Barriers and problems in recruitment shall be identified.

**6. Revise Recruitment Plan Based on Outcome of Previous Recruitment Efforts:**
The RAC will review and revise the recruitment plans based on the information gathered as to the successfulness of the previous plan. Efforts will be made to get community and municipal input into how minority recruitment efforts could be more effective.