UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

        Plaintiffs,

    v.

CITY OF LYNN, *et al.*,

        Defendants.

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF THE
NAACP,

        Intervenors.

CIVIL ACTION
NO. 05-10213-PBS

**STATE DEFENDANTS' RESPONSE TO
PLAINTIFFS' PROPOSED REMEDIAL ORDER**

This memorandum is filed in response to plaintiffs' Proposed Remedial Order, filed September 15, 2006 (Paper #130) and in support of the State defendants' Proposed Remedial Order, attached hereto as Exhibit A. As discussed below, plaintiffs' Proposed Remedial Order is not appropriately tailored to remedy the violation that has been adjudicated and improperly injects the judiciary into the day-to-day operations of a state agency. The State defendants therefore respectfully request that this Court adopt their Proposed Remedial Order and reject that of plaintiffs.

The State defendants emphasize, however, that while they appreciate having been given the opportunity to propose a remedy to cure the deficiencies found by the Court, the actions proposed in the attached remedial order are not voluntary but are compelled by the Court's adverse ruling on liability. The State defendants' proposal is not an expression of consent and

should not be construed as a consent decree, settlement agreement, or other contractually negotiated agreement. Moreover, the State defendants reserve all rights to appeal any remedial order entered by this Court.

**I.  FEDERALISM CONCERNS REQUIRE THAT THE REMEDY BE NARROWLY TAILORED IN CONSIDERATION OF THE COMMONWEALTH'S INTERESTS IN MANAGING ITS OWN AFFAIRS.**

It is a "bedrock principle" that "federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs." Missouri v. Jenkins, 515 U.S. 70, 88, 98 (1995); see Freeman v. Pitts, 503 U.S. 467, 489 (1992); Spallone v. U.S., 493 U.S. 265, 276 (1990). A remedy process must therefore give "adequate consideration" to the views of state officials, meaning that the state must have "the first opportunity to correct the errors made in the internal administration" of its program. Lewis v. Casey, 518 U.S. 343, 362 (1996).

Further, the remedial power of the federal courts "to restructure the operation of local and state governmental entities . . . is not plenary." Hills v. Gautreaux, 425 U.S. 284, 293 (1976) (quotation marks omitted). Rather, this Court must "tailor the scope of the remedy to fit the nature and extent of the . . . violation," id. at 294 (quotation marks omitted), by providing relief only to those individuals "who have suffered, or will imminently suffer, actual harm," Lewis, 518 U.S. at 349. The federal courts must also refrain from "inject[ing] the judiciary into the day-to-day management of institutions and local policies—a function that lies outside of [the federal courts'] Article III competence." Id. at 392 (Thomas, J. concurring); see Jenkins, 515 U.S. at 99 ("a district court must strive to restore [control to the] state and local authorities"); National Treasury Employees Union v. Yeutter, 918 F.2d 968, 977 (D.C. Cir. 1990) ("focused injunction"

necessary to avoid "involv[ing] [the] court in administrative or regulatory decisions for which the judiciary is unsuited"); see also Jenkins, 515 U.S. at 133 (Thomas, J., concurring) ("When federal judges undertake such local, day-to-day tasks, they detract from the independence and dignity of the federal courts and intrude into areas in which they have little expertise.").

Plaintiffs' Proposed Remedial Order offends these bedrock principles in several ways. HRD maintains that its proposal, unlike that of plaintiffs, is narrowly tailored to remedy the violation that has been adjudicated, and avoids improper judicial interference with the management and policymaking decisions of the state. HRD's specific objections to plaintiffs' proposal are set forth below.

## II.     OBJECTIONS TO PLAINTIFFS' PROPOSED REMEDIAL ORDER

### Paragraph 1

HRD agrees in substance with most of the remedial hiring portion of Paragraph 1 of plaintiffs' proposed order. Section A of the State defendants' proposed order, however, covers the same subject in more detail and more precisely, and is therefore a preferable formulation.

Further, HRD does not agree with the following specific aspects of plaintiffs' Paragraph 1:

**1(a)**     The Jacobs shortfall formula was found acceptable in the trial testimony of Dr. Landy and Dr. Wiesen, and there is no present need that it be further "reviewed by plaintiffs' experts," as proposed. Such review will only entail delay and additional cost for no apparent reason. HRD is now well along in the process of detailing the application of the formula and creating a shortfall list of names for each affected municipality. It is important to have these shortfall lists ready for implementation in the near future, as some municipalities may request

new certified eligibility lists shortly after the 2006 list has been established. HRD expects to release the score results of the June 2006 examination on or about November 1, 2006, and to establish the 2006 list on or about December 1, 2006. At that point, the 2004 list will be revoked.

The rounding of fractional numbers should be done at .5, as is universally customary. There is no known scientific or other basis for rounding at .3 or .4, as proposed by plaintiffs.

**1(b)** HRD objects to the proposal that HRD should identify which candidates remain interested in a firefighter position. It is premature to do so now, before a municipality requests a certified list, and will cause redundancy later because the process would only have to be repeated then by the municipality. The State defendants' proposal leaves this aspect to the hiring authority after HRD certifies an eligible list, under well established hiring procedures. To canvass the candidates earlier will only create more work and delay the process. HRD's proposed remedial order sufficiently takes probable dropouts into account by requiring that the shortfall lists include the names of 2n+1 of the shortfall numbers, or more names in the case of tie scores.

Attached as Exhibit B is a spreadsheet synopsis of HRD's shortfall analysis of the 2002 and 2004 examinations, accompanied by an explanation of the methodology used in applying the Jacobs formula. Exhibit B shows that the total 2002 shortfall was eight positions in five communities, and that the total 2004 shortfall was 14 positions in eight communities, including six in Boston.

**1(b), 1(c)** The use of PAR 10 "to consider current minority candidates" is inappropriate for several reasons: (1) there is no justification in this Court's liability decision for granting any form of relief to "current minority candidates," i.e., persons who took the June 2006 firefighter

4

examination, who by definition are not members of the class and are not entitled to a remedy; (2) all class members will have received remedial relief if they remain interested in being hired, under the procedures set forth in Section A of the State defendants' proposed order; (3) the PAR 10 procedure can only be initiated by the municipality, not by HRD, and none of the municipalities (except Lynn) are parties to this litigation; and (4) PAR 10, unlike the State defendants' proposed remedial order, does not require a municipality to state its reasons for bypassing a minority candidate.

**1(d)** The State defendants object to section 1(d) of the plaintiffs' proposed remedial order. Section 1(d) of the State defendants' proposal provides an adequate remedy for any issues that arise in the remedial hiring process, in that a hiring authority would be required to provide HRD with a written statement of its reasons for bypassing a minority candidate, and would be subject to the HRD approval process with a right of appeal to the Civil Service Commission. Minority candidates will be fully protected by the proposed requirements, and there is no demonstrated need to inject a special master.

## Paragraph 2

**Back pay**: HRD objects to the provisions for back pay on the ground that HRD is not the actual hiring authority and is not in control of the ultimate decision to hire entry-level firefighters. Because each municipal appointing authority has discretion to bypass candidates on the certification list established by HRD, and can hire candidates from special certifications,[1]

---

[1] Indeed, in this very lawsuit, plaintiffs have claimed that the City of Lynn intentionally discriminated against them by requesting a special certification list of Spanish-speaking candidates in late summer of 2005. See 12/22/05 Supplemental Complaint (Paper #63). According to plaintiffs, if Lynn had "gone by the existing civil service list" created by HRD and not requested a special certification, plaintiffs would have been reached for consideration. Id.

there is no guarantee that the minority candidates identified in the shortfall analysis would have been hired even if they had been considered earlier.  Moreover, if back pay continues to accrue up until the date a candidate is hired as a result of this Court's remedial order, HRD's liability would be entirely dependent on when, or if, a municipality chooses to hire entry-level firefighters in the future—a decision over which HRD has no control.

If this Court decides to award back pay, HRD agrees with plaintiffs that it should be limited to "identifiable victims of discrimination."  Pls.' Proposed Remedial Order, ¶ 2.  The Court should specify that the term "identifiable victims of discrimination" means only those particular minority candidates who, based on their scores, would have been next in line for consideration for hire, as identified by the shortfall number described in paragraph A.1.a of the State defendants' Proposed Remedial Order.  "Identifiable victims of discrimination" should not include any of the remaining candidates on the 2n+1 shortfall list described in paragraph A.1.b.  For example, in the case of Boston, there was a shortfall number of six minorities in 2004, with a 2n+1 number of 20 (due to tie scores).  See Exh. B.  HRD submits that only the top six minorities on the list are "identifiable victims of discrimination" and are therefore the only candidates in Boston who are arguably entitled to an award of back pay.

Further, if back pay is awarded, the order should at a minimum require that the candidate prove that he would have been hired earlier "but for" the discrimination.  See Evans v. City of Evanston, 881 F.2d 386 (7th Cir. 1989); Day v. Mathews, 530 F.2d 1083, 1084-85 (D.C. Cir. 1976); 42 U.S.C. § 2000e-5(g) ("No order of the court shall require . . . the hiring . . . of an individual as an employee, or the payment to him of any back pay, if such individual . . . was

---

¶ 1.

refused employment . . . for any reason other than discrimination . . . ."). The order should also specify that the candidate must have exercised reasonable diligence in mitigating damages. The State defendants propose that the back pay calculations be determined by a magistrate judge of this Court and not by a special master. The State defendants further propose that the Court set the date of entry of its remedial order as the date on which back pay will stop accruing for all candidates. See Lex K. Larson, Employment Discrimination § 92.06[1][b], at 45 (2d ed. 2001) ("The general rule is that the back pay period ends on the date of the court order authorizing back pay . . . .").

**Credit for Years of Service:** HRD objects to this provision for the same reasons it objects to the provision for back pay. Moreover, HRD submits that such a remedy will unfairly impinge on the rights of current firefighters and will directly affect the public-safety and other interests of the municipal appointing authorities, who, other than Lynn, are not parties to this case.

**Emotional Distress Damages:** HRD objects to an award of emotional distress damages because compensatory damages are not authorized in disparate-impact cases under Title VII. See 42 U.S.C. 1981a(a)(1) ("In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) . . . , the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section . . . .") (emphasis added); Maldonado v. City of Altus, 433 F.3d 1294, 1304 (10th Cir. 2006) ("compensatory and punitive damages are not available under a disparate-impact claim"); accord Allison v. Citgo Petroleum

Corp.,151 F.3d 402, 423 (5th Cir. 1998); Pollard v. Wawa Food Market, 366 F. Supp. 2d 247, 254 (E.D. Pa. 2005).

### Paragraph 3

HRD objects to this paragraph because compensatory damages are not authorized in disparate-impact cases under Title VII. See 42 U.S.C. § 1981a(a)(1).

### Paragraphs 4 to 10

HRD objects to relief concerning future examinations on the ground that they are not at issue in this litigation. Plaintiffs have filed a separate complaint challenging the 2006 examination, but this Court has made no finding regarding the legality of that examination under Title VII. It would therefore be improper for the Court to order relief as to the 2006 examination, and any future examinations, because the scope of the remedy may not exceed the scope of the violation. See Lewis, 518 U.S. at 357 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); Jenkins, 515 U.S. at 97-98 ("federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation") (quotation marks omitted); Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 389 (1992) ("Federal courts may not order States or local governments, over their objection, to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated."). HRD further submits that the remedy proposed by plaintiffs—which would require many years of judicial oversight and monitoring of HRD's testing and selection procedures, see Pls.' Proposed Remedial Order, ¶¶ 4, 7-8—would improperly inject the Court into the day-to-day operations and management of a state agency. See Jenkins, 515 U.S. at 99.

In addition, HRD objects to the Minority Recruitment Plan submitted by interveners, see Pls.' Proposed Remedial Order, ¶ 10, on the ground that HRD cannot, consistent with state law, target only minority candidates in its recruitment efforts.  See M.G.L. c. 31, § 1

### Paragraphs 11 and 12

HRD objects to these paragraphs because compensatory damages are not authorized in disparate-impact cases under Title VII.  See 42 U.S.C. 1981a(a)(1).

        Respectfully submitted,

        COMMONWEALTH OF MASSACHUSETTS, HUMAN RESOURCES DIVISION, and RUTH BRAMSON, in her capacity as Personnel Administrator of the Human Resources Division,

        By their attorney,

        THOMAS F. REILLY
        ATTORNEY GENERAL

        /s/ Sookyoung Shin
        Ronald F. Kehoe, BBO # 264260
        Sookyoung Shin, BBO # 643713
        Assistant Attorneys General
        Government Bureau
        One Ashburton Place, Room 2019
        Boston, MA 02108-1698
        (617) 727-2200, ext. 2619 (Kehoe), ext. 2052 (Shin)

Dated: October 20, 2006

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on October 20, 2006.

/s/ Sookyoung Shin
Sookyoung Shin
Assistant Attorney General

# EXHIBIT A

## STATE DEFENDANTS' PROPOSED REMEDIAL ORDER

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACOB BRADLEY, *et al.*,

        Plaintiffs,

        v.           CIVIL ACTION
               NO. 05-10213-PBS

CITY OF LYNN, *et al.*,

        Defendants.

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF THE
NAACP,

        Intervenors.

## ORDER

, 2006

Based on the court's findings on liability set forth in its Memorandum and Order dated August 8, 2006 (P #127), the court hereby orders the following remedy for the adverse impact of the 2002 and 2004 entry level firefighter examinations on members of the class of Black and Hispanic ("minority") candidates.

    **A.**    **Remedial Hiring**

        1.    The Commonwealth's Human Resources Division ("HRD"), in consultation with plaintiffs' and intervenors' counsel, shall attempt to identify minority candidates who would have been reached for consideration for hiring but for the adverse impact of the 2002 and 2004 examinations by taking the following actions:

a.  Utilizing the so-called "shortfall" formula developed by Dr. Jacobs and found acceptable by plaintiffs' experts, HRD shall identify the number of minority candidates in each municipality, other than municipalities still subject to the Beecher consent decree, who probably would have been certified as eligible for hiring consideration if the 2002 and 2004 examinations had not had adverse impact on minorities ("the shortfall number"). A fractional shortfall .5 or greater shall be rounded up to the next whole number, and less than .5 shall be rounded down. In any municipality where all veterans have already been certified as eligible, the veteran shortfall shall be subtracted from the municipality's shortfall number. In any municipality where all veterans have not already been certified, veterans and nonveterans shall be treated separately in calculating the municipality's shortfall. A candidate who took both the 2002 and 2004 examinations shall be counted in the shortfall analyses for both years.

b.  For each such municipality, HRD shall then identify and prepare a list of the names of that number of minority candidates as shall equal 2n+1 of the municipality's shortfall number of minority candidates who would have been next in line for eligibility certification by HRD, based on their examination scores ("the 2n+1 shortfall list"). If necessary, HRD shall revive the eligibility of those candidates. A candidate who has applied for more than one municipality shall be included only in the shortfall number of the municipality where the candidate resided on the date of the examination. In any municipality having shortfall numbers for both 2002 and 2004, the candidates' names shall be merged into a single list according to score. In any municipality having fewer minority candidates than 2n+1 of its shortfall number, the 2n+1 shortfall list shall consist of all the 2002 and 2004 minority candidates in that municipality.

     c. When such a municipality next requests an eligibility list for firefighter vacancies (other than requests for special certifications under HRD's Personnel Administration Rules), HRD shall place the 2n+1 shortfall list at the top of the 2006 certified eligibility list.

     d. In any instance in which a municipality bypasses a minority candidate who has been certified as eligible pursuant to the foregoing procedure, HRD shall require the municipality to state in writing its reasons for bypassing the minority candidate, and such reasons shall be subject to approval by HRD and appeal to the Massachusetts Civil Service Commission.

  **B.** **<u>Plaintiffs' and Interveners' Fees and Costs</u>**

    The Commonwealth shall pay the reasonable attorneys' fees and costs of counsel for the plaintiffs and the interveners, and the reasonable fees of the plaintiffs' expert trial witnesses.


               United States District Judge

# EXHIBIT B

## SHORTFALL ANALYSIS 2002 & 2004

## EXPLANATION OF SHORTFALL METHODOLOGY

Following this explanation is a spreadsheet analysis prepared by HRD by applying the Jacobs shortfall formula to the score results of the 2002 and 2004 fire fighter entry level examinations. HRD's methodology was as follows.

1.   The Jacobs formula compares the actual hires of minorities and non-minorities against the number of test takers in each group. In applying the shortfall analysis, the number of non-minority appointments is divided by the number of non-minority exam takers.

The resulting quotient is then multiplied by the number of minority exam takers, to arrive at the predicted minority hiring number.  The minority hiring number is multiplied by .8 (the four-fifths rule) to determine the actual shortfall for each community. The following spreadsheet shows that analysis both before and after factoring out veterans' appointments.

In a municipality that has reached all veterans for hiring consideration,  the analysis is entirely of nonveterans, i.e., as if no veterans had been hired. This was true of all municipalities in 2002 and 2004, except Lynn in 2002, where two veterans were not reached (they are included in Lynn's shortfall).

2.   HRD then identified municipalities with shortfalls of .5 or higher and reviewed the certified lists issued to those municipalities to determine where hiring selections had stopped in each certified group. From that point, HRD counted down each list and selected minority names equaling 2n+1 of the number of shortfall positions.

3.   Where the final name of the 2n+1 group was tied by score with other candidates, all tied candidates were included, resulting in a list of more than 2n+1 names. For example,

Boston had a shortfall of 6 in 2004, so that 2n+1 = 13, but eight candidates were tied at #13 with identical scores of 92, resulting in the selection of 20 names. Lynn and Waltham in 2002 had similar tied results.

    4.    Where the number of available minority candidates is less than 2n+1, HRD selected all of the minorities, resulting in fewer than 2n+1. This was true in 2004 of Gardner, Natick and Revere, and in 2002 of Brookline.

**2002 and 2004 Firefighter Exams Shortfall >= .5 Synopsis**

| A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Community | 2002 Shortfall All Appts | 2002 Shortfall After Vets | 2002 Positions | 2002 Names To be Certified (2N+1) | Available 2002 B/H Residents | | 2004 Shortfall All Appts | 2004 Shortfall After Vets | 2004 Positions | 2004 Names To be Certified (2N+1) | Available 2004 B/H Residents |
| Boston | | | | | | | 41.36 | 6.34 | 6 | 13 | 20* |
| Brockton | 2.50 | 0.00 | 0 | | | | 0.15 | 0.00 | | | |
| Brookline | 2.04 | 2.04 | 2 | 5 | 2 | | | | | | |
| Everett | | | | | | | 1.33 | 1.12 | 1 | 3 | 3 |
| Gardner | | | | | | | 0.92 | 0.80 | 1 | 3 | 2 |
| Leominster | 0.76 | 0.43 | 0 | | | | | | | | |
| Lynn | 1.87 | 1.87 | 2 | 5 | 6* | | 2.56 | 2.10 | 2 | 5 | 5 |
| Medford | 0.94 | 0.30 | 0 | | | | | | | | |
| Milton | | | | | | | 0.75 | 0.00 | | | |
| Natick | 0.53 | 0.28 | 0 | | | | 0.53 | 0.53 | 1 | 3 | 2 |
| New Bedford | 0.68 | 0.00 | 0 | | | | 1.53 | 0.97 | 1 | 3 | 3 |
| Quincy | 0.49 | 0.27 | 0 | | | | | | | | |
| Randolph | 1.76 | 1.76 | 2 | 5 | 5 | | 0.50 | 0.50 | 1 | 3 | 3 |
| Revere | | | | | | | 0.65 | 0.54 | 1 | 3 | 1 |
| Taunton | | | | | | | 0.70 | 0.00 | | | |
| Waltham | 0.85 | 0.67 | 1 | 3 | 4* | | | | | | |
| Weymouth | | | | | | | 0.54 | 0.00 | | | |
| Winthrop | | | | | | | 0.93 | 0.34 | | | |
| Woburn | 0.60 | 0.60 | 1 | 3 | 3 | | | | | | |
| | | | | | | | | | | | |
| Totals | 13.02 | 8.22 | 8 | 21 | 20 | | 52.45 | 13.24 | 14 | 36 | 39 |

* = Tied score in last position

Consent Decree Communities are not included