UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF LYNN; EDWARD J. CLANCY, JR., in his capacity as Mayor of the City of Lynn; the COMMONWEALTH OF MASSACHUSETTS, DIVISION OF HUMAN RESOURCES; and RUTH BRAMSON, in her capacity as Personnel Administrator of the Division of Human Resources of the Commonwealth of Massachusetts,<br>    Defendants,<br><br>BOSTON SOCIETY OF THE VULCANS and NEW ENGLAND AREA CONFERENCE OF THE NAACP,<br>    Interveners | Civil Action No. 05-10213-PBS |

AMENDED PROPOSED REMEDIAL ORDER

  On August 8, 2006, this Court issued a Memorandum and Order regarding liability, concluding that the written civil service cognitive ability examination used in 2002 and 2004 to qualify and rank applicants has had a disparate and adverse impact on Black and Hispanic candidates for entry-level firefighter positions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), (k) (2006), and the federal consent decree in Boston Chapter, NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974) (the "Beecher decree"). Based on these findings, it is hereby ordered as follows:

**A.    Addressing the Adverse Impacts of the 2002 and 2004 Examinations Through Remedial Hiring and Backpay**

1. The Commonwealth, along with and in cooperation with Plaintiffs' and Interveners' counsel, shall attempt to identify individuals who would have been hired as firefighters based on the 2002 and 2004 examinations if not for the adverse impact of those examination by taking the following actions:

 a. Utilizing the shortfall methodology described below, the parties, with the assistance of their experts, shall identify the number of minority candidates who would likely have been hired by the various Commonwealth communities based on the results of the 2002 and 2004 examinations, had those examinations not had adverse impact on minorities.

 The formula to be utilized, which is based on the concept of the Jacobs analysis, shall compare the actual hires of minorities and non-minorities against the number of test takers in each group. In applying the shortfall analysis, the number of non-minority appointments shall be divided by the number of non-minority exam takers. The resulting quotient shall then be multiplied by the number of minority exam takers to arrive at the predicted minority hiring number.

 The parties shall then identify municipalities with shortfalls of 0.5 or higher. For the purposes of determining such shortfall numbers the shortfall for the 2002 and 2004 exam shall be added together in each relevant municipality. A fraction of 0.5 or more shall be rounded up to the nearest whole number.

After identifying the shortfall in each applicable community, HRD shall certify to the affected municipality a list consisting of all minority applicants who passed the 2002 or 2004 examination ranked by score. HRD shall instruct each municipality that it need only utilize such shortfall list until the municipality has hired the number of minorities identified in the above-described shortfall analysis, or all eligible candidates have been disqualified.

Once a municipality has appointed minority candidates equaling its shortfall, minority candidates certified pursuant to this order shall be removed from the municipality's eligibility list, unless otherwise eligible based on the 2006 exam.

In the event that a municipality exhausts the minority list described above, without meeting its shortfall hiring, it shall not be obligated to fill such shortfall with a minority hiring, provided however, that HRD and the plaintiffs shall have the right to review any rejection or disqualification of such minority candidates on such shortfall list, and HRD shall not approve such disqualification unless the municipality articulates a sufficiently appropriate reason for not hiring such candidate. Any disputes regarding this procedure shall be referred to the magistrate (as described below) for resolution.

The formula described above shall not apply to any special paramedic certification list requested by a municipality, provided HRD approves the request for such special paramedic certification. In the

event that a municipality seeks a special EMT certification list, but had not sought such a list in 2002 and 2004, then HRD shall utilize the shortfall minority list described herein with the condition that any minority placed on such list agrees to immediately obtain their EMT certification if hired by the municipality.

      b.     The Court appoints Magistrate Dein or Collings who shall resolve any issues that arise as a result of this order.

    2.     The Magistrate shall make a determination as to the entitlement to back pay for any candidate hired as a result of this order, or hired later than would otherwise have occurred had the 2002 and 2004 test not been discriminatory, and such calculation shall be based on the difference between what the candidate would have earned as a fire fighter had he/she been selected in a municipalities' previous hiring rounds, including lost overtime and detail opportunities, and what they have in fact earned during the same time period. Further the Magistrate shall determine the amount of years of service to be credited to each such candidate for purposes of the civil service law and retirement. The parties shall cooperate to notify individuals who may have a claim for backpay under this order.

B.     Prospective Obligations

    3.     Upon completion of the 2006 entry-level firefighter examination, the Commonwealth will provide to the Plaintiffs' and Interveners' attorneys all test scores, weighting criteria, certification lists, appointment data, and all other relevant information necessary to conduct an adverse impact and "job relatedness" analysis of the examination and selection processes.

4.	Following the next three entry-level firefighter examinations (2008, 2010 and 2012), the Commonwealth shall continue to provide to the Plaintiffs' and Interveners' counsel all test scores, weighting criteria, certification lists, appointment data, and all other relevant information necessary for the Plaintiffs and Interveners to conduct an adverse impact analysis of the examination and selection processes.

5.	To account for the adverse impact in the selection process separate and apart from the adverse impact in the testing process, the Court shall modify the terms of the <u>Beecher</u> decree to allow the parties the opportunity to contest an examination under that decree even after appointments have been made utilizing examination scores.

C.	<u>Future Minority Recruitment</u>

6.	As part of its continuing interest in maintaining firefighting forces throughout the Commonwealth that achieve the racial and ethnic diversity of Massachusetts' communities, the Commonwealth agrees to implement and follow the Minority Recruitment Plan previously submitted by the Interveners.

D.	<u>Plaintiffs' and Interveners' Additional Damages, Fees, and Costs</u>

7.	In addition to any relief granted pursuant to sections A and B of this Order, the Commonwealth shall ensure that each plaintiff is certified for appointment under Section A of this agreement.

8.	The Commonwealth will pay to the Plaintiffs all of their reasonable attorneys' fees and costs associated with this case and ensuring

compliance with this order. The amount of costs in this paragraph shall include all expert witness fees.

9. The Commonwealth shall also pay to each of the Intervener organizations, $25,000 to be used for their own recruitment efforts, and to provide preparation courses for minority candidates.  It shall also pay all of their reasonable attorneys' fees and costs associated with this case and ensuring compliance with this order. The amount of costs in this paragraph shall include all expert witness fees.

E. <u>Separate and Final Judgment</u>

10. The Court hereby enters separate and final judgment in this case with respect to liability and remedy regarding the 2002 and 2004 firefighter examination.

        Respectfully submitted,

        JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals,

        By their attorneys,

        _/s/  Shannon Liss-Riordan_____
        Harold L. Lichten, BBO # 549689
        Shannon Liss-Riordan, BBO # 640716
        Alfred Gordon, BBO # 630456
        Pyle, Rome, Lichten, Ehrenberg &
            Liss-Riordan, P.C.
        18 Tremont Street, Suite 500
        Boston, MA 02108
        (617) 367-7200

                        NEW ENGLAND AREA CONFERENCE OF THE NAACP AND THE BOSTON SOCIETY OF VULCANS

                        By their attorneys,

                        /s/ Nadine Cohen
                        Nadine Cohen (BBO #090040)
                        Lawyers Committee for Civil Rights Under Law
                        294 Washington Street
                        Boston, Massachusetts  02108
                        (617) 482-1145

                        /s/ Mark D. Selwyn
                        Mark D. Selwyn (BBO #565595)
                        Wilmer Cutler Pickering Hale and Dorr LLP
                        60 State Street
                        Boston, Massachusetts  02109
Date:  November 16, 2006     (617) 526-6000

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served on the attorneys of record for each party by electronic notice on November 16, 2006.

                        /s/  Shannon Liss-Riordan
                        Shannon Liss-Riordan