# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

JACOB BRADLEY, NOAH BRADLEY, KEITH
RIDLEY, and JARED THOMAS,
individually and on behalf of a class of
similarly situated individuals,
                Plaintiffs,

v.

CITY OF LYNN; EDWARD J. CLANCY, JR.,
in his capacity as Mayor of the City of Lynn;
the COMMONWEALTH OF MASSACHUSETTS,
DIVISION OF HUMAN RESOURCES; and
RUTH BRAMSON, in her capacity as Personnel
Administrator of the Division of Human Resources
of the Commonwealth of Massachusetts,
                Defendants,

BOSTON SOCIETY OF THE VULCANS and
NEW ENGLAND AREA CONFERENCE OF
THE NAACP,
              Interveners

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. <u>05-10213-PBS</u>

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

On August 8, 2006, the Court issued a decision in the plaintiffs' favor,

concluding that the Commonwealth's 2002 and 2004 entry-level firefighter

examinations violated Title VII.  The plaintiffs have requested the entry of

separate and final judgment with respect to this aspect of the case and now

move for an award of reasonable attorneys' fees and costs.

In the interest of not expending unnecessary time briefing issues that may

not be in dispute, plaintiffs' counsel have kept this motion relatively brief.

Because they do not know yet what issues the Commonwealth will raise in

opposition to this fee application, the plaintiffs request the opportunity to respond in a reply brief to any issues that the Commonwealth may raise.

Plaintiffs' counsel's billing records for this case are attached here as Exhibit A, and a record of expenses incurred are attached as Exhibit B. As explained in counsel's affidavits (Exhibits C and D), the plaintiffs' counsel's law firm invested an extraordinary amount of out-of-pocket costs, in addition to time, in prosecuting this case on behalf of a class of all Black and Hispanic applicants who took the Commonwealth's 2002 or 2004 firefighter initial hire examinations. This firm is a small plaintiffs' side employment and labor law firm that took a large risk in making this investment. In order to pay the experts' fees, the firm's partners went without their usual paychecks for a number of weeks (which have still not been repaid). In addition, because even by foregoing their pay they were still unable to afford the expert's bills, the firm took out a $150,000 line of credit from the bank, payable within two years and personally guaranteed by the firm's partners.

In addition, the other noteworthy point for the Court to consider in reviewing this fee petition is that, at every step of the way, the plaintiffs attempted to resolve the case, and to narrow the issues in dispute, to no avail. Plaintiffs, together with the Interveners, engaged in three lengthy mediation sessions prior to trial and forwarded multiple written settlement proposals to the Commonwealth, and the Commonwealth never even responded with a written proposal. After the Court issued its decision in August, the plaintiffs again engaged in lengthy discussions with the Commonwealth, attempting to reach agreement on a remedy, and again the Commonwealth failed even to respond to the plaintiffs' proposals in writing.

During and leading up to the trial as well, the plaintiffs attempted to narrow the issues to be tried by seeking concessions from the Commonwealth on issues that did not appear to be truly contested.  However, the Commonwealth refused to concede a single issue, requiring the plaintiffs to prove each element of a disparate impact claim, with expert support.  Most notably, the Commonwealth's arguments appeared, prior to trial, to focus exclusively on adverse impact, as its expert report did not even address validity of the examination, and indeed there was no evidence that the 2002 and 2004 exams had been validated under the EEOC Guidelines.  However, the Commonwealth refused to agree to narrow the scope of the trial, forcing the plaintiffs to prove adverse impact, as well as lack of validity of the examination and less discriminatory alternatives.

In addition, the preparation for this trial and the trial itself were extremely complicated.  Preparation required working with experts on complex statistical analyses, reviewing massive data sets in a variety of formats, and organizing the presentation of the evidence in an understandable manner.  In addition, the Commonwealth's defenses were a constantly moving target.  The Commonwealth shifted the focus of its arguments leading up to the trial and during the trial itself.  As the Court may recall, the Commonwealth's counsel provided plaintiffs' counsel with critical documents during the trial (even when they had been available earlier), requiring the plaintiffs' counsel to review and analyze the new statistical evidence as the trial day was proceeding and incorporate it into that day's testimony.

The plaintiffs' counsel's ability to successfully prosecute this case in light of these challenges, and achieve such a significant result affecting minority firefighter

applicants across Massachusetts, merit an award of their full fees and expenses. By litigating this case to conclusion in the district court, the Commonwealth knowingly took the risk that it if it lost, it would be responsible for compensating the plaintiffs' counsel for their time and expenses.

Indeed, the purpose behind the fee-shifting provision in Title VII is to encourage counsel to take on meritorious discrimination cases, as Congress recognized that combatting discrimination is in the public interest and is not merely a private matter.[1]  The purpose behind this fee-shifting provision is best served when, in a case that is taken all the way to final decision by a factfinder and the plaintiffs prevail, counsel are compensated fully, and not grudgingly, for the time and effort required in taking a case all the way to conclusion.  Paying the plaintiffs' counsel's full bill is a cost that must be borne fully by a defendant that requires a case to be litigated to conclusion, rather than resolving it at an earlier stage.  Without the knowledge that this cost awaits the litigious defendant at the end of an unsuccessful battle, it has little incentive to resolve a case earlier, thus

---

[1]     As the First Circuit has explained:

> In addition to gaining personally, successful civil rights plaintiffs serve the public interest . . . .  Moreover, some fee assessment in cases of this sort is likely to encourage more thoughtful actions by governments. *See  Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 944 (1989) . . .  *See also City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686 (1986) ("Congress has determined that 'the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff....' ") (quoting *Hensley*, 461 U.S. at 444 n. 4, 103 S.Ct. at 1945 n. 4 (Brennan, J., concurring in part and dissenting in part)).

*Ackerley Communications of Massachusetts, Inc. v. City of Somerville*, 901 F.2d 170, 171 n. 2 (1st Cir. 1990).  *See also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (purpose of fee-shifting provision in § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances); *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 326 (1993) ("The statutory provision for attorney's fees aims to attract competent legal counsel for those with meritorious claims").

saving the parties and decisionmaker the time and effort of a full trial and decision.

Here, as the Court is aware, the plaintiffs' counsel are particularly well qualified for this litigation, as Harold Lichten has spent most of his thirty-year career representing firefighters and litigating discrimination cases. Shannon Liss-Riordan, who along with Attorney Lichten has been recognized as one of the leading plaintiffs' employment attorneys in Massachusetts, specializes in discrimination litigation and particularly class action cases (in addition to having studied statistics, which was especially useful for preparing and trying this case). Alfred Gordon, who participated actively in preparing the case before trial, as well as in the post-trial briefing, is also well-suited for this litigation as he worked closely with Attorney Lichten on the previous *DeLeo* case.[2]

Because of their specialized experience, counsel were able to litigate this case more efficiently than would most likely have been possible for other firms. Indeed, counsel suggests this is one of those rare cases in which a lodestar enhancement is warranted.[3] This was a case of significant public interest, for which counsel took exceptional personal risk. However, rather than pressing for an

---

[2]    For efficiency purposes, and in order minimize overlap of attorney efforts, Attorney Gordon did not participate in the trial, although courts have awarded fees for three attorneys participating in a complex trial.

[3]    In determining whether to adjust the lodestar, a court is to consider the following factors: how long the trial lasted; the difficulty of the legal and factual issues involved; the degree of competency demonstrated by the attorneys; the time and labor required; the amount of damages involved; the result obtained; the experience, reputation, and ability of the attorneys; the usual price charged for similar services by other attorneys in the same area; and the amount of awards in similar cases. *See Fontaine v. Ebtec Corp.,* 415 Mass. 309, 324-25 (1993).

enhancement to the lodestar, counsel beseech the Court simply to award the full fees and expenses requested.[4]

The requested fees are summarized here:

| | | | | |
|---|---|---|---|---|
| Harold Lichten | 303.6 hours x | $350/hour | = | $ 106,260 |
| Shannon Liss-Riordan | 394.1 hours x | $350/hour | = | $ 137,935 |
| Alfred Gordon | 294.6 hours x | $275/hour | = | $ 81,015 |
| Stephen Young | 96.7 hours x | $200/hour | = | $ 19,340 |
| TOTAL | | | | $ 344,550 |

In the *DeLeo* case, Attorneys Lichten and Gordon requested somewhat lower rates of $320 and $250 respectively, which this Court stated she would approve, and which the City of Boston paid without opposition. However, as described below, this rate was below market for Attorney Lichten. Moreover, the *DeLeo* case (like the *Quinn* case before it) was far simpler to litigate than this case. The *DeLeo* case was decided on summary judgment with no trial, no need for expert testimony, and only a single simple statistical issue. This case, in contrast, required a full trial, involved extremely complicated statistical issues and analyses, and extensive work with experts.[5]

The rates requested for plaintiffs' counsel here are well substantiated by the accompanying affidavits. As described in those exhibits, plaintiffs' counsel are leading Massachusetts practitioners in the field of plaintiffs' side employment law.

---

[4]    For any reductions the Commonwealth may seek of various hours listed in the billing records, plaintiffs' counsel ask the Court to consider that the justification in this case for a lodestar enhancement should offset any such reductions the Court might otherwise consider appropriate.

[5]    In addition to these reasons for the higher requested rate for Attorney Lichten, Attorney Gordon has, since the *DeLeo* trial, been promoted to partner at the firm, thus justifying the increase in his rate from $250 to $275.

Attorney Lichten was named a Lawyer of the Year by *Massachusetts Lawyers Weekly* in 2003 (*see* Exhibit E), and Attorney Liss-Riordan received this same recognition in 2002 (*see* Exhibit F) (an honor bestowed upon ten lawyers per year in Massachusetts). In a recent decision by Arbitrator Mark Irvings (who arbitrates and mediates hundreds of labor and employment cases a year), Arbitrator Irvings awarded Attorney Liss-Riordan a rate of $350 per hour, stating that "she is widely recognized as one of the pre-eminent plaintiff lawyers in New England." (*See* Exhibit G, at 15.)

These requested rates are also in line with those awarded by Massachusetts courts to counsel who prevail in such cases who have commensurate skill and experience to the plaintiffs' counsel in this case. For example, Kevin Powers, a partner in the firm of Rogers, Powers, and Schwartz, which shares office space with plaintiffs' counsel, was awarded fees last year by the SJC for his work on *Clifton v. MBTA*, 445 Mass. 611 (2005), that came to the rate of $400 per hour. *See* Powers Affidavit (Exhibit H). In his supporting affidavit, Attorney Powers cites Attorneys Lichten and Liss-Riordan as being top employment attorneys practicing in Massachusetts and meriting rates of at least $350 per hour. Harvey Schwartz, another leading civil rights attorney (also a member of the firm with which plaintiffs' counsel shares office space), as well as Sarah Wunsch (an ACLU attorney) were awarded $350 per hour for their work against the MBTA in the First Amendment case of *Change the Climate v. MBTA*, 2005 WL 3735100 (D.Mass. 2005) (Exhibit I). Wendy Kaplan was awarded $350 per hour for her

work in the case of *Lay v. Motti Electric Co.*, *Lay v. Motti Electric Co.*, Norfolk Superior Court, C.A. No. 04-0497 (Exhibit J).

In addition, the plaintiffs attach the following affidavits, demonstrating that these requested rates are reasonable, given the market rate for attorneys practicing in this field in the Boston area.  For example, Attorney Nancy Shilepsky, who represents plaintiffs in employment disputes, states in her affidavit that her hourly rate is $430 (Exhibit K).  Norman Zalkind has attested (in Exhibit L) that the hourly rate for Inga Bernstein (another plaintiff-side employment lawyer, who graduated from Harvard Law School two years prior to Attorney Liss-Riordan) is $350.  In addition, on the defense side, Attorney Arthur Telegen attested in an affidavit from 2002 that his hourly rate was $525 (Exhibit M) (and that the rate of an associate attorney with 1 ½ years of experience was $215).[6]

In addition to the fees requested for the partners who worked on this case, plaintiffs also request fees at the rate of $200 per hour for associate attorney Stephen Young, who assisted with briefing and trial preparation.  Attorney Young, a 2000 graduate of Harvard Law School who has four years experience in litigation, was awarded this rate by Arbitrator Irvings in the *Bilbilian v. Morton's* case (Exhibit G).  This rate is also reasonable in light of court awards for

---

[6]      There is no reason for the Court to assess fees for attorneys at a small plaintiff-side civil rights firm at a rate lower than other types of firms, such as defense firms or commercial litigation firms, especially in a case for which counsel took such great personal financial risk by borrowing on a line of credit to cover substantial expenses.

Notably, as described in her affidavit, Attorney Liss-Riordan's practice currently focuses on class action wage and hour litigation, which may result in substantially higher fees than her lodestar.  Her requested rate in this case therefore represents a lower rate for her time than can be obtained through her work on more remunerative class action litigation.  Since the purpose of the fee-shifting provision Title VII is to encourage attorneys to pursue meritorious discrimination

associate attorneys.  For example, as described in her affidavit, Attorney Liss-Riordan was approved at the rate of $250 per hour by Judge O'Toole, when she was in her fourth year of litigation, in the case of *John Sprague v. United Airlines, Inc.*, 2002 WL 1803733 (*see* Exhibit D, ¶ 11)**.**  In *Change the Climate v. MBTA* (Exhibit I) Judge Keeton approved a rate of $225 per hour for associate counsel.

Finally, the expenses incurred in this case, itemized in Exhibit B, total $294,655.28.  (Copies of the experts' bills are attached at Exhibits N-P.) Plaintiffs incurred the bulk of these expenses on expert witnesses:  $228,278.46 for Frank Landy (SHL, USA, Inc. and Landy Litigation Support Group) (Exhibit N); $ 40,167.83 for Joel Wiesen (Applied Personnel Research) (Exhibit O); and $20,081.00 for Lance Seberhagen (Seberhagen & Associates) (Exhibit P).  The remaining litigation expenses (for such costs as copying, deliveries, transcripts, subpoenas, etc.) total $6,127.00.

With respect to expenses, plaintiffs have the following comments.  This case turned entirely on expert testimony and required significant expenditures on expert analyses, consultation, trial preparation, and appearance at trial.  As noted earlier, plaintiffs' counsel attempted to narrow the scope of contested issues in this case by seeking agreement from the Commonwealth, but the Commonwealth refused to concede a single issue, necessitating extensive use of expert witnesses.  Plaintiffs also sought to limit expert expenses by arranging the order of witnesses at trial so as to maximize their efficiency and prevent the need for the experts to return to Boston for rebuttal testimony.

---

claims, it is important for counsels' fees to be approved at market rates when they prevail in such cases in order to encourage counsel to devote time to such cases.

Earlier in the case, the plaintiffs intended to use three experts – Joel Wiesen, who had been employed by HRD involved with its earlier efforts to find a valid firefighter examination; Frank Landy, one of the country's foremost experts on disparate impact discrimination, who himself had been involved in creating the exam upon which the challenged 2002 and 2004 exams had been based; and Lance Seberhagen, another prominent expert whose role was to be focused on less discriminatory alternatives to the Commonwealth's examination. However, as described above, the plaintiffs' counsel's firm could not afford all of these experts. The firm's partners went payless for a number of pay periods in order to pay the experts' bills and took out a substantial line of credit, personally guaranteed by the partners. The plaintiffs decided not to continue using Dr. Seberhagen because they could not afford to pay all three experts.[7]

Because of the personal investment counsel made in this case, plaintiffs request that the Court approve the expenses incurred in their entirety. Although Dr. Seberhagen was not ultimately used as an expert, it was reasonable for plaintiffs' counsel to retain him. Once they recognized how prohibitive the costs would be to support three experts, they cut their losses and disengaged him. In making decisions when preparing a case such as this one for trial, counsel do not have the benefit of hindsight and should be reimbursed for the reasonable expenditures they incurred in prosecuting this case vigorously and successfully.

---

[7]     Ultimately, at the conclusion of trial, plaintiffs presented evidence on less discriminatory alternatives through Joel Wiesen, in not quite as comprehensive a manner as the Court appeared to desire. The reduced attention paid to this portion of the case is largely attributable to the cost of experts.

**CONCLUSION**

For the reasons described above, Plaintiffs respectfully requests that this

Court award attorneys' fees in the amount of $ 344,550 and expenses in the

amount of $294,655.28.

Respectfully submitted,

JACOB BRADLEY, NOAH BRADLEY,
KEITH RIDLEY, and JARED THOMAS,
individually and on behalf of a class of
similarly situated individuals,

By their attorneys,

_____ s/ Shannon Liss-Riordan_____
Harold L. Lichten, BBO # 549689
Shannon Liss-Riordan, BBO # 640716
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg &
        Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Date:  November 16, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served on the
attorneys of record for each party by electronic notice on November 16, 2006.

___s/Shannon Liss-Riordan_____
        Shannon Liss-Riordan, Esq.

# Bradley Invoice

## Summary of Fees

| Attorney | Harold Lichten | Shannon Liss-Riordan | Alfred Gordon | Stephen Young |
|---|---|---|---|---|
| | (HLL) | (SLR) | (AG) | (SY) |
| **Total hours** | 303.6 | 394.1 | 294.6 | 96.7 |
| **Rate** | 350 | 350 | 275 | 200 |
| **Fees per attorney** | $106,260 | $137,935 | $81,015 | $19,340 |
| **TOTAL** | **$344,550** | | | |

# Bradley Invoice

**FEES**

| Date | Atty | Description | Hours |
|------|------|-------------|-------|
| 1/7/2005 | HLL | Work on case; Legal research; Meet w/co-counsel; Work on MCAD and federal court complaint drafts | 2.60 |
| 1/7/2005 | SLR | Conference w/HLL re case overview, expert report, strategy | 0.70 |
| 1/10/2005 | SLR | Conference w/ AG re initial meeting and procedural issues | 0.20 |
| 1/11/2005 | HLL | Edit federal court complaint and MCAD complaints | 1.70 |
| 1/12/2005 | HLL | Prepare for and meet w/clients and NAACP in Lynn | 3.80 |
| 1/12/2005 | AG | Client meeting (including travel to/from) | 3.50 |
| 1/12/2005 | SLR | Work on MCAD/EEOC charge; Meeting in Lynn | 3.50 |
| 1/14/2005 | AG | Contact w/client re other possible plaintiffs; review material provided; strategy sessions w/HLL and SLR; Contact w/ new plaintiff (Ridley) | 1.70 |
| 1/14/2005 | SLR | Telephone call w/AG re police hiring, filing complaints | 0.20 |
| 1/18/2005 | AG | Contact w/new plaintiff (Jared Thomas); Prepare MCAD complaint for Ridley and Thomas; contact with client (Kevin Bradley) re NAACP involvement | 0.90 |
| 1/18/2005 | SLR | Conference w/AG re police hiring, complaint forms, retainers | 0.30 |
| 1/19/2005 | AG | Prepare MCAD complaints for Ridley and Thomas; Contact w/clients re retainer agreements | 1.10 |

| Date | Atty | Description | Hours |
|------|------|-------------|-------|
| 1/19/2005 | SLR | Conference w/AG re complaint forms and class action; work on complaint forms and retainers | 0.50 |
| 1/20/2005 | AG | Contact w/client (Thomas) re retainer agreement and MCAD form; Further preparation for filing | 0.30 |
| 1/20/2005 | SLR | Exchange messages with Yolanda Morris of North Shore NAACP; Plan filing strategy | 0.30 |
| 1/24/2005 | HLL | Conference call w/Dr. Weisen to go over issues in case | 0.80 |
| 1/24/2005 | AG | Strategy meeting w/ HLL and SLR; Contact w/clients (Thomas & Bradley); Research on Beecher decree; Review expert's report | 2.20 |
| 1/24/2005 | SLR | Work on preparing complaint; strategy for PI motion | 0.50 |
| 1/25/2005 | AG | Legal research and review in advance of filing claims; contact with new plaintiff (Cortorez) | 2.80 |
| 1/25/2005 | SLR | Telephone call w/Yvonne Morris; Conference w/AG re new plaintiff and preparing complaint | 0.70 |
| 1/26/2005 | AG | Contact w/NAACP re complainy | 0.20 |
| 1/26/2006 | SLR | Work on NAACP retainer, complaint, preliminary injuction; Letter to NAACP | 1.00 |
| 1/27/2005 | AG | Work on complaint; Contact w/client (Cortorez) | 0.90 |
| 1/28/2005 | AG | Work on complaint and preliminary injuction; Contact w/ client (Bradley) | 0.80 |
| 1/31/2005 | AG | Work on complaint and preliminary injuction | 2.70 |
| 1/31/2005 | SLR | Work on preparing complaint, plan for preliminary injuction | 0.30 |
| 2/1/2005 | HLL | Final review and edits to complaint | 0.80 |
| 2/1/2005 | AG | Work on complaint and preliminary injuction; contact w/ clients (Thomas and Ridley) | 4.60 |
| 2/1/2005 | SLR | Work on complaint, case strategy, preliminary injuction; telephone call w/Yolanda Morris at NAACP; Telephone calls w/ Kevin Bradley | 3.00 |
| 2/2/2005 | HLL | Research on statistics in Lynn Fire Department; Long conference call w/ experts | 1.40 |

| | | | |
|---|---|---|---|
| 2/2/2005 | AG | Finalize complaint; Research adverse impact from previous exams; Work on preliminary judgment motion; Contact w/ parties (Bradley and Thomas); Finish and file MCAD/EEOC chrages; File complaint | 4.00 |
| 2/2/2005 | SLR | Telephone call w/Yolanda Morris re NAACP signing on as plaintiff; Work on finalizing complaint; MCAD charges, and strategizing for preliminary injunction; Interviews w/Boston Globe | 4.00 |
| 2/3/2005 | AG | Contact w/client (Bradley) re case filing; work on preliminary injuction motion | 2.30 |
| 2/3/2005 | SLR | Work on preparation for preliminary injuction; Telephone call w/ Kevin Bradley | 0.50 |
| 2/4/2005 | SLR | Telephone call w/Kevin Bradley; calls to Boston Globe; Send complaint to Nadine Cohen | 0.40 |
| 2/7/2005 | SLR | Telephone call w/Kevin Bradley | 0.20 |
| 2/8/2005 | SLR | Telephone call w/ Robert Quinan | 0.20 |
| 2/11/2005 | SLR | Exchange messages with Lynn Item reporter | 0.20 |
| 2/14/2005 | AG | Review correspondence and case law research | 0.30 |
| 2/22/2005 | SLR | Letter to court requesting conference; Letter to Yolanda Morris of North Shore NAACP; Letter to Nadine Cohen | 1.50 |
| 2/23/2005 | AG | Review answer filed by the City | 0.30 |
| 2/23/2005 | SLR | Telephone conference w/Nadine Cohen re NAACP's intervening in the case; Telephone call w/ Kevin Bradley | 0.70 |
| 2/24/2005 | SLR | Conference SLR w/HLL re NAACP's position in the case | 0.20 |
| 2/28/2005 | AG | Research on next firefighter examination | 0.10 |
| 3/1/2005 | AG | Review of filings received this date | 0.20 |
| 3/3/2005 | SLR | Conference SLR w/ AG, HLL re preliminary injuction motion, police civil service exam | 0.30 |

| 3/7/2005 | HLL | Work on pre-trial conference issues re federal lawsuit | 0.40 |
|----------|-----|--------------------------------------------------------|------|
| 3/8/2005 | AG | Review of motions and legal strategy session for response | 0.30 |
| 3/8/2005 | SLR | Telephone call w/Kevin Bradley re Lynn police hiring; Review Lynn's motions; Conference SLR w/HLL re both | 0.60 |
| 3/9/2005 | AG | Review of electronic filings | 0.20 |
| 3/10/2005 | AG | Receipt of and brief review of Commonwealth's filings | 0.10 |
| 3/10/2005 | SLR | Review list of Lynn police racial breakdown | 0.20 |
| 3/16/2005 | AG | Work on response to motion to add union as a party; Contact w/MCAD (Thrall) re withdrawal of MCAD charges | 4.10 |
| 3/17/2005 | HLL | Draft letter to PFFM; Edit opposition to add union | 0.50 |
| 3/17/2005 | AG | Work on response to motion to add union as a party and for city to be declared nominal party | 3.00 |
| 3/18/2005 | AG | Finish and file response to motion to add union as a party and for city to be declared nominal party | 1.50 |
| 3/21/2005 | SLR | Telephone call w/Nadine Cohen, send her copies of pleadings; Review letter to PFFM; Conference SLR w/HLL re strategy, scheduling issues; Call Ron Kehoe re scheduling conference | 0.80 |
| 3/23/2005 | AG | Contact w/Lynn solicitor's office re joint statement and discovery | 0.10 |
| 3/24/2005 | AG | Legal research on constitutional issues; Prepare plaintiffs' statements; Work on amended complaint; Met w/clients Jacob and Noah Bradley | 3.70 |
| 3/24/2005 | SLR | Work on joint statement in preparation for settlement conference; Telephone call w/ Ron Kehoe and City of Lynn attorney; Telephone call w/ Kevin Bradley; Work on amended complaint; Work on legal strategy | 3.50 |

| | | | |
|---|---|---|---|
| 3/25/2005 | HLL | Prepare for and attend court conference; Meet w/co-counsel and NAACP | 2.70 |
| 3/25/2005 | AG | Prepare for and attend scheduling conference | 3.20 |
| 3/25/2005 | SY | Local and print ruling from Chicago fire fighters case; Research rules and procedures for withdrawal of state claims | 1.25 |
| 3/25/2005 | SLR | Prepare for and appear at scheduling conference; Conference w/ Nadine Cohen re NAACP and Vulcan Society, experts, remedies, strategy; Conference SLR w/HLL and AG re strategy, amending complaint, etc | 3.50 |
| 3/28/2005 | HLL | Read new Chicago decision; Emails to experts; Draft discovery-request for production of documents and 30(b)(6) depositions | 1.80 |
| 3/28/2005 | AG | Contact w/client (Bradley) re status of scheduling conference | 0.20 |
| 3/29/2005 | SLR | Work on amended complaint, discovery | 0.30 |
| 3/30/2005 | HLL | Work on and edit discovery requests | 1.20 |
| 3/30/2005 | AG | Prepare automatic disclosure and reviewed/edited requests for production of documents | 0.50 |
| 3/30/2005 | SLR | Work on discovery requests; Review Lynn's letter to Local 739, and send to Union Ps' opposition to motion to join union | 0.20 |
| 3/31/2005 | AG | Continue working on automatic disclosure and requests for production of documents; Work on motion to amend complaint | 2.40 |
| 3/31/2005 | SLR | Telephone call w/Bob MacCarthy; Telephone call w/John McMahon re City's motion to join Local 739 as necessary party; Letter to Bob McCarthy | 0.50 |
| 4/1/2005 | AG | Draft letter for PFFM re its involvement in the litigation | 0.30 |
| 4/1/2005 | SLR | Conference w/HLL re PFFM & Local 739's position on City's motion to join local as defendant | 0.20 |
| 4/4/2005 | AG | Work on amending complaint and drafting discovery | 0.20 |

| | | | |
|---|---|---|---|
| 4/5/2005 | AG | Work on amending complaint and drafting discovery | 1.00 |
| 4/6/2005 | AG | Researched and finalized amended complaint | 4.50 |
| 4/6/2005 | SLR | Work on motion to amend complaint | 0.20 |
| 4/7/2005 | SLR | Review correspondence from opposing counsel; Work on amended complaint; Conferences SLR w/HLL re validation studies, meeting w/NAACP | 0.30 |
| 4/8/2005 | HLL | Conference call w/NAACP lawyers re validation measures on tests | 0.40 |
| 4/8/2005 | HLL | Work on draft of discovery; Research on content and criterion validity; Talk to Dr. Wiesen; Meet w/NAACP lawyers; Call experts; Review studies on validity | 3.20 |
| 4/8/2005 | AG | Meet w/NAACP (Cohen); Finalize discovery documents; Finish amended complaint; Contact w/client (Bradley) | 2.50 |
| 4/8/2005 | SLR | Meet w/ Nadine Cohen to discuss experts, discovery, strategy; Conference SLR w/HLL re case theory; Telephone call w/ potential expert; Call Ron Kehoe; Work on document requests, amended complaint, automatic disclosures; send out discovery | 3.00 |
| 4/12/2005 | SLR | Exchange correspondence w/expert | 0.20 |
| 4/19/2005 | AG | Contact w/client (Bradley); Strategy session w/ SLR re amendments to complaint | 0.30 |
| 4/19/2005 | SLR | Work on experts; Conference SLR w/HLL re retaining new expert; Exchange emails w/Lance Seberhagen; Conference SLR w/AG re amended complaint | 0.70 |
| 4/20/2005 | SLR | Review expert's past reports | 0.40 |
| 4/21/2005 | HLL | Work on expert issues; Telephone call w/Wiesen and Seberhagen | 0.40 |
| 4/21/2005 | SLR | Conference SLR w/HLL re expert | 0.20 |
| 4/27/2005 | HLL | Telephone calls to Wiesen and Seberhagen; Review Tucker v. Columbus litigation re Landy's analysis | 2.80 |

| | | | |
|---|---|---|---|
| 4/27/2005 | AG | Strategy session and conference call w/expert witness | 1.50 |
| 4/27/2005 | SLR | Look at expert's prior report, validation studies; Conference SLR w/ HLL re experts and meeting w/HRD; Telephone call w/Joel Wiesen | 1.50 |
| 4/28/2005 | AG | Prepare for and attend meeting w/AG's office | 2.70 |
| 4/28/2005 | SLR | Telephone call w/Lance Seberhagen; Review materials and cases in preparation for meeting w/HRD; Meet w/ HRD re potential for mediating/resolving case | 3.00 |
| 4/29/2005 | HLL | Review Columbus case involving Dr. Landy, criterion re union, validation case law | 1.40 |
| 4/29/2005 | SLR | Conference SLR w/ HLL re legal research, experts | 0.30 |
| 5/4/2005 | SLR | Review correspondence from opposing counsel re dispositive motion | 0.10 |
| 5/5/2005 | SY | Research section 1981 claims | 0.25 |
| 5/5/2005 | SLR | Legal research on issues raised by Commonwealth's potential motion to dismiss | 0.40 |
| 5/9/2005 | SY | Meet w/SLR; Research Eleventh Amendment issues | 1.00 |
| 5/9/2005 | SLR | Legal research on issues raised by Commonwealth's potential motion to dismiss | 0.30 |
| 5/10/2005 | SY | Research Eleventh Amendment issues; Write memorandum of findings to SLR | 0.75 |
| 5/10/2005 | SLR | Legal research re claims; work on amended complaint; Exchange emails w/Lance Seberhagen | 1.00 |
| 5/11/2005 | HLL | Telephone call w/clients re go over facts of new case on retaliation, going to an all Spanish list, consider injunction | 0.70 |
| 5/11/2005 | SLR | Legal research on legal claims; Conference SLR w/HLL re police hiring; Work on amended complaint; Call opposing counsel | 1.00 |

| | | | |
|---|---|---|---|
| 5/13/2005 | SLR | Call Victoria Cole re phone conference on Commonwealth's proposed motion to dismiss; Letter to opposing counsel re documents and putting off deposition; Exchange messages w/ Nadine Cohen; Conference SLR w/ HLL re experts | 0.60 |
| 5/16/2005 | AG | Review MCAD documents in preparation for amending complaint | 0.20 |
| 5/16/2005 | SLR | Telephone call w/Kevin Bradley; Conference SLR w/ AG re police hiring and retaliation issues | 0.50 |
| 5/16/2005 | HLL | Conference call w/clients | 0.40 |
| 5/19/2005 | AG | Contact w/expert witness (Wiesen) | 0.10 |
| 5/19/2005 | SLR | Telephone call w/Adrianne Walker; call Jacob Bradley; Telephone call w/Kevin Bradley | 1.00 |
| 5/19/2005 | HLL | Telephone calls to Dr. Landy | 0.30 |
| 5/20/2005 | AG | Contact w/client (Ridley) re right to sue letter from EEOC and about status of the case | 0.30 |
| 5/20/2005 | SLR | Work on amended complaint; Review emails re NAACP motion to intervene; Telephone calls w/Keith Ridley; Conference SLR w/HLL re using Landy as expert | 1.00 |
| 5/24/2005 | SLR | Work on amended complaint; Conference SLR w/HLL re experts, strategy; Telephone call w/Keith Ridley | 0.50 |
| 5/24/2005 | HLL | Work on retainer agreement | 0.60 |
| 5/31/2005 | AG | Contact w/client re amending the complaint | 0.20 |
| 6/3/2005 | AG | Review discovery material; Draft correspondence to expert (Landy); Draft deposition notice and correspondence | 1.40 |
| 6/6/2005 | AG | Contact w/opposing counsel (Cole) re filing of motion and discovery matters; Receipt and brief review of motion | 0.30 |
| 6/7/2005 | AG | Contact w/intervenor (Cohen) about coordinating response to Commonwealth's motion | 0.10 |

| | | | |
|---|---|---|---|
| 6/9/2005 | HLL | Research on motions to dismiss; Meet w/co-counsel | 0.70 |
| 6/9/2005 | AG | Review, strategy session, and research re response to Commonwealth's motion to dismiss; Contact w/intervenor's counsel (Cohen) | 0.50 |
| 6/9/2005 | SY | Conference SY w/HLL and AG; Research employer relationship in Title VII actions | 2.75 |
| 6/10/2005 | SY | Research Title VI claim; Draft email to AG and HLL | 0.75 |
| 6/13/2005 | AG | Work on opposition to motion to dismiss | 0.60 |
| 6/14/2005 | HLL | Work on opposition to motion to dismiss; Meet w/co-counsel | 0.80 |
| 6/14/2005 | AG | Work on opposition to motion to dismiss | 0.60 |
| 6/14/2005 | SY | Conference SY w/AG; Research requirements for opposition to motion to dismiss; Conference SY w/AG and HLL | 1.25 |
| 6/15/2005 | HLL | Prepare for motions hearing on union; Prepare for discovery conference; Attend court hearing; Conference call w/NAACP; Read new Garland case | 2.90 |
| 6/15/2005 | SY | Conference SY w/HLL | 0.25 |
| 6/16/2005 | SY | Conference SY w/HLL; Telephone call w/AG; Email document request to Ronald Kehoe | 0.50 |
| 6/19/2005 | AG | Review correspondence from opposing counsel (Kehoe) and proposed stipulation | 0.20 |
| 6/20/2005 | HLL | Review City of Lynn budget; Review documents on whether City of Lynn will be hiring shortly | 0.40 |
| 6/22/2005 | AG | Brief review of documents received from Commonwealth per our discovery request | 0.20 |
| 6/24/2005 | SY | Prepare secetion of opposition to summary judgment motion | 3.00 |
| 6/25/2005 | AG | Work on opposition to Commonwealth's motion to dismiss | 4.10 |
| 6/25/2005 | SY | Telephone call w/AG | 0.50 |

| 6/26/2006 | AG | Work on opposition to Commonwealth's motion to dismiss and amending complaint | 3.50 |
|---|---|---|---|
| 6/26/2006 | SY | Prepare secetion of opposition to summary judgment motion | 1.50 |
| 6/27/2006 | HLL | Work on opposition to motion to dismiss; Edits to brief; Research on employer issue | 2.40 |
| 6/27/2006 | SY | Prepare opposition to motion for summary judgment | 7.75 |
| 6/28/2006 | HLL | Finalize brief; Telephone call w/client re City's use of a paragraph 10 list | 1.40 |
| 6/28/2005 | AG | Work on opposition to Commonwealth's motion to dismiss and amending complaint | 1.80 |
| 6/28/2005 | SY | Prepare opposition to motion for summary judgment; Prepare motion to file amended complaint | 3.75 |
| 6/29/2005 | HLL | Prepare for depositions of Commonwealth | 3.20 |
| 6/29/2005 | HLL | Prepare for and take deposition of HRD | 6.50 |
| 6/29/2005 | AG | Review final version of opposition; Contact w/intervenor's counsel (Cohen); Prepare for tomorrow's deposition | 1.00 |
| 6/29/2005 | SY | Meet w/HLL; Prepare letter to Kehoe and Cole | 0.50 |
| 6/30/2005 | AG | Prepare w/HLL for deposition in HRD: Contact w/expert witness (Wiesner) | 1.80 |
| 7/1/2005 | AG | Review materials from deposition | 0.40 |
| 7/1/2005 | HLL | Conference HLL w/ SLR re go over deposition results; Telephone calls to experts | 0.40 |
| 7/1/2005 | HLL | Revise and edit brief on hiring in Lynn on Par. 8 list | 0.40 |
| 7/11/2005 | AG | Contact w/clients (Ridley/Thomas) about possible preliminary injunction filing | 0.40 |
| 7/20/2005 | AG | Review court notice; Contact w/expert witness (Landy) | 0.20 |
| 7/25/2005 | HLL | Conference call w/Dr. Landy; Prepare for same | 1.00 |
| 7/26/2005 | HLL | Conference call w/Dr. Landy | 0.80 |

| 7/26/2005 | HLL | Prepare for motion to dismiss oral argument | 1.50 |
|---|---|---|---|
| 7/27/2005 | HLL | Prepare for oral argument for motion to dismiss; Review cases | 2.90 |
| 7/27/2005 | HLL | Conference calls w/Dr/ Wiesen and Dr/ Seberhagen | 1.80 |
| 7/27/2005 | AG | Contact w/ expert witness; Research and preparation for tomorrow's motion hearing | 3.30 |
| 7/28/2005 | HLL | Prepare for and attend oral argument on "employer" issue | 2.30 |
| 7/28/2005 | SY | Meet w/HLL | 0.40 |
| 7/29/2005 | HLL | Conference call w/Nadine Cohen and Al Gordon | 0.30 |
| 7/29/2005 | SY | Research Beecher-related cases; Research civil service cases | 1.50 |
| 7/30/2005 | HLL | Research on civil service Title VII cases | 0.60 |
| 8/1/2005 | HLL | Work on supplemental brief on employer status | 0.80 |
| 8/1/2005 | SY | Meet w/AG; Research Beecher-related cases; Telephone call w/USDC clerk; Telephone call w/National Archives; Meet w/HLL; Prepare letter to judge | 5.10 |
| 8/1/2005 | AG | Legal strategy session and beginning research beginning research on issues raised in last week's hearing | 0.40 |
| 8/2/2005 | HLL | Draft letter to court on Beecher litigation and employer status | 0.90 |
| 8/2/2005 | SY | Office conference SY w/AG; Research Beecher-related cases; Telephone call w/USDC clerk; Telephone call w/ National Archives; Office conference SY w/HLL; Prepare letter to Judge | 1.80 |
| 8/3/2005 | SY | Telephone call w/HLL; Research cases for letter to Judge | 0.70 |
| 8/4/2005 | HLL | Work on supplemental brief to Judge; Edit same | 0.60 |
| 8/4/2005 | SY | Research cases for letter to Judge; Meet w/HLL | 1.70 |

| 8/5/2005 | AG | Review court filings of yesterday | 0.30 |
|---|---|---|---|
| 8/8/2005 | HLL | Work on additional information requests | 0.40 |
| 8/8/2005 | AG | Contact w/experts re Friday's conference call; Contact w/client (Bradley); Prepare information for expert witnesses | 0.80 |
| 8/12/2005 | HLL | Conference call w/experts | 2.00 |
| 8/15/2005 | SY | Read memo distinguishing Camacho from Carparts | 0.20 |
| 8/17/2005 | HLL | Conference call w/Wiesen | 0.50 |
| 8/17/2005 | AG | Review of materials and consultation w/expert; Contact w/intervenors' counsel (Cohen/Selwyn) | 4.50 |
| 8/19/2005 | AG | Contact w/expert witness | 0.10 |
| 8/23/2005 | HLL | Conference call w/Dr. Landy and Dr. Wiesen re go over expert reports | 2.40 |
| 8/23/2005 | AG | Prepare for and participate in expert witness conference call; Contact w/expert witness (Landy); Contact w/client (Bradley) | 3.10 |
| 8/24/2005 | HLL | Emails to experts | 0.60 |
| 8/24/2005 | AG | Legal research and review files for further information to support expert witness reports | 4.10 |
| 8/25/2005 | AG | Legal research and file review; Contact w/expert witness; Contact w/intervenors (Cohen) re client meetings and discovery material | 0.80 |
| 8/26/2005 | AG | Receive and begin reviewing expert witness report | 1.90 |
| 8/29/2005 | AG | Contact w/expert witnesses and continued review of expert reports | 1.00 |
| 8/30/2005 | HLL | Review Wiesen's and Landy's final reports and okay same | 1.20 |
| 8/30/2005 | AG | Contact w/expert witnesses and continued review of expert reports | 4.40 |
| 9/14/2005 | AG | Contact w/intervenor (Cohen) re client meeting | 0.20 |
| 9/15/2005 | AG | Meet w/clients and intervenors | 2.60 |

| | | | |
|---|---|---|---|
| 9/19/2005 | AG | Contact w/opposing counsel (Kehoe) re expert discovery | 0.10 |
| 9/20/2005 | AG | Contact w/opposing counsel (Kehoe) re expert discovery | 0.10 |
| 9/20/2005 | HLL | Research and test affidavits of Rick Jacobs; Print out affidavit; Draft letter to experts | 1.60 |
| 9/21/2005 | SLR | Conference SLR w/HLL re expert reports, dueling expert theories, upcoming hearing, state court action | 0.30 |
| 9/22/2005 | AG | Review of correspondence from opposing counsel (Kehoe) | 0.10 |
| 10/3/2005 | AG | Contact w/intervenor (Cohen) | 0.10 |
| 10/4/2005 | AG | Contact w/opposing counsel (Kehoe, Shin) and expert witnesses (Landy, Wiesen) | 0.30 |
| 10/11/2005 | AG | Contact w/intervenor (Cohen) re expert witnesses | 0.20 |
| 10/17/2005 | AG | Review correspondence from AG's office | 0.20 |
| 10/18/2005 | HLL | Review and analyze Dr. Landy's report | 0.80 |
| 10/18/2005 | AG | Review of expert report; Contact w/AG's office (Kehoe) and expert witnesses | 2.00 |
| 10/20/2005 | AG | Contact w/AG's office (Kehoe) and expert witness (Landy); Research on expert deposition matters | 2.10 |
| 10/21/2005 | AG | Contact w/AG's office (Kehoe) Research on expert discovery requirements; Contact w/witnesses (Landy & Weisen) | 0.50 |
| 10/24/2005 | AG | Contact w/AG's office (Kehoe); Contact w/witness (Landy) | 0.30 |
| 10/26/2005 | AG | Review material sent by AG's office (Kehoe) relative to HRD's update of the firefighter exam; Contact w/client (Bradley) | 1.70 |
| 10/27/2005 | HLL | Work on scheduling issues | 0.40 |
| 10/27/2005 | SLR | Meet w/HLL and AG to plan for hearing; state court complaint | 0.50 |

| Date | | Description | Hours |
|------|------|-------------|-------|
| 10/27/2005 | AG | Contact w/expert witness (Landy); Legal strategy session | 1.30 |
| 10/31/2005 | AG | Contact w/expert witness (Landy) and AG's office (Kehoe) re data and scheduling | 0.30 |
| 11/1/2005 | AG | Contact w/expert witness (Landy) and AG's office (Kehoe) re data | 0.20 |
| 11/2/2005 | AG | Contact w/witness (Landy) | 0.30 |
| 11/3/2005 | AG | Contact w/witness (Landy) and opposing counsel (Kehoe) re additional additional information for expert response | 1.10 |
| 11/4/2005 | HLL | Meet w/witness Siewko; Work on class certification motion; Research witness list | 2.50 |
| 11/4/2005 | AG | Contact w/counsel (Kehoe/Cohen/Selwyn); Legal strategy session; Draft motion and letter to court on prehearing and extra hearing day; Draft correspondence to Kehoe re discovery, witness lists, and motion in limine | 3.30 |
| 11/4/2005 | SLR | Plan for injunction hearing | 0.50 |
| 11/6/2005 | HLL | Work on and draft class certification brief | 1.50 |
| 11/6/2005 | AG | Draft motion in limine; Legal research re MCAD filing requirements | 1.80 |
| 11/7/2005 | HLL | Edit and research class certification motion | 2.40 |
| 11/7/2005 | HLL | Draft state court complaint | 1.70 |
| 11/7/2005 | AG | Finish drafting and file motion in limine; Contact w/expert witness; Review motion for class certification materials | 1.90 |
| 11/8/2005 | HLL | Telephone calls to Landy and Nadine Cohen | 0.40 |
| 11/9/2005 | HLL | Conference call w/Landy to go over reply | 0.80 |
| 11/9/2005 | AG | Conference call w/ expert witness (Landy); Review materials provided by HRD; Contact w/client (Bradley); Confer w/intervenor (Cohen) re tomorrow's meeting | 1.60 |
| 11/10/2005 | HLL | Prepare for and attend court hearing; Meet w/Cohen; Work on mediator | 2.70 |

| Date | Atty | Description | Hours |
|---|---|---|---|
| 11/10/2005 | AG | Prepare for and attend scheduling conference; Meeting w/intervenor (Cohen) re mediation; Contact w/clients re status | 3.90 |
| 11/11/2005 | HLL | Send letter to Wayne Budd; Telephone call w/Landy re review Landy's final report; Search for mediators | 1.20 |
| 11/14/2005 | AG | Contact w/intervenor (Cohen) and AG (Kehoe) re mediation and client (Thomas) re case status | 0.50 |
| 11/15/2005 | HLL | Read and respond to emails from Kehoe on meeting pre-mediation | 0.40 |
| 11/15/2005 | AG | Review correspondence from AG (Kehoe) and expert (Landy) | 0.30 |
| 11/17/2005 | HLL | Conference w/Nadine Cohen to prepare for mediation; Meeting w/defendants | 0.60 |
| 11/17/2005 | SLR | Conference | 0.20 |
| 11/18/2005 | HLL | Prepare for and attend Bradley mediation | 2.20 |
| 11/18/2005 | AG | Meeting at HRD re settlement; Draft letter to Judge Saris; Contact w/ expert (Wiesen) | 2.60 |
| 11/18/2005 | SLR | Conference | 0.20 |
| 11/21/2005 | AG | Contact w/parties re mediation | 0.20 |
| 11/28/2005 | HLL | Conference w/Dr. Landy; Meetw/HRD and attorneys re settlement | 2.00 |
| 11/30/2005 | AG | Correspondence w/counsel (Kehoe, Cohen/Selwyn) | 0.30 |
| 12/1/2005 | AG | Contact w/client (Bradley) about status; Contact w/opposing counsel (Shin) regarding motion to continue class certification hearing | 0.30 |
| 12/5/2005 | HLL | Work on issue of staying class motion | 0.30 |
| 12/8/2005 | SLR | Review court's decision that HRD is employer; Conference w/HLL | 0.50 |
| 12/8/2005 | SLR | Review court's decision that HRD is employer; Conference SLR w/HLL | 0.50 |
| 12/8/2005 | HLL | Review Judge's decision on employer status | 0.50 |

| Date | Atty | Description | Hours |
|---|---|---|---|
| 12/9/2005 | SLR | Conference SLR w/HLL re state court complaint, retaliation claim, supplemental complant; Work on state court complaint | 0.70 |
| 12/9/2005 | HLL | Telephone call w/clients; Work on supplemental complaint; Edit state court lawsuit; Work on adding retaliation claim | 3.00 |
| 12/12/2005 | AG | Contact w/client (Bradley). Reviewed court's Memorandum and Order on Commonwealth's motion to dismiss | 0.50 |
| 12/13/2005 | AG | Contact w/client (Thomas) about case status. Review of correspondence from mediator. Contact with clients (Ridley) about case status. Reviewed state court complaint prior to filing. Contact with intervenor (Cohen). Meeting to prepare for mediation. | 1.10 |
| 12/13/2005 | SLR | Prepare for mediation | 0.20 |
| 12/14/2005 | AG | Preparing for mediation. Finalized state court complaint for filing. Reviewed supplemental federal complaint and drafted correspondence to opposing counsel re motion to file supplemental pleading. Contact w/expert witness (Landy) regarding mediation approach | 2.90 |
| 12/14/2005 | SLR | Conference SLR w/ HLL and AG re mediation, state court damages and retaliation complaints | 0.30 |
| 12/14/2005 | HLL | Meet w/co-counsel; Prepare for position on settlement at mediation; Edit supplemental pleadings; Outline components | 1.60 |
| 12/15/2005 | AG | Contact with expert (Wiesen). Further preparation for mediation. Prepared mediation report. | 3.70 |
| 12/16/2005 | AG | Preparation for mediation. Contact with expert and sent materials to mediator. | 0.30 |
| 12/19/2005 | AG | Prep for and attend mediation session. | 7.40 |
| 12/19/2005 | SLR | Mediation | 5.00 |
| 12/19/2005 | HLL | Consult on mediation | 0.70 |
| 12/20/2005 | AG | Contact w/intervenor (Cohen). Reviewed materials from mediation for next steps. | 0.20 |

| Date | | Description | |
|---|---|---|---|
| 12/21/2005 | AG | Finalized and filed motion for supplemental complaint | 0.30 |
| 12/21/2005 | SLR | Conference SLR w/HLL re settlement discussions | 0.20 |
| 12/22/2005 | AG | Contact with expert (Wiesen) regarding mediation follow-up | 0.10 |
| 12/28/2005 | AG | Contact with client (Bradley). | 0.20 |
| 1/6/2006 | AG | Email contact with expert witness and all parties regarding mediation materials. Telephone contact with intervenors regarding mediation and scheduling. | 0.30 |
| 1/9/2006 | AG | Preparing for mediation. Contact with intervenor (Cohen). Legal research re: EEOC guidelines. | 2.90 |
| 1/9/2006 | SLR | Conf. w/AG re: mediation, trial preparation. | 0.30 |
| 1/10/2006 | AG | Legal strategy session. Preparing for mediation | 1.20 |
| 1/10/2006 | SLR | Prepare for mediation, conf. w/HL & AG | 0.40 |
| 1/11/2006 | AG | Preparing for mediation, including a proposed agenda. Contact with intervenor (Cohen/Selwyn) and opposing counsel (Kehoe). Contact with expert (Wiesen) regarding weighting of test results | 1.70 |
| 1/11/2006 | SLR | Prepare for mediation; conf. w/AG | 0.20 |
| 1/12/2006 | AG | Prep for and attend mediation session. Contact with opposing counsel (Shin) about extension of time | 6.80 |
| 1/12/2006 | SLR | Mediation; Conf. w/ HL and AG re: comprehensive proposal | 7.00 |
| 1/13/2006 | SLR | Work on settlement proposal; meet w/HL to discuss; TC w/Landy | 1.00 |
| 1/13/2006 | AG | Contact w/intervenor (Cohen) regarding mediation and settlement parameters | 0.20 |
| 1/13/2006 | HLL | Conference calls amd emails to Landy and Wiesen re go over technical technical issues on settlement proposal | 1.60 |
| 1/17/2006 | SLR | Message from Kevin Bradley re: lateral transfer hiring in Lynn | 0.10 |

| | | | |
|---|---|---|---|
| 1/18/2006 | SLR | TC w/Kevin Bradley re: additional retaliation and settlement discussions | 0.30 |
| 1/20/2006 | AG | Preparing settlement agreement | 0.20 |
| 1/23/2006 | AG | Researching and generating settlement proposal | 0.30 |
| 1/24/2006 | AG | Contact with client (Thomas). Continued researching and drafting settlement agreement | 0.60 |
| 1/24/2006 | SLR | Work on settlement proposal | 0.50 |
| 1/25/2006 | AG | Researching and drafting settlement proposal. Contact with intervenor | 4.30 |
| 1/25/2006 | SLR | Work on settlement proposal | 0.50 |
| 1/26/2006 | AG | Continued drafting settlement agreement. Contact with all other counsel | 0.20 |
| 1/26/2006 | SLR | Work on settlement proposal | 0.30 |
| 1/27/2006 | HLL | Review draft of settlement agreement; Edit same | 0.50 |
| 1/30/2006 | AG | Working on settlement agreement. Conference call with intervenors | 0.40 |
| 1/31/2006 | AG | Working on settlement offer. Contact with intervenors (Cohen/Selwyn) | 2.50 |
| 1/31/2006 | SLR | Work on settlement proposal | 1.00 |
| 1/31/2006 | HLL | Work on making settlement proposal; Conference call w/all attorneys | 1.20 |
| 2/1/2006 | SLR | Work on settlement proposal | 0.60 |
| 2/1/2006 | AG | Completed changes to settlement agreement. Contact with opposing counsel (Kehoe). | 1.10 |
| 2/2/2006 | AG | Review on Commonwealth's motion to dismiss. | 0.40 |
| 2/2/2006 | SY | Meet with Al. | 0.20 |
| 2/3/2006 | AG | Contact with opposing counsel (Kehoe) regarding settlement agreement. | 0.10 |
| 2/3/2006 | SY | Review Rule 9A deadlines; review defendants' motion to dismiss | 0.50 |

| | | | |
|---|---|---|---|
| 2/6/2006 | AG | Brief review of Commonwealth's new motion to dismiss | 0.40 |
| 2/6/2006 | SLR | Review HRD's motion to dismiss | 0.30 |
| 2/6/2006 | SY | Review defendants' motion to dismiss; review court's order in federal case | 0.80 |
| 2/7/2006 | SY | Prepare opposition to Defendants' motion for summary judgment; meet with Harold | 5.40 |
| 2/7/2006 | AG | Contact with opposing counsel (Kehoe) and intervenor (Cohen) regarding scheduling | 0.20 |
| 2/7/2006 | SLR | Exchange e-mails re: rescheduling mediation | 0.20 |
| 2/8/2006 | AG | Working on response to motion to dismiss. Contact with opposing counsel (Kehoe) and intervenors (Cohen/Selwyn). Contact with client (Bradley). | 0.70 |
| 2/8/2006 | SLR | Confs. w/AG re: scheduling, mediation, D's motion to dismiss | 0.60 |
| 2/8/2006 | SY | Prepare opposition to Defendants' motion for summary judgment; meet with Al. | 7.70 |
| 2/9/2006 | AG | Legal research and editing opposition to motion to dismiss Superior Court action. Contact with mediator regarding scheduling. | 2.00 |
| 2/9/2006 | SLR | Exchange e-mails re: settlement talks, opposition to motion to dismiss state court complaint | 0.30 |
| 2/9/2006 | SY | Meet with Al; research 151Bs. 4(4A) and 4(5); e-mail Al. | 0.60 |
| 2/10/2006 | SY | Meet with Al; research 151Bs. 4(4A) and 4(5); revise opposition to motion to dismiss; e-mail Al. | 2.80 |
| 2/13/2006 | AG | Final editing opposition to motion to dismiss Superior Court action. Legal strategy session. Contact with opposing counsel (Kehoe) regarding scheduling. | 1.60 |
| 2/13/2006 | SLR | conf. w/AG re: settlement discussions, review opp. to state court motion to dismiss | 0.60 |

| | | | |
|---|---|---|---|
| 2/13/2006 | SY | Revise opposition to motion to dismiss; e-mail Brooke re: exhibits; e-mail with Al and Shannon; meet with Brooke re filing and exhibits | 2.20 |
| 2/14/2006 | AG | Contact with parties regarding mediation and rescheduling matters. Contact with intervenor about motion hearings. | 0.40 |
| 2/14/2006 | SLR | conf. w/ AG re: scheduling, settlement discussions, opposition to motion to dismiss federal court action | 0.20 |
| 2/15/2006 | AG | Contact with opposing counsel (Kehoe) and intervenor (Cohen) regarding scheduling. Reviewed and commented on letter to Court | 0.20 |
| 2/15/2006 | SY | Meet with Al re new federal motion to dismiss | 0.10 |
| 2/17/2006 | SY | Review online docket; read and print documents relevant to motion to dismiss | 0.30 |
| 2/21/2006 | SY | Review documents relevant to motion to dismiss; prepare opposition to motion to dismiss | 1.40 |
| 2/22/2006 | SY | E-mail Harold and Al. | 0.10 |
| 2/23/2006 | HLL | Telephone call w/Wiesen and Bradley | 0.40 |
| 2/28/2006 | AG | Reviewed filings and counterproposal received in the preceding week. Contact with intervenor (Cohen). | 1.10 |
| 2/28/2006 | SLR | Review HRD's settlement proposal and plan for mediation | 0.50 |
| 3/1/2006 | SLR | confs. w/AG and HL re: HRD's settlement proposal, mediation, class certification, and trial strategy; prepare for mediation | 1.50 |
| 3/1/2006 | AG | Contact with intervenor (Cohen). Further review of HRD settlement offer. Prep for tomorrow's mediation. Contact with clients about pending settlement offer. | 2.40 |
| 3/2/2006 | SLR | Prepare for and attend mediation; conf. w/ HL re: trial preparation, reply in support of motion for class certification | 9.00 |
| 3/2/2006 | AG | Prep for and attend mediation session. | 4.00 |

| 3/2/2006 | HLL | Work on settlement issues; Conference calls w/clients from mediation | 0.80 |
|---|---|---|---|
| 3/3/2006 | SLR | conf. w/ HL re: trial preparation and strategy; letter to court | 1.00 |
| 3/3/2006 | HLL | Work on getting ready for trial; call experts | 0.50 |
| 3/4/2006 | SY | Prepare opposition to motion to dismiss | 3.50 |
| 3/5/2006 | SY | Prepare opposition to motion to dismiss | 2.50 |
| 3/6/2006 | SLR | Work on opposition to motion to dismiss, prepare for trial and reply in support of class certification | 4.50 |
| 3/6/2006 | AG | Research and drafting opposition to State's motion to dismiss | 6.50 |
| 3/6/2006 | SY | Prepare opposition to motion to dismiss; meet with Al and Shannon; check online docket; prepare exhibits and file opposition; TC with Al. | 11.30 |
| 3/6/2006 | HLL | Work on response to motion to dismiss | 0.70 |
| 3/7/2006 | SY | Revise letter to Markopoulos and Lamanna; meet with Brooke; Meet with Shannon; check online docket; prepare reply to opposition to motion for class certification | 5.40 |
| 3/7/2006 | SLR | conf. w/HL re: case strategy' work on supplemental complaint; work on reply on class certification; conf. w/Frank Landy reL trial and challenge to 2006 exam; exchange e-mails w/Ron Kehow re: supplemental complaint and class certification motion; exchange e-mails w/intervenors re: supplemental complaint | 4.00 |
| 3/7/2006 | HLL | Work on supplemental complaint | 0.60 |
| 3/8/2006 | AG | Contact with clients regarding status. Reviewed supplemental complaint and Commonwealth's filings. | 1.60 |
| 3/8/2006 | SLR | Work on second supplemental complaint and motion to file; confer w/ intervenors re supplemental complaint; work on reply in support of class certification; info. To experts on upcoming trial | 1.50 |
| 3/8/2006 | HLL | Emails to Dr. Wiesen; work on case. | 0.40 |

| | | | |
|---|---|---|---|
| 3/8/2006 | SY | Revise letter to Markopoulos and Lamanna; meet with Brooke; Meet with Shannon; check online docket; prepare reply to opposition to motion for class certification | 4.70 |
| 3/9/2006 | SLR | Work on reply in support of class certification, strategy planning for trial, review expert reports | 4.00 |
| 3/10/2006 | AG | Working on reply to class opposition | 2.50 |
| 3/10/2006 | SLR | work on reply in support of motion for class certification | 2.50 |
| 3/10/2006 | SY | TC with Shannon; revise reply re certification; meet with Al. | 5.30 |
| 3/12/2006 | AG | Working on reply to opposition to class certification | 1.60 |
| 3/13/2006 | SLR | work on reply in support of class cert. and prepare for court hearing | 7.00 |
| 3/13/2006 | AG | Working on reply to opposition to class certification motion. Prep for tomorrow's motion hearings. | 3.40 |
| 3/13/2006 | HLL | Work on trial; Prepare for court hearing; Telephone calls to chiefs | 0.70 |
| 3/14/2006 | AG | Prep for and attend motion hearings. | 5.90 |
| 3/14/2006 | SLR | review briefing and cases and prepare for court hearing; conf. w/Nadine and Mark; argue at on motion for class certification and motion to dismiss; conf. w/HL re: case strategy | 7.00 |
| 3/14/2006 | HLL | Go over Judge's rulings; Confer w/experts; Work on witnesses, issues and motion in limine | 1.50 |
| 3/15/2006 | SLR | conf. w/ HL re: case strategy, trial preparation, PI motion on 2006 exam; TCs w/Kevin Bradley re: court hearing and test validation committee; call Landy; work on proposed order of class certification | 2.00 |
| 3/16/2006 | SLR | TC w/Frank Landy; review Landy expert report; review court order re: pretrial deadlines; conf. w/HL re: trial preparation and strategy; exchange e-mails w/Landy | 2.50 |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 3/16/2006 | HLL | Telephone calls to potential witnesses who are fire chiefs or mayors | 0.50 |
| 3/20/2006 | SLR | prepare proposed order certifiying class | 0.20 |
| 3/20/2006 | SY | Meet with Shannon | 0.10 |
| 3/20/2006 | HLL | Work on police data | 0.40 |
| 3/21/2006 | SLR | conf. w/HL re: strategy; work on pretrial filings; conf. w/Nadine Cohen and Mark Selwyn | 1.00 |
| 3/21/2006 | HLL | Work on motion in limine on expert and liability issues; Conference call w/Selwyn and Cohen | 1.80 |
| 3/22/2006 | SLR | review expert reports; work on court filings | 2.00 |
| 3/22/2006 | HLL | conference call w/Wiesen to prepare testimony | 0.60 |
| 3/23/2006 | AG | Reviewed Commonwealth's opposition to second supplemental complaint | 0.20 |
| 3/23/2006 | SLR | review expert reports; work on court filings | 3.00 |
| 3/23/2006 | HLL | Work on proposed findings of fact and conclusions of law; Work on motion in limine | 1.80 |
| 3/24/2006 | SLR | work on court filings; confs. w/HL and experts re: data and analyses needed for trial | 6.00 |
| 3/24/2006 | AG | Telecon with SLR/HLL about trial strategy | 0.30 |
| 3/24/2006 | SY | Attention to file. | 0.10 |
| 3/24/2006 | HLL | Finish motion in limine; Work on conclusions of law; Conference call w/witnesses; Research on adverse impact question | 4.90 |
| 3/25/2006 | SLR | review data from Landy and expert reports; work on court filings; work on motion in limine | 2.00 |
| 3/26/2006 | SLR | work on pretrial filings | 1.00 |
| 3/27/2006 | SLR | review data received in discovery; work on subpoena; review new analysis from Landy; conf. w/ HL re: data and trial strategy; conf. w/ Wiesen; work on supplemental report from Landy; work on proposed findings | 6.00 |
| 3/27/2006 | AG | Legal strategy session/trial prep with HLL/SLR. | 1.50 |

| 3/27/2006 | HLL | Conference calls w/Wiesen and Landy; Prepare for trial; Attempt to learn adverse impact analysis | 1.60 |
|---|---|---|---|
| 3/27/2006 | HLL | Telephone call w/Chief Lafond | 0.30 |
| 3/28/2006 | AG | Working on proposed findings of fact and exhibit list. | 0.20 |
| 3/28/2006 | SLR | work on proposed findings and other court filings; TC w/court clerk; review data and exchange e-mails w/Frank Landy | 3.50 |
| 3/28/2006 | HLL | Draft proposed conclusions of law | 2.10 |
| 3/29/2006 | AG | Working on proposed findings of fact and witness/exhibit lists | 7.10 |
| 3/29/2006 | SLR | work on supplemental expert report, court filings, review HRD's filings | 1.00 |
| 3/29/2006 | HLL | Draft proposed conclusions of law | 2.40 |
| 3/30/2006 | AG | Reviewed expert supplemental reports. Drafted correspondence to counsel. | 0.40 |
| 3/30/2006 | SLR | review new letter from Frank Landy, send to opposing counsel | 0.20 |
| 3/30/2006 | HLL | Review supplemental reports of experts; work on disparate impact analysis | 0.80 |
| 3/31/2006 | AG | Reviewed pre-trial findings. Continued trial prep. Contact with client (Bradley). Drafting pretrial findings. | 1.10 |
| 3/31/2006 | SLR | prepare for trial; work on expert preparation; TC w/court clerk; letter to judge re: scheduling expert testimony; review court order re: supplemental complaint and file | 2.50 |
| 4/3/2006 | AG | Trial prep and motion drafting. Contact with opposing counsel (Lamanna). | 0.40 |
| 4/3/2006 | SLR | TC w/court clerk re: trial scheduling; confs. w/HL; exchange e-mails w/Landy; review new data regarding 2002 hiring analysis; work on trial preparation | 1.50 |

| | | | |
|---|---|---|---|
| 4/4/2006 | SLR | exchange e-mails w/Frank Landy re: testimony and veteran data analysis; exchange messages w/ court clerk re: trial date; e-mail to all counsel | 0.80 |
| 4/4/2006 | AG | Contact with client (Thomas) regarding court appearance. Contact with expert witness (Wiesen) about newly provided information. | 0.40 |
| 4/5/2006 | SLR | exchange e-mails w/Landy re: veteran analysis, info. Needed on data, preparation for testimony and trial; review HRD's submissions; review new data analysis from Landy; exchange e-mails w/Ron Kehoe re: subpoena and trial scheduling; work on consolidated exhibit list and witnesses; work on trial brief; trial preparation | 6.50 |
| 4/5/2006 | AG | Trial prep. Reviewed the Commonwealth's filings. Contact with cleints/witnesses. | 3.70 |
| 4/6/2006 | AG | Trial prep- drafting trial documents. | 3.30 |
| 4/6/2006 | SLR | work w/experts to prepare for trial; work on exhibits and trial brief, preparation for pretrial conference | 0.50 |
| 4/6/2006 | SLR | Work w/experts on trial preparation; work on exhibits, trial brief, and planning for pretrial conference | 2.50 |
| 4/6/2006 | HLL | Prepare for trial; Prepare for final pre-trial conference | 2.80 |
| 4/7/2006 | AG | Trial prep. Contact with clients about scheduling. Prep for and attend final prehearing conference. | 6.30 |
| 4/7/2006 | SLR | Prepare for pretrial conference and trial; work on exhibits; work on expert testimony; review new data provided by HRD in response to subpoena, and work on expert analysis. | 10.50 |
| 4/7/2006 | HLL | Prepare for and attend final pre-trial conference; Telephone call w/expert witnesses; Prepare direct | 4.80 |
| 4/8/2006 | SLR | Trial preparation; work on exhibits; trial notebooks, review caselaw, work on expert testimony | 7.00 |

| | | | |
|---|---|---|---|
| 4/8/2006 | HLL | Prepare for trial; Work on outline for cross of Jacobs; Review Jacobs' articles; Conference call w/Landy to prepare his testimony; Work on opening and order if witnesses; Outline issues to be covered | 7.80 |
| 4/9/2006 | SLR | Work on trial preparation, Landy testimony, opening statement, review reports and exhibits | 11.00 |
| 4/10/2006 | AG | Trial prep. Contact with client (Bradley). | 2.90 |
| 4/10/2006 | SLR | Trial preparation (prepare opening statement, Landy direct examination, review data, go over exhibits with Ron Kehoe, and finalize exhibits, trial notebook) | 14.00 |
| 4/10/2006 | HLL | Prepare for trial | 4.80 |
| 4/11/2006 | AG | Prep for day 2 of trial. | 0.40 |
| 4/11/2006 | SLR | Preparation for and first day of trial (opening and Landy direct); prepare for second day of trial (Landy continued direct) | 10.00 |
| 4/11/2006 | HLL | Attend trial and prepare for same | 8.60 |
| 4/12/2006 | SLR | Preparation for and second day of trial (Landy direct); prepare for third day of trial (Landy direct) | 11.00 |
| 4/12/2006 | HLL | Attend second day of trial and prepare for next day | 9.80 |
| 4/12/2006 | HLL | Prepare for and attend trial; Prepare for next day | 9.80 |
| 4/13/2006 | AG | Trial prep for Day 4. | 0.80 |
| 4/13/2006 | SLR | Preparation for and third day of trial (Kandy redirect); prepare for fourth day of trial (Jacobs cross) | 14.00 |
| 4/13/2006 | HLL | Prepare for and attend third day of trial | 10.40 |
| 4/14/2006 | SLR | Day 4 of trial (prepare for and assist with Jacobs cross)' Planning for remainder of trial, preliminary injuction issue | 8.50 |
| 4/14/2006 | HLL | Attend and prepare for 4th day of trial | 7.90 |
| 4/17/2006 | SLR | Exchange e-mails w/experts; plan for next steps | 0.30 |

| | | | |
|---|---|---|---|
| 4/18/2006 | SLR | Exchange e-mails with experts; conf. w/HL re: PI motion; TC w/Nadine Cohen re: PI motion | 0.50 |
| 4/18/2006 | HLL | Conference w/Dr. Wiesen | 0.60 |
| 4/19/2006 | SLR | Plan motion for preliminary injunction | 0.20 |
| 4/20/2006 | AG | Contact with client (Bradley) about status and possible further retaliation claim. | 0.30 |
| 4/20/2006 | SLR | Strategize on PI motion | 0.20 |
| 4/21/2006 | SLR | Meet w/Betty Dennis at Natick Town Hall; strategize regarding PI motion and continuation of trial; work on trial preparation | 4.50 |
| 4/21/2006 | HLL | Travel to Natick; Meet w/Elizabeth Dennis; Prepare for meeting; Go over new documents | 3.20 |
| 4/21/2006 | HLL | Work on possible PI; Conference calls w/Selwyn | 0.60 |
| 4/22/2006 | HLL | Work on hunting down Bruce Davey personality test used in mid-90s by HRD | 0.80 |
| 4/24/2006 | SLR | Confer w/Nadine and Mark re: PI motion | 0.20 |
| 4/26/2006 | SLR | TC w/court clerk re: trial scheduling; conf. w/HL re: continued trial strategy; conf. w/Nadine and Mark re: PI motion; TC w/Joel Wiesen re: testimony; exchange messages w/Ron Kehoe re: trial continuation | 2.00 |
| 4/26/2006 | HLL | Work on preparing Wiesen and Dennis testimony; Conference call w/SLR, Cohen and Selwyn; Work on cross of state's witnesses | 2.60 |
| 4/27/2006 | SLR | Exchange messages w/and TC w/Joel Wiesen; work on PI motion and Landy affidavit; TC w/court clerkand Ron Kehoe re:trial scheduling | 1.50 |
| 4/28/2006 | SLR | Exchange e-mails w/opposing counsel re:state court motion to dismiss; call clerk; work on PI motion with Mark Selwyn; exchange e-mails w/Landy re: affidavit; conf. calls w/Landy and Weisen; work on continued trial preparation | 2.50 |
| 4/30/2006 | HLL | Work on outline of cross for McNeely and Chavanne | 1.80 |

| Date | Initials | Description | Hours |
|------|----------|-------------|-------|
| 5/1/2006 | SLR | Prepare for trial; work on exhibits; work on Landy affidavit; TC w/Joel Wiesen and prepare his testimony | 2.50 |
| 5/1/2006 | HLL | Conference call w/Wiesen re prepare his testimony | 1.40 |
| 5/1/2006 | HLL | Prepare for trial; Telephone calls to witnesses | 3.00 |
| 5/2/2006 | SLR | prepare for trial; work on PI motion; prepare Wiesen testimony | 3.50 |
| 5/2/2006 | HLL | Prepare for fourth day of trial; conference calls w/Dennis and Wiesen | 3.50 |
| 5/3/2006 | SLR | Trial-day 5 (Wiesen testimony); help prepare for cross of McNeely; work on Landy affidavit | 9.50 |
| 5/3/2006 | HLL | Prepare for and attend trial; Prepare for next day | 11.80 |
| 5/4/2006 | SLR | trial-day 6 (Chavanne, McNeely); plan for post-trial brief | 7.00 |
| 5/4/2006 | HLL | Prepare for and attend last day of trial; Outline biref | 7.90 |
| 5/5/2006 | SLR | exchange e-mails w/ and TC w/Ron Kehoe re: scheduling hearing on state court motion to dismiss; work on exhibits and post trial brief | 1.50 |
| 5/6/2006 | SLR | work on exhibits and post-trial brief | 4.00 |
| 5/8/2006 | AG | Contact with client (Ridley) about new hiring process in Lynn | 0.20 |
| 5/8/2006 | SLR | exchange e-mails w/opposing counsel and intervenors re: final exhibit binders; TC w/court clerk re: exhibits | 0.30 |
| 5/9/2006 | SLR | work on finalizing exhibit binders | 0.30 |
| 5/10/2006 | HLL | Work on brief; Draft facts | 1.80 |
| 5/12/2006 | AG | Conference call with intervenors regarding strategy and briefing | 0.50 |
| 5/12/2006 | SLR | work on preliminary injunction motion; conf. w/HL, AG, MS re: brief; work on brief | 1.00 |
| 5/15/2006 | SLR | TCs w/clerk re: exhibits, PI hearing; work on coordinating scheduling of hearing | 0.40 |

| 5/15/2006 | HLL | Work on brief | 2.40 |
| 5/16/2006 | SLR | finalize corrections to exhibit binders for court; confs w/HL & Mark Selwyn re: PI motion | 0.60 |
| 5/17/2006 | AG | Reviewed recent court filings | 0.10 |
| 5/17/2006 | SLR | exchange e-mails w/Mark Selwyn re:PI motion | 0.10 |
| 5/19/2006 | AG | Reviewed correspondence and today's court filing by the Commonwealth | 0.40 |
| 5/19/2006 | SLR | work on brief | 1.00 |
| 5/19/2006 | HLL | Work on brief | 1.40 |
| 5/21/2006 | SLR | work on post-trial brief | 2.00 |
| 5/21/2006 | HLL | Work on brief; research | 2.10 |
| 5/22/2006 | SLR | work on post-trial brief | 5.00 |
| 5/23/2006 | SLR | work on post-trial brief | 2.00 |
| 5/23/2006 | AG | Legal research and drafting trial brief. | 3.50 |
| 5/23/2006 | HLL | Work on post-trial brief; Research on validity | 4.80 |
| 5/24/2006 | AG | Legal research and drafting trial brief. Reviewed Commonwealth's opposition to intervenor's PI motion. | 5.00 |
| 5/24/2006 | HLL | Work on brief | 6.90 |
| 5/25/2006 | SLR | attend PI hearing re:Boston list; meet w/Vulcan society members after hearing; consult w/Frank Landy on drop-out rate, multiple regression issue; exchange e-mails w/Ron Kehoe re: Boston affidavit and materials; work on brief | 7.50 |
| 5/25/2006 | HLL | Work on brief | 3.80 |
| 5/26/2006 | AG | Legal research and drafting trial brief | 3.20 |
| 5/26/2006 | SLR | work on post-trial brief | 1.00 |
| 5/27/2006 | SLR | work on post-trial brief | 1.50 |
| 5/28/2006 | HLL | Work on brief | 3.40 |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 5/29/2006 | AG | Drafting and editing post-trial brief. | 3.40 |
| 5/29/2006 | SLR | work on post-trial brief | 7.50 |
| 5/30/2006 | AG | Drafting and editing post-trial brief. | 9.50 |
| 5/30/2006 | SLR | work on post-trial brief | 1.50 |
| 5/30/2006 | HLL | Wprk on brief and proposed findings of fact | 4.70 |
| 5/31/2006 | AG | Legal research and drafting and editing post-trial brief. | 1.80 |
| 5/31/2006 | SLR | work on Landy affidavit on "drop-out: rates; exchange e-mails w/Ron Kehoe re: affidavit; work on brief | 9.00 |
| 5/31/2006 | HLL | Work on brief; put in citations to record | 4.20 |
| 6/1/2006 | AG | Drafting and editing trial brief | 4.80 |
| 6/1/2006 | SLR | work on post-trial brief | 13.50 |
| 6/1/2006 | HLL | Finalize brief | 3.80 |
| 6/2/2006 | SLR | work on getting information on Boston hiring; conf. w/HL re: strategy; TC w/Kevin Bradley re:court ruling and status of Lynn hiring; review court decision; exchange e-mails w/Landy; read HRD's post-trial brief and prepare for closing argument | 3.50 |
| 6/2/2006 | HLL | Read court's opinion on preliminary injunction | 0.40 |
| 6/4/2006 | HLL | Research cases cited by HRD in its brief | 1.80 |
| 6/4/2006 | HLL | Review HRD cases, go over briefs; Prepare for case | 1.40 |
| 6/5/2006 | SLR | prepare for closing argument; review HRD's brief and cases | 1.00 |
| 6/6/2006 | SLR | prepare for closing argument | 0.50 |
| 6/6/2006 | HLL | Read cases to prepare for oral argument | 1.80 |
| 6/8/2006 | SLR | prepare for closing argument; review briefs, cases, exhibits | 6.00 |
| 6/8/2006 | HLL | Prepare for oral argument | 2.90 |

| | | | |
|---|---|---|---|
| 6/9/2006 | SLR | prepare for and argue at closing argument; plan for follow-up analysis and letter-brief | 7.00 |
| 6/9/2006 | HLL | Prepare for and attend oral argument | 3.80 |
| 6/15/2006 | AG | Reviewed last week's court filings | 0.30 |
| 6/18/2006 | SLR | work on letter to court addressing new Jacobs report and issues raised at closing argument | 3.00 |
| 6/21/2006 | SLR | work on letter to court | 1.00 |
| 6/23/2006 | SLR | work on post-argument letter to court, calculations on adverse impact with respect to veterans reached in 2004 Boston hiring | 5.50 |
| 6/25/2006 | AG | Reviewed court filings. | 0.20 |
| 7/19/2006 | HLL | Review Brackett decision; Send to Judge Saris | 0.40 |
| 7/25/2006 | AG | Prep for tomorrow's motion argument in Superior Court | 1.00 |
| 8/8/2006 | SLR | review court decision; TC w/Jacob and Kevin Bradley; exchange e-mails w/Frank Landy and Joel Wiesen; plan next steps; TC w/Boston Globe (1/2 hour) | 3.00 |
| 8/9/2006 | AG | Reviewed court's decision on liability. | 0.60 |
| 8/9/2006 | SLR | plan for remedt stage; exchange e-mails w/Nadine Cohen | 0.30 |
| 8/11/2006 | AG | Strategy meeting on remedial relief with Intervenoers. Working on draft proposal for remedial relief. | 1.50 |
| 8/11/2006 | SLR | meet w/Nadine Cohen and others to discuss proposed remedy, continued litigation strategy | 1.00 |
| 8/11/2006 | HLL | Meet w/co-counsel and work on remedy proposal | 1.50 |
| 8/16/2006 | AG | Reviewed today's court filing | 0.10 |
| 8/17/2006 | SLR | write to Ron Kehoe re: requests for information related to remedy proposal and settlement discussions | 0.40 |
| 8/21/2006 | AG | Drafting proposed remedial order per judge's instruction | 1.20 |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 8/22/2006 | AG | Working on remedy proposal | 0.50 |
| 8/22/2006 | HLL | Work on proposed order on remedy | 0.80 |
| 8/25/2006 | SLR | work on proposed remedy | 0.50 |
| 8/29/2006 | AG | Reviewed MCAD probable cause finding for impact on remedy phase of Federal Court matter. | 0.10 |
| 8/29/2006 | HLL | Telephone call w/Kevin Bradley | 0.30 |
| 9/6/2006 | AG | Working on proposed remedy. Contact with intervener (Cohen). | 0.40 |
| 9/6/2006 | SLR | work on proposed remedy | 0.30 |
| 9/6/2006 | SLR | work on proposed remedy; e-mail Ron Kehoe re: 2006 test results | 0.30 |
| 9/7/2006 | AG | Reviewed court filing by NAACP. | 0.10 |
| 9/8/2006 | HLL | Review and edit remedial decree proposal | 0.90 |
| 9/13/2006 | SLR | work on remedy proposal; conf. w/HL re:strategy; conf. w/Ron Kehoe re: remedy, 2006 scores, and settlement discussions | 1.00 |
| 9/14/2006 | AG | Contact with intervenor about remedy filings. | 0.20 |
| 9/14/2006 | HLL | Telephone call w/PFFM; Review new remedy draft; Telephone call w/co-counsel re hiring delay | 1.40 |
| 9/15/2006 | SLR | work on proposed remedial order | 2.50 |
| 9/15/2006 | HLL | Go over draft; Research banding issues; Conference call w/co-counsel; Re-edit draft | 1.80 |
| 9/20/2006 | SLR | conf. w/HL on settlement; exchange e-mails w/Ron Kehoe re: settlement discussions; work on putting together attorney's fees and expenses | 0.60 |
| 9/21/2006 | SLR | work on putting together fees and costs for settlement discussions; conf. w/HL re: settlement proposal ideas; e-mails to Nadine | 0.50 |
| 9/21/2006 | HLL | Work on 2006 exam | 0.40 |
| 9/22/2006 | SLR | strategize on settlement proposal | 0.50 |

| | | | |
|---|---|---|---|
| 9/22/2006 | HLL | Work on drafting resolution on 2006 exam; Research; Telephone calls to co-counsel; Draft proposal | 2.40 |
| 9/25/2006 | SLR | work on arranging mediation | 0.20 |
| 10/3/2006 | SLR | prepare for mediation, conf. w/HL re: settlement discussions | 1.00 |
| 10/4/2006 | SLR | conf. w/HL re: settlement discussions | 0.50 |
| 10/10/2006 | SLR | Confs. w/HL re: settlement discussions | 0.30 |
| 10/24/2006 | SLR | conf. w/HL re: HRD's proposed remedy | 0.20 |
| 10/26/2006 | SLR | TC w/Kevin Bradley; TC w/Nadine Cohen and Mark Selwyn; prepare for court hearing | 0.50 |
| 10/27/2006 | SLR | prepare for court hearing on remedy; review proposed orders; work on plaintiff's amended order; research emotional distress damages in disparate impact case; TC w/clerk re: hearing; TC w/Nadine Cohen re:proposed remedy and preparation for hearing; letter to court; e-mail to Joel Wiesen | 4.00 |
| 10/30/2006 | SLR | prepare for court hearing; review proposed orders; review e-mail from Joel Wiesen; TC w/Harold re: issues to discuss at hearing; attend court hearing | 1.00 |
| 10/30/2006 | HLL | Attend court hearing on remedy | 2.80 |
| 10/31/2006 | HLL | research for revising remedial order on 4/5th issue, risk issue on shortfall | 2.60 |
| 11/1/2006 | AG | Beginning research on remedial brief | 0.30 |
| 11/1/2006 | HLL | Work on research for redrafting remedial order | 0.90 |
| 11/1/2006 | SLR | conf. w/HL re: revised order and brief on remedy; work on attorneys' fees petition | 0.40 |
| 11/2/2006 | HLL | work on drafting new order and research | 1.70 |
| 11/3/2006 | HLL | Research labor pool data and statistics | 0.60 |
| 11/6/2006 | SLR | work on issues for remedy briefing; confs. w/ HL and Joel Wiesen | 0.40 |
| 11/6/2006 | HLL | Draft emails, work on new remedial order and legal reseach | 2.00 |

| 11/7/2006 | HLL | Begin draft of brief, conf. calls with Weisen | 1.80 |
| 11/9/2006 | HLL | Work on brief on remedy, review states revised data | 0.80 |
| 11/9/2005 | SLR | work on fee petition, review Weisen affidavit | 1.50 |
| 11/9/2005 | AG | Legal research and brief drafting on remedy | 3.00 |
| 11/10/2006 | AG | Legal research and brief drafting on remedy | 6.30 |
| 11/12/2006 | HLL | Work on remedy brief | 1.80 |
| 11/13/2006 | AG | Legal research and brief drafting on remedy | 6.80 |
| 11/13/2006 | SLR | work on fee petition; TC w/Ron Kehoe | 1.00 |
| 11/14/2006 | SLR | work on fee petition | 0.50 |
| 11/15/2006 | SLR | work on fee petition and experts; work on remedy briefing | 3.00 |
| 11/15/2006 | AG | Drafting and editing brief on remedy | 1.70 |
| 11/15/2006 | HLL | Work on brief | 2.00 |
| 11/16/2006 | HLL | Finish brief; make all corrections and edits | 0.40 |
| 11/16/2006 | SLR | work on finalizing remedy brief and fee petition | 5.00 |
| **OTAL HOURS** | | | **1,084.45** |

# Bradley Invoice

## Expenses

**Frank Landy** (SHL, USA, Inc. and Landy Litigation Support Group)
(See Exhibit N for bills)

| | |
|---|---:|
| 8/3/2005 | 5,850.00 |
| 9/1/2005 | 86,268.75 |
| 11/2/2005 | 3,549.66 |
| 12/5/2005 | 30,468.75 |
| 1/3/2006 | 14,287.50 |
| 2/1/2006 | 225.00 |
| 4/1/2006 | 14,275.00 |
| 4/29/2006 | 64,779.36 |
| 6/1/2006 | 8,574.44 |

Sub-Total                 228,278.46

**Joel Wiesen** (Applied Personnel Research)
(See Exhibit O for bills)

| | |
|---|---:|
| 2/23/2005 | 3,237.50 |
| 5/16/2005 | 2,728.75 |
| 8/11/2005 | 1,165.50 |
| 9/1/2005 | 9,712.50 |
| 1/5/2006 | 1,798.50 |
| 4/4/2006 | 3,400.00 |
| 5/1/2006 | 11,210.12 |
| 10/3/2006 | 5,114.96 |
| 11/3/2006 | 1,800.00 |

Sub-Total                 40,167.83

**Lance Seberhagen** (Seberhagen & Associates)
(See Exhibit P for bills)

| | |
|---|---:|
| 5/2/2005 | 4,000.00 |
| 6/3/2005 | 1,550.00 |
| 7/5/2005 | 4,581.00 |
| /9/2/2005 | 9,950.00 |

Sub-Total                 20,081.00

**Non-expert fee expenses**                 6,127.99
(see attached sheets)

**TOTAL EXPENSES**                 294,655.28

# Bradley Invoice

## Non-Expert Expenses

| Date | Description | Amount |
|------|-------------|--------|
| 2/2/2005 | US District Court- filing fee | $150.00 |
| 2/9/2005 | Essex County Sheriff's Dept.- service of summons and complaint on City of Lynn and Mayor Edward Clancy | $79.90 |
| 2/18/2005 | Suffolk County Sheriff's Dept.- service of summons and complaint on Ruth Bramson and HRD | $78.00 |
| 6/30/2005 | O'Brien & Levine Court Reporting- deposition transcript of Sally McNeely | $473.00 |
| 7/28/2005 | FedEx to Joel Wiesen | $16.17 |
| 7/28/2005 | FedEx to Lance Seberhagen | $27.19 |
| 7/28/2005 | FedEx to Frank Landy | $30.44 |
| 8/18/2005 | FedEx to Frank Landy | $34.47 |
| 10/19/2005 | FedEx to Frank Landy | $17.80 |
| 10/19/2005 | FedEx to Joel Wiesen | $14.16 |
| 12/19/2005 | Goulston & Storrs- mediation fee | $466.67 |
| 12/31/2005 | Courier Charges- November 2005 | $205.11 |
| 1/31/2005 | Courier Charges- December 2005 | $29.32 |
| 3/29/2006 | Butler and Witten, Constables- service of subpoena on Sally McNeely | $90.00 |
| 4/12/2006 | Butler and Witten, service of trial subpoena and witness fee on Elizabeth Dennis | $123.00 |
| 4/13/2006 | Williams Lea- photocopies | $7.88 |

| Date | Description | Amount |
|---|---|---|
| 4/19/2006 | Valerie O'Hara, Federal Court Reporter- Transcript of Rick Jacobs Testimony at trial | $297.51 |
| 4/25/2006 | Citizen's Bank- interest charge for April, 2006 on line of credit | $442.53 |
| 4/27/2006 | FedEx to Joel Wiesen | $27.42 |
| 4/30/2006 | Courier Charges- March 2006 | $30.16 |
| 5/1/2006 | Butler and Witten, Constable- service of witness subpoena and witness fee on Betty Dennis | $164.00 |
| 5/1/2006 | Courier Charges- April 2006 | $40.16 |
| 5/10/2006 | Valerie O'Hara, Court Reporter- transcript Vol. 3 | $233.18 |
| 5/30/2006 | Lee Marzilli, Court Reporter- Trial Transcripts for April 11, 12, 14, May 3 and 4, 2006 | $1,567.27 |
| 5/31/2006 | Courier Charges- May 2006 | $10.08 |
| 6/23/2006 | Citizens Bank- Interest Payment on Line of Credit | $464.10 |
| 8/31/2006 | Goulston & Storrs- billing through March 31, 2006 | $1,008.47 |
| | **TOTAL =** | **$6,127.99** |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals, <br> Plaintiffs, <br><br> v. <br><br> CITY OF LYNN; EDWARD J. CLANCY, JR., in his capacity as Mayor of the City of Lynn; the COMMONWEALTH OF MASSACHUSETTS, DIVISION OF HUMAN RESOURCES; and RUTH BRAMSON, in her capacity as Personnel Administrator of the Division of Human Resources of the Commonwealth of Massachusetts, <br> Defendants, <br><br> BOSTON SOCIETY OF THE VULCANS and NEW ENGLAND AREA CONFERENCE OF THE NAACP, <br> Interveners | Civil Action No. <u>05-10213-PBS</u> |

## AFFIDAVIT OF HAROLD LICHTEN, ESQ.

I, Harold Lichten, under oath, hereby state as follows:

1.    I am an attorney admitted to practice law in the State of Maine and the Commonwealth of Massachusetts, as well as the United States Supreme Court, the United States Court of Appeals for the First Circuit, the United States Claims Court, and the Federal District Courts in Maine and Massachusetts. I graduated from New York University School of Law in 1977.

2.    I am currently a partner in the law firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. Our firm's practice is limited exclusively to labor and employment law, with a particular emphasis on employment discrimination.

3.    I have been practicing law since 1978, and during my 28 years of practice, I have devoted a significant amount of time to employment discrimination law. I began this work while employed as a legal services lawyer for Pine Tree Legal Assistance in the State of Maine.

4.    During the years that I practiced in the State of Maine (1978 to 1986), I was responsible for litigating landmark discrimination cases in that state, both in the state and federal system. Some of those cases were *Jackson v. State of Maine*, 544 A.2d 291 (Supreme Judicial Court of Maine 1988); *Cousins v. Secretary of U.S. Dept. of Transportation*, 880 F.2d 603 (1st Cir. 1989); *Maine Human Rights Commission v. City of South Portland*, 508 A.2d 948 (Supreme Judicial Court of Maine 1986); and *Rozanski v. A-P-A Transport, Inc.,* 512 A.2d 335 (Supreme Judicial Court of Maine 1986).

5.    Since commencing the practice of law in the Commonwealth of Massachusetts in 1986, I have continued to specialize in discrimination cases. See for example *Cox v. New England Telephone*, 414 Mass. 375 (1993); *Dahill v. Boston Police Department*, 434 Mass. 233 (2001); *Stonehill v. MCAD*, 441 Mass. 549 (2004) (represented complainant Geraldine Ross); *Kraft v. Police Commissioner of Boston*, 410 Mass. 155 (1991); *Pressman v. Brigham Medical Group Foundation, Inc.,* 919 F.Supp. 516 (1996); *Ward v. Skinner*, 943 F.2d 157 (1st Cir. 1991); and *Sprague v. United Airlines*, 2002 WL 1803733 (D. Mass. 2002); *Wennik v. Polygram Group Distribution, Inc.,* 304 F.2d 123 (1st Cir. 2002); *Quinn v. City of Boston*, 325 F. 3d 18 (1st Cir. 2003), *decision on remand*, 279 F.Supp.2d 51 (D. Mass. 2003).

2

6.      In addition to litigating employment discrimination cases, I have frequently lectured and written articles on the subject. Over the past twenty years, I have given numerous lectures to the Massachusetts Bar Association, Boston Bar Association, and the Massachusetts Continuing Legal Education program on discrimination law.

7.      In 2003, *Massachusetts Lawyers Weekly* named me one of its ten "Lawyers of the Year."

8.      Exhibit A to this petition contains a true and accurate representation of our firm's billing records for this case. Shannon Liss-Riordan and I have been the lead attorneys on the case, assisted by Alfred Gordon (partner) and Stephen Young (associate).

9.      Exhibit B to this petition contains a summary of expenses incurred for this case. These expenses primarily consist of expert fees. Paying these fees was a significant and risky investment for a firm of our size. Our firm does not have reserves of cash of this amount available. In order to pay the experts' fees, all of the firm's partners went without their usual paychecks for a number of weeks (which have not yet been paid back). We then took out a $150,000 line of credit from the bank, payable within two years and personally guaranteed by the firm's partners.

10.      I am seeking fees at the rate of $350 per hour for my work on this case. I believe this rate is reasonable in light of my experience, rates charged by other practitioners in my field in the Boston area, and value of my time. Four years ago, in the case of *Sprague v. United Airlines*, 2002 WL 1803733, Judge O'Toole approved my then requested hourly rate of $320. This Court last year as well stated that she would approve my requested rate of $320. In light of what other successful plaintiff-side employment attorneys in the Boston area now charge and have been awarded more

3

recently by the courts, in addition to the much greater complexity of this case as compared to *DeLeo*, I believe that my now-requested rate of $350 is fair and reasonable.

Signed under the pains and penalties of perjury this ___ day of November 2006.

Harold L. Lichten

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS, individually and on behalf of a class of similarly situated individuals,<br>            Plaintiffs,<br><br>v.<br><br>CITY OF LYNN; EDWARD J. CLANCY, JR., in his capacity as Mayor of the City of Lynn; the COMMONWEALTH OF MASSACHUSETTS, DIVISION OF HUMAN RESOURCES; and RUTH BRAMSON, in her capacity as Personnel Administrator of the Division of Human Resources of the Commonwealth of Massachusetts,<br>            Defendants,<br><br>BOSTON SOCIETY OF THE VULCANS and NEW ENGLAND AREA CONFERENCE OF THE NAACP,<br>            Interveners | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. <u>05-10213-PBS</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF SHANNON LISS-RIORDAN, ESQ.

I, Shannon Liss-Riordan, under oath, hereby state as follows:

1.     I am a partner in the law firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., where I practice exclusively in the field of employment law on the side of employees, with a specialty in discrimination law and class actions. I joined the firm in 1998 and have been a partner since 2002.

2.     I am an honors graduate of Harvard College (A.B., 1990) and Harvard Law School (J.D., 1996). Following law school and prior to practicing at

this firm, I served as a law clerk for two years for U.S. District Court Judge Nancy F. Atlas in Houston, Texas.

3.     I am a member of the Bar of the Supreme Judicial Court of Massachusetts, the U.S. Court of Appeals for the First Circuit, and the U.S. District Court for the District of Massachusetts. I have been a member of the Labor and Employment Section Council of the Massachusetts Bar Association, I am a member of the Massachusetts Chapter of the National Employment Lawyers Association, and I am a frequent invited speaker at seminars sponsored by Massachusetts Continuing Legal Education, the Massachusetts Bar Association, the National Employment Lawyers Association, and other organizations on various topics regarding employment law and civil rights litigation.

4.     In 2002, *Massachusetts Lawyers Weekly* named me one of its ten "Lawyers of the Year," citing my success in a number of employment cases.

5.     Exhibit A to this petition contains a true and accurate representation of our firm's billing records for this case. Harold Lichten and I have been the lead attorneys on the case, assisted by Alfred Gordon (partner) and Stephen Young (associate).

6.     Exhibit B to this petition contains a summary of expenses incurred for this case. These expenses primarily consist of expert fees. Paying these fees was a significant and risky investment for a firm of our size. Our firm does not have reserves of cash of this amount available. In order to pay the experts' fees, all of the firm's partners went without their usual paychecks for a number of weeks

2

(which have not yet been paid back). We then took out a $150,000 line of credit from the bank, payable within two years and personally guaranteed by the firm's partners.

7.    I am seeking fees at the rate of $350 per hour for my work on this case. I believe this rate is reasonable in light of my experience, rates charged by other practitioners in my field in the Boston area, and value of my time, given that my practice is now devoted primarily to wage and hour class actions, for which I obtain compensation greatly beyond my hourly rate. This is the rate I was recently awarded by Arbitrator Mark Irvings at the conclusion of a lengthy employment arbitration proceeding involving a retaliatory discharge claim, *Bilbilian v. Morton's of Chicago/Boston, Inc.*, AAA No. 11-160-00217-03. (*See* Exhibit G, at 15).

8.    Some examples of other cases which I have litigated include *Janet Calcagno et al. v. High Country Investor, Inc. d/b/a Hilltop Steak House*, Essex Superior Court No. 03-0707 (July 25, 2006) (lead counsel for certified class action on behalf of waitstaff employees resulting in jury verdict for the plaintiffs, final judgment anticipated to be in excess of $2 million); *Samantha Smith et al. v. Winter Place LLC d/b/a Locke-Ober Co., Inc.*, 447 Mass. 363 (2006) (SJC ruled that internal complaints of wage violations are protected under anti-retaliation statute); *Richard Gasior v. Massachusetts General Hospital*, 446 Mass. 645 (2006) (SJC determined that discrimination claims, including claims for punitive damages, survive the plaintiff's death); *Joseph Skirchak et al. v. Dynamics Research Corporation*, 432 F.Supp.2d 175 (D. Mass. 2006) (federal court

3

invalidated class action waiver in arbitration clause as substantively and procedurally unconscionable); *Richard Dahill v. Boston Police Department*, 434 Mass. 233 (2001) (SJC decided upon certification from the federal district court that Massachusetts law would diverge from federal law in prohibiting discrimination against individuals with correctable disabilities, which then resulted in a jury verdict of approximately $850,000) (co-counsel with Harold Lichten); *John Sprague v. United Airlines, Inc.*, 2002 WL 1803733 (disability discrimination case in which the federal court, following a bench trial, ruled in favor of the plaintiff and entered judgment of approximately $1.1 million) (co-counsel with Harold Lichten); *Gilbert Hernandez v. Winthrop Printing Co.*, Suffolk Superior Court, No. 99-04588G (lead counsel in termination case resulting in jury verdict in favor of plaintiff who was retaliated against for complaining of race discrimination); *John Bingham v. Lynn Sand & Stone*, No. 93-BEM-1491 (lead counsel for case in which an MCAD hearing officer ruled that the complainant had not been hired as a truck driver because of his race); *Mayli  Shing v. Department of Revenue*, Suffolk Superior Court, No. 01-1421 (lead counsel in race discrimination case which settled during trial for $300,000); *Jason Michalak et al. v. Boston Palm Corporation*, 2004 WL 2915452 (court granted summary judgment in favor of plaintiff servers against restaurant employer for violation of tips statute); *Fred Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc.*, 2004 WL 1050582 (court held that hotel had violated state tips statute); *Ann Paratore et al. v. F-1 Boston Café, LLC*, Norfolk Superior Ct. No. 02- 2162 (court granted summary judgment in favor of plaintiff servers against

4

restaurant employer for violation of tips statute); *Moore et al. v. Barnsider Management Corp.*, 2006 WL 2423328 (court granted partial summary judgment in favor of plaintiff servers against restaurant employer for violation of tips statute); *Adam Simms v. City of New York*, 160 F.Supp.2d 398 (E.D.N.Y. 2001) (disability discrimination case resulting in partial summary judgment for the plaintiff and, on the eve of trial in federal court, the return to full duty of a New York firefighter with diabetes); and *O'Neill v. Commonwealth*, 2002 WL 342675 (D. Mass. 2002) (obtained federal court injunction ordering reinstatement of State Police recruit who had been disqualified in violation of his First Amendment rights, for owning adult bookstores); and *Moore v. Commonwealth*, Civil Action No. 02-10379-RCL (obtained federal court injunction ordering reinstatement of State Police recruit who had been disqualified in violation of her First Amendment rights, for cohabitating with a convicted felon).

9.    In the last several years, my specialty has become wage and hour class actions. I have represented hundreds of servers in dozens of lawsuits against restaurants, hotels, and country clubs for not allowing servers to keep the full proceeds of customer tips or service charges. I also represent immigrant workers in a number of class actions challenging employers' wage violations, including failure to pay overtime, minimum wage, and prevailing wages. My case list now also includes approximately a half dozen class action cases involving allegations of national wage violations by prominent employers.

5

10.    In many of these cases, I have obtained favorable court-approved class action settlements.[1]  My work on class actions has compensated me at rates much higher than my hourly rate, since the courts have approved my fees based upon a percentage of the total recovery for the class.  I estimate that my effective hourly rate for the time spent on most of these cases is in the range of $400 - $1,000 per hour.

11.    In 2002, when I had less than four years of experience in employment litigation, Judge O'Toole awarded me a rate of $250 per hour for work I had performed in the federal case of *Sprague v. United Airlines*, 2002 WL 1803733.  This was prior to most of the experience described above, including my work with class action cases and being named a Lawyer of the Year by *Massachusetts Lawyers Weekly*.

12.    In addition to the time Harold Lichten and I spent on this case, the plaintiffs are also seeking fees for work performed by Alfred Gordon, who has been significantly involved in all aspects of this case other than the actual trial, and Stephen Young, an associate who assisted with brief writing, research, and trial preparation.

13.    Attorney Gordon, who was promoted to partner in the firm in 2005, is a 1995 graduate of Boston University Law School.  Plaintiffs request a rate of

---

[1]    These include *Bullock et al. v. Ritz-Carlton Hotel Co.*, C.A. No. 04-04379 (Suffolk Sup. Ct. July 2005); *Jose Ferreira et al. v. Superior Industries, Inc.*, C.A. No. 04-05009 (Middlesex Sup. Ct. July 2005); *Michalak et al. v. Boston Palm Corporation*, C.A. No. 03-1334 (Suffolk Sup. Ct. Dec. 2004); *Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc.*, C.A. No. 02-01827 (Middlesex Sup. Ct. Dec. 9, 2004); *Fernandez et al. v. Four Seasons Hotel, LTD*, C.A. No. 02-4689 (Suffolk Sup. Ct. Sept. 21, 2004); *Keyo et al. v. Seaport Hotel and World Trade Center Boston, et al.*, C.A. No. 02-3339 (Suffolk Sup. Ct. April 6, 2004); *Licari et al. v. Meridien Hotels, Inc.*, C.A. No. 02-3340 (Suffolk Sup. Ct. Nov. 20, 2003); and *Latta et al. v. The Nashawtuc Country Club, Inc.*, C.A. No. 01-4185 (Middlesex Sup. Ct. Sept. 24, 2003).

$275 per hour for his time on this case. In the *DeLeo* case, prior to his promotion to partner, the Court stated that she would approve Attorney Gordon at the then-requested rate of $250 per hour.

14.    Attorney Young is a 2000 graduate of Harvard Law School with four years experience in litigation. Plaintiffs request a rate of $200 per hour for Attorney Young. This is the rate awarded for him by Arbitrator Irvings in the case of *Bilbilian v. Morton's of Chicago/Boston, Inc.*, AAA No. 11-160-00217-03 Exhibit G).

15.    As set forth in the supporting exhibits attached to this motion, these requested rates for Attorneys Gordon and Young are reasonable in light of the experience of these attorneys and rates charged by other practitioners in this field in the Boston area, as well as rates awarded by courts in Massachusetts to counsel with commensurate skill and experience.


Signed under the pains and penalties of perjury this 16th day of November 2006.

Shannon Liss-Riordan

7

# MASSACHUSETTS LAWYERS WEEKLY

www.masslawyersweekly.com

**Subscribers:**
Get your daily dose
SIGN UP TODA
Daily E-mail

Thursday, June 8, 2006                                                                     Lawy

Try 3 Free | Subscriber Services | Our Newspapers | Other Products | Advertise | Help

From the December 29, 2003 Massachusetts Lawyers Weekly.

| DISCUSS Story on our Forum | SUBMIT a Letter to the Editor | Order a REPRINT of this Story | |
|---|---|---|---|

**Feature Story**

# Lawyers Of The Year 2003

## Harold L. Lichten

***Boston***

**Born:** Dec. 26, 1952; Philadelphia

**Education:** New York University Law School, 1977; University of Pennsylvania, 1974

ADVERTISEMENT



Get client newsletters tailored to your practice areas!

Click here for more information.

**Massachusetts bar admission:** 1986

**Professional experience:** Pyle, Rome, Lichten & Ehrenberg, partner (1996-present); Angoff, Goldman, Manning, Pyle, Wanger & Hyatt, partner (1986-1996); Tureen and Margolin (1983-1986); Pine Tree Legal Assistance (1978-1983)

**Professional affiliations:** National Employment Lawyers Association, AFL-CIO Lawyers Coordinating Committee

For 28 years the fire departments for the City of Boston followed a certain hiring practice. But now the rules have changed thanks to a reverse-discrimination lawsuit brought by attorney Harold L. Lichten.

That victory put him in the national spotlight, but Lichten says he "had some trepidation about getting notoriety for this case because it's different from most of the work I do, and I believe in affirmative action."

Ordinarily, Lichten handles labor matters for union firefighters and police, and he has pursued many employment claims on behalf of minorities and people with disabilities. But in *Quinn, et al. v. City of Boston*, Lichten represented five white male firefighters who were consistently rejected by the fire departments despite having the highest possible scores on their performance exams.

In August, U.S. District Court Judge Richard G. Stearns ruled that four of the men must be hired as soon as possible and given back pay. Lichten says the case grew out of a 1974 U.S. District Court order that forced Boston fire departments to hire one minority for every white applicant hired until the percentage of minorities in the departments approximated the percentage of minorities in the general population of the city.

"Nobody knew the percentage of minorities would skyrocket from 12 percent to 38 percent," says Lichten.

Nonetheless, Boston hit the target by 2003, when Lichten challenged the city to fulfill the second objective of the original court order — the implementation of a non-discriminatory test. While the city has not developed a specific new test, it has ended the quota system and hired all five plaintiffs after an order by the 1st U.S. Circuit Court of Appeals.

\* \* \*

Q. *Can you tell me a little about your clients in this case?*

A. They were individuals who scored 99 and 100 on their exams. A few had master's degrees in fire science, one was an investment banker, and one had taken the exam for the last 10 years to get in. The investment banker quit a huge firm and probably took a 75-percent pay cut to be a firefighter because he wanted to be a fireman all of his life. These individuals got close to being hired in 2000 and were asked to take medical exams and background checks, but they did not get reached once again.

Q. *So how did you get the case and why did you choose to take it?*

A. I work with about 50 firefighters' unions, and I have litigated every aspect of what a firefighter does. I live and breathe firefighting. Plus, a big part of my practice deals with discrimination on the basis of handicap, race or sex. So I was uniquely positioned at the junction of those areas. I took the case only after a lot of soul searching, and my rationale was that I would become more sensitive to such cases because my natural belief is in affirmative action. Plus, the quota system was just not legally defensible.

Q. *What was the problem with the city's practice?*

A. Because of this "one for one" system for hiring, if you were non-minority and a non-veteran, it was virtually impossible to become a firefighter. A minority tangentially interested in the job could get a low score on the test and still get hired because the city never complied with the court order to come up with a non-discriminatory exam. I was very bothered that the NAACP had an agreement with the city not to take any action or push for a better exam as long as the city hit its quotas.

Q. *What was your key to success?*

A. I think the key was having a professor of statistics as an expert who did the right analysis. Others before us had tried to challenge the system, and the numbers did not work out for them. We also had success on one argument not tried in the past. We argued that hiring for entry-level positions should be more in line with the population at-large.

Q. *So why did you lose at trial initially?*

A. The problem was, if you read literally the decree from 1974, it seemed to support the notion of comparing the minority population at-large to the entire fire department for purposes of [perpetuating] the "one for one" hiring practices [indefinitely].

Q. *Why did you win on appeal?*

A. For one thing, the U.S. Supreme Court had issued some decisions on quotas helpful to the claim. I thought it was unlikely that the hiring practice would survive if someone looked at it again. Nowhere else had a quota system survived for more than 25 years and quotas must be "minimally intrusive" to survive.

Q. *How do you view the future significance of this case?*

A. Primarily, it calls into question the system used to hire Boston police. I am in the process of beginning a challenge to that system now. I have also gotten calls from around the country from applicants with similar issues. But I don't think this case will affect many others because it involved a unique set of facts and a rare constitutional issue.

Q. *How do you argue for white male plaintiffs in discrimination cases?*

A. If you are an ordinary citizen, black or white, who do you want to show up at your door? You want someone who is going to save your life, and not someone who was next in line because they filled a slot and scored well on a pen and paper test. You want someone courageous and hardworking and strong. It bothered me that the city never devised a test that would come up with the best person and still be non-discriminatory.

Q. *Did you take criticism from the plaintiffs' bar or others?*

A. [Chuckles.] Let's just say it was hard to get anyone in my office to help me on this case. It's not what we usually do.

Q. *Did you have concerns about your reputation with minorities?*

A. I did. I was worried about that. One attorney in my office pointed out to me that my name pops up on the Internet for a lot of sites that devote attention to reverse discrimination work. That's not exactly how I want to be perceived.

Q. *Did you get much press attention from this and what was it like?*

A. I was asked to be on some national shows. I even got a call from the "O'Reilly Factor." I was invited to take on a liberal college professor who would argue for the other side on this case. I agreed, but a few hours before the show a [screener] called me to ask questions and it surprised her that I was sympathetic to affirmative action. Just before the limo was supposed to pick me up, they told me they decided to go with someone from the CATO Institute to talk about my case instead of me.

Q. *Is diversity not a defensible goal and will suits like this hurt that goal?*

A. The City of Boston has a choice and they could slide back to a place where many more whites than minorities get on the department. But if they do the right thing and develop a test for the truly best firefighter, I am absolutely confident that minorities will fare as well as whites. So I guess we'll see if the department becomes more segregated and ... I might challenge them from the other side if that happens.

Q. *Any advice to lawyers who want to enter the employment field of practice?*

A. One thing I notice is that so many bad cases are brought now. There's an idea that employment is the new tort law. So a lot of these cases have really bad facts and many are dropped by the summary judgment stage. For example, some 95 percent of all [Americans With Disabilities Act] cases get dismissed before trial. It results in terrible decisions for employment

lawyers.

*Q. How do you decide which cases to take and which to screen out?*

A. One thing I do is to give a summation to the jury in my head for the case. I spend about 10 minutes in my head to get a sense of whether the case works or not.

*Q. Was this case a victory for "old boy" mentality among firemen and police?*

A. I was aware that this decision could be taken the wrong way. It was actually an attempt to put a system in place that really picks the best people.

*Q. Do the 2003 U.S. Supreme Court rulings in the University of Michigan cases have any impact on the holding in your firefighter case?*

A. No, because those cases say you can use race as an issue in determining the single best candidate and that is consistent with our position. Getting a sufficient number of minorities to reflect the community is a factor that may be considered in hiring, but the court struck down a points system that smacked of a quota. Reviewing of individual applicants with consideration toward race is "OK," but setting a quota is not.

*Questions or comments may be directed to the writer at jcunningham@lawyersweekly.com.*

---

## KEVIN G. POWERS, veteran Boston employment lawyer, on Harold Lichten ...

Kevin G. Powers says that there are few Boston labor and employment lawyers who can rival Harold L. Lichten on cross-examination, describing him as "so effective and so persistent that he can wither the most recalcitrant witness."

Powers notes that the 6-foot-5-inch Lichten cuts an imposing figure in the courtroom, but describes him as "a quiet man who could care less about the spotlight."

Lichten may not seek the spotlight, but he is not intimidated by it either, having played a key role in more than 80 published employment law decisions in the state and federal courts of Massachusetts and Maine.

Powers suggests that Lichten may have toned up much of his competitive skill as a young athlete long before he entered the courtroom. "Not many people know that Harold actually pitched in the Little League World Series tournament," says Powers.

Lichten's team lost the Eastern U.S. finals by a score of 2-1, and the team that beat them won the series that year. It says something about Lichten's competitiveness that he still remembers the game and often replays it in his mind.

There is also something about Lichten's sports background that speaks to his character in taking a stand.

Powers notes that his fellow barrister attended the University of Pennsylvania on a basketball scholarship but was cut by renowned coach Dick Harder for refusing to cut his hair.

Despite the attention Lichten has received in his life, Powers describes him as "a regular guy who really cares a lot about the blue-collar workers he represents."

— John O. Cunningham

© 2003 Lawyers Weekly Inc., All Rights Reserved.

| DISCUSS Story on our Forum | SUBMIT a Letter to the Editor | Order a REPRINT of this Story | |
|---|---|---|---|

## LawyersUSA

**Try 6 Weeks Free**
■ Newspaper

User Agreement For Subscriber-Only Online Benefits   |   Help   |   Our Privacy Policy

Send any questions or comments to comments@lawyersweekly.com

**Subscriber Services**: 1-800-451-9998   **Technical Support**: 1-800-444-5297 ext. 8156

© Copyright 2006 Lawyers Weekly, Inc. All Rights Reserved

DOLAN MEDIA
COMPANY

Lawyers Weekly does not use spyware; however, we link to a number of other sites and do not take responsibility for any spyware they

This site is best viewed with Internet Explorer 6 (click here to download) or Netscape 7 or higher (click here to download)

68.163.189.237/5.93

# MASSACHUSETTS LAWYERS WEEKLY

www.masslawyersweekly.com

Want to jun
your legal re

Thursday, June 8, 2006                                                                     Lawy

Try 3 Free | Subscriber Services | Our Newspapers | Other Products | Advertise | Help

From the December 30, 2002 Massachusetts Lawyers Weekly.

| DISCUSS Story on our Forum | SUBMIT a Letter to the Editor | Order a REPRINT of this Story | |
|---|---|---|---|

Feature Story

# Lawyer Of The Year

## Shannon E. Liss-Riordan

### *Boston*

**Born**: May 29, 1969; Houston

**Education**: Harvard Law School, 1996; Harvard College, 1990

ADVERTISEMENT



Get client newsletters tailored to your practice areas!

Click here for more information.

**Massachusetts bar admission**: 1999

**Legal experience**: Pyle, Rome, Lichten & Ehrenberg, partner (1998-present); law clerk to U.S. District Court Judge Nancy F. Atlas, Houston (1996-1998)

**Bar affiliations**: Massachusetts Bar Association, National Employment Lawyers Association

Her record speaks for itself.

In 2002, Shannon E. Liss-Riordan won two key discrimination cases and two federal injunctions protecting the First Amendment rights of employees, and began work on several cases that could affect future plaintiffs.

"My favorite cases are ones that require pushing the law," she says.

In January, Liss-Riordan was one of the lead lawyers in the trial of *Dahill v. Boston Police Department*, in which a federal jury awarded more than $800,000 to a Boston Police Academy recruit who was fired when the department concluded that his use of hearing aids was dangerous. In that case, the Supreme Judicial Court decided by certified question that individuals with correctable disabilities may bring discrimination cases under Chapter 151B, a ruling that rejected the applicability of the U.S. Supreme Court's ADA decision in *Sutton v. United Airlines*.

Seven months later, Liss-Riordan teamed up with the Disability Law Center in federal court to win a $1.1 million award against United Airlines for its refusal to hire an experienced airline mechanic because he was deaf.

In a third case, she also won federal injunctions ordering the Massachusetts State Police to admit one recruit who had been disqualified for owning adult bookstores and another who was wrongly disqualified for living with a former felon.

Her year's work also featured 11 class action lawsuits against food service establishments that are allegedly skimming tips from wait staff, discrimination suits for a kidney transplant recipient and an insulin-dependent fireman, and a suit against the City of Everett for allegedly requiring an employee to violate federal equal access laws.

And she did most of this while pregnant with her second child.

In fact, she loves her work so much that she continued working from home during maternity leave in November and was talking to a co-worker about her pending cases just hours after giving birth.

* * *

*Q. What were your most satisfying victories last year and why?*

A. Both the *Sprague* [the airline mechanic] and *Dahill* [the police officer] cases were most satisfying. In both, my team represented someone with a lifelong dream of pursuing a career and they were held back for illegitimate reasons. It was great to see both plaintiffs get their jobs and the opportunity to get back their dreams.

*Q. In the* Dahill *case, what was the key to victory?*

A. Legally, the key was convincing the SJC that the [U.S.] Supreme Court took a wrong turn when it limited who could pursue a disability claim. That gave us the chance to go to trial. [At trial,] the key was putting all the pieces together from different angles to undermine the Police Department explanation for terminating Mr. Dahill. Those pieces included audiological experts, the plaintiff's own testimony, witnesses who were in the police academy with Dahill, and another hearing-impaired police officer who could testify to his ability to perform with hearing aids.

*Q. What are the special challenges of representing plaintiffs with hearing impairments?*

A. There are societal misperceptions [that] can influence an employer's decision about an individual's ability to do a job. Juries can come to trial with their own misperceptions too. A plaintiffs' lawyer has to make sure that stereotypes won't influence a jury's decision. That's partly what led us to waive a jury in the *Sprague* trial. We were worried that lay people would feel uncomfortable about letting a deaf person work on airplanes. We felt a judge could better sift through the evidence and decide the matter factually. But we were also pleased to see the *Dahill* jury overwhelmingly reject the Police Department defense.

*Q. What were the special challenges in your First Amendment cases?*

A. The plaintiffs I represented were denied jobs for reasons that might not seem sympathetic to the general public. By its very nature, First Amendment work often means representing someone with unpopular beliefs or someone who associates with people engaged in some activity that is not publicly supported. One plaintiff I represented owned adult bookstores and that is obviously not popular with large segments of the public. Another plaintiff was a woman with a boyfriend who served time for drug trafficking and weapons possession. It was a challenge to persuade the court that both individuals had constitutionally protected rights at stake that outweighed the employer's concerns about them as police officers.

In one case, the police argued that the mere presence of a man who owned adult bookstores could create an uncomfortable environment for women officers, but we argued that his First Amendment rights protected what he did on his own time. In the case involving a police recruit who had a boyfriend with a felony record, the police argued that the man would illegally have access to a gun because police are required to keep one with them at all times. But it was not clear that her weapon had to be kept at her home. We argued it could be kept in a relative's house next door or in another accessible location under lock and key.

*Q. How do you decide what cases to take and what you screen out?*

A. That's a complicated question. There's a balance of many factors. I love listening to people's stories. Generally, I have a really hard time turning down a good case with a compelling story. Bad cases are when the facts are so cloudy that it is uncertain whether we can obtain a good result for them. Sometimes, people have great facts and the law is not on their side, but I take some of those to push the law, too.

*Q. Why did you choose to represent plaintiffs in employment law?*

A. I went to school for civil rights law, and found a natural gravitation to employment. I still do some civil rights work that is not employment related, but I think people's jobs and careers are most important to them. I also find it fascinating to learn about so many different fields of occupation. This year alone I learned about police work, the printing industry and the restaurant industry — and I basically learned how to take an airplane apart and put it back together. Every time I go into a new field I get more insights into what different people do every day.

*Q. You have successfully sued police departments and the police academy a number of times. How do you respond to people who say this just raises the cost of policing?*

A. Police officers have rights like everyone else. Because we have laws against discrimination, I think it is especially important for government entities to follow the law. Lawsuits in general increase societal costs, but society has decided to pass laws giving people workplace rights. Having decided that discrimination should not be tolerated, we must prohibit it. Plaintiffs' lawyers are essentially upholding these laws.

*Q. How do you respond to those who say that plaintiffs' lawyers just increase the amount of "red tape" for employers?*

A. When a plaintiff files suit and prevails, that individual has had to overcome many obstacles to demonstrate that law was broken. For every person who wins, many more are not able to overcome those obstacles, and many never sued but could have. Those who are successful have immeasurable impact on and benefit to others who don't have to go to court in the future. Every case resolved through the courts gives employers and employees more idea of what their rights and responsibilities are and thereby prevents some litigation in that regard.

*Q. What kind of response are you getting to the 11 class actions you filed against restaurants for allegedly skimming portions of tips from servers?*

A. There has been a great deal of response. These suits have raised awareness in the restaurant industry about the Massachusetts wage law that protects tipped employees. Although it has been on the books for a long time, many people have not been aware of it. The law says that wait staff get to control tips received, and service charges should be distributed to employees actually engaged in service. The sense I got from speaking with many waiters is that this law has been often ignored. There is much excitement about making sure that owners and managers are not taking part of the tips intended for servers.

*Q. What keeps you inspired?*

A. I love working with people. I get excited about trying to help people. That's why I went into law. I relish a good challenge. I also love that my career brings together many different kinds of work. I have to do legal analysis, writing, speaking and interviewing of others. I see myself as entrepreneurial and creative. I have to create a suit with specific theories and figure out how to get a certain result and remedy. I love the strategy and putting the pieces together to get the results.

*Q. What is the single biggest problem facing plaintiffs in employment law?*

A. I think the trend of employment law has been moving against plaintiffs for many years. The biggest challenge is having to deal with new procedural and substantive obstacles constantly in the way of pursing an employment suit. Every time a new decision like *Sutton* comes down, it makes it more difficult and fewer plaintiffs get to be heard.

*Q. Is there a danger in allowing people with correctable disabilities to sue, and does this open a can of worms?*

A. Not at all. It is the people who are able to overcome their disabilities that the disability discrimination law was designed to help. People who have a way of performing their job despite their disabilities are the very people who should be allowed to work. People who can't overcome their disabilities won't be able to do the job. When the U.S. Supreme Court closed off suit for people who can overcome disability through correctable devices, it really closed off the law to most of the people it was designed to redress.

And there is no merit to the floodgates argument. In Massachusetts, those with correctable disabilities have been protected and there has hardly been a wave of litigation. Almost all federal circuits had gone the other way before the *Sutton* opinion. *Dahill* just took us back to where we were in Massachusetts.

*Q. What do you say to those who contend that policemen or persons in safety-sensitive professions should seek alternative employment if they have disabilities?*

A. In order to win a disability discrimination claim, a plaintiff has to show that he or she is capable of performing the essential functions of job. That includes safety concerns. The only people who can win are those who can show no undue risk to themselves or others. They should not be in position otherwise, and will not win a discrimination lawsuit.

*Q. The MCAD is clogged with cases. Are too many people suing for bias?*

A. The backlog is because we are understaffed and underfunded. The MCAD issues probable cause findings in a small number of cases, and the most resources are used in cases that get past the probable cause stage and have some merit. Non-meritorious claims do not cause the backlog. Also, many people go to the MCAD without lawyers. It is a relatively user-friendly forum, but that can slow down the process a bit because lawyers know how to streamline cases. The MCAD could greatly benefit from having more resources. They could also help people without lawyers more efficiently.

*Q. What case this year was your greatest challenge and why?*

A. The *Sprague* case was a huge challenge. It involved an industry that was unfamiliar to my co-counsel and me. There was an incredibly vast amount of detail and information regarding airline mechanics and maintenance, and what is required to fix or service an airplane. Preliminary injunction work is also a big challenge. You basically have to compress an entire piece of litigation into days, and put aside all your other work. But it is very satisfying to get a resolution in days and not a matter of years.

*Questions or comments may be directed to the writer at jcunninghgam@lawyersweekly.com.*

## HARVEY A. SCHWARTZ, Boston employment and civil rights lawyer, on Shannon Liss-Riordan ...

Veteran lawyer Harvey A. Schwartz is accustomed to the spotlight, but even he says Shannon E. Liss-Riordan "has been in the middle of an unusual number of high-profile cases this year."

Her record has been all the more impressive, Schwartz suggests, because her achievements came during a year in which she gave birth.

"Shannon's reputation inflated during the course of the year along with her belly, and she developed enormous jury sympathy as a result," he quips.

Schwartz says she is a natural in front of juries. "Her sincerity comes through, and she has a knack for communicating in the courtroom," he says.

He also notes that she is very thorough in preparing her case files.

"Her firm shares office space with us, and her files are expanding throughout the joint space of both firms," he says. "This office generally has a laid-back working atmosphere, but she is the exception - she has been known to burn the late-night oil, even on weekends."

According to Schwartz, Liss-Riordan "is a true believer in people's rights and she is in the profession for the right reasons."

Part of her success, he says, comes from not being afraid to take risks, noting that she has won some difficult cases.

"We both get interesting phone calls from people who feel their rights were violated and some just have oddball cases. I've taken my share of those, but when she told me she was representing a policeman who was terminated because he owned adult video stores, I told her even I would not take that."

Liss-Riordan won that case and several other tough battles this year, and Schwartz predicts more people will know her name in the future.

- John O. Cunningham

© 2002 Lawyers Weekly Inc., All Rights Reserved.

| DISCUSS Story on our Forum | SUBMIT a Letter to the Editor | Order a REPRINT of this Story | |
|---|---|---|---|



User Agreement For Subscriber-Only Online Benefits  |  Help  |  Our Privacy Policy

Send any questions or comments to comments@lawyersweekly.com

**AMERICAN ARBITRATION ASSOCIATION**
Employment Arbitration Tribunal

**In the Matter of the Arbitration between**

**DAVID BILBILIAN, Complainant**

     **and**

**MORTON'S OF CHICAGO/BOSTON, INC.,**
**Respondent**

**AAA Case No. 11 160 00217 03**

## RULING ON PETITION FOR ATTORNEYS' FEES AND COSTS
## AND FINAL AWARD

**BACKGROUND**

     An arbitration was held in this matter pursuant to Morton's Mandatory Arbitration Policy to decide the issue of whether David Bilbilian was terminated in violation of M.G.L. c.149, §148A. Hearings were held on eight days between October 28, 2003 and January 12, 2005. The parties then submitted extensive briefs and reply briefs by July 5, 2005.

     In a forty-four page decision, I found that Bilbilian was terminated in retaliation for protesting a tipping policy which he believed violated c. 149, §152A. Bilbilian was awarded back pay, which was significantly reduced because of a failure to mitigate damages; a minimal amount of compensation for emotional distress; and reasonable attorneys' fees and costs. Shannon Liss-Riordan, Bilbilian's primary counsel, initially submitted on October 27, 2005 a request for fees of $181,985, which she requested be enhanced by a discretionary lodestar multiplier; and costs of $12,776.56. She requested that if Respondent challenged the hours or the billing rate, Respondent should be required to produce its complete billing records for the case.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Elise Bloom and Diane Windholz, who represented Respondent throughout the

proceedings, filed an opposition motion on November 28, 2005 in which they sought to

reduce any award of fees and costs to a total of no more than $60,000, based on a number

of issues:

- **Block Billing**  They asserted that many of Complainant counsel's time entries, totaling $41,865 in billing, were accompanied by block descriptions, such as "Work on setting up Bilbilian and Hurley depositions; Office conference SLR with JR [Jennifer Rieker, an associate] re Bilbilian and Hurley arbitrations" or "Prepare for arbitration; Meeting with Tom McCue and Kasey Esposito."   Such descriptions, they argued, preclude Respondent and the Arbitrator from determining if the time spent on a specific task was reasonable, since it was impossible to attribute actual times to each task. Respondent proposed that a 35%, or $14,652.75, reduction be imposed on the time covered by block entries.

- **Time Related to Hurley**  Liss-Riordan's office represented Robert Hurley in his separate arbitration proceeding with Morton's.  Respondent wants the $1875 billed by Rieker for time spent preparing Hurley for his deposition, and attending the deposition, deducted. Discovery for the Bilbilian and Hurley arbitrations was conducted simultaneously and it was agreed Rieker could depose Respondent Managers Bullock and Adorno seriatim, on the same day.  A total of $10,465 was billed for time relating to discovery and depositions of Bullock and Adorno, which Respondent argued should be reduced by 50%, or $5232.50.  Similarly, Respondent stated the cost of the Hurley deposition transcript ($625.65), and half of the cost of the transcripts of the Bullock and Adorno depositions ($821.93) should be deducted from the claimed costs.

- **Reasonableness of Expended Hours**  Respondent cited the applicable law that "non-productive time and hours that are redundant, excessive or unnecessary" should not be included in an award of reasonable fees.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

●● **Witnesses Not Called** They argued that time spent preparing Maura Daniel and Tom McCue, a total of $2050, should be deducted because these people were not called as witnesses.

●● **Substitution of Counsel**  Around February, 2004, after two days of hearing, Rieker left the firm and Amy Carlin began assisting Liss-Riordan.  In the ensuing weeks, Carlin charged 29.3 hours for reviewing arbitration transcripts and preparing for arbitration, a total of $7,325.  Respondent argued it should not be responsible for the time spent getting Carlin "up to speed" due to a change in staffing.

●● **Time of Associate at Hearing** Respondent asserted the 42.8 hours charged for Carlin's attendance at five days of hearings, which totaled $10,700,  should not be included since Carlin did not examine or cross-examine any witnesses.  Court decisions were cited in which judges have held that an attorney who does not actively participate in the presentation of a case cannot be compensated via a fee petition.

●● **Post-Hearing Brief** Billing records show Liss-Riordan charged 25.1 hours on the post-hearing brief, while Carlin charged 130.7 hours, the total charges equaling $41,460.  Liss-Riordan charged 7.1 hours, Carlin charged 40.7 hours, and Stephen Young [who took over the briefing duties of Carlin when she left the firm in the spring of 2005] charged 25.47 hours for work on the reply brief, for a claimed fee of $17,750.  The total fees for both briefs were just under $60,000.   Given what Respondent argued were the straightforward legal issues presented in the case, Respondent asserted that the time spent was grossly excessive, and should therefore be reduced by 50%, or $29,605.

● **Hourly Rates**  Complainant sought hourly rates of $350 for Liss-Riordan, $250 for Carlin and Rieker, and $200 for Young.  Respondent cited Massachusetts Federal District Court decisions awarding $200 for the lead counsel in discrimination cases and rates between $125 and $150 for

David Bilbilian
and
Morton's of Chicago/Boston, Inc

associate counsel.  In the cited cases, the respective counsel had far more employment law and trial experience than Liss-Riordan, who graduated law school in 1996 and clerked for two years.  No trial experience was set forth for the associates, but merely the law school graduation dates of 1999 for Rieker, 2000 for Carlin and Young.  Analyzing the fee requests in light of the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983),  Respondent argued that Liss-Riordan should be compensated at $200 per hour, Rieker and Carlin at $150, and Young at $125.  Respondent asserted the case was not labor or time intensive; it was a simple retaliation case which posed no difficult or novel issues; it did not preclude Liss-Riordan and her firm handling other cases; Liss-Riordan offered no evidence of the customary fees she and her firm charge; there was no evidence as to whether the fees was fixed or contingent; Liss-Riordan recovered less than $20,000 of the claimed $133,500 in lost wages and minimal emotional distress; and there was no evidence of awards rendered in similar cases.

● **Multiplier** Respondent opposed Complainant's request for any enhancement by a lodestar multiplier based on *Fontaine v. Ebtec Corp.,* 415 Mass. 309 (1993), which allowed an  upward adjustment in certain circumstances "to compensate for the risk of nonpayment."  It argued that the issues in the case were not complex, no novel issues of law were raised, and the case did not have significance to a wider group of people.

The parties undertook extensive efforts to settle the fee and costs issue, including participating in a full day of mediation.  When settlement efforts failed, Liss-Riordan submitted a reply to Respondent's opposition on July 6, 2006.  In it she reiterated her demand that Respondent produce its billing records to provide direct evidence of what Respondent considered to be a reasonable amount of time to prepare and present the case, and a reasonable billing rate for such work.  Liss-Riordan then responded to the specific points raised by Respondent's opposition:

David Bilbilian
and
Morton's of Chicago/Boston, Inc

- **Block Billing**  Complainant argued that block billing of time expended on multiple tasks the same day is not proscribed, and that the entries provide sufficient detail to determine the reasonableness of the time expended.

- **Time Related to Hurley**  Complainant asserted that since Hurley's experience at Morton's was inextricably connected to Bilbilian's and the claim of retaliation, discovery related to Hurley was relevant and necessary to presenting Bilbilian's case.  To the extent it is argued that the Respondent would not have taken Hurley's deposition had he not had his own case pending, likely Respondent would have deposed this key witness anyway.  At most, half of the time and expenses related to Hurley's deposition should be deducted from the initial demand of fees and costs.    Similarly, no more than a 10% deduction is appropriate  for  the  Bullock,  Hoffman,  and  Adorno depositions since they were key witnesses in the Bilbilian matter, and a minimal amount of time was spent questioning them about Hurley.

- **Reasonableness of Expended Hours**

  - ●● **Witnesses Not Called**  Complainant argued that it is difficult to assess before investigation which witnesses  will  ultimately  provide  useful information, and which will be necessary to call at the  hearing.    Liss-Riordan  asserted  that  much investigation was not billed, since it was conducted as part of counsel's representation of Morton's employees in a prior case challenging the tipping policy.  Regarding McCue, it was Complainant's intent  to  call  him  as  a  witness,  but  scheduling conflicts  which  developed  with  chemotherapy treatments made this impossible.  Daniel was not called to testify, but  no more than a deduction of one hour of time is warranted.  The three hour block billing for that day included what counsel asserted was a brief meeting with Daniel, as well as work on document requests and other discovery issues.

  - ●● **Substitution of Counsel**  Complainant stated that most of the 29.3 hours of time expended by Carlin in late February and early March was

David Bilbilian
and
Morton's of Chicago/Boston, Inc

devoted to preparing for a resumption of the hearing, the first two days of which had been in October, 2003. The 6.1 hours devoted to her review of the transcript would have been required by Rieker as well, but in any event only these hours should be deducted from the total.

●● **Time of Associate at Hearing**   Complainant noted that Respondent had two attorneys present throughout the hearings, reflecting its judgment that this level of staffing was necessary and appropriate. Complainant argued that Carlin's participation was essential to Liss-Riordan's ability to put on Complainant's case in an efficient and effective manner.

●● **Post-Hearing Brief**   Complainant argued that the hearings were long and fact-intense, the briefs were necessarily detailed, and the time expended was appropriate.

●   **Hourly Rates**   Liss-Riordan maintained that a $350 hourly rate is appropriate given her experience, expertise, rates she has been awarded in the past by judges, fees she had commanded as a class action litigator, and fees awarded to and charged by plaintiff lawyers of a comparable level in Massachusetts.  Affidavits from a number of the prominent plaintiff attorneys were introduced in support of her claims.  She noted that the cases cited by Respondent were largely issued by Judge Young, who has consistently given fee awards below market rates and the rates awarded by most other judges. Regarding the associates, Liss-Riordan cited awards of between $225 and $250 in discrimination cases in Massachusetts.

●   **Multiplier**   Complainant sought a lodestar multiplier based on the length and factual complexity of the hearing, the significant liability finding which enabled the parties to achieve settlements in a number of other pending arbitrations, and the specialized expertise of counsel.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

      ●   **Fees and Costs for Post-Decision Activities**
Complainant requested $8190 for time expended on
settlement discussions, mediation, and briefing of the fee
issue.

      ●   **Post-Judgment Interest**   Complainant seeks an order
that post-judgment interest at the rate of 12% per annum
should run from the date of the fee award to insure prompt
payment.

On July 27, 2006, I issued the following order to the parties:

      I have concluded my initial reading of the parties'
submissions regarding the Complainant's request for fees
and costs.  In such cases, I consider the Respondent
Counsel's billing records to be highly relevant, although
not necessarily dispositive, regarding the issues of the
reasonableness of time spent and billing levels.  I noticed
that Respondent has not complied with Complainant's
request for the billing records.  If the Respondent wants to
challenge the time spent and amount charged by the
Complainant's legal team, it must first provide these
records.   Such records shall be produced to Ms. Liss-
Riordan by August 11.  Both parties shall then have until
August 25 to submit supplemental memoranda to the AAA,
along with a copy of the billing records.  If vacation
schedules make these deadlines burdensome, the parties
may either agree between themselves on different dates, or
contact you [AAA Administrator Gomez] and request that I
set different dates.

Respondent subsequently declined to produce the billing records, arguing that they are

protected by the attorney-client privilege.   Complainant responded that such records are

not protected and maintained that Respondent had waived its claim that Complainant's

time expended and rates claimed are unreasonable.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

## OPINION

**Failure to Produce Billing Records.**    As I stated in my July 27 ruling, I believe that Respondent's billing records would be highly relevant to its claim that the amount of time Complainant's counsel expended in totality, and on specific tasks, was unreasonable.    When one reads some decisions reviewing fee petitions, one is struck by the seemingly arbitrary judgments made by judges regarding the billed time.    Without any generally recognized guidelines for how long it should take to investigate a claim, conduct discovery, or write a brief, or criteria related to the specific case, some judges reach random conclusions.

I sought to evaluate Complainant's claimed hours based on some objective evidence.    It often takes longer to assemble and present a claim than to defend it, so Respondent's time records would not be the dispositive determinant of whether Complainant's time investment was reasonable.    They would have provided a rational comparator, however.    If Respondent counsel's time expended for specific common tasks was significantly lower than Complainant counsel's, that would have provided a persuasive basis for finding the fees being sought were excessive in whole or in part.    If it turned out that Respondent's time was equivalent to or exceeded Complainant's, Respondent's arguments would have been peremptorily dismissed.    The same analysis applies regarding billing rates.    If the rates Respondent paid its own lawyers exceeded those being requested by Complainant, Respondent would be hard-pressed to argue that the fees being sought by the prevailing attorneys were unreasonable.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

The approach I have adopted is hardly unprecedented in Massachusetts. In *Mulhearn v. Roach,* 20 Mass. App. Ct 322,330 (1985) the Appeals Court had to consider a client's claim that the fee charged by his attorney, who had not kept contemporaneous detailed billing records, was unreasonable. The trial judge had excluded evidence of the billing records of the opposing counsel in the case. The Appeals Court ruled that a direct comparison between the billing practices of the opposing parties was highly relevant, and found it was reversible error to exclude the records. In *Change the Climate v. MBTA,* 2005 WL 3735100, Massachusetts Federal District Court Judge Keeton considered the stipulations regarding the amount of time and rates charged by the defendant's counsel, relying on that information in assessing what defendant actually believed were the prevailing market rate for attorneys handling the type of case at bar, as opposed to the rates the defendant was seeking to impose on the victorious counsel.

Respondent has put forth no caselaw which calls into question the validity of the approach articulated by Massachusetts Appeals Court and a highly respected federal district court judge. Respondent's only assertion is that its billing records are protected by attorney-client privilege. The cases cited by Respondent – *Fidelity & Deposit Co. v. McCullough,* 168 F.R.D. 516 (E.D. Pa. 1966) and *Colonial Gas Co. v. Aetna Casualty & Surety Co.,* 144 F.R.D. 600 (D. Mass. 1992) do not deal with access to parallel records when the party seeking to invoke the privilege is challenging the reasonableness of the other parties' fee petition. It is hard to understand the argument that disclosing the billing rate for Bloom and Windholz would enable Complainant's counsel to discover Respondent's litigation strategies or protected communication. Similarly, Respondent

9

David Bilbilian
and
Morton's of Chicago/Boston, Inc

would not have had to disclose what was covered in client or attorney conferences, or witness interviews, but simply how much time they took.

Given that Complainant has the burden of establishing the reasonableness of its time charges and billing rates, the failure of Respondent to comply with my order does not mean Complainant's fee and cost petition is automatically granted. Complainant must still meet its burden of proof. Where Complainant has put forth prima facie evidence of reasonableness, however, and where I have no independent bases for questioning Complainant's requests, Respondent's arguments about excessive time charges and billing rates will not be credited.

**Block Billing.** There is no requirement that a counsel's billing records take a particular standardized form, other than they should contain sufficient detail that judgments can be made as to whether the tasks were closely related to the case and the time charged was reasonable. Nowhere is it stated that counsel must separately identify every discrete task and attach the precise time spent. To mandate that level of recordkeeping would waste enormous amounts of time, since lawyers would be constantly interrupting their work time to make bookkeeping entries.

While Respondent has identified entries for approximately eighty days which it argues should be discounted by 35%, a careful examination of the entries shows they set forth enough information to judge their reasonableness. Many entries totaled a fraction of an hour, and identify a number of tasks which were clearly related to the prosecution of the case. Typical was the July 2, 2003 notation that Rieker spent .4 of an hour writing a letter to, and speaking with, Windholz regarding depositions. Another example was

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Liss-Riordan's .3 hour charge form April 23, 2004 for a telephone call with Windholz and a telephone call with Bilbilian. These were just two of many billing entries which could have been corroborated had Respondent chosen to turn over its billing records.

Deferring the issues of whether the amount of time spent briefing was excessive in the aggregate, and whether Respondent should be responsible for certain hours performed by Carlin, the total charge for each day's work was facially appropriate. That more than one related task was mentioned for a single day did not make the item unreasonable. Respondent did not challenge time allocations so long as there was a single description, such as Rieker's October 2, 2003 2.0 hour charge for preparation for Adorno's deposition. Respondent did challenge the August 19, 2003 7.0 hour charge of Rieker's simply because she noted that she prepared for *and* attended Bullock's deposition. This is not a persuasive basis for discounting the charge, especially since Respondent knew how long the deposition lasted, and it would have had no trouble calculating how much time Rieker spent in preparation that day. Further, what is most noteworthy about the charges is the fact that where there are entries for conferences between Liss-Riordan and Rieker or Carlin, the time for the conferences was only charged by one of the attorneys. Clearly there was sufficient detail to make judgments about the reasonableness of the billing.

**Time Related to Hurley.** Although he had his own pending arbitration, Hurley was a key witness in Bilbilian's claim. There was no way to understand the entire tipping dispute, Bilbilian's role in challenging the policy, and the actions taken against Bilbilian without fully exploring Hurley's employment experience at Morton's. Further,

David Bilbilian
and
Morton's of Chicago/Boston, Inc

Complainant made the reasonable argument that the treatment of other employees who were active in opposing management on the tipping policy lent credibility to Bilbilian's claim of retaliation. Ultimately I elected not to address those claims in the arbitration decision, since Bilbilian's situation was unique and there was sufficient direct evidence of retaliation against him to support a finding on Bilbilian's behalf. Complainant's counsel would have been remiss, however, in not fully investigating the experiences of the other employees and presenting that information at the arbitration. No deduction for time relating to Hurley is therefore appropriate.

**Reasonableness of Expended Hours.** Given the number of potential witnesses and the number of interactions which had to be addressed, it stands to reason that Complainant's counsel might expend time interviewing and preparing witnesses whom she ultimately decided not to call at the arbitration hearings. While it is to some extent unfair to judge the efficacy of such expenditures of time retrospectively, that is what judges routinely do when assessing fee petitions. It was not apparent that Maura Daniel had any information which furthered the case, and she was not called as a witness. While Liss-Riordan asserts that she recalls having spent only one hour with Daniel on October 17, 2003, and that she spent the balance of the three hours billed working on document requests and discovery issues, there is no contemporaneous billing detail which would substantiate this claim. Rieker billed four hours for meetings with Tom McCue and Kasey Esposito, which averages out to two hours with each employee. Using this calculus, a 66.6% reduction of the three hour charge will therefore be imposed to account for time possibly spent with Daniel. No reduction is appropriate for the time

David Bilbilian
and
Morton's of Chicago/Boston, Inc

interviewing and preparing McCue.  Complainant had every intention of calling him as a witness.  He was scheduled to testify but was put off because the testimony of other people ran longer than expected, and attempts to reschedule McCue were ultimately thwarted  by his need to get chemotherapy treatments.

Respondent is correct that it should not be accountable for time devoted by Carlin to learn the case.  While it is true that lawyers moving between firms is a common phenomenon, the investment of getting the replacement up to speed is a cost which must be borne by that lawyer's firm, not the opposition.  It is also true that with a four month break between the second and third hearings, Rieker would have had to review the file to refresh her memory.  It is a lot more efficient, however, for someone familiar with a case to get up to speed, than for someone who is reading everything for the first time.  Subtracting the time Carlin spent reviewing the transcript, 6.1 hours, is an appropriate measure of time which Respondent should not have to cover.  The balance of the time Carlin spent preparing for the arbitration would have been expended by Rieker; as Liss-Riordan rightly argued, even though she had been involved in the early preparation of the case and the first two days of hearings, she too had to devote time getting ready for a resumption of the hearings.

A related issue is whether Complainant could justly charge for the presence of Carlin at the hearings, even though she did not conduct examinations of any witnesses.  As noted by Keeton and others, having more than one counsel when presenting an extended case is common practice.  It is very difficult to examine witnesses, take notes, handle voluminous exhibits, and get succeeding witnesses ready simultaneously and

13

David Bilbilian
and
Morton's of Chicago/Boston, Inc

alone.  No doubt this is why Respondent had two attorneys present throughout.  While Windholz did ably conduct a few witness examinations, she kept busy even when Bloom was interrogating.  Had Respondent's bills been produced, I am certain they would have shown Respondent was charged for all of Windholz's time, not just the time she examined a witness.

The one area where I have some means of comparison apart from Respondent's billing records is for the time charged for reviewing the record and writing the briefs.  I had to go through the same record, read the competing briefs, conduct the legal research, decide the case, and write a lengthy opinion.  My total charge was 91.2 hours, while the time charged by Liss-Riordan, Carlin, and Young for the briefs and reply briefs was 229.07 hours.  My hours are not a wholly accurate comparator, since I trimmed my bill by 10% to account for my own duplicative time necessitated by having to put down the case a number of times to attend to other business.   Further, I have been writing decisions for thirty years and pride myself at doing so especially efficiently, a skill which is accounted for in my billing rate.   That being said, the hours billed by Complainant for the time Carlin and Young spent on the brief writing is excessive.  Some of the extra time was no doubt due to Carlin being distracted by her imminent departure and Young having to learn the case anew.  The hours spent by Carlin and Young should therefore be reduced by 50%   (Carlin = 85.7; Young = 12.8), bringing the total hours of the three attorneys to 130.6.

**Hourly Rates.**   The decisions of Judge Young on attorney fee awards are decidedly out-of-step with numerous other awards by federal and state court judges, and

David Bilbilian
and
Morton's of Chicago/Boston, Inc

do not reflect the actual fees charged by major plaintiff counsel, and certainly not by defense counsel. Judge Young's analysis of why prevailing plaintiff counsels are not entitled to anything approaching the billing rates of defense firms is unpersuasive. Judge Keeton's conclusion that the rates paid by the losing party to its own counsel are very probative of what is reasonable is sound.

Liss-Riordan provided more than a sufficient basis to justify her request for a billing rate of $350. She is widely recognized as one of the pre-eminent plaintiff lawyers in New England, and she is the unchallenged leader regarding wage and hour and retaliation claims in the hotel and restaurant industry. Contrary to Respondent's assertions, this was not a simple, straight-forward case and every issue was strongly contested. Even if Respondent counsel's billing records showed that they did not charge $350 an hour, Liss-Riordan's fee rate request would be justified by the supporting affidavits and the nature of the case. The fact that Bilbilian was not awarded a greater portion of his lost wages was due to his failure to adequately mitigate his damages, not any failure in the prosecution of his case.

The rates sought for Rieker, Carlin, and Young are within the range awarded by state and federal judges for associates, and the actual rates charges by firms doing employment law. Had Respondent produced its records so a comparison could have been made with what was being charged for Windholz's time, with an allowance being made for her somewhat more active role, I would have been receptive to looking more critically at the rates being sought for Complainant's associate counsels. Without that information, I see no reason to cut the requested rates.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

**Multiplier.** Complainant's counsel has presented no compelling justification for a lodestar multiplier. There was no significant risk of nonpayment. Complainant would only be entitled to recover legal fees if he prevailed. Once that barrier was met, Complainant was assured fair compensation, since there was no chance Morton's would declare bankruptcy to avoid paying the award.

**Fees and Costs for Post-Decision Activities.** Complainant is entitled to the full $8190 in fees and costs incurred in pursuing the previously incurred fees and costs.

**Post-Judgment Interest.** To ensure prompt payment, post-judgment interest at the rate of 12% per annum shall attach to the monies owing under this award as of thirty days from the issuance of this award.

**AMERICAN ARBITRATION ASSOCIATION**
Employment Arbitration Tribunal

**In the Matter of the Arbitration between**

**DAVID BILBILIAN, Complainant**

     **and**

**MORTON'S OF CHICAGO/BOSTON, INC.,**
**Respondent**

**AAA Case No. 11 160 00217 03**

## FINAL AWARD

I, the undersigned arbitrator, award the Complainant the following costs and fees:

> **4/7/03-7/1/05**
> Liss-Riordan  224.2 hours @ $350 = $78,470
> Rieker  117.6 hours @ $250 = $29,400
> Carlin  181.3 hours @ $250 = $45,325
> Young  12.8 hours @ $200 = $2,560
> Costs  = $12,526.56 (AAA filing fee included in final paragraph)
>
> **10/13-7/5/06**
> Liss-Riordan  23.4 hours @ $350 = $8,190
>
> **Total Fees and Costs:    One hundred seventy-six thousand, four hundred and seventy-one dollars and fifty-six cents ($176,471.56)**
>
> Interest at the rate of 12% per annum shall attach to this award, starting thirty days from the issuance of this award.

The administrative fees of the American Arbitration Association totaling $3,800.00 and the compensation of the arbitrator totaling $71,675.00 shall be borne by the parties as incurred and in accordance with the Rules.

David Bilbilian
and
Morton's of Chicago/Boston, Inc

This Award is in full settlement of all claims and counterclaims submitted to this

Arbitration.  All claims not expressly granted herein are hereby denied.

September 28, 2006                          Mark L. Irvings

I, Mark L. Irvings, do hereby affirm upon my oath as Arbitrator that I am the individual
described in and who executed this instrument which is my Award.

September 28, 2006                          Mark L. Irvings

COMMOMWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                    **Superior Court**
                                                 **Civil Action No. 02-0880**

|  |  |
|---|---|
| MASSACHUSETTS BAY TRANSPORTATION AUTHORITY | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION and GERALDINE ROSS | ) ) ) ) |
| Defendants. | ) ) ) |

## AFFIDAVIT OF ATTORNEY KEVIN G. POWERS IN SUPPORT OF THE FEE APPLICATION OF ATTORNEYS HAROLD LICHTEN AND SHANNON LISS-RIORDAN

Now Comes Kevin G. Powers and states:

1. I am licensed to practice law in the State of Massachusetts, The Federal District Court, District of Massachusetts, the U.S. Court of Appeals, First Circuit and the U.S. Supreme Court.

2. I have been practicing law in Massachusetts since 1978. During the entire time I have concentrated in the areas of labor and employment law.

3. For ten years, I was a partner in the law office of Johnson and Powers, P.C.

4. In 1988, I left Johnson and Powers, P.C. and set up my own office concentrating on representing plaintiffs in employment cases.

5. In 1999, I along with three other employment lawyers established the law firm of Rodgers, Powers & Schwartz.

6. My law practice focuses exclusively on labor and employment issues.

7. I have tried numerous employment cases and argued before the Massachusetts Appeals Court, the Massachusetts Supreme Judicial Court and the Federal Court of Appeals.

8. I am a member of the Massachusetts and American Bar Associations. I am a member of the Labor Law Committee of the Massachusetts Bar Association and I am the Vice Chair of the MBA Individual Rights and Responsibilities Council.

9. On a fee petition that I recently submitted to the Supreme Judicial Court, I was awarded approximately $400.00 per hour for my work in the case of Clifton v. Massachusetts Bay Transportation Authority.

10. I have known Harold Lichten for approximately ten years. Our firms have shared office space since 2001, and so I have on an almost daily basis since that time had the opportunity to speak with him about employment law issues and have observed his work. I would say that he is one of the top employment attorneys practicing in Massachusetts. Based upon my familiarity with the prevailing market rate for employment attorneys in the Boston area, and with fee awards that have been issued to employment attorneys, I believe that Harold Lichten's request for $375 per hour for his work is consistent with the prevailing market rate for attorneys of his skill and experience.

11. Likewise, I have known Shannon Liss-Riordan for approximately five years, since our firms began sharing office space in 2001. I have also spoken with her on an almost daily basis about employment issues and have observed her work. I would consider her also to be a top employment attorney practicing in Massachusetts and, based upon my familiarity with the prevailing market rate for employment attorneys in the Boston area, and with fee awards that have been issued to employment attorneys, I believe that Shannon Liss-Riordan's request for $350 per hour for her work is consistent with the prevailing market rate for attorneys of her skill and experience.

12. Moreover, as I practice in a small employment firm primarily representing employees, I understand the pressures on such firms to invest time into contingency-fee cases over a course of years without any payment for many years. Such delays in payment create enormous financial burdens on small firms, which can be alleviated somewhat by their obtaining fair market rates for their attorneys' time at the conclusion of successful cases. The rates requested in this case by Attorneys Lichten and Liss-Riordan are eminently reasonable, given the market rate for attorneys in the Boston area and especially given the substantial delay in payment that I know their firm has experienced in this case.

Signed under the penalties of perjury this _____ day of _____ 2006.

Kevin G. Powers BBO #405020
Rodgers Powers & Schwartz LLP
18 Tremont St.
Boston, MA  02108
(617) 742-7010

Slip Copy
Slip Copy, 2005 WL 3735100 (D.Mass.)
(Cite as: 2005 WL 3735100 (D.Mass.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Massachusetts.
CHANGE THE CLIMATE, INC., Plaintiff
v.
MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY and Robert H. Prince, Jr., General
Manager of the MBTA, in his official capacity,
Defendants
Lischen RIDLEY, individually and on behalf of
members of the congregation of
the Church with the Good News, Plaintiff
v.
THE MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY and Michael H.
Mulhern,
Defendants
No. Civ.A. 00-10973-REK.

June 8, 2005.

Harvey A. Schwartz, Kimberly H. Scheckner,
Rodgers, Powers & Schwartz LLP, Sarah R. Wunsch,
ACLU Foundation of Mass, Boston, MA, for
Plaintiff.

James A. Aloisi, Peter N. Kochansky, Rudolph F.
Pierce, Goulston & Storrs, PC, Boston, MA, for
Defendants.

Memorandum and Order

KEETON, Senior J.

I. Pending Matters

*1 The matters pending for decision are associated
with the following filings in this case:

(1) Plaintiff's Motion for Award of Attorneys['] Fees
and Costs (Docket No. 166, filed February 26, 2005);

(2) Memorandum in Support of Plaintiff's Motion for
Attorneys' Fees (Docket No. 167, filed February 26,
2005);

(3) Affidavit of Harvey A. Schwartz, Esq. in Support
of Plaintiff's Motion for Attorneys['] Fees (Docket
No. 168, filed February 26, 2005);

(4) Affidavit of Sarah Wunsch in Support of Motion
for Attorneys['] Fees and Costs (Docket No. 169,
filed February 26, 2005);

(5) Defendants' Partial Opposition to Plaintiff's
Motion for Award of Attorneys' Fees and Costs
(Docket No. 170, filed March 14, 2005);

(6) Plaintiff's Reply to Defendants' Partial
Opposition to Plaintiff's Motion for Award of
Attorneys['] Fee and Costs (Docket No. 171, filed
March 29, 2005);

(7) Stipulation (Docket No. 172, filed April 25,
2005); and

(8) Stipulation (Docket No. 173, filed May 19,
2005).

II. Procedural Background

This case has an extensive procedural history. It is
sufficient for the purposes of resolving this motion for
attorneys' fees to state just a few major events.
Change the Climate filed its original complaint on
May 18, 2000. (Docket No. 1) That complaint sought
a declaratory judgment that Change the Climate had
unconstitutionally been refused advertising space by
the MBTA, an injunction forcing the MBTA to
display certain advertisements, damages based on the
refusal, and a finding that the advertising guidelines of
the MBTA were unconstitutional. At the end of the
litigation and related appeals, Change the Climate has
won the ability to have its advertisements displayed.

Change the Climate filed for attorneys fees on
February 26, 2005. (Docket No. 166) The defendant,
the MBTA, has only partially opposed the plaintiff's
motion for attorneys' fees. (Docket No. 170) The
MBTA contests in its opposition papers (1) the extent
of Change the Climate's victory; (2) the application of
a single hourly rate to both core and non-core work;
(3) the reasonableness of the hourly rates requested by
Change the Climate; and (4) whether some specific
hours and costs billed by Change the Climate
attorneys are appropriately compensated. At a hearing
held on May 25, 2005, argument was presented on
Change the Climate's motion for attorneys' fees.

III. Analysis

A. Introduction

Change the Climate seeks attorneys' fees and costs
pursuant to 42 U.S.C. § 1988. Section 1988 allows
the awarding of attorneys' fees to the "prevailing
party" in civil rights cases. "Although this fee-shifting

provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d 288, 293 (1st Cir.2001).

No dispute exists in this case that Change the Climate is entitled to some amount of attorneys' fees pursuant to § 1988 as a prevailing party. In order to determine the amount of attorneys' fees to which Change the Climate is entitled, I use the "lodestar" method. *Coutin v. Young & Rubicam, P.R., Inc.,* 124 F.3d 331, 337 (1st Cir.1997). This method requires determining the amount of hours "reasonably expended on the litigation" and multiplying it by a "reasonable hourly rate." *Id.*

B. Scope of Change the Climate's Victory

**\*2** Determining the attorneys' fees to which Change the Climate is entitled will first require resolving a dispute between the parties concerning the scope of Change the Climate's victory.

The Court of Appeals for the First Circuit notes that:
While "the degree of a plaintiff's success in relation to the other goals of the lawsuit" is not relevant to his "eligibility for a fee award," it is "a factor critical to the determination of the size of a reasonable fee." [*Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)].... The Supreme Court has stated that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." [*Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)]. Claims are related where they "involve a common core of facts or [are] based on related legal theories," or where counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435 ...; *see also Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 339 (1st Cir.1997) (claims unrelated where they "rest on different facts and legal theories" ... ).
*Schnieder v. Colledio de Abogados de Puerto Rico,* 187 F.3d 30, 42-43 (1st Cir.1999).

In this case, Change the Climate sought to be able to post three advertisements as well as an injunction prohibiting the enforcement of the MBTA's

advertising regulations. Change the Climate prevailed on the issue of the advertisements by proving that the MBTA had conducted unconstitutional viewpoint discrimination. Change the Climate lost on the issue of the facial validity of the advertising guidelines, although the MBTA did change the guidelines during the course of the litigation. All of the claims in this case involved a common core of facts. The facts at issue in all of the claims for relief centered on the MBTA's purported application of the MBTA advertising policy to Change the Climate's advertisements. Although Change the Climate lost on the facial validity of the guidelines, inquiry into those guidelines was a necessary part of winning on the ground of the improper application of the guidelines. Therefore, finding that Change the Climate has won substantial relief, I determine that Change the Climate's attorneys' fees should not be reduced based on a failure to win on all of its claims.

C. Whether I Should Allocate Hours Based on the "Core/Non-Core" Distinction

Having determined that Change the Climate's attorneys' fees should not be reduced on the basis of attaining less than a complete victory, I must now resolve what constitutes a reasonable hourly rate. In determining this rate, I must determine whether to apply a uniform rate to all hours billed by each attorney or distinguish between the types of hours billed, determining which hours involved "core" legal work and which hours involved "non-core" legal work.

**\*3** When determining the reasonable hourly rate at which to bill work, some courts apply a core/non-core distinction. "[C]ore work includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders. Non-core work consists of less demanding tasks, including letter writing and telephone conversations." *Wilson v. McClure,* 135 F.Supp.2d 66, 72 (D.Mass.2001) (quoting *Brewster v. Dukakis,* 3 F.3d 488, 492 n. 4 (1st Cir.1993)) (Young, J.). "[N]on-core work is compensated at two-thirds of the particular lawyer's hourly rate for core work." *Id.*

The First Circuit has not mandated the use of either the uniform or the core/non-core method of determining attorneys' fees. "[T]he First Circuit has made clear that a court has discretion to employ either a unified rate for all legal activities or a differential rate for core and non-core activities." *Rolland v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Cellucci,* 106 F.Supp.2d 128, 143 (D.Mass.2000).

Although it seems that the more prevalent practice in this district is to apply the core/non-core distinction, *see Parker v. Town of Swansea,* 310 F.Supp.2d 376 (D.Mass.2004) (Dein, M.J.) (using the core/non-core distinction); *LaPlante v. Pepe,* 307 F.Supp.2d 219 (D.Mass.2004) (Gertner, J.) (same); *Alfonso v. Aufiero,* 66 F.Supp.2d 183 (D.Mass.1999) (Saris, J.) (same); *McLaughlin by McLaughlin v. Boston School Committee,* 976 F.Supp. 53 (D.Mass.1997) (Garrity, J.) (same), I reject it as unrealistic and potentially inaccurate. The duty of a court in Boston in determining a reasonable fee is to "find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation as" Change the Climate's attorneys. *Martino v. Massachusetts Bay Transp. Authority,* 230 F.Supp.2d 195, 205 (D.Mass.2002) (Young, J.). In order to do this, I find it helpful to look to the usual billing practices of law firms in the area. Firms simply do not divide their work into core and non-core hours. Therefore, I will not use a method of determining attorneys' fees that is rejected by the very group I find most relevant for comparison.

I will follow the practice of Judge Young in *Systems Management v. Loiselle,* 154 F.Supp.2d 195 (D.Mass.2001), and *Mogilevsky v. Bally Total Fitness Corp.,* 311 F.Supp.2d 212, 217-218 (D.Mass.2004), and determine one rate for each of Change the Climate's attorneys. The amount of work that I find to be worthy of a more inexperienced attorney will factor into my determination of what constitutes a reasonable rate. *See Mogilevsky,* 311 F.Supp.2d at 217-18. As additional support for this method, I particularly note Judge Young's discussion of the risk of double counting when applying the "core/non-core" distinction given the considerations that go into the lodestar calculation. *Systems Mgmt.,* 154 F.Supp.2d at 209.

| | | |
|---|---|---|
| . | Sarah Wunsch: | $350/hr |
| . | Harvey Schwartz | $350/hr |
| . | Kimberly Scheckner | $225/hr |
| . | Laurie Frankl | $225/hr |
| . | Legal interns/Paralegals | $100/hr |
| . | Law Students | $75/hr |

D. Reasonable Hourly Rates

The parties' next dispute concerns what constitutes a reasonable hourly rate for each of the attorneys. The law for determining hourly rate is multifaceted. "In calculating a reasonable hourly rate, one must consider such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950-51 (1st Cir.1984). The Supreme Court has spoken on the proper way to determine reasonable hourly rates:

*4 [T]he critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. And the rates charged in private representations may afford relevant comparisons.

In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to--for convenience--as the prevailing market rate.

*Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). An opinion in this district has noted that "the legislative history to § 1988 fees suggests the purpose of fixing a reasonable hourly rate is to arrive at amounts that are adequate to attract competent counsel, but which do not produce windfalls to attorneys." *LaPlante,* 307 F.Supp.2d at 225.

Change the Climate has requested the following rates:

Change the Climate has (1) proffered affidavits explaining its attorneys' relevant experience, (2) submitted affidavits from attorneys in the community concerning the reasonableness of the requested rates, including one citing to a 2004 Massachusetts Lawyers Weekly survey of hourly rates billed by large Boston law firms, and (3) cited to relevant case law in support of the reasonableness of its requested rates. Having reviewed the record as a whole, I find that, even in light of work that the MBTA points out would be classified as "non-core" legal work, the rates claimed by Change the Climate for Sarah Wunsch, Harvey Schwartz, Kimberly Scheckner, the legal interns/paralegals, and the law students are reasonable.

My decision to allow attorneys' fees for law students is in recognition of the fact that this work would likely have been done by attorneys, although possibly with less time and less supervision. Therefore, I find that Change the Climate's request for $75 per hour is reasonable. *But cf. McLaughlin by McLaughlin,* 976 F.Supp. at 67 (holding "[w]here a plaintiff applies for fees for work performed by nonlawyers, any award for this work is limited to the amount of money actually paid to them"); *Rolland,* 106 F.Supp.2d at 144 (awarding $25 per hour for work completed by a "student intern").

I find these requested rates reasonable despite the MBTA's citation to courts awarding lower attorneys' fees in some § 1988 cases and its proffer of the Small Firm Economic Survey. First, I find that the MBTA's arguments concerning attorneys' fees lacks a degree of credibility given the stipulation, entered into by the parties, concerning the amount of fees and hourly rates paid to MBTA attorneys. (Docket No. 173) Although I note that it is this court and not the MBTA that determines what fees are reasonable, I believe that the MBTA's willingness to pay these fees is indicative of what the MBTA believes are the prevailing market rates for attorneys. In addition, I see no reason to limit my review of attorneys' fee case law just to § 1988 cases, though even doing so does not change my determination of the reasonable hourly rates in this case. Although such cases are *highly* relevant, I am reluctant to set a rate that would preclude highly skilled attorneys in other fields from considering civil rights work. Finally, I find the survey provided by the MBTA to be unhelpful because its data for New England are based on seven unidentified firms without indication of the specific locations of those firms. (Def.s' Partial Opp. to Pl.'s Mot. for Award of Attorneys' Fees and Costs, Docket No. 170, Exh. B at 19).

*5 I do, however, find that the requested hourly rate for Laurie Frankl is not adequately supported by the plaintiff's filings. No evidence is provided about the qualifications of Frankl except that she has been a lawyer for five years. Because I am not sure in what capacity she worked, I will treat her as a paralegal and assign a reasonable hourly rate of $100/hr.

E. Are All of the Hours Billed By Change the Climate's Attorneys Reasonable?

1. Introduction

Generally speaking I have found the record to show that the hours billed by Change the Climate are reasonable. The MBTA raises specific concerns about certain hours billed by Change the Climate. Specifically, they focus on (1) time when there was more than one attorney in the courtroom or attending depositions, (2) hours claimed by Ms. Wunsch to find a second attorney to litigate the case with the ACLU, (3) time spent pursuing public records requests of the defendants' legal bills, (4) time spent editing press releases, and (5) the cost of making a delivery to the Boston Globe.

2. Multiple Attorneys at Depositions and Trial

Although I am cautious about awarding duplicative fees, I see no evidence that the presence of multiple attorneys at depositions and trial will result in duplication here. First, I note that the approach I have adopted for determining the reasonable hourly rate includes taking into account time spent on work that normally would be assigned to less experienced attorneys. Second, it is common practice to have more than one attorney present at trial and also not uncommon to have multiple attorneys at depositions. Therefore, I reject the MBTA's request that this time be excluded.

3. Time Spent Seeking An Additional Attorney

Time spent by an attorney searching for an additional attorney may not require "high level" litigation experience, but it is recompensable. As I noted in my treatment of the multiple attorney issue, moreover, the "quality" of work has already been accounted for in my determination of a reasonable hourly rate.

4. Time Spent Pursuing Records Requests, Editing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Press Releases, and the Cost of Making a Delivery to the Boston Globe

The MBTA contests time spent pursuing records requests concerning the billing rates of MBTA attorneys. The record indicates that this time relates to the determination of attorneys' fees. Attorneys may receive attorneys' fees for time spent pursuing attorneys' fees. *See Wilson*, 135 F.Supp.2d at 72-73 (holding that work done on fee motions can be included in determining the fee award). Therefore, I will reject MBTA's request to exclude this time. I do note, as I have above, that I have made my determination of a reasonable hourly rate cognizant of the type of work for which the attorneys have billed.

I am concerned, however, about the time that has been billed for editing press releases and costs added for a delivery to the Boston Globe. I find that Change the Climate has not met its burden of justifying these hours or costs. I will exclude them from the total award.

F. Tentative Lodestar Calculation

**\*6** Since the parties have not disputed the arithmetic in this case, I will tentatively adopt their calculation. If the parties, upon review of this decision, dispute the calculation, they can inform the court by June 15, 2005; otherwise this sum will become final on that date and the court will issue a final judgment. Change the Climate's calculation indicates that it is entitled to $427,582 in attorneys' fees and $5,547.12 in costs for a total of $433,129.12.

This total is based on the assumption that Laurie Frankl was billed out at $225/hr for 6.02 hours for a total of $1,353. At $100/hr, the award for Laurie Frankl's time is $602. Therefore, I will subtract $751 dollars from the total award.

In addition, I have ruled that I will exclude the cost of the delivery to the Boston Globe. Therefore, I will subtract an additional $13.23 from the award.

Finally, I will exclude from the total the amount of time billed on the press release. Attorney Schwartz worked on the release. He has been billed at $350/hr. The press release took .28 hours. Therefore, I will subtract an additional $98 from the award.

After subtracting $862.23 from the requested award, I find that the lodestar amount is $432,266.89. In light of the record and the determinations concerning

reasonable hourly rates and hours, I will order that the MBTA pay Change the Climate $432,266.89 in attorneys' fees.

G. Time of Entry of Award

At the end of the May 25, 2005, hearing, Change the Climate requested that the award be deemed entered at the time of the entry of judgment as opposed to being entered at the time that this order is issued. I requested that they provide some authority to support this request and they could not. Having conducted my own research on the issue, however, I note that there is a split in the circuits concerning when interest begins to accrue on an attorneys' fees award. *See McDonough v. City of Quincy*, 353 F.Supp.2d 179, 192 n. 12 (D.Mass.2005). The conflict concerns "whether postjudgment interest begins to accrue from the date a judgment *expressly and unconditionally* establishing a party's right to attorneys' fees is entered or from the date of a judgment that establishes the quantum of such fees (in a case where those dates differ)." *Foley v. City of Lowell, Massachusetts*, 948 F.2d 10, 22 n. 16 (1st Cir.1991) (italics added).

This question does not need to be decided in this case. The Court of Appeals decision entering judgment in favor of Change the Climate and remanding the case merely indicates that I should make a "determination of the issue of attorney's [sic] fees for Change the Climate." (Docket No. 162) The opinion of the Court of Appeals merely notes that Change the Climate prevailed on its viewpoint discrimination argument and "remand[ing] to the district court for further proceedings on attorney's[sic] fees." *Ridley v. Massachusetts Bay Transp. Authority*, 390 F.3d 65, 96 (1st Cir.2004). Neither of these is "a judgment expressly and unconditionally establishing a party's right to attorneys' fees[.]" *Foley*, 948 F.2d at 22 n. 16.

**\*7** If Change the Climate were "unconditionally entitled to such fees by statutory right," it might be necessary to resolve this issue despite the fact that the Court of Appeals decision does not award attorneys' fees. *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 544-45 (5th Cir.1983) (en banc) (establishing a rubric for determining when interest runs on an award of attorneys' fees and explaining that interest will run in the absence of an express judgment that attorneys' fees are due if the fees are unconditionally required by statute), *overruled in part on other grounds by J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 790 F.2d 1193, 1195 (5th Cir.1985),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 6
(Cite as: 2005 WL 3735100, *7 (D.Mass.))

*aff'd,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385
(1987). Section 1988, however, does not
unconditionally require that attorneys' fees be
granted. *See Mogilevsky,* 311 F.Supp.2d at 224-225
(noting that § 1988 indicates that a court *may* award
attorneys' fees). *But see Gay Officers,* 247 F.3d at
293 (noting that attorneys' fees are "virtually
obligatory" for prevailing plaintiff's in civil rights
cases); *see also Parker v. Town of Swansea,* 310
F.Supp.2d 376 (D.Mass.2004) (citing *Foley* in
support of awarding interest from the time of its
judgment in favor of the plaintiff in a § 1983 case).
Also, cases involving solely equitable relief require a
determination of the significance of the relief won.
*See Gay Officers,* 247 F.3d at 293. Therefore, interest
will run from the date this Memorandum and Order is
entered.

### ORDER
For the foregoing reasons, it is ORDERED:

Plaintiff's Motion for Award of Attorneys['] Fees
and Costs (Docket No. 166) is ALLOWED IN PART
and DENIED IN PART as explained in the above
Memorandum.

### Final Order
In a Mandate entered on December 27, 2004, the
Court of Appeals for the First Circuit stated:

Upon consideration whereof, it is now here
ordered, adjudged and decreed as follows: The
decision of the district court in the Ridley case
(U.S.D.C. no. 02-CV-10113-REK) granting
judgment to the MBTA on the ground there was no
viewpoint discrimination is affirmed. The decision
in Ridley, which was entered in the district court's
Change the Climate judgment (U.S.D.C. no.
00-CV-10973- REK), is reversed as to the finding
that the "demeaning or disparaging" guideline is
constitutionally flawed and as to the retention of
jurisdiction over this issue. Entry of declaratory
judgment is awarded to the MBTA as to the facial
validity of the sets of guidelines at issue in both
Ridley and Change the Climate. The district court's
decision in Change the Climate on viewpoint
discrimination grounds is reversed with directions to
enter declaratory judgment for Change the Climate
on those grounds. The cases are remanded to the
district court for entry of judgment consistent with
the opinion issued this day and for determination of
the issue of attorney's fees for Change the Climate.
Each side having prevailed on portions of this case,
no costs are awarded.

*8 (CA No. 00-10973, Docket No. 162; CA No.

02-10113, Docket No. 61) Therefore, pursuant to the
Mandate of the Court of Appeals for the First Circuit
and consistent with the decision of the Court of
Appeals for the First Circuit in *Ridley v.
Massachusetts Bay Transportation Authority,* 390 F.3d
65 (1st Cir.2004), it is ADJUDGED:

The Clerk is directed to enter separate final
judgments in Civil Action Nos. 00-10973-REK and
02-10113-REK indicating the following:

In Civil Action No. 00-10973-REK:
For the reasons noted in the Final Order issued on
this date, it is ADJUDGED:
(1) Judgment in favor of defendant MBTA on the
facial validity of the MBTA guidelines.
(2) Judgment in favor of plaintiff Change the
Climate concerning the request for a declaratory
judgment that the decision of the MBTA not to post
certain advertisements was based on viewpoint
discrimination in violation of Change the Climate's
First Amendment rights. Attorneys' fees and costs
were awarded to Change the Climate in the
Memorandum and Order issued June 8, 2005.
(Docket No. 174) That decision, as superceded by
the Procedural Order issued on this date, became
final pursuant to its own terms on June 15, 2005,
and no additional document was necessary pursuant to
Federal Rule of Civil Procedure 58(a)(1)(C) to
make that judgment final.
(3) This case is CLOSED.

In Civil Action No. 02-10113-REK:
For the reasons noted in the Final Order issued on
this date, it is ADJUDGED:
(1) Judgment in favor of the defendants. As noted in
the Final Judgment issued on June 5, 2003 (Docket
No. 55) defendants are awarded costs pursuant to
Federal Rule of Civil Procedure 54(d)(1).
(2) This case is CLOSED.

### Final Judgment
In light of the Final Order issued on this date, it is
ADJUDGED:

(1) Judgment in favor of defendant MBTA on the
facial validity of the MBTA guidelines.

(2) Judgment in favor of plaintiff Change the Climate
concerning the request for a declaratory judgment that
the decision of the MBTA not to post certain
advertisements was based on viewpoint discrimination
in violation of Change the Climate's First Amendment
rights. Attorneys' fees were awarded to Change the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Climate in the Memorandum and Order issued June 8, 2005. (Docket No. 174) That decision, as superceded by the Procedural Order issued on this date, became final pursuant to its own terms on June 15, 2005, and no additional document is necessary pursuant to Federal Rule of Civil Procedure 58(a)(1)(C) to make that judgment final.

(3) This case is CLOSED.

Memorandum and Order
I. Pending Matters
Pending for decision are matters related to the following filings:

(1) Plaintiff's Motion for Leave to File Motion for Attorneys Fees Late (Docket no. 154, filed October 9, 2003);

(2) Plaintiff's Motion for Award of Attorneys Fees and Costs (Docket No. 155, filed October 9, 2003);

(3) Defendants' Opposition to Plaintiff's Motion for Award of Attorney's Fees and Costs (Docket No. 158, filed October 22, 2003).

II. Procedural and Factual Background
*9 This is an action brought under 42 U.S.C. § 1983. On August 1, 2003, I ordered final judgment. In relevant part, the order of final judgment stated:
(1) The MBTA Guidelines that were in effect when this civil action was filed were constitutionally flawed. For this reason, defendants were not entitled to a judgment of dismissal of this civil action with prejudice.
(2) Neither plaintiff nor defendants qualify to act as representative of the public interest in the outcome of this case. Neither took positions in this case compatible with public interests at stake in this proceeding, which include not only the economic and social interests of the parties, but also the economic, social, political, and cultural interests of all of the users of MBTA buses, subway lines, ferries, and commuter trains and the parents and school administrators of the public and private school children regularly using MBTA facilities to travel between home and schools, and being a captive audience during substantial parts of that travel.
Final Judgment (Docket No. 144). In the attached Opinion, I described this judgment as one "that denies all parties the sweeping victories they have demanded [and] grants to each the more limited declaratory relief that is appropriate...." Opinion (Docket No.

144) at 4.

The plaintiff now moves for an award of attorneys' fees and costs.

III. Disposition of Pending Matters
Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of section[ ] 1983 ... of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory." *Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d 288, 293 (1st Cir.2001).

Here, I conclude that neither party prevailed within the meaning of 42 U.S.C. § 1988(b).
Typically, achieving prevailing party status requires a plaintiff to show that he succeeded on an important issue in the case, thereby gaining at least some of the benefit he sought in bringing suit. Put another way, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendants behavior in a way that directly benefits the plaintiff."
*Id.* (citations omitted) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Although I initially ruled that the MBTA Guidelines were "constitutionally flawed," 214 F.Supp.2d 125, 129 (D.Mass.2002), in the opinion accompanying final judgment in this case, I concluded that the plaintiff "has not demonstrated that the MBTA's decision was an impermissible restriction." Opinion at 19. I did not award any damages or injunctive relief. Although I granted limited declaratory relief, nothing in the Opinion or Final Judgment requires the MBTA to post the plaintiff's advertisements, or to modify its guidelines so as to allow advertisements such as the plaintiff's.

*10 I rule that my order did not materially alter the legal relationship between the parties. In these circumstances, the plaintiff did not prevail within the meaning of 42 U.S.C. § 1988, making it inappropriate for me to award attorneys' fees.

ORDER
For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion for Leave to File Motion for

Slip Copy
(Cite as: 2005 WL 3735100, *10 (D.Mass.))

Attorneys Fees Late    (Docket No. 154) is ALLOWED.

(2) Plaintiff's Motion for Award of Attorneys Fees and Costs (Docket No. 155) is DENIED.

Slip Copy, 2005 WL 3735100 (D.Mass.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO: 04-0497

### L'MAR LAY

vs.

## MOTTI ELECTRIC COMPANY, INC.

### MEMORANDUM AND ORDER ON PLAINTIFF'S PETITION FOR AWARD OF ATTORNEYS' FEES AND COSTS

This is an action for damages for racial discrimination in employment brought under G.

L. c. 151B. After a five day trial with several hours of deliberation, the jury returned a verdict for

the plaintiff on two of the three claims of discrimination. The jury awarded damages against the

defendant for race discrimination based on a hostile work environment and failure to investigate

and remedy the discrimination. However, as to the claim of retaliation, the jury found for the

defendant. The plaintiff was awarded damages consisting of back pay, front pay, emotional

distress damages and punitive damages in the total amount of $87,439.00. Now before the court

the plaintiff's petition for an award of attorneys' fees and costs.

In arriving at an attorneys' fee award, the court is required to use the "lodestar" method of

fee calculation. See, e. g., Hensley v. Eckerhart, 461 U. S. 424 (1983). That is, the court

multiplies the number of hours reasonably spent on the case times a reasonable hourly rate. In

making the award in this case, the court reviewed the affidavits and submissions of plaintiff's

attorneys, as well as the opposition papers of the defendant. After careful consideration of these

submissions, the court has made an independent assessment of the reasonableness of time spent

in light of "the nature of the case and the issues presented, the time and labor required, the

**RECEIVED** DEC 1 6

amount of damages involved, the result obtained, experience, reputation and ability of the attorneys, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Fontaine v. Ebtec Corp. 415 Mass. 309, 325 (1993), quoting Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979).

While the issues of law were not novel, this case was thoroughly prepared and ably tried. A review of the time records provided by plaintiff's counsel indicates that the majority of time spent was in preparation for trial, rather than the less rigorous work of discovery and motion practice. Even though three attorneys participated in the trial of this matter, the total hours billed were reasonable and efficient. Counsel for the plaintiff did not bill for certain hours that would have been duplicative of time spent by co-counsel. Counsel also reduced their billable hours significantly in the areas of travel time and in-court time.

There is no question that lead counsel, Attorney Wendy Kaplan, can command an hourly rate of $350. She is a seasoned practitioner whose expertise in the employment discrimination is widely known. Attorney Anne Glennon who acted as second chair to Attorney Kaplan billed at an hourly rate of $225. Although she is a relatively new attorney, she worked for Attorney Kaplan for more than 15 years before becoming a member of the bar. Having observed her superb trial performance and being aware that the hourly rate at Boston firms for attorneys of her experience and level of skill can range between $200 and $250, the court finds that her hourly rate of $225 is reasonable. Attorney Jeremy Cattani has been a member of the bar for nine years. His hourly rate of $250 clearly is not unreasonable as attorneys of this skill and experience can command much higher rates. The billing rate of $100 per hour for the paralegals employed by Attorney Kaplan is fair and reasonable as well.

2

The defendant contends that the court must reduce the amount of attorneys' fees awarded to the plaintiff based on the adverse verdict obtained on the retaliation claim.    As the jury received three claims for consideration and found for the plaintiff only as to two, the defendant urges the court to reduce the award of attorneys' fees by one-third.  Although the retaliation claim is recognized in the law as a separate cause of action, the question for the court is whether the legal work needed to prosecute this claim was so separate and distinct that it would be unfair to the defendant to require that he pay those legal bills as well.

The claim that the defendant retaliated against the plaintiff because of his complaints of discrimination had two components.  One involved the disciplinary action taken against the plaintiff following his complaints.  The other component was the defendant's opposition to the plaintiff's claim for unemployment benefits.  The evidence relating to the warnings and threats of termination was inextricably bound to the evidence concerning the acts of discrimination. Thus, this aspect of the plaintiff's retaliation claim was based on a common core of factual investigation, such that no reduction for the expense of litigating this issue is necessary. School Committee of Norton v. MCAD, 63 Mass. App. Ct. 839,854 (2005), citing Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 338 ( 1st Cir. 1997).  On the other hand, the issue of retaliation as it related to the plaintiff's claim for unemployment benefits is to some extent separable.  The events that transpired before the Department of Employment and Training, through limited in time and scope, were discrete.  Thus, the court reduces the requested attorneys' fees by 5%.

Therefore, based on the foregoing analysis, the court finds and rules that the plaintiff is entitled to an award of reasonable attorneys' fees in the amount of $140,032.37 and costs of

3

$3,570.10.

So ordered.

Barbara A. Dortch-Okara
Justice of the Superior Court

DATED: December 13, 2005

A TRUE COPY

Attest: _Mary E. Anney_
Deputy Assistant Clerk

12/15/05

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VANESSA DIXON,<br>    Plaintiff,<br><br>     v.<br><br>INTERNATIONAL BROTHERHOOD<br>OF POLICE OFFICERS; INTERNATIONAL<br>BROTHERHOOD OF POLICE OFFICERS,<br>LOCAL 382; KENNETH LYONS, GERALD<br>FLYNN, JOHN LEARY AND DAVID PENDER<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 01-11806-WGY |

AFFIDAVIT OF NANCY S. SHILEPSKY

I, Nancy S. Shilepsky, hereby depose and state as follows:

1.    I am a partner in the law firm of Shilepsky O'Connell Casey Hartley Michon Yelen LLP
("Shilepsky O'Connell"), where I practice employment law.

2.    I received my B.A. degree *magna cum laude* from Tufts University and my J.D. from
Boston University School of Law. I have been a member of the Massachusetts Bar since
1978 and of the bar of the United States District Court for the District of Massachusetts
since 1980. I am a member of The College of Labor and Employment Lawyers.

3.    I am a former member of the Board of Editors for Massachusetts Lawyers Weekly; a
member of the Massachusetts Continuing Legal Education Labor and Employment
Advisory Committee; and a member of the Labor and Employment Section of the Boston
Bar Association. From 1996/1997 through 1998/1999, I served as Co-Chair of that Section.
I am also a member of the Labor and Employment Section of the Massachusetts Bar
Association and a member of Massachusetts chapter of the National Employment Lawyers
Association. I have chaired numerous continuing legal education programs on employment
law topics for Massachusetts Continuing Legal Education, Inc., Massachusetts Bar
Association, Boston Bar Association and other organizations, and have published books and
articles on employment law subjects.

4.    I was a partner at Perkins, Smith & Cohen, LLP from 1999 through June 2005, where I
was chair of the Labor, Employment and Employee Benefits Department. Prior to joining
Perkins, Smith & Cohen, I was as a partner at Goulston & Storrs, PC in Boston; prior to
joining Goulston & Storrs, PC, I was a partner at Dwyer & Collora, LLP in Boston; and
prior to that, I was a founding partner of Shilepsky, Messing & Rudavsky.

5.    My hourly rate was $275 in 1998 (at Dwyer & Collora, LLP), $290-310 from 1998-1999 (at Goulston & Storrs, PC), $315-$430 from 2000-2005 (at Perkins, Smith & Cohen, LLP), and is currently $430.

6.    Attorney James E. O'Connell, Jr. is an honors graduate of Boston College; he received his J.D. from Northeastern University School of Law. He has been a member of the Massachusetts Bar since 1980.

7.    Prior to co-founding Shilepsky O'Connell, Attorney O'Connell was a partner in the trial department at Perkins, Smith & Cohen. He was also co-founder and partner of two firms concentrating in civil litigation: Murphy & O'Connell and Sally, O'Connell & Fitch. He began his professional career in the litigation department of Bingham McCutchen, LLP.

8.    Attorney O'Connell's currently hourly rate is $395.

9.    Attorney Lawrence J. Casey is a *cum laude* graduate of Boston College. He received his J.D. from Duquesne University. He has been a member of the Massachusetts Bar since 1990.

10.    Attorney Casey was a partner of the law firm Crowe & Casey, which merged with Perkins, Smith & Cohen, LLP in 1999; was a partner at Perkins, Smith & Cohen from 1999 through June 2005; and is currently a partner at Shilepsky O'Connell.

11.    Attorney Casey's current hourly rate is $350.

12.    Attorney H. James Hartley is a *cum laude* graduate of the University of Massachusetts at Amherst; he received his J.D. *cum laude* from Boston College Law School in 1992.

13.    Prior to co-founding Shilepsky O'Connell, Attorney Hartley was a partner at Perkins, Smith & Cohen, where he co-chaired the executive advocacy group. Before that, Attorney Hartley was lead employment law counsel for a Fortune 100 company with over 35,000 employees.

14.    Attorney Hartley's current hourly rate is $325.

15.    Attorney Katherine J. Michon is a graduate of the University of Massachusetts at Amherst; she received her J.D. from the New England School of Law in 1992.

16.    Prior to co-founding Shilepsky O'Connell, Attorney Michon was a partner at the employment law firm of Kimball, Brousseau & Michon. Previously in her career, she practiced employment law at Dwyer & Collora and at Shilepsky, Messing & Rudavsky.

17.    Attorney Michon's current hourly rate is $325.

18.   Attorney Barbara A. Robb is an associate at Shilepsky O'Connell. She is a graduate of
      Fairfield University. She received a Master of Arts in Public Administration from Ohio
      State University School of Public Policy and Management. Attorney Robb earned her
      J.D. *summa cum laude* from New England School of Law (1998) where she served as a
      member of the New England Law Review and was awarded the Amos L. Taylor Award
      for Excellence in Scholarship and the New England Law Review's Scribes Award.

19.   Attorney Robb was an associate at Perkins, Smith & Cohen. Prior to that she was an
      associate with the firm of Lyne, Woodworth & Evarts and served as a law clerk to the
      Justices of the Massachusetts Superior Court.

20.   Attorney Robb's current hourly rate is $275.

21.   Shilepsky O'Connell bills for paralegals and law clerks at $100 per hour.

22.   I understand that counsel for the plaintiff in this case are seeking fees at rates of
      $300/hour for Inga Bernstein and her partners, $200/hour for Monica Pastorok and other
      associates, and $100/hour for paralegals and law clerks. Based on my experience and
      professional activities, I believe I am generally knowledgeable about the range of
      prevailing hourly rates charged by attorneys practicing employment law in private
      practices in the greater Boston area. Although I have not worked with Ms. Bernstein or
      others in her firm, I am generally aware of her employment law practice, including the
      fact that, in addition to the case at bar, several years ago she prevailed in retaliation case
      against the Massachusetts Bay Transportation Authority, winning a judgment at trial of
      $7.6 million dollars. Combined with the results obtained in this case, which are
      excellent, I think there is no doubt that the rates requested by Ms. Bernstein and her firm
      are well within the prevailing hourly rates for employment litigation attorneys with
      similar skills, experience and reputation in the Boston area.

Signed under the pains and penalties of perjury this 3rd day of November, 2005.

Nancy S. Shilepsky

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VANESSA DIXON,<br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BROTHERHOOD<br>OF POLICE OFFICERS; INTERNATIONAL<br>BROTHERHOOD OF POLICE OFFICERS,<br>LOCAL 382; KENNETH LYONS, GERALD<br>FLYNN, JOHN LEARY AND DAVID PENDER<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 01-11806-WGY |

AFFIDAVIT OF NORMAN S. ZALKIND

I, Norman S. Zalkind, do hereby depose and state the following:

1.  My name is Norman S. Zalkind and I am the Senior Partner in the law firm Zalkind, Rodriguez, Lunt & Duncan LLP.

2.  My practice specializes of both criminal and civil trials. I have tried over 100 Federal and State jury trials including trials in Federal Districts other than Massachusetts.

3.  I have been in the practice of law for over 40 years and I was trained initially by a well known civil trial lawyer, Morris Michaelson.

4.  During my years of practice I have had the good fortune and honor to have as law partners and associates a number of distinguished lawyers in Massachusetts, including Judge Nancy Gertner, Harvery Silverglate, Robert Sheketoff, Judge Janet Sanders, Judge Daniel Klubock, as well as my current partners and associates.

5.  Inga Bernstein, who has been a partner in our law firm for the past 5 years, and was an associate for 6 years before that, is certainly equal to the very best partners and associates that I have ever worked with. I have observed her in the trial of cases both on her own and as co-counsel with me. My observations include her arguing legal issues, examining witness both in depositions and in trial, and making closing arguments.

6.  It is my opinion that she is outstanding as a trial lawyer and is certainly equal to almost any other lawyers that I have observed.

7.  Ms. Bernstein and I represented Roberta Edwards in an employment case in Suffolk

County in Massachusetts in which we obtained a verdict of $7.6 million dollars. That case could not have been won without the preparation and courtroom performance of Ms. Bernstein. She took at least 90% of the depositions in that case, in which there were more than 30 days of depositions. She wrote practically all of the legal memorandum and argued most of the legal motions, a great number of which she prevailed on. During the trial of the Edwards case, she examined some of the most crucial witness both on direct and cross examination. She also coached me in preparing the examinination of the witnesses that I had, including the final argument of the case, and without her, in my opinion, we would have never have won. After the case was completed, and we had an informal lunch with one of the distinguished defense lawyers in the case, he commented to me that if he had Inga on his side, he would be a very rich man.

8.    I have no problem when a new client comes to me when Inga is co-counsel of charging her currently at the rate of $350 an hour. It is my opinion that it is more than fair and reasonable for any client to have Inga as counsel at the $350 per hour rate, and we are able to obtain, collect and charge clients on a regular basis for Inga Bernstein at that rate.

Signed under the pains and penalties of perjury this 3rd day of November, 2005:


Norman S. Zalkind

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

T-6 COUNCIL, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, and its affiliate locals 2222,
2313, 2320, 2321, 2322, 2323, 2324, 2325,
2326, and 2327 and ANNE SWAIN,
Individually and on behalf of a class of
persons similarly situated,

           Plaintiffs,

     v.

VERIZON, INC.,

           Defendant.

CIVIL ACTION No. 01-10498DPW

## AFFIDAVIT OF ARTHUR G. TELEGEN

I, Arthur G. Telegen, do hereby depose and state as follows:

1.      I am a partner in the firm of Foley, Hoag & Eliot LLP.

2.      I am chair of the firm's labor and employment department and have been practicing in the field for twenty-seven years. William Brennan has been an associate with the firm since September 2000. I believe that this firm's charges for my and Mr. Brennan's time are typical for lawyers of our experience in the City of Boston, and that this time spent by each of us on the instant matter was appropriate.

2.      The time charges accrued and expenses incurred by defendant Verizon New England, Inc. in preparing and filing the Defendant's Motion to Compel Plaintiffs' Initial Disclosures are this firm's normal charges and will be billed as follows:

Time spent by William J. Brennan: 4.2 hours times $215/hour = $903.00
Time spent by Arthur G. Telegen:   .2 hours times $525/hour = $105.00

Hand Delivery Charges:                     $25.25
Copying Charges:                          $25.56

Total:                                 $1058.81

Signed under the penalties of perjury this 13th day of February, 2002

Arthur G. Telegen (BBO# 494140)
FOLEY, HOAG & ELIOT LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 832-1000



**SHL USA, Inc.**
Phone: 800 899 7451
Fax:   303 442 1184
http://www.shlusa.com

**INVOICE**

| | |
|---|---|
| Invoice Number | 206146 |
| Invoice Date | August 03, 2005 |
| PO Number | |
| Contract | |
| Project | LT-LT-0630 |
| Page | 1 of 2 |
| Customer ID | 630PRL |
| Payment Terms: | Net 30 Days |

**BILL TO:**

Harold Lichten
Pyle, Rome, Lichten
18 Tremont Street
Suite 500
Boston, MA 02108

Period beginning 07/01/2005 through 07/31/2005

Manager     Jone Papinchock

| | | | Current Hours | Rate | Current Amount |
|---|---|---|---|---|---|
| **Professional Services** | | | | | |
| Admin - Office | Bonnie Beverly | 07/29/2005 | 0.50 | 25.00 | 12.50 |
| | Copy documents | | | | |
| Director | Frank Landy | 07/24/2005 | 1.00 | 450.00 | 450.00 |
| | Prep and call | | | | |
| Director | Frank Landy | 07/25/2005 | 2.75 | 450.00 | 1,237.50 |
| | Review documents | | | | |
| I/O Consultant | Geoff Burcaw | 07/26/2005 | 6.00 | 225.00 | 1,350.00 |
| | Litsearch -Firefighters, etc. | | | | |
| I/O Consultant | Mark Schmit | 07/25/2005 | 0.50 | 350.00 | 175.00 |
| | Case strategy discuss w/Frank | | | | |
| I/O Consultant | Mark Schmit | 07/26/2005 | 2.00 | 350.00 | 700.00 |
| | Literature Review | | | | |
| I/O Consultant | Mark Schmit | 07/27/2005 | 3.50 | 350.00 | 1,225.00 |
| | Pull info for report | | | | |
| I/O Consultant | Mark Schmit | 07/29/2005 | 2.00 | 350.00 | 700.00 |
| | Review documents | | | | |
| | Professional Services | | 18.25 | | 5,850.00 |

| | |
|---|---|
| Invoice Total | $5,850.00 |



SHL USA, Inc.
Phone: 800 899 7451
Fax:   303 442 1184
http://www.shlusa.com

SEP 0 9 2005

**INVOICE**

| | |
|---|---|
| Invoice Number | 206184 |
| Invoice Date | September 01. 2005 |
| PO Number | |
| Contract | |
| Project | LT-LT-0630 |
| Page | 1 of 5 |
| Customer ID | 630PRL |
| **Payment Terms:** | **Net 30 Days** |

**BILL TO:**

Harold Lichten
Pyle. Rome. Lichten
18 Tremont Street
Suite 500
Boston. MA 02108

Period beginning 08/01/2005 through 08/31/2005

Manager    Jone Papinchock

**Professional Services**

| | | | Current Hours | Rate | Current Amount |
|---|---|---|---|---|---|
| Admin - Office | Bonnie Beverly | 08/02/2005 | 2.00 | 75.00 | 150.00 |
| | Case list prep | | | | |
| Admin - Office | Bonnie Beverly | 08/18/2005 | 0.75 | 75.00 | 56.25 |
| | Case list prep | | | | |
| Admin - Office | Bonnie Beverly | 08/18/2005 | 0.75 | 25.00 | 18.75 |
| | Copy documents | | | | |
| Admin - Office | Bonnie Beverly | 08/19/2005 | 0.75 | 75.00 | 56.25 |
| | Case list prep & labels | | | | |
| Admin - Office | Bonnie Beverly | 08/30/2005 | 0.50 | 75.00 | 37.50 |
| | Case list prep | | | | |
| Admin - Office | Bonnie Beverly | 08/30/2005 | 0.75 | 25.00 | 18.75 |
| | Copy documents | | | | |
| Admin - Office | Jill Croft | 08/01/2005 | 0.75 | 25.00 | 18.75 |
| | Copy documents | | | | |
| Admin - Office | Jill Croft | 08/01/2005 | 1.00 | 75.00 | 75.00 |
| | Enter spreadsheet scores | | | | |
| Admin - Office | Jill Croft | 08/02/2005 | 1.00 | 75.00 | 75.00 |
| | Label & file documents | | | | |
| Director | Frank Landy | 08/11/2005 | 4.75 | 450.00 | 2,137.50 |
| | Prep for conference call | | | | |
| Director | Frank Landy | 08/12/2005 | 2.00 | 450.00 | 900.00 |
| | Conf call & staff discussions | | | | |
| Director | Frank Landy | 08/12/2005 | 3.25 | 450.00 | 1,462.50 |
| | Work on report | | | | |
| Director | Frank Landy | 08/15/2005 | 5.25 | 450.00 | 2,362.50 |
| | Work on report | | | | |
| Director | Frank Landy | 08/16/2005 | 6.00 | 450.00 | 2,700.00 |
| | Work on report | | | | |
| Director | Frank Landy | 08/17/2005 | 7.25 | 450.00 | 3,262.50 |
| | Work on report | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Invoice Number | 206184 | | | |
| | | Project | LT-LT-0630 | | | |
| Pyle. Rome. Lichten | | Page | 2 of 5 | | | |

| | | | | | |
|---|---|---|---|---|---|
| Director | Frank Landy | 08/18/2005 | 10.00 | 450.00 | 4,500.00 |
| | Work on report | | | | |
| Director | Frank Landy | 08/19/2005 | 2.25 | 450.00 | 1,012.50 |
| | Review documents | | | | |
| Director | Frank Landy | 08/19/2005 | 6.25 | 450.00 | 2,812.50 |
| | Work on report | | | | |
| Director | Frank Landy | 08/23/2005 | 3.00 | 450.00 | 1,350.00 |
| | Conference call | | | | |
| Director | Frank Landy | 08/23/2005 | 3.25 | 450.00 | 1,462.50 |
| | Work on report | | | | |
| Director | Frank Landy | 08/24/2005 | 4.50 | 450.00 | 2,025.00 |
| | Work on report | | | | |
| Director | Frank Landy | 08/26/2005 | 2.50 | 450.00 | 1,125.00 |
| | Revise draft report | | | | |
| Director | Frank Landy | 08/30/2005 | 3.75 | 450.00 | 1,687.50 |
| | Review Wiesen report | | | | |
| Director | Frank Landy | 08/30/2005 | 1.00 | 450.00 | 450.00 |
| | Work on report | | | | |
| I/O Consultant | Geoff Burcaw | 08/15/2005 | 5.00 | 225.00 | 1,125.00 |
| | Litsearch -incremenal validity | | | | |
| I/O Consultant | Geoff Burcaw | 08/16/2005 | 2.00 | 225.00 | 450.00 |
| | Assemble lit for report | | | | |
| I/O Consultant | Geoff Burcaw | 08/18/2005 | 4.00 | 225.00 | 900.00 |
| | References for report | | | | |
| I/O Consultant | Geoff Burcaw | 08/19/2005 | 2.00 | 225.00 | 450.00 |
| | References for report | | | | |
| I/O Consultant | Geoff Burcaw | 08/25/2005 | 3.00 | 225.00 | 675.00 |
| | Report proofing | | | | |
| I/O Consultant | Pam Levine | 08/18/2005 | 2.50 | 25.00 | 62.50 |
| | Data entry | | | | |
| I/O Consultant | Barbara Nett | 08/15/2005 | 4.00 | 275.00 | 1,100.00 |
| | Literature search | | | | |
| I/O Consultant | Barbara Nett | 08/16/2005 | 5.00 | 275.00 | 1,375.00 |
| | Literature search | | | | |
| I/O Consultant | Barbara Nett | 08/17/2005 | 1.00 | 275.00 | 275.00 |
| | Pull info for report | | | | |
| I/O Consultant | Barbara Nett | 08/18/2005 | 1.00 | 275.00 | 275.00 |
| | Pull info for report | | | | |
| I/O Consultant | Barbara Nett | 08/19/2005 | 1.00 | 275.00 | 275.00 |
| | Pull info for report | | | | |
| I/O Consultant | Barbara Nett | 08/22/2005 | 2.50 | 275.00 | 687.50 |
| | Proof report | | | | |
| I/O Consultant | Barbara Nett | 08/25/2005 | 2.00 | 275.00 | 550.00 |
| | Pull info for report | | | | |
| I/O Consultant | Barbara Nett | 08/30/2005 | 2.00 | 275.00 | 550.00 |
| | Proof final report | | | | |
| I/O Consultant | Angie Olson | 08/11/2005 | 4.00 | 300.00 | 1,200.00 |
| | Report related work | | | | |
| I/O Consultant | Angie Olson | 08/12/2005 | 6.00 | 300.00 | 1,800.00 |
| | Report related work | | | | |
| I/O Consultant | Angie Olson | 08/13/2005 | 8.25 | 300.00 | 2,475.00 |
| | Report related work | | | | |

|  |  | Invoice Number | 206184 |
|--|--|--|--|
|  |  | Project | LT-LT-0630 |
| Pyle, Rome, Lichten |  | Page | 3 of 5 |

| I/O Consultant | Angie Olson | 08/15/2005 | 7.00 | 300.00 | 2,100.00 |
|--|--|--|--|--|--|
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/16/2005 | 6.50 | 300.00 | 1,950.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/17/2005 | 5.00 | 300.00 | 1,500.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/18/2005 | 6.50 | 300.00 | 1,950.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/19/2005 | 4.25 | 300.00 | 1,275.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/21/2005 | 1.75 | 300.00 | 525.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/22/2005 | 7.50 | 300.00 | 2,250.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/23/2005 | 8.00 | 300.00 | 2,400.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/24/2005 | 7.50 | 300.00 | 2,250.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/25/2005 | 8.25 | 300.00 | 2,475.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/26/2005 | 4.00 | 300.00 | 1,200.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Angie Olson | 08/30/2005 | 0.50 | 300.00 | 150.00 |
|  | Call with Al Gordon |  |  |  |  |
| I/O Consultant | Angie Olson | 08/30/2005 | 2.75 | 300.00 | 825.00 |
|  | Report related work |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/01/2005 | 3.50 | 350.00 | 1,225.00 |
|  | Literature Review |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/01/2005 | 3.00 | 350.00 | 1,050.00 |
|  | Review Documents |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/02/2005 | 3.25 | 350.00 | 1,137.50 |
|  | Construct Tables and Charts |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/02/2005 | 4.00 | 350.00 | 1,400.00 |
|  | Data Analysis |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/03/2005 | 1.50 | 350.00 | 525.00 |
|  | Construct Tables and Charts |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/08/2005 | 1.50 | 350.00 | 525.00 |
|  | Literature Review |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/15/2005 | 2.00 | 350.00 | 700.00 |
|  | Data Analyses |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/15/2005 | 1.50 | 350.00 | 525.00 |
|  | Literature Review |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/15/2005 | 3.50 | 350.00 | 1,225.00 |
|  | Write Report Opinions |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/16/2005 | 2.00 | 350.00 | 700.00 |
|  | Data Analysis |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/16/2005 | 6.00 | 350.00 | 2,100.00 |
|  | Write Report Opinions |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/17/2005 | 0.50 | 350.00 | 175.00 |
|  | Call with A. Gordon |  |  |  |  |
| I/O Consultant | Mark Schmit | 08/17/2005 | 1.50 | 350.00 | 525.00 |
|  | Data Analysis |  |  |  |  |

|  | | | Invoice Number | | 206184 |
|--|--|--|----------------|--|--------|
|  | | | Project | | LT-LT-0630 |
| Pyle. Rome. Lichten | | | Page | | 4 of 5 |

| I/O Consultant | Mark Schmit | 08/17/2005 | 4.50 | 350.00 | 1,575.00 |
|----------------|-------------|------------|------|--------|----------|
|  | Write Report Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/18/2005 | 1.00 | 350.00 | 350.00 |
|  | Data Analysis | | | | |
| I/O Consultant | Mark Schmit | 08/18/2005 | 1.00 | 350.00 | 350.00 |
|  | Edit Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/18/2005 | 1.50 | 350.00 | 525.00 |
|  | Review New Documents | | | | |
| I/O Consultant | Mark Schmit | 08/19/2005 | 5.00 | 350.00 | 1,750.00 |
|  | Data Analysis | | | | |
| I/O Consultant | Mark Schmit | 08/19/2005 | 2.00 | 350.00 | 700.00 |
|  | Edit Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/22/2005 | 0.50 | 350.00 | 175.00 |
|  | Edit Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/23/2005 | 2.50 | 350.00 | 875.00 |
|  | Call with Lawyers | | | | |
| I/O Consultant | Mark Schmit | 08/23/2005 | 3.00 | 350.00 | 1,050.00 |
|  | Edit Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/24/2005 | 1.00 | 350.00 | 350.00 |
|  | Edit Opinions | | | | |
| I/O Consultant | Mark Schmit | 08/25/2005 | 2.00 | 350.00 | 700.00 |
|  | Data Analyses | | | | |
| I/O Consultant | Mark Schmit | 08/29/2005 | 1.00 | 350.00 | 350.00 |
|  | Review Wiesen Report | | | | |
| I/O Consultant | Mark Schmit | 08/30/2005 | 1.50 | 350.00 | 525.00 |
|  | Call w/ A. Gordon | | | | |
| I/O Consultant | Mark Schmit | 08/30/2005 | 0.50 | 350.00 | 175.00 |
|  | Edit Report | | | | |
| I/O Consultant | Mark Schmit | 08/30/2005 | 0.50 | 350.00 | 175.00 |
|  | Review Wiesen Report | | | | |

| | Professional Services | | 259.25 | | 86,268.75 |
|--|-----------------------|--|--------|--|-----------|

| Invoice Total | | | | | $86,268.75 |
|---------------|--|--|--|--|-----------|

Our Remittance Address has Changed

Please remit payment to:

**Please remit payment to:**

SHL USA, Inc.
Dept. 1464
Denver, CO 80291

SHL USA
Dept 1464
Denver, CO 80291

Payment can be made by Credit Card or Electronically by contacting SHL Client Services at 1-800-899-7451.

Pyle. Rome. Lichten

| | |
|---|---|
| Invoice Number | 206184 |
| Project | LT-LT-0630 |
| Page | 5 of 5 |



**SHL USA, Inc.**
Phone: 800 899 7451
Fax:   303 442 1184
http://www.shlusa.com

**INVOICE**

| | |
|---|---|
| Invoice Number | 206326 |
| Invoice Date | November 02, 2005 |
| PO Number | |
| Contract | |
| Project | LT-LT-0630 |
| Page | 1 of 1 |
| Customer ID | 630PRL |
| Payment Terms: | Net 30 Days |

**BILL TO:**

Harold Lichten
Pyle, Rome, Lichten
18 Tremont Street
Suite 500
Boston, MA 02108

Period beginning 10/01/2005 through 10/31/2005

Manager    Jone Papinchock

**POSTED**

| | | | Current Hours | Rate | Current Amount |
|---|---|---|---|---|---|
| **Professional Services** | | | | | |
| Director | Frank Landy | 10/19/2005 | 1.00 | 450.00 | 450.00 |
| | Rev Jacobs report | | | | |
| Director | Frank Landy | 10/28/2005 | 2.75 | 450.00 | 1,237.50 |
| | Statistician/attorney conf | | | | |
| Director | Frank Landy | 10/29/2005 | 2.00 | 450.00 | 900.00 |
| | Discussions, review report | | | | |
| I/O Consultant | Art Gutman | 10/30/2005 | 3.00 | 300.00 | 900.00 |
| | Data analysis | | | | |
| | Professional Services | | 8.75 | | 3,487.50 |
| | | 09/20/2005 | | 0.00 | 62.16 |
| | FEDXWC Account #1973-9315-7 | | | | |

| **Invoice Total** | **$3,549.66** |
|---|---|

Please remit payment to:

SHL USA, Inc.
Dept. 1464
Denver, CO 80291

Our Remittance Address has Changed
Please remit payment to:
SHL USA
Dept. 1464
Denver, CO 80291

Payment can be made by Credit Card or Electronically by contacting SHL Client Services at 1-800-899-7451.

**shl**

SHL USA, Inc.
Phone: 800 899 7451
Fax:    303 442 1184
http://www.shlusa.com

**INVOICE**

| | |
|---|---|
| Invoice Number | 206414 |
| Invoice Date | December 05, 2005 |
| PO Number | |
| Contract | |
| Project | LT-LT-0630 |
| Page | 1 of 2 |
| Customer ID | 630PRL |
| Payment Terms: | Net 30 Days |

**BILL TO:**

Harold Lichten
Pyle, Rome, Lichten
18 Tremont Street
Suite 500
Boston, MA 02108

Period beginning 11/01/2005 through 11/30/2005

Manager    Jone Papinchock

| Professional Services | | | Current Hours | Rate | Current Amount |
|---|---|---|---|---|---|
| Admin - Office | Bonnie Beverly | 11/11/2005 | 1.25 | 75.00 | 93.75 |
| | Edit report | | | | |
| I/O Consultant | Geoff Burcaw | 11/02/2005 | 3.00 | 225.00 | 675.00 |
| | Research Lynn Exam Procedures | | | | |
| I/O Consultant | Geoff Burcaw | 11/03/2005 | 1.00 | 225.00 | 225.00 |
| | Research Lynn Demographics | | | | |
| I/O Consultant | Geoff Burcaw | 11/07/2005 | 1.00 | 225.00 | 225.00 |
| | Research Lynn Exam Procedures | | | | |
| I/O Consultant | Art Gutman | 11/01/2005 | 5.00 | 300.00 | 1,500.00 |
| | Preliminary analyses | | | | |
| I/O Consultant | Art Gutman | 11/02/2005 | 6.00 | 300.00 | 1,800.00 |
| | 2002 data analysis | | | | |
| I/O Consultant | Art Gutman | 11/03/2005 | 8.00 | 300.00 | 2,400.00 |
| | 2004 data analysis | | | | |
| I/O Consultant | Art Gutman | 11/04/2005 | 6.00 | 300.00 | 1,800.00 |
| | 2000 data analysis | | | | |
| I/O Consultant | Art Gutman | 11/05/2005 | 10.00 | 300.00 | 3,000.00 |
| | Data report | | | | |
| I/O Consultant | Art Gutman | 11/06/2005 | 12.00 | 300.00 | 3,600.00 |
| | Data report revisions | | | | |
| I/O Consultant | Art Gutman | 11/07/2005 | 8.00 | 300.00 | 2,400.00 |
| | Applicant structure analysis | | | | |
| I/O Consultant | Art Gutman | 11/08/2005 | 6.00 | 300.00 | 1,800.00 |
| | Data analysis | | | | |
| I/O Consultant | Art Gutman | 11/09/2005 | 12.00 | 300.00 | 3,600.00 |
| | Work on Landy affidavit | | | | |
| I/O Consultant | Art Gutman | 11/10/2005 | 10.00 | 300.00 | 3,000.00 |
| | Work on Landy affidavit | | | | |
| I/O Consultant | Art Gutman | 11/11/2005 | 10.00 | 300.00 | 3,000.00 |
| | Work on Landy affidavit | | | | |

|  |  | Invoice Number | 206414 |
|---|---|---|---|
|  |  | Project | LT-LT-0630 |
| Pyle, Rome, Lichten |  | Page | 2 of 2 |

| I/O Consultant | Angie Olson | 11/02/2005 | 1.50 | 300.00 | 450.00 |
|---|---|---|---|---|---|
|  | Pull information for FJL |  |  |  |  |
| I/O Consultant | Angie Olson | 11/03/2005 | 0.50 | 300.00 | 150.00 |
|  | Discussion w/ statistician |  |  |  |  |
| I/O Consultant | Angie Olson | 11/07/2005 | 0.25 | 300.00 | 75.00 |
|  | Disc w/ statistician re: data |  |  |  |  |
| I/O Consultant | Angie Olson | 11/08/2005 | 0.25 | 300.00 | 75.00 |
|  | Disc w/ statistician re: data |  |  |  |  |
| I/O Consultant | Angie Olson | 11/09/2005 | 1.00 | 300.00 | 300.00 |
|  | Pull info for FJL, disc w/ sta |  |  |  |  |
| I/O Consultant | Angie Olson | 11/10/2005 | 1.00 | 300.00 | 300.00 |
|  | Pull info for FJL, dis w/ stat |  |  |  |  |
| Professional Services |  |  | 103.75 |  | 30,468.75 |

Invoice Total                                                    $30,468.75

**Please remit payment to:**

**SHL USA, Inc.**
**Dept. 1464**
**Denver, CO 80291**

Payment can be made by Credit Card or Electronically by contacting SHL Client Services at 1-800-899-7451.



**SHL USA, Inc.**
Phone: 800 899 7451
Fax:  303 442 1184
http://www.shlusa.com

**INVOICE**

| | |
|---|---|
| Invoice Number | 206465 |
| Invoice Date | January 03, 2006 |
| PO Number | |
| Contract | |
| Project | LT-LT-0630 |
| Page | 1 of 2 |
| Customer ID | 630PRL |
| Payment Terms: | Net 30 Days |

**BILL TO:**

Harold Lichten
Pyle, Rome, Lichten
18 Tremont Street
Suite 500
Boston, MA 02108

Period beginning 12/01/2005 through 12/31/2005

Manager    Jone Papinchock

**Professional Services**

| | | | Current Hours | Rate | Current Amount |
|---|---|---|---|---|---|
| Director | Frank Landy<br>Rev data set & Jacobs report | 11/01/2005 | 6.50 | 450.00 | 2,925.00 |
| Director | Frank Landy<br>Data issues & communications | 11/02/2005 | 3.00 | 450.00 | 1,350.00 |
| Director | Frank Landy<br>Data analysis & report | 11/06/2005 | 2.25 | 450.00 | 1,012.50 |
| Director | Frank Landy<br>Data analysis & report | 11/07/2005 | 2.00 | 450.00 | 900.00 |
| Director | Frank Landy<br>Rev tables, affidavit | 11/07/2005 | 3.50 | 450.00 | 1,575.00 |
| Director | Frank Landy<br>Conf call prep, discussions | 11/08/2005 | 3.00 | 450.00 | 1,350.00 |
| Director | Frank Landy<br>Analyses with statistician | 11/09/2005 | 5.25 | 450.00 | 2,362.50 |
| Director | Frank Landy<br>Work on rebuttal | 11/10/2005 | 6.25 | 450.00 | 2,812.50 |
| | Professional Services | | 31.75 | | 14,287.50 |

| | |
|---|---|
| Invoice Total | $14,287.50 |

# Landy Litigation Support Group

Landy Litigation Support Group
P O Box 7399 PMB 330
Breckenridge, CO  80424-7399

(970) 372-2130
info@landylsg.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 02/01/2006 | 1007 |

| TERMS | DUE DATE |
|-------|----------|
| Net 30 | 03/03/2006 |

| BILL TO |
|---------|
| Harold Lichten<br>Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan<br>18 Tremont Street<br>Suite 500<br>Boston, MA  02108 USA |

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $225.00 | |

Please detach top portion and return with your payment.

| Date | Activity | Quantity | Rate | Amount |
|------|----------|----------|------|--------|
| 01/15/2006 | Conference Call RE; Settlement Discussions – Lynn, Massachusetts Case (Jan 13 2006) – Frank Landy | 0.5 | 450.00 | 225.00 |

POSTED

Case:  Lynn, Mass

| | TOTAL | $225.00 |
|--|-------|---------|

# Landy Litigation Support Group

Landy Litigation Support Group
P O Box 7399 PMB 330
Breckenridge, CO  80424-7399

(970) 372-2130
info@landylsg.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 04/01/2006 | 1024 |

| TERMS | DUE DATE |
|-------|----------|
| Net 30 | 05/01/2006 |

**BILL TO**

Harold Lichten
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan
18 Tremont Street
Suite 500
Boston, MA  02108 USA

APR 06 2006

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $14,500.00 | |

>%    Please detach top portion and return with your payment.    %<

| SHIP DATE | SHIP VIA |
|-----------|----------|
| 04/01/2006 | Email/Post to follow |

| DATE | ACCOUNT SUMMARY | AMOUNT |
|------|-----------------|--------|
| 02/01/2006 | Balance Forward | $225.00 |
| | New charges (see details below) | 14,275.00 |
| | TOTAL AMOUNT DUE | $14,500.00 |

POSTED

| Date | Activity | Quantity | Rate | Amount |
|------|----------|----------|------|--------|
| 03/07/2006 | conference call - Frank Landy | 0:30 | 450.00 | 225.00 |
| 03/16/2006 | Discussion with counsel - Frank Landy | 0:30 | 450.00 | 225.00 |
| 03/24/2006 | Data Analysis - Arthur Gutman | 1:00 | 350.00 | 350.00 |
| 03/24/2006 | Review reports for prep for conference call with counsel; design statistical analyses and discussions with statistician re: analyses - Frank Landy | 5:15 | 450.00 | 2,362.50 |
| 03/25/2006 | Data analysis - Arthur Gutman | 3:00 | 350.00 | 1,050.00 |
| 03/25/2006 | Review initial statistical results - Frank Landy | 2:15 | 450.00 | 1,012.50 |
| 03/26/2006 | Data analysis - Arthur Gutman | 6:00 | 350.00 | 2,100.00 |
| 03/27/2006 | Data analysis - Arthur Gutman | 1:00 | 350.00 | 350.00 |
| 03/27/2006 | Develop new analysis for recent Jacobs data; communications to counsel; review analysis results - Frank Landy | 4:15 | 450.00 | 1,912.50 |
| 03/28/2006 | Data analysis - Arthur Gutman | 2:00 | 350.00 | 700.00 |
| 03/28/2006 | Review analyses of vet/non-vet; communicate with counsel - Frank Landy | 2:00 | 450.00 | 900.00 |
| 03/29/2006 | Draft report; consult with counsel - Frank Landy | 4:30 | 450.00 | 2,025.00 |
| 03/30/2006 | Retrieve case materials file and Fedex to Dr. Landy - Angie Rosenbaum | 1:45 | 350.00 | 612.50 |
| 03/31/2006 | Discussion with Counsel; review data - Frank Landy | 1:00 | 450.00 | 450.00 |

Case: Lynn, Massachusetts

| | |
|---|---|
| TOTAL OF NEW CHARGES | $14,275.00 |
| TOTAL AMOUNT DUE | $14,500.00 |



# Landy Litigation Support Group

Landy Litigation Support Group
P O Box 7399 PMB 330
Breckenridge, CO  80424-7399

(970) 372-2130
info@landylsg.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 04/29/2006 | 1037 |

| TERMS | DUE DATE |
|-------|----------|
| Net 30 | 05/29/2006 |

MAY 0 2 2006

| BILL TO |
|---------|
| Harold Lichten<br>Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan<br>18 Tremont Street<br>Suite 500<br>Boston, MA  02108 USA |

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $79,279.36 | |

‹— Please detach top portion and return with your payment. —›

| SHIP DATE | SHIP VIA |
|-----------|----------|
| 04/29/2006 | Email/US Post |

| DATE | ACCOUNT SUMMARY | AMOUNT |
|------|-----------------|--------|
| 04/01/2006 | Balance Forward | $14,500.00 |
| | New charges (see details below) | 64,779.36 |
| | TOTAL AMOUNT DUE | $79,279.36 |

| Date | Activity | Quantity | Rate | Amount |
|------|----------|----------|------|--------|
| 04/02/2006 | Data Analysis - Arthur Gutman | 4:00 | 350.00 | 1,400.00 |
| 04/03/2006 | Flight - Denver-Boston-Denver - Frank Landy | | | 483.60 |
| 04/03/2006 | Data Analysis - Arthur Gutman | 4:00 | 350.00 | 1,400.00 |
| 04/03/2006 | Analysis Plan - Frank Landy | 2:00 | 450.00 | 900.00 |
| 04/04/2006 | Data Analysis - Arthur Gutman | 3:00 | 350.00 | 1,050.00 |
| 04/04/2006 | Data analysis and prep; PPT construction - Frank Landy | 6:30 | 450.00 | 2,925.00 |
| 04/04/2006 | Retrieve electronic files - Angie Rosenbaum | 1:15 | 350.00 | 437.50 |
| 04/05/2006 | Constructing power point slides for trial - Kylie Harper | 4:00 | 200.00 | 800.00 |
| 04/05/2006 | Data Analysis - Arthur Gutman | 7:00 | 350.00 | 2,450.00 |
| 04/05/2006 | Data analysis and prep; PPT construction - Frank Landy | 6:45 | 450.00 | 3,037.50 |
| 04/06/2006 | Data Analysis - Arthur Gutman | 3:00 | 350.00 | 1,050.00 |
| 04/06/2006 | Data analysis - Frank Landy | 2:00 | 450.00 | 900.00 |
| 04/07/2006 | Data Analysis - Arthur Gutman | 4:00 | 350.00 | 1,400.00 |
| 04/07/2006 | Preparation for trial - Frank Landy | 3:45 | 450.00 | 1,687.50 |
| 04/08/2006 | Data Analysis - Arthur Gutman | 2:00 | 350.00 | 700.00 |
| 04/08/2006 | Data analysis - Frank Landy | 3:45 | 450.00 | 1,687.50 |
| 04/09/2006 | Data Analysis - Arthur Gutman | 8:00 | 350.00 | 2,800.00 |
| | Continue to the next page.. | | | |

Page 2 of 2

| Date | Activity | Quantity | Rate | Amount |
|---|---|---|---|---|
| 04/09/2006 | Preparation for trial - Frank Landy | 7:15 | 450.00 | 3,262.50 |
| 04/10/2006 | UPS Landy Text to Shannon for the Judge - Frank Landy | | | 48.38 |
| 04/10/2006 | Parking - Denver Airport (5 days only) - Frank Landy | | | 90.00 |
| 04/10/2006 | Lodging during trial (4/10/06 - 4/13/06) - Frank Landy | | | 675.36 |
| 04/10/2006 | Taxi - Airport to hotel - Frank Landy | | | 25.00 |
| 04/10/2006 | Data Analysis - Arthur Gutman | 4:00 | 350.00 | 1,400.00 |
| 04/10/2006 | Travel and preparation for trial - Frank Landy | 10:00 | 450.00 | 4,500.00 |
| 04/11/2006 | Taxi - to courthouse from hotel - Frank Landy | | | 10.45 |
| 04/11/2006 | Lunch 4/11/06 - Frank Landy | | | 6.40 |
| 04/11/2006 | Dinner 4/11/06 (50% of check) - Frank Landy | | | 53.15 |
| 04/11/2006 | Taxi - Hotel to Federal Court - Frank Landy | | | 9.00 |
| 04/11/2006 | Work with Lawyers in court; construct three new powerpoint slides for next day of trial. - Kylie Harper | 2:30 | 200.00 | 500.00 |
| 04/11/2006 | Data Analysis - Arthur Gutman | 3:00 | 350.00 | 1,050.00 |
| 04/11/2006 | Testify in trial and preparation - Frank Landy | 17:00 | 450.00 | 7,650.00 |
| 04/12/2006 | Work with Lawyers in court; construct three new powerpoint slides for next day of trial. - Kylie Harper | 0:30 | 200.00 | 100.00 |
| 04/12/2006 | Data Analysis - Arthur Gutman | 3:00 | 350.00 | 1,050.00 |
| 04/12/2006 | Testify in trial and preparation - Frank Landy | 17:00 | 450.00 | 7,650.00 |
| 04/12/2006 | Dinner 4/12/06 - Frank Landy | | | 97.27 |
| 04/13/2006 | Taxi - Federal Court - South Station - Frank Landy | | | 10.00 |
| 04/13/2006 | Lunch 4/13/06 - Frank Landy | | | 8.25 |
| 04/13/2006 | Trial; data analysis for possible rebuttal slides - Frank Landy | 10:00 | 450.00 | 4,500.00 |
| 04/17/2006 | Travel back to Breckenridge (6 hours @ $225 = 3 hours @ $450 - Frank Landy | 3:00 | 450.00 | 1,350.00 |
| 04/18/2006 | Review second day of Jacobs testimony - Frank Landy | 1:00 | 450.00 | 450.00 |
| 04/27/2006 | Summarize Jacobs Testimony for Dr. Landy's call with counsel - Kylie Harper | 6:00 | 200.00 | 1,200.00 |
| 04/27/2006 | Review jacobs testimony and exhibits - Frank Landy | 3:30 | 450.00 | 1,575.00 |
| 04/28/2006 | Summarize testimony for phone call - Kylie Harper | 0:45 | 200.00 | 150.00 |
| 04/28/2006 | Review Jacobs testimony, conference call, draft affidavit - Frank Landy | 2:00 | 450.00 | 900.00 |
| 04/29/2006 | Draft affidavit - Frank Landy | 3:00 | 450.00 | 1,350.00 |

Case: Bradly v. Massachusetts

| | | | TOTAL OF NEW CHARGES | $64,779.36 |
|---|---|---|---|---|
| | | | TOTAL AMOUNT DUE | $79,279.36 |

# Landy Litigation Support Group

Landy Litigation Support Group
P O Box 7399 PMB 330
Breckenridge, CO  80424-7399

(970) 372-2130
info@landylsg.com

## Invoice

| DATE | INVOICE # |
|------|-----------|
| 06/01/2006 | 1045 |

| TERMS | DUE DATE |
|-------|----------|
| Net 30 | 07/01/2006 |

**BILL TO**

Harold Lichten
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan
18 Tremont Street
Suite 500
Boston, MA  02108 USA

| AMOUNT DUE | ENCLOSED |
|------------|----------|
| $73,353.80 | |

Please detach top portion and return with your payment.

| SHIP DATE | SHIP VIA |
|-----------|----------|
| 06/01/2006 | Email/Post to follow |

| DATE | ACCOUNT SUMMARY | AMOUNT |
|------|-----------------|--------|
| 04/29/2006 | Balance Forward | $79,279.36 |
| 05/23/2006 | Payment received | -14,500.00 |
| | New charges (see details below) | 8,574.44 |
| | TOTAL AMOUNT DUE | $73,353.80 |

*POSTED*

| Date | Activity | Quantity | Rate | Amount |
|------|----------|----------|------|--------|
| 03/31/2006 | Fedex | | | 36.94 |
| 05/25/2006 | Case research. - Jacob Seybert | 0:45 | 100.00 | 75.00 |
| 05/25/2006 | Literature search - Barbara Nett | 1:00 | 250.00 | 250.00 |
| 05/25/2006 | Review drop out material and Jacobs report - Frank Landy | 4:15 | 450.00 | 1,912.50 |
| 05/26/2006 | Compile drop out statistics - Frank Landy | 7:30 | 450.00 | 3,375.00 |
| 05/26/2006 | Literature review of Dropout Rates for Selection Systems - Jeff Conte | 3:00 | 300.00 | 900.00 |
| 05/27/2006 | Draft Affidavit; review literature - Frank Landy | 4:30 | 450.00 | 2,025.00 |

Case: Bradley v. Lynn Mass

| | TOTAL OF NEW CHARGES | $8,574.44 |
|--|----------------------|-----------|
| | TOTAL AMOUNT DUE | $73,353.80 |

# APPLIED PERSONNEL RESEARCH

27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM



## Invoice Memorandum

February 23, 2005

To:   Harold Lichten, Esq.
      Pyle, Rome, Lichten & Ehrenberg, P.C.
      Attorneys at Law
      18 Tremont Street, Suite 500
      Boston, MA 02108

Re:   Invoice Number 1551

| Post-It® Fax Note | 7671 | Date 4/12/-c | # of pages 1 |
|---|---|---|---|
| To Mr. H. Lichten | | From | |
| Co./Dept. | | Joel P. Wiesen, Ph.D., Director | |
| Phone # | | Applied Personnel Research | |
| Fax # 617 367 4320 | | 27 Judith Road Newton, Massachusetts 02459 | |

Below is a detailed invoice for services provided in connection with the challenge to the HRD test entry-level firefighter in the Lynn matter.

### Detailed Invoice

**Summary of Work Performed**

Develop topics and questions for discovery. Review HRD's Massachusetts Fire Departments Task List. Locate two potential expert witnesses. Draft a selection process for entry-level firefighter and police officer based, in part, on a review of such selection systems nationwide. Report verbally to Attorney Lichten.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 185/hour | 17.50   hours | $3,237.50 |
| | | Total . . . . . . . . . . . . | $3,237.50 |

Signed: _____
        Joel P. Wiesen, Ph.D.
        Tax ID: 04-331 3731

POSTED

JPW:wpd

entered 5.3/05



APPLIED PERSONNEL RESEARCH
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715
—
(617) 244-8859
FAX (617) 244-8904
Email wiesen@personnelselection.com

**PAST DUE**

Invoice Memorandum                                      **PLEASE REMIT**

May 16, 2005

To:   Harold Lichten, Esq.
      Pyle, Rome, Lichten & Ehrenberg, P.C.
      Attorneys at Law
      18 Tremont Street, Suite 500
      Boston, MA 02108

Re:   Invoice Number 1556

Below is a detailed invoice for services provided from 2/24/05 to date in connection with a challenge to the HRD exam for entry-level firefighter, the Lynn matter.

### Detailed Invoice

**Summary of Work Performed**

Take part in several telephone calls at the request of counsel, including with: other, potential experts; Lance Seberhagen; Frank Landy; and with counsel of PRLE. Begin to research and formulate thoughts and ideas for possible new selection systems with less adverse impact. Meet with Lance Seberhagen to discuss the case. Read and critique Massachusetts' validation material faxed by counsel and provide ideas verbally to counsel on possible new selection systems.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $185/hour | 14.75   hours | $2,728.75 |
| | | Total . . . . . . . . . . . . . | $2,728.75 |

POSTED

Signed: _____
       Joel P. Wiesen, Ph.D.
       Tax ID: 04-331 3731

## APPLIED PERSONNEL RESEARCH

27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

—

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

### Invoice Memorandum

August 11, 2005

To:    Harold Lichten, Esq.
Pyle, Rome, Lichten & Ehrenberg, P.C.
Attorneys at Law
18 Tremont Street, Suite 500
Boston, MA 02108

Re:    Invoice Number 1558

Below is a detailed invoice for services provided from 5/16/05 to 8/1/05 in connection with a challenge to the HRD exam for entry-level firefighter, the Lynn matter.

### Detailed Invoice

**Summary of Work Performed**
Discuss existing and possible new selection systems for hiring fire fighters with other consultants and experts at the annual conference of the Society for Industrial and Organizational Psychology; telephone calls with attorneys from Pyle, Rome, Lichten & Ehrenberg.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 185/hour | 6.30   hours | $1,165.50 |
| | | Total . . . . . . . . . . . . . | $1,165.50 |

Signed: _____

Joel P. Wiesen, Ph.D.
Tax ID: 04-331 3731

POSTED

JPW:wpd

**APPLIED PERSONNEL RESEARCH**
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

SEP 06 2005

## Invoice Memorandum

September 1, 2005

To:    Harold Lichten, Esq.
       Pyle, Rome, Lichten & Ehrenberg, P.C.
       Attorneys at Law
       18 Tremont Street, Suite 500
       Boston, MA 02108

Re:    Invoice Number 1559

Below is a detailed invoice for services provided from 8/1/05 to 8/31/01 in connection with a challenge to the HRD exam for entry-level firefighter, Bradley v Lynn.

## Detailed Invoice

**Summary of Work Performed**
Read case materials provided by counsel on 7/27/05. Prepare expert witness report.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 185/hour | 52.50   hours | $9,712.50 |
| | | Total . . . . . . . . . . . . . | $9,712.50 |

Signed: _____

Joel P. Wiesen, Ph.D.
Tax ID: 04-331 3731

POSTED

JPW:wpd

**APPLIED PERSONNEL RESEARCH**

27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

JAN 10 2006

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

## Invoice Memorandum

January 5, 2006

POSTED

To:     Harold Lichten, Esq.
        Pyle, Rome, Lichten & Ehrenberg, P.C.
        Attorneys at Law
        18 Tremont Street, Suite 500
        Boston, MA 02108

Re:     Invoice Number 1558

Below is a detailed invoice for services provided from 9/21/05 to date in connection with a challenge to the HRD exam for entry-level firefighter, the Lynn matter.

## Detailed Invoice

**Summary of Work Performed**

Read and comment on a Firefighter affidavit of Rick Jacobs in another case. Read and comment on Mass HRD RFR (request for proposals) for new Firefighter exam. Telephone consultation with Attorney Gordon about municipalities already using personality tests for Firefighter. Develop formula/method for evaluating equity of the 2004 Firefighter exam concerning certifications and appointments. Draft an explanation for my equity evaluation methodology.

| Personnel | Billing Rate | Time Billed | | Cost |
|-----------|-------------|-------------|---|------|
| Joel P. Wiesen, Ph.D. | $ 185/hour | 8.10 | hours | $1,498.50 |
| Joel P. Wiesen, Ph.D. | $ 200/hour* | 1.50 | hours | $300.00 |
| | | Total . . . . . . . . . . . . | | $1,798.50 |

* 2006 rate

Signed: _____
        Joel P. Wiesen, Ph.D.
        Tax ID: 04-331 3731

JPW:wpd

**APPLIED PERSONNEL RESEARCH**
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

APR 07 2006

### Invoice Memorandum

April 4, 2006

To:   Harold Lichten, Esq.
      Pyle, Rome, Lichten & Ehrenberg, P.C.
      Attorneys at Law
      18 Tremont Street, Suite 500
      Boston, MA 02108

Re:   Invoice Number 1579

Below is a detailed invoice for services provided from 1/6/06 to date in connection with *Bradley v. Lynn.*

### Detailed Invoice

**Summary of Work Performed**

Provide telephone consultation on the adverse impact of personality and biodata tests, and on adverse impact in general. Make suggestions on a wide range of alternatives to written exam. Review written material provided by counsel. Write report on adverse impact of 2004 firefighter examination. Begin to analyze 2002 and 2005 adverse impact data files provided by counsel.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 200/hour | 17.00   hours | $3,400.00 |
| | | Total . . . . . . . . . . . . . | $3,400.00 |

**POSTED**

Signed: _____
         Joel P. Wiesen, Ph.D.
         Tax ID: 04-331 3731

JPW:wpd

**APPLIED PERSONNEL RESEARCH**
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

*MAY 0 4 2006*

## Invoice Memorandum

May 1, 2006

To:    Harold Lichten, Esq.
       Pyle, Rome, Lichten & Ehrenberg, P.C.
       Attorneys at Law
       18 Tremont Street, Suite 500
       Boston, MA 02108

Re:    Invoice Number 1580

Below is a detailed invoice for services provided from 4/5/06 to 4/30/06 in connection with the Bradley matter.

### Detailed Invoice

**Summary of Work Performed**
Conduct adverse impact analyses for 2002 and 2004 firefighter examinations, and write reports summarizing these analyses. Review state's document on physical abilities test and provide oral comments to attorneys. Research and summarize firefighter selection systems nationwide. Prepare for trial. Analyze veteran appointment data and write reports for adverse impact among vets for 2002 and 2004 exams. Attend first two days of trial and provide comments to attorneys. Begin to review Jacobs' testimony.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 200/hour | 51.50    hour | $10,300.00 |
| **Other** | | | |
| Travel and parking for first 2 days of trial . . . . . . . . . . . . . . . . . . . . . | | | $29.92 |
| Change airline reservation to permit testimony on 5/3/06 . . . . . . . . . . | | | $880.20 |
| | | Total . . . . . . . . . . . . . | $11,210.12 |

Signed: _____
       Joel P. Wiesen, Ph.D.
       Tax ID: 04-331 3731

*POSTED*

JPW:wpd

### APPLIED PERSONNEL RESEARCH
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM



## Invoice Memorandum

October 3, 2006

To:   Harold Lichten, Esq.
      Pyle, Rome, Lichten & Ehrenberg, P.C.
      Attorneys at Law
      18 Tremont Street, Suite 500
      Boston, MA 02108
Re:   Invoice Number 1580 (Really 1590)

   Below is a detailed invoice for services provided from 4/5/06 to 4/30/06 in connection with the Bradley matter.

## Detailed Invoice

**Summary of Work Performed**
   Telephone calls with attorneys Liss-Riodan and Lichten. Analyze certification data for 2000 and 2004. Prepare summary of nationwide firefighter personnel selection systems. Testify at trial on May 3, 2006.

| Personnel | Billing Rate | Time Billed | Cost |
|---|---|---|---|
| Joel P. Wiesen, Ph.D. | $ 200/hour | 25.50  hour | $5,100.00 |
| **Other** | | | |
| Travel and parking for 1 day of trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $14.96 |
| | | Total . . . . . . . . . . . . . . | $5,114.96 |

Signed: _____
         Joel P. Wiesen, Ph.D.
         Tax ID: 04-331 3731

JPW:wpd

Post-it® Fax Note   7671   Date 10/13/06   # of pages 1
To Ms Cindy Nli
Co./Dept. Pyle Rome
Phone # 367-7200 x 24
Fax # 617367 9820

From
WIESEN
27 Judith Road
Newton, MA 02459-1715

### APPLIED PERSONNEL RESEARCH
27 JUDITH ROAD
NEWTON, MASSACHUSETTS 02459-1715

(617) 244-8859
FAX (617) 244-8904
E-MAIL: WIESEN@PERSONNELSELECTION.COM

NOV 1 0 2006

## Invoice Memorandum

November 3, 2006

To:     Harold Lichten, Esq.
        Pyle, Rome, Lichten, Ehrenberg, & Liss-Riordan, P.C.
        Attorneys at Law
        18 Tremont Street, Suite 500
        Boston, MA 02108

Re:     Invoice Number 1592

Below is a detailed invoice for services provided in the month of October, 2006 in connection with the Bradley matter.

## Detailed Invoice

**Summary of Work Performed**
Review email and files provided to me, and consult by email and telephone with attorneys Lichten and Liss-Riodan concerning banding and HRD's shortfall methodology.

| Personnel | Billing Rate | Time Billed | Cost |
|-----------|--------------|-------------|------|
| Joel P. Wiesen, Ph.D. | $ 200/hour | 9.00   hours | $1,800.00 |
| | | Total . . . . . . . . . . . . . | $1,800.00 |

Signed: _Joel Wiesen_____
        Joel P. Wiesen, Ph.D.
        Tax ID: 04-331 3731

JPW:wpd

# SEBERHAGEN & ASSOCIATES
**9021 Trailridge Court, Vienna, Virginia 22182-1730**
**Tel (703) 790-0796, Fax (703) 790-1817, <u>sebe@erols.com</u>**

By Fax

May 2, 2005

Mr. Harold L. Lichten, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC
18 Tremont Street, Suite 500
Boston, MA 02108

     RE: *Bradley v. City of Lynn*

Dear Mr. Lichten:

Here is my invoice for work performed during April 2005. My work log is enclosed.

## I N V O I C E

| <u>Item</u> | <u>Amount</u> |
|---|---|
| Seberhagen, 10.2 Hrs @ $250/hr............................................... | $2,550.00 |
| Minimum labor fee, 16 hr @ $250, remainder due ($4,000.00 – 2,550.00).. | 1,450.00 |
| TOTAL DUE...................................................................................... | $4,000.00 |

Full payment of $4,000.00 is due within 30 days. Late payment will be subject to a surcharge of two percent per month on the total balance due.

POSTED

Sincerely,


Lance Seberhagen, Ph.D.
Industrial Psychologist


INVOICE NO:    05-01
PAYABLE TO:    Seberhagen & Associates

# SEBERHAGEN & ASSOCIATES
**9021 Trailridge Court, Vienna, Virginia 22182-1730**
**Tel (703) 790-0796, Fax (703) 790-1817, sebe@erols.com**

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

By Fax

June 3, 2005

Mr. Harold L. Lichten, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC
18 Tremont Street, Suite 500
Boston, MA 02108

    RE: *Bradley v. City of Lynn*

Dear Mr. Lichten:

Here is my invoice for work performed during May 2005. My work log is enclosed.

## INVOICE

| Item | Amount |
|------|-------:|
| Seberhagen, 12 hr @ $250/hr............................................................ | $3,000.00 |
| Less credit in account (from adv payment of min labor fee)..................... | 1,450.00 |
| **TOTAL DUE**.............................................................................. | $1,550.00 |

Full payment of $1,550.00 is due within 30 days. Late payment will be subject to a surcharge of two percent per month on the total balance due.

Sincerely,

Lance Seberhagen, Ph.D.
Industrial Psychologist

INVOICE NO:    05-02
PAYABLE TO:    Seberhagen & Associates

# SEBERHAGEN & ASSOCIATES

**9021 Trailridge Court, Vienna, Virginia 22182-1730**
**Tel (703) 790-0796, Fax (703) 790-1817, <u>sebe@erols.com</u>**

By Fax

July 5, 2005

Mr. Harold L. Lichten, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC
18 Tremont Street, Suite 500
Boston, MA 02108

     RE: *Bradley v. City of Lynn*

Dear Mr. Lichten:

Here is my invoice for work performed during June 2005. My work log is enclosed. Payment is overdue from my last invoice. Please make prompt payment.

## INVOICE

| Item | Amount |
|------|-------:|
| Seberhagen invoice, 6/3/05............................................................... | $1,550.00 |
| Late payment fee, 2% of $1,550.00...................................................... | 31.00 |
| | ------------- |
| Subtotal............................................................................................. | $1,581.00 |
| New Charges | |
| Seberhagen, 12 hr @ $250/hr.............................................................. | $3,000.00 |
| | ------------- |
| TOTAL DUE........................................................................................ | $4,581.00 |

Full payment of $4,581.00 is due within 30 days. Late payment will be subject to a surcharge of two percent per month on the total balance due.

Sincerely,

Lance Seberhagen, Ph.D.
Industrial Psychologist

*POSTED*

INVOICE NO:     05-03
PAYABLE TO:    Seberhagen & Associates

# SEBERHAGEN & ASSOCIATES
### 9021 Trailridge Court, Vienna, Virginia 22182-1730
### Tel (703) 790-0796, Fax (703) 790-1817, sebe@erols.com

By Fax

September 2, 2005

Mr. Harold L. Lichten, Esq.
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, PC
18 Tremont Street, Suite 500
Boston, MA 02108

    RE: *Bradley v. City of Lynn*

Dear Mr. Lichten:

Here is my invoice for work performed during August 2005. My work log is enclosed.

## I N V O I C E

| **Item** | **Amount** |
|---|---|
| Seberhagen, 39.8 hr @ $250/hr........................................................... | $9,950.00 |
| TOTAL DUE............................................................................. | $9,950.00 |

Full payment of $9,950.00 is due within 30 days. Late payment will be subject to a surcharge of two percent per month on the total balance due.

Sincerely,


Lance Seberhagen, Ph.D.
Industrial Psychologist

INVOICE NO:    05-05
PAYABLE TO:    Seberhagen & Associates