**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JACOB BRADLEY, *et al.*,

                       Plaintiffs,

        v.

CITY OF LYNN, *et al.*,

                       Defendants.

CIVIL ACTION
NO. 05-10213-PBS

**STATE DEFENDANTS' FURTHER RESPONSE TO**
**PLAINTIFFS' AMENDED REMEDY PROPOSAL**

The state defendants respond as follows to the plaintiffs' amended proposed

remedial order and accompanying memorandum (Document #137).

**1.    Previous Response (Document #132 )**

To avoid unnecessary repetition, the Court is respectfully referred to Document

#132, the prior response by the state defendants to the plaintiffs' original remedy

proposal (Document #130). Many of the previous responses apply equally, or

substantially, to the new proposed order, and the state defendants continue to urge the

Court to adopt their proposed remedial order (Exhibit A to Document #132).  This further

response will focus on aspects of the new proposed order that are different from the

plaintiffs' previous proposal.

**2.    Workforce Parity is Not the Proper Goal**

Plaintiffs argue against the state defendants' remedial hiring proposal, primarily

because it implements the Jacobs shortfall formula by applying the 4/5 rule to determine

the shortfall number for each municipality.  The Jacobs formula, Exhibit 31, was

accepted and used by the plaintiffs' experts at trial. It expressly states, at ¶10, "**In**

**calculating the minority shortfall** in each community, the minority passing rate should

be set at 80% of the non-minority passing rate, consistent with the definition of no

adverse impact."

In now, belatedly, attacking this aspect of the formula, plaintiffs' counsel argue

(plaintiffs' memorandum at 4) that the goal of remedies in past public employment cases

"has always been to achieve parity -- i.e. to achieve numbers in the underrepresented

position that approximate the number of minority candidates in the appropriate labor

pool,"citing reported cases from the 1970s and 1980s. Most of what follows in plaintiffs'

memorandum is purportedly justified by the supposed goal of workforce parity.[1]

The "goal" of parity does not apply to this case. The issue at trial and the court's

finding concerned the adverse impact of two exams, not lack of "parity" in the workforce.

There is no evidence, for example, of the current percentage of minority fire fighters in

the Boston Fire Department. If it were found that minorities were <u>over</u>-represented, the

plaintiffs would still be entitled to a remedy for the adverse impact of the exams. The

argument mistakes apples for oranges.

---

[1]        Plaintiffs have also submitted a new "expert report" from Dr. Wiesen
(Document #137, Exhibit A). In section 2, titled "The 80% rule of thumb," Dr. Wiesen
makes legal arguments for which he is not, of course, qualified as an expert.

The plaintiffs' sex discrimination example (10 men hired instead of 10 women) is also irrelevant. As demonstrated by all the expert testimony, such small numbers would not support any statistical conclusion, and the 4/5 rule would not be a useful measure because the population sample is simply too small. The example therefore does not provide any valid basis for comparison to the present situation where the sample size is large and for that reason the 80% rule has been consistently used as the appropriate guideline by the parties and the Court throughout the course of trial.

The state defendants' proposed remedial order correctly applies the Jacobs formula, and would eliminate adverse impact. If the two examinations had achieved the same result, the Court would have found in favor of the defendants on liability. The remedy need go no further.

3.    **The Remedy Should Assure Consideration, Not Hiring**

The new proposed order (¶A(1) at 2-4) and memorandum (at 7-9) seek an assurance that the shortfall number of minority candidates will be *hired*. However, the adverse impact of the examinations did not prevent those candidates from being hired, but from being *considered* for hiring. As the Court well knows, HRD does not select or hire fire fighters, and its job is done when it certifies an eligible list to the municipality, thereby allowing the listed applicants to be reached for consideration by the municipality. Many factors other than exam scores thereafter determine whether a given candidate will be selected or will drop out.

The contrast between HRD's proposal to certify 2n+1 of the shortfall number for consideration versus plaintiffs' proposal to guarantee the hiring of the shortfall number

highlights the question, who is entitled to a remedy? The premise is that the remedy should be extended to "identifiable victims" of discrimination because the damage to anyone else is speculative, and the inclusion of such persons can cross the line into impermissible affirmative action.. A minority candidate with a low passing score, e.g. 70 or 72, is not an  identifiable victim: he/she would never have been reached for consideration because score differences beyond an eight- or nine-point band are statistically significant, as the experts agreed. The 2n+1 approach will reach candidates who would have been certified and are therefore identifiable, not speculative.

Possibly, plaintiffs' counsel and Dr. Wiesen do not understand the proposal. They cite as one illustration of "the problems posed" by it (plaintiffs' memorandum at 7, n.2), the "major omission" of Noah Bradley from the Lynn shortfall list. As shown by the Lynn shortfall synopsis (attached as Exhibit A), the shortfall is 3.87, which rounds to 4 and HRD would certify 9 names. Noah Bradley is #18 on the combined list.

As for the concern that there will not be enough still-interested candidates, HRD's proposed remedial order could be further tailored to assure that a sufficient number will be reached for consideration, thereby eliminating the shortfall caused by adverse impact. This could consist of adding the following sentence to Section A(1)(c) of the state defendants' proposed remedial order (Document #132, Exhibit A at 3):

> A municipality's shortfall list shall be expanded to greater than 2n+1 if necessary to reach the number of candidates, still interested in being considered for hiring, that equals the municipality's shortfall number, and

the shortfall list shall expire when that number of candidates has been reached for consideration.

In Lynn, for example, the combined 2002 and 2004 shortfall is four positions. HRD would initially certify nine names, and the shortfall list would expire as soon as four candidates who have expressed continuing interest have been reached for consideration. If at least four of the first nine candidates did not remain interested, additional names would be certified until four interested persons were reached. If any of the four were thereafter not selected for hire -- e.g., by failing the physical examination, the list would remain expired, having served its purpose of assuring that the adverse impact of the written exams was remedied by assuring that the shortfall number was reached for consideration.

4.    **Nonresidents Should Not Get Priority Over 2006 Residents**

Plaintiffs' proposal would ignore the statutory residency preference, and (new proposed order at 3, plaintiffs' memorandum at 10) place nonresident minority applicants from the 2002 and 2004 exams ahead of resident candidates from the 2006 exam. The testimony at trial was unanimous that nonresidents have virtually no chance of being hired in the ordinary course, and therefore there are no identifiable victims of discrimination to be aided by such a remedy. Such a preference would also be unfair to 2006 resident applicants. For both reasons, the Court should reject this aspect of the proposal.

**5.    Back Pay is Not Appropriate**

Although the court has authority to order back pay as part of an equitable remedy in conjunction with remedial hiring, there is no requirement that it make such an award. The cases cited (plaintiffs' memorandum at 11-12) all deal with traditional employment relationships, not with the unusual relationship between HRD, which has no control over hiring decisions, and entry level fire fighter applicants. Notably, back pay was not ordered as part of the Beecher remedy. See Boston Chapter, NAACP v. Beecher, 371 F.Supp. 507at 520-523 (1974). In its discretion, the Court should decline to order back pay.

Plaintiffs seek as an element of back pay an award for lost overtime and "detail opportunities."[2] Those elements are hypothetical and too speculative, as they depend on two uncertainties: uncertainty as to the need for extra services and uncertainty as to the fire fighter's willingness to perform the extra services. White v. City of Boston, 57 Mass. App. Ct. 356, 358-359 (2003). If back pay is to be awarded, it should not include these elements on the basis of a speculative assumption that applicants would have received overtime or detail pay on the basis of the average extra earnings of others.

The request for years of creditable service for retirement purposes overlooks the fact that fire fighters contribute to their pensions. Granting such credit as part of the remedial order would distort the statutory pension scheme and give the plaintiff class an unfair advantage over other employees, because the plaintiffs will not have paid in their employee contribution share for such years. This proposed feature should be rejected.

---

[2]    "Detail" or special duty pay is commonplace for police officers but not

**6.    EMT Hiring Should Not Be Delayed**

Plaintiffs propose to require municipalities that wish to hire EMTs to wait, after hiring candidates, for the new fire fighters to get EMT-certified.[3] This is directly contrary to HRD's "Minimum Entrance Requirements" for the position (see attached Exhibit B), which specify that an applicant must possess "current certification" as an EMT and as a CPR Basic Rescuer **"at time of application and original appointment."** Plaintiffs have offered no good reason for asking the Court to intrude into the operations of HRD to this extent, or to delay a nonparty municipality's deployment of newly hired fire fighters, already on the payroll, while they obtain certification.[4]

**7.    There is No Need for the Court to Involve Itself in Bypass Decisions**

HRD has proposed to discourage potential discriminatory bypasses by requiring a written statement of reasons for bypassing a minority candidate, and subject to HRD review and Civil Service Commission appeal rights. That proposal is sufficient. This case has been about the adverse impact of exam scores, not about discriminatory bypasses. There is no justification for adding an unnecessary layer of bypass review by this Court.

---

generally available to fire fighters.

[3]    The exception for municipalities that hired EMTs in both 2002 and 2004 applies only to Randolph. McNeely testimony.

[4]    As shown by plaintiffs' Exhibit B to Document #137, at page 3 of 6, HRD has offered to notify all shortfall minority candidates by letter that they should get certified promptly if they want to be considered for EMT positions. Plaintiffs' counsel has not replied to the offer.

Bypass disputes by definition are between a fire department and an applicant. The cities and towns are not parties to this case and cannot be compelled to litigate their bypasses in this venue. It is not appropriate to leave the defense of their decisions to HRD, which has no interest of its own in litigating such questions. The proposal is unworkable as well as unnecessary.

**8.     State Defendants Will Timely Respond to Plaintiffs' Motion for Fees**

The state defendants intend to file a timely response to the plaintiffs' and interveners' requests for legal and expert fees, and request the Court not to make any order for fees at this time.

> HUMAN RESOURCES DIVISION OF
> THE COMMONWEALTH OF
> MASSACHUSETTS and
> RUTH BRAMSON, PERSONNEL
> ADMINISTRATOR, Defendants
>
> By their attorney,
>
> THOMAS F. REILLY
> ATTORNEY GENERAL
>
>  /s/ Ronald F. Kehoe
> Ronald F. Kehoe, BBO # 264260
> Assistant Attorney General
> One Ashburton Place, Room 1813
> Boston, MA 02108-1698
> (617) 727-2200 ext. 2619
> ronald.kehoe@ago.state.ma.us

## **Certificate of Service**

I hereby certify that I have this day, November 22, 2006, served the foregoing on counsel for all other parties by filing it electronically and by mailing it by first-class U.S. mail, postage prepaid.


/s/ Ronald F. Kehoe

# EXHIBIT A

# CITY OF LYNN

# COMBINED 2002 AND 2004

# SHORTFALL LIST

| | | | | | | |
|---|---|---|---|---|---|---|
| Combine 2002 and 2004 | 1 | 1* | Cintron, Luis E | Hispanic | Male | Veteran | 85% |
| Shortfall =4 | 2 | 2* | Lewis, Paul J | Black | Male | Veteran | 78% |
| Certify 9 names | 3 | 3* | Machado, Joel E | Hispanic | Male | Veteran | 76% |
| | 4 | 4* | Christian, Jason | Black | Male | Non-Vet | 97% |
| | 5 | 5* | Bradley, Jacob | Black | Male | Non-Vet | 94% |
| | 6 | 5* | Anaya, Joel | Hispanic | Male | Non-Vet | 94% |
| | 7 | 7 | Felix, Robert | Hispanic | Male | Non-Vet | 93% |
| | 8 | 8 | McDuffie, George | Black | Male | Non-Vet | 92% |
| | 9 | 8 | Thomas, Jared C | Black | Male | Non-Vet | 92% |
| | 10 | 10 | Cooley,Jermaine | Black | Male | Non-Vet | 91% |
| | 11 | 10 | Toro, Antonio | Hispanic | Male | Non-Vet | 91% |
| | 12 | 12 | Castro, Jason B | Hispanic | Male | Non-Vet | 90% |
| | 13 | 12 | DeLeon, Gabriel | Hispanic | Male | Non-Vet | 90% |
| | 14 | 12 | Ridley, Keith J | Black | Male | Non-Vet | 90% |
| | 15 | 15 | Rosa, Roman L | Hispanic | Male | Non-Vet | 87% |
| | 16 | 16 | Sanchez,Julio C | Hispanic | Male | Non-Vet | 85% |
| | 17 | 16 | Porter, Stanley | Black | Male | Non-Vet | 85% |
| | 18 | 18 | Bradley, Noah | Black | Male | Non-Vet | 84% |
| | 19 | 19 | Echevarria, Dioni | Hispanic | Male | Non-Vet | 83% |
| | 20 | 20 | Peguero,Boris | Hispanic | Male | Non-Vet | 82% |
| | 21 | 20 | Quinones,Aneudi | Hispanic | Male | Non-Vet | 82% |
| | 22 | 20 | Miller, Karlene | Black | Female | Non-Vet | 82% |
| | 23 | 20 | Ferreira,Jaison | Hispanic | Male | Non-Vet | 82% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 24 | 24 | Cerda,Ismanuel | Hispanic | Male | Non-Vet | 81% |
| 25 | 24 | Morel,Pablo | Hispanic | Male | Non-Vet | 81% |
| 26 | 26 | Kimber, Jr, Robert L | Black | Male | Non-Vet | 79% |
| 27 | 27 | Melendez, Lizbeth | Hispanic | Female | Non-Vet | 78% |
| 28 | 27 | Delgado,Hector | Hispanic | Male | Non-Vet | 78% |
| 29 | 29 | Brantley, Jermaine K | Black | Male | Non-Vet | 77% |
| 30 | 29 | Lopez,Pedro A | Hispanic | Male | Non-Vet | 77% |
| 31 | 29 | Theus,Ronald | Hispanic | Male | Non-Vet | 77% |
| 32 | 32 | Walker, Brian | Black | Male | Non-Vet | 76% |
| 33 | 33 | Sanabia,Jorge | Hispanic | Male | Non-Vet | 75% |
| 34 | 34 | Ridley, Matthew | Black | Male | Non-Vet | 74% |
| 35 | 35 | Salvador, Rudy | Hispanic | Male | Non-Vet | 73% |
| 36 | 35 | Burris,Anhhony | Black | Male | Non-Vet | 73% |
| 37 | 35 | Rosa, Pedro | Hispanic | Male | Non-Vet | 73% |
| 38 | 38 | Reynolds, Leon | Black | Male | Non-Vet | 72% |
| 39 | 38 | Jones, Sircecil | Hispanic | Male | Non-Vet | 72% |
| 40 | 40 | Reinoso,Samuel | Hispanic | Male | Non-Vet | 70% |

# EXHIBIT  B

# E.M.T. MINIMUM ENTRANCE REQUIREMENTS

**Massachusetts Human Resources Division**

**The Continuous Testing (ConTest) Program**
**One Ashburton Place, Room # 313, Boston, MA 02108**

**Hours of Operation:  8:45 a.m. – 5:00 p.m.**

**Telephone:  617-727-3777, ext. 275**

**Fax:  617-742-7532**
**Toll-Free within MA:  1-800-392-6178**

**TTY:  617-727-7583**

REVISED: August 1, 2002

## CONTINUOUS TESTING  (CONTEST) PROGRAM
Open, Competitive Process

**JOB TITLE:**            **EMERGENCY MEDICAL TECHNICIAN** (Cities and Towns)
**(Basic, Intermediate and Paramedic)**

**ANNOUNCEMENT NUMBER:**            **CT - 4**

**SAMPLE DUTIES & RESPONSIBILITIES:**

_  Performs the duties described in the United States Department of Transportation National Highway Traffic Safety Administration job description for Emergency Medical Technician (EMT).
_  Responds to requests or calls for emergency medical assistance from the general public.
_  Examines, assesses and stabilizes patients for transport, keeps documentation of pre-hospital care received by patients.
_  Works in hazardous environments; lifts heavy loads; operates emergency medical services vehicles; maintains emergency medical services vehicles and equipment; uses emergency medical services radio/communication systems.
_  Maintains all required certifications and performs related duties as required.

**MINIMUM ENTRANCE REQUIREMENTS:**

**Applicant must possess current certification (Basic, Intermediate or Paramedic) as an Emergency Medical Technician issued by the Massachusetts Department of Public Health, and current certification as a C.P.R. Basic Rescuer by either the American Red Cross or the American Heart Association (M.G.L. Chapter 111c, sections 3 and 6) at time of application and original appointment.**