UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JACOB BRADLEY, et al.,              )
            Plaintiffs              )
                                    )
v.                                  )   CIVIL ACTION NO. 05-10213-PBS
                                    )
CITY OF LYNN, et al.,               )
            Defendants              )
_____ )

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR APPROVAL OF SETTLEMENT AND NOTICE TO CLASS MEMBERS**

**I.   INTRODUCTION.**

The parties have presented to this Court a Motion for Approval of Settlement Agreement, Settlement Agreement, and Proposed Notice to Class Members in an effort to resolve this protracted litigation involving the 2002, 2003, 2004, and 2005 entry-level police officer and firefighter examinations in the Commonwealth of Massachusetts. As a result of this Court's decision dated August 8, 2006, and subsequent order on remedy dated December 6, 2006, and after months of negotiations seeking to resolve the remaining issues raised by this case, including (1) the police examination; (2) monetary compensation calculations; (3) claims relating to the 2006 firefighter examination; and (4) the precise determination of how many shortfall hirings are necessary to carry out the Court's December 6th Order, the parties, with the assistance of their experts, have agreed to submit to this Court a proposed comprehensive settlement which, once the terms described herein have been carried out, would resolve this pending litigation with finality except as to the individual claims involving the City of Lynn. As described

1

herein, given the real possibility that without a resolution of all claims, the Commonwealth would file an appeal with the U.S. Court of Appeals, which admittedly would raise issues deserving of First Circuit scrutiny, and there would have to be at least two further trials (one relating to the police examination and one relating to the 2006 firefighter examination), all parties believe that the attached settlement agreement is fair to the named Plaintiffs, Plaintiff Class Members, the Intervenors, and the Commonwealth.  The Plaintiffs therefore request this Court, after hearing, to approve this settlement.

## II.    FACTUAL BACKGROUND.

This case was filed in 2005 challenging the entry-level firefighter and police officer examination in the Commonwealth of Massachusetts as having a disparate impact on minority test takers, and not meeting the job-relatedness standards required by Title VII of the Civil Rights Act of 1964.  After a multi-day trial and extensive briefing, this Court held that the 2002 and 2004 firefighter examination violated Title VII.[1]  Later, after extensive hearing and briefing before the Court, the Court issued an order on remedy on December 6, 2006.  The Order required the Commonwealth to (1) undertake limited remedial measures to correct the discriminatory effect of the prior firefighter examinations by requiring the Commonwealth to certify to the affected municipalities a certain number of minority candidates for hire roughly equaling the number of candidates which statistically would likely have been hired had there been no disparate impact; (2) pay back to those whose hiring was delayed as a result of the discriminatory

---

[1]    Prior to the trial, this Court certified a Rule 23(b)(2) class action both for police and fire candidates who had taken the examination.

exam; and (3) provide appropriate data to Plaintiffs' counsel and Intervenors' counsel relating to the 2006 firefighter examination.

Because the first part of the case involved liability and remedial orders relating only to the fire examination, the police examination case is still pending the completion of discovery and trial, as is Plaintiffs' challenge to the 2006 firefighter examination.

In the last several months Plaintiffs' counsel, the Commonwealth's counsel, and Intervenors' counsel have had extensive settlement negotiations in an attempt to finalize a comprehensive resolution of all outstanding issues resulting from the firefighter examination case, and to apply such remedial measures and compensation to the police examination, rather than undergo a second long trial regarding that examination. The plaintiffs and defendants have now agreed to such terms.

### III. THE TERMS OF THE PROPOSED COMPREHENSIVE SETTLEMENT AGREEMENT.

Most of the important terms of the settlement agreement are taken directly from this Court's Decision and Orders dated August 8, 2006, and December 6, 2006, respectively. In addition, many of the ancillary details necessary to effectuate this Court's remedial order of December 6, 2006, have been flushed out in the proposed comprehensive settlement agreement. In addition, the parties have attempted to utilize the Court's Decision and Order on Remedy with respect to the firefighter examination, and apply it substantially unchanged to the 2003 and 2005 police officer examination.

As described in detail below, the settlement contains five (5) basic components: (1) shortfall hiring certifications; (2) back pay for those ultimately hired as a result of such shortfall hiring process; (3) back pay for minority individuals who, although already

hired as municipal firefighters or police officers, had their hiring delayed as a result of the discriminatory effects of the examination; (4) payment of attorneys' fees and costs; and (5) a requirement that the Commonwealth provide appropriate data compilations to Plaintiffs' counsel and Intervenors regarding the 2006 firefighter examination and 2007 police officer examination to ensure the continued progress being made by the Commonwealth with respect to its entry-level police and firefighter examination processes.

    a.    **<u>Shortfall Hiring</u>**.

Utilizing the formula described by the Court in its December 6, 2006, remedial order, which was based on Dr. Jacobs' so-called "shortfall" analysis, all parties have worked diligently to determine the precise number of remedial hires required by said formula, both for municipal firefighters and municipal police officers. Specifically, Plaintiffs have utilized Dr. Joel Wiesen (one of their experts), who himself formerly worked for HRD, and he has spent countless hours meeting with and emailing with HRD officials, including Sally McNeeley, Director of Testing, and both parties have shared data banks in order to calculate the precise number of remedial hires necessary for both municipal fire and police departments, by applying the Court's formula in its December 6, 2006, Order. After considerable back and forth negotiation, both parties have arrived at an agreed number of hires which they believe accurately reflects the number of shortfall hires necessary under the Court's remedial order of December 6, 2006, and Dr. Jacobs' shortfall analysis. All parties emphasize that this is not a "compromise" number, but is in fact the actual number of hires required based upon the formula set by

4

the Court. Those numbers are set forth on pages one and two of the attached Settlement Agreement.

Pursuant to the proposed settlement agreement, HRD will certify all minority candidates who passed one of the four disputed examinations to the top of the current civil service list for the position of firefighter or police officer, as appropriate, in those towns where remedial hires are required, and such municipality must either hire or disqualify for cause all such minority candidates (up to the shortfall number) before it may hire from the traditional civil service list. This, the parties expect, should result in the hiring of more than 60 minority candidates who the parties have identified as individuals who may have been selected based upon the 2002 or 2004 firefighter examination or the 2003 and 2005 police officer examination had the exam not had discriminatory impact.[2]

The parties have identified two additional issues relating to compensatory shortfall relief that are necessary for the police examination that were not present in the firefighter case. First, because of the numerous police hires in the City of Boston based upon the 2005 examination (because of the City of Boston's effort to hire so many new police officers), the City of Boston is currently in the process of hiring a final group of Boston police officers from the 2005 civil service exam and is likely to hire some from the ranks of non-resident veterans and non-veterans. In order to ensure that this hiring does not result in further disparate impact, the parties have agreed to the following solution: once such hires are carried out, the parties will jointly conduct a shortfall

---

[2] Further, the parties' calculations reflect the fact that the City of Boston was required to put on one police recruit class of non-minority candidates as a result of this Court decision in DeLeo, et al. v. City of Boston, et al., U.S. District Court, Civil Action No. 03-12538-PBS, and one firefighter academy class of non-minorities as a result of Quinn v. City of Boston, and that these hirings were excluded from the shortfall calculation.

analysis to see if there was a discriminatory impact as a result of this hiring of non-resident veterans and non-veterans, and if so, the Commonwealth will certify a supplemental shortfall hiring certification for the City of Boston utilizing an identical analysis to the shortfall analysis imposed by this Court in its December 6, 2006, order. This solution will ensure that there is no disparate impact as a result of this last round of hiring in the Boston Police Department from the 2005 exam. (See Settlement Agreement, ¶ A(3).) However, due to the fact that this hiring will (as is unusual) reach into the ranks of non-residents who would not have been hired earlier, no one hired pursuant to this process will receive back pay as a part of this settlement.

Second, the parties recognize that even though the 2003 and 2005 police officer examination may have resulted in disparate impact with respect to selections of Boston police officers, the Boston Police Department, with approval of HRD, took significant compensatory measures to blunt the effect of such disparate impact, by hiring candidates from special so-called PAR8 lists which only contained the names of candidates who had Spanish, Creole, or Cape Verdian speaking skills. As a compromise, based upon these unique facts, the parties have agreed that there will be 18 shortfall hirings limited to Black candidates, for the Boston Police Department spread out over the next three police recruit classes (six each class), but that these candidates selected will not receive back pay under this settlement. The parties recognize that this result constitutes a compromise between conflicting claims of the Plaintiffs and Intervenors on one hand that such Black candidates were the victims of improper discrimination, and HRD's position that there was no disparate impact with respect to the Boston Police Department hiring as a result of such compensatory measures. This

6

shortfall hiring is limited to Black candidates because the above-described PAR8 certified lists resuled in the hiring of 31 Hispanic candidates.

### IV. BACK PAY/COMPENSATION/RETIREMENT CONTRIBUTIONS/CIVIL SERVICE SENIORITY.

The parties have spent considerable time and effort identifying minority candidates whose hiring was delayed as a result of the disparate impact of the fire and police examination, and who therefore would be entitled to back pay under the Court's order of August 8, 2006. Once again, in order to determine who the "delay" individuals were, Dr. Wiesen has worked cooperatively with Sally McNeeley of HRD to come to an agreement on the number of "delay" candidates. After considerable effort, the parties have come to an agreement on the approximate number of "delay" candidates. Once again, this is not a "compromise" figure, but constitutes the parties' best efforts at calculating the true number of delay candidates.

After identifying both "delay" candidates who would be entitled to some back pay award, and after determining the number of shortfall hires which will likely be made as a result of the process described above, the parties have jointly agreed to a compromise on the total back pay amounts. The parties have agreed (1) to cap the total amount of back pay for all police and fire class members at $1,450,000; and (2) that distributions of back pay for delay and shortfall hire candidates will be based upon a specific formula, thereby making unnecessary an individual back pay/mitigation/set off calculation for each individual candidate, a process which would be extremely time consuming, controversial, and difficult to administer. Specifically, the parties have taken the gross amount of $1,450,000, and based upon the number of individuals whom the parties

7

estimate would be entitled to relief in one of the following four groups: (1) firefighter shortfall hires; (2) firefighter delay candidates; (3) police officer shortfall hires; and (4) police officer delay candidates, have allocated a portion of the corpus to each group ($500,000 to police shortfall hires; $400,000 to firefighter shortfall hires; $300,000 to police delay candidates; and $250,000 to firefighter delay candidates).  Utilizing this method, the parties have calculated that the back pay for the shortfall class members hired will be approximately $18,750 for each entitled class member.  For delay candidates, the average payment will be $13,000, but the exact amount will be based upon the length of the delay for each candidate.

      The parties have agreed that the best methodology for distributing the apportioned funds is for the Comptroller of the Commonwealth to make the required payments to the municipalities who have hired the class members who have been identified as eligible for relief, and the municipalities will pay the amounts over to the class member with appropriate withholdings.  In order to effectuate this process, the parties would expect to request the Court to issue an appropriate order requiring the municipalities to accept such funds, to make the proper deductions and contributions, and to remit the remainder to the class member.

      Class members receiving such back pay will receive retroactive retirement credit for the delay in their hiring, and that in order to receive such retroactive retirement credit, contributions covering the delay will have to be made into the state retirement fund.  Thus the agreement provides that each class member who will receive a distribution will have deducted from their check a retroactive retirement contribution. The municipality will pay the required contributions into the retirement system.

## V.  NOTICE.

For those candidates already hired who are in the "delay" group, such individuals will receive a notice (attached as Exhibit A to the Settlement Agreement) setting forth their rights to make a claim for a delay payment, and HRD will also post information on its website regarding the right to make a claim for such compensation.  The Intervenor organizations and Plaintiffs' counsel will also attempt to identify individuals who are known to be in the delay group, but who have not filed claim forms.  Once all claim forms are filed, the amounts apportioned for delay candidates (both police and fire) will be distributed in a pro rata share (proportionate to the length of their delay) to those eligible candidates who have filed claim forms.

For those candidates who may be entitled to be considered for shortfall hiring, the parties intend to make significant efforts to contact each such individual through notices and other mechanisms, including postings on the HRD website.  Those candidates will be sent a notice (attached to the Settlement Agreement as Exhibit B). Because such individuals may have moved or taken a job elsewhere, it is important that they become aware of their eligibility for hiring consideration.  This is particularly true because it is possible that if sufficient individuals do not elect to be considered for hiring as a result of the parties' shortfall hiring procedure, some minority positions could go unfilled.  Further, should any minority candidate, whose hiring must be reconsidered by the municipality pursuant to this Court's order, be bypassed or disqualified by the municipality, that individual will have such reasons for bypass scrutinized both by HRD and by Plaintiffs' and Intervenors' counsel, and they will retain their right to a civil

service bypass appeal, and court review as described in this Court's December 6th order on page 4, ¶4.

## VI. **DATA COMPILATION.**

The parties are in agreement that the 2006 firefighter examination as well as the 2007 police examination constitute a significant improvement with respect to the disparate impact of the examination on minority candidates, as well as its job-relatedness. However, at this stage, with little hiring completed off such examinations, no definitive determination can be made. However, as part of this good faith settlement, the Plaintiffs have agreed to dismiss their claims regarding the 2006 firefighter examination without prejudice. In compliance with this Court's Order of December 6, 2006, HRD will make available the basic data compilations necessary to allow Plaintiffs and Intervenors to assess the selection results of the 2006 firefighter examination and 2007 police officer examination and to determine whether any further efforts are necessary. The parties believe this is a reasonable course of action for the present time.

## VII. **ATTORNEYS' FEES AND COSTS.**

After the parties completed negotiations for the attached Settlement Agreement, they thereafter attempted to resolve the issues of attorneys' fees and costs for the prosecution of this action. The parties believe that the result is fair and reasonable, and is substantially less than Plaintiffs' and Intervenors' attorneys would have received had they sought a share of the back pay to be paid to the affected class members (as they

would be entitled to do).  (Plaintiffs' and Intervenors' counsel are not seeking a payment from such funds.)  Plaintiffs' counsel have agreed with HRD to accept $310,000 in attorneys' fees for all work performed in this case to date and all future work to be performed in this case in order to finalize and distribute the compensatory relief described herein.  This amount constitutes a reduction of approximately $50,000 from what Plaintiffs' counsel was seeking for work performed to date alone.  In addition, the Commonwealth has agreed to pay Plaintiffs' actual out-of-pocket expenses in the amount of $350,000, the large bulk of which was paid by Plaintiffs' counsel to Plaintiffs' experts.  Plaintiffs' counsel would note that they had to take out loans in order to pay their expert witness fees.  The parties agree that these amounts are fair and reasonable.  In addition, the Commonwealth has agreed to pay Intervenors' counsel the sum of $40,000 as full settlement for their claims for attorneys' fees and costs.

**VIII.    THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT AS IT IS FAIR AND REASONABLE AND IN THE BEST INTERESTS OF ALL PARTIES.**

As the Court is fully aware, this protracted litigation has been both long and complicated.  Further, Plaintiffs' counsel understands that there are a number of complicated issues that HRD could assert on appeal if the case is not resolved.  Further, the parties would still have to complete discovery and trial regarding the 2003 and 2005 police examination, as well as a potential trial over the 2006 firefighter examination.  The result of such trials would be to consume hundreds of thousands of dollars more in expert witness fees and lawyer time, and the rights of many class members would go undetermined for a lengthy period of time, thereby causing many class members who are entitled to relief, to pursue other careers.

Moreover, it is undeniable that HRD has been successful in devising a new entry-level firefighter and police examination, along with a new scoring mechanism (a form of banding) that is likely to significantly reduce disparate impact in the entry-level examination, and increase minority hiring. Putting aside Plaintiffs' arguments that the current process may not pass Title VII muster, the new examination and scoring system is a significant improvement which deserves time to work. Thus, there has been a fundamental change, since the institution of this litigation, in the whole process for selection of entry-level municipal police officers and firefighters in Massachusetts.

For all of these reasons, it is appropriate that this case be resolved amicably, now that the parties have the benefit of the Court's thoughtful decision and analysis on the firefighter examination. While the proposed settlement does not give all of the relief to all of the class members who could theoretically be entitled to relief if Plaintiffs are successful in all phases of the subsequent litigation and appeal, the proposed settlement is designed to fairly compensate and ensure the hiring of qualified minority applicants whose rights may have been affected by reason of the 2002 and 2004 firefighter examination and the 2003 and 2005 police examination. Finally, the parties emphasize that the shortfall numbers contained in the Settlement Agreement are not "compromise" numbers, but are the actual numbers of necessary shortfall hires based

upon hours of analysis by Plaintiffs' and HRD's experts. For all of these reasons, the parties request that this court approve the Settlement Agreement.

                Respectfully submitted,

                JACOB BRADLEY, NOAH BRADLEY, KEITH RIDLEY, and JARED THOMAS,

                By their attorneys,

                _____s/ Harold L. Lichten_____
                Harold L. Lichten, BBO # 549689
                Shannon Liss-Riordan, BBO # 640716
                Pyle, Rome, Lichten, Ehrenberg &
                    Liss-Riordan, P.C.
                18 Tremont Street, Suite 500
                Boston, MA 02108
Date:  May 25, 2007          (617) 367-7200

## CERTIFICATE OF SERVICE

     I hereby certify that a true copy of the above document was served on the attorneys of record for each party by electronic filing on May 25, 2007.

                ___s/ Harold L. Lichten_____
                    Harold L. Lichten